# EXHIBIT 16

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
Central District of California

eBay Inc.

V.

Digital Point Solutions, Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] Case No. CV-08-4052 JF
Northern District of California

TO: COMMISSION JUNCTION, INC.
c/o National Registered Agents, Inc., 2875 Michelle Drive, Suite 100, Irvine, CA 92606

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, CA 90071-2899 | May 18, 2009, 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature] Colleen Kennedy* | 5/4/2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Attorney for Plaintiff, Colleen M. Kennedy
O'Melveny & Myers LLP, Two Embarcadero Center, 28th Floor, San Francisco, CA 94111 (415-984-8700)

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

---

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
              DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc.
www.FormsWorkflow.com

# ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are to be considered applicable with respect to each request for production of documents contained herein:

1. "Commission Junction" or "You" shall mean Commission Junction, Inc. and any and all parent organizations, divisions, subdivisions, departments, affiliates, parents, partners, holding companies, divisions, departments, operating units, their present and former directors, officers, employees, agents, attorneys, consultants, and representatives, and all Persons either acting or purporting to act on behalf of Commission Junction, Inc.

2. "Document" is used in the broadest possible sense and shall mean, without limitation, every writing or record of every type and description that is in your possession, custody, or control, whether an original or copy, in whatever form, and includes, but is not limited to, correspondence, files, drafts, term sheets, transcripts, minutes, memoranda, telegrams, telexes, stenographic and handwritten notes, studies, analyses, publications, books, pamphlets, pictures, photographs, films, video tapes, audio tapes, purchase orders, invoices, computer disks and printouts, drawings, diagrams, blueprints, affidavits, expense records, financial reports, journals, logs, diaries, calendars, voice recordings, tapes, maps, reports, surveys, charts, numbers or statistical computations, and every draft or copy thereof, whether signed or unsigned

3. "Communication" shall mean conversations, correspondence, telephone calls, meetings, or any transmission of information from one person to one or more persons.

4. "Relate to," "Related to" or "Relating to" shall mean, without limitation, constituting, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, analyzing, tending to prove or disprove, or explaining.

5. "Defendants" shall mean any, each, all, or any combination of Thunderwood Holdings, Inc., Brian Dunning, BrianDunning.com, Kessler's Flying

- 1 -

Circus, Todd Dunning, Dunning Enterprise, Inc., Shawn Hogan and Digital Point Solutions, Inc., as defined below.

6. "Thunderwood Holdings, Inc." shall mean, include, or refer to the entity known or doing business as Thunderwood Holdings, Inc. and each of its successor, predecessor, and related entities, including, without limitation, its subsidiaries, parent corporations, divisions, assigns, and any officers, directors, agents, employees, representatives, attorneys, or other Persons or entities acting on its behalf, collectively, in any combination, or singly, whichever is broader.

7. "Brian Dunning" shall mean the Person known or doing business as Brian Dunning and his employees, agents, attorneys, consultants, and representatives, any fictitious business names operated by Brian Dunning or any pseudonyms used by Brian Dunning, as well as any and all entities (business, legal or otherwise) owned, controlled or used by Brian Dunning for any Affiliate Marketing Program or to interact with eBay in any way, and all persons or entities acting on his behalf, collectively, in any combination, or singly, whichever is broader.

8. "BrianDunning.com" shall mean BrianDunning.com and each of its successor, predecessor, and related entities, including, without limitation, its subsidiaries, parent corporations, divisions, assigns, and any officers, directors, agents, employees, representatives, attorneys, or other persons or entities acting on its behalf, collectively, in any combination, or singly, whichever is broader.

9. "Kessler's Flying Circus, Inc." shall mean Kessler's Flying Circus, Inc., and each of its successor, predecessor, and related entities, including, without limitation, its subsidiaries, parent corporations, divisions, assigns, and any officers, directors, agents, employees, representatives, attorneys, or other persons or entities acting on its behalf, collectively, in any combination, or singly, whichever is broader.

10. "Todd Dunning" shall mean the Person known or doing business as Todd Dunning and his employees, agents, attorneys, consultants, and representatives, any fictitious business names operated by Todd Dunning or any pseudonyms used by Todd

Dunning, as well as any and all entities (business, legal or otherwise) owned, controlled or used by Todd Dunning for any Affiliate Marketing Program or to interact with eBay in any way, and all persons or entities acting on his behalf, collectively, in any combination, or singly, whichever is broader.

11. "Dunning Enterprise, Inc." shall mean Dunning Enterprise, Inc., and each of its successor, predecessor, and related entities, including, without limitation, its subsidiaries, parent corporations, divisions, assigns, and any officers, directors, agents, employees, representatives, attorneys, or other persons or entities acting on its behalf, collectively, in any combination, or singly, whichever is broader.

12. "Digital Point Solutions, Inc." shall mean Digital Point Solutions, Inc., and each of its successor, predecessor, and related entities, including, without limitation, its subsidiaries, parent corporations, divisions, assigns, and any officers, directors, agents, employees, representatives, attorneys, or other persons or entities acting on its behalf, collectively, in any combination, or singly, whichever is broader.

13. "Shawn Hogan" shall mean the Person known or doing business as Shawn Hogan and his employees, agents, attorneys, consultants, and representatives, any fictitious business names operated by Shawn Hogan or any pseudonyms used by Shawn Hogan, as well as any and all entities (business, legal or otherwise) owned, controlled or used by Shawn Hogan for any Affiliate Marketing Program or to interact with eBay in any way, and all persons or entities acting on his behalf, collectively, in any combination, or singly, whichever is broader.

14. "Third Parties" shall mean any Person, as defined below, not party to the Litigation, as defined below, including but not limited to, law enforcement investigators, federal or state attorneys, experts, and lay non-party witnesses.

15. "CJ Litigation" shall mean all investigation, preparation and actions taken in and related to the case of *Commission Junction, Inc. v. Thunderwood Holdings, Inc., et al.* in the Orange County Superior Court of California, Case Number 08-00101025,

including, but not limited to, investigations of Defendants to determine which parties to name as defendants in *Commission Junction, Inc. v. Thunderwood Holdings, Inc., et al.*

16. "Settlement Agreement" shall mean the "Settlement and Mutual General Release Agreement" included in the "Compendium of Exhibits in Support of Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants Thunderwood Holdings, Inc., Brian Dunning, and BrianDunning.com" and attached as Exhibit 1 hereto.

17. "Person" or "Persons" shall mean any natural person, proprietorship, public or private corporation, partnership, joint venture, trust, association, company, firm, government or government entity (including any government agency, board, authority, commission, or political subdivision or department thereof), or any other form of business or legal entity, organization or arrangement, group or association.

18. This subpoena calls for the production of all responsive Documents that are within the possession, custody or control of Commission Junction.

19. Documents in the custody or possession of Commission Junction's counsel are deemed to be in the custody, possession or control of Commission Junction.

20. All documents requested shall be produced in the same file or organizational environment in which they are maintained. For example, a document that is part of a file, docket or other grouping should be physically produced together with all other documents from said file, docket or other grouping responsive to said request, in the same order or manner of arrangement as the original.

21. In the event that any document responsive to the following document requests has been destroyed, otherwise disposed of, or no longer in the party's control or custody, that document is to be identified by author, addressee, date, subject matter, number of pages, attachments or appendices, all persons to whom it was distributed, shown or explained, date and manner of destruction or other disposition, and persons destroying or disposing of the document.

22. All documents or information not produced in response to these requests by reason of a claim of privilege or otherwise, shall be included in a log that identifies with

- 4 -

respect to each document or information, the date, author, recipient, copyees, subject matter, and the specific grounds for withholding the document or information from production.

23. If Commission Junction contends that any discovery request is objectionable in whole or in part, Commission Junction shall state with particularity each objection, the basis for it, and the categories of information and documents to which the objections applies, and Commission Junction shall respond to the document request insofar as it is not deemed objectionable.

24. If Commission Junction finds the meaning of any term in any discovery request unclear, Commission Junction shall assume a reasonable meaning, state what the assumed meaning is, and respond to the request according to the assumed meaning.

25. The words "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

26. The term "including" means "including, but not limited to."

27. As used herein, "all," "any," "each," or "every" means "all, each and every."

28. These requests shall be deemed continuing so as to require further and supplemental production in accordance with Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All Documents Relating to the settlement of the CJ Litigation, including Communications between You and any of Defendants regarding settlement, proposed or draft settlement agreements or portions of such agreements, and any other Documents Relating to the negotiation, drafting and execution of the Settlement Agreement.

**REQUEST NO. 2:**

All Documents Relating to any termination of a contractual or other business relationship between You and any of Defendants, including any termination of an

agreement entered into between You and any of Defendants referred to as a Publisher Service Agreement.

# EXHIBIT 1

## SETTLEMENT AND MUTUAL GENERAL RELEASE AGREEMENT

THIS SETTLEMENT AND MUTUAL GENERAL RELEASE AGREEMENT (the "Settlement Agreement") is made and entered into as of this 9th day of March, 2009, by and between Kessler's Flying Circus, a general partnership ("KFC"), Thunderwood Holdings, Inc., a California corporation ("THI"), and Brian Dunning, an individual (collectively, "KFC Parties") on the one hand, and Commission Junction, Inc., a Delaware corporation ("CJI") on the other hand. The parties identified in this paragraph will sometimes collectively be referred to as the "Parties" or each as a "Party." This Agreement is entered into with reference to the following facts:

### RECITALS

A.  On January 4, 2008, CJI commenced an action in the Superior Court of the State of California for the County of Orange against KFC, THI, Brian Dunning and Todd Dunning entitled *Commission Junction, Inc. v. Thunderwood Holdings, Inc., dba Kessler's Flying Circus; Todd Dunning; Brian Dunning and DOES 1 through 50*, Orange County Superior Court Case No. 30-2008 00101025 (the "Action"). CJI filed its First Amended Complaint in this Action on March 13, 2008 adding Dunning Enterprise, Inc., a California corporation ("DEI") as a party defendant. CJI filed its Second Amended Complaint in the Action on May 15, 2008. The Second Amended Complaint alleges causes of action for Breach of Contract, Open Book Account, Account Stated, Reasonable Value, Conversion, Unfair Competition and Declaratory Relief.

B.  Each of the KFC Parties have answered the Second Amended Complaint and generally deny each and every allegation stated therein.

C.  On July 25, 2008, KFC filed its Cross-Complaint for, *inter alia*, Breach of Contract in the Action against CJI (the "Cross-Complaint"). CJI has answered the Cross-Complaint and generally denies each and every allegation stated therein.

D.  The Parties now wish to settle all claims alleged against one another, without admission of liability, fault or wrongdoing, including those alleged in the Action on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the above premises, the mutual promises and covenants contained below, and for such other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

### AGREEMENT

1.  **Payment to CJI.** KFC shall pay to CJI, the total principal amount of Twenty-Five Thousand Dollars ($25,000.00) in currency of the United States (the "Settlement Amount"). The Settlement Amount shall be paid within ten (10) days of the execution of this Settlement Agreement.

1

2. <u>Dismissal of the Action</u>. The Action shall be dismissed with prejudice against the KFC Parties within ten (10) days of the execution of this Settlement Agreement.

3. <u>Dismissal of the Cross-Complaint</u>. The Cross-Complaint shall be dismissed with prejudice against CJI within ten (10) days of the execution of this Settlement Agreement.

4. <u>Release by CJI</u>. With the exception of the obligations of the KFC Parties under this Agreement, CJI, together with their principals, agents, attorneys, representatives, subsidiaries, parents, assigns, successors, and predecessors (the "CJI Releasors") hereby absolutely, fully and forever releases, relinquishes and discharges the KFC Parties, together with their principals, agents, attorneys, representatives, subsidiaries, parents, assigns, successors, and predecessors (the "KFC Releasees") from any and all claims, debts, actions, obligations, liabilities, demands, damages, losses, costs, attorneys' fees, interests and expenses of any kind or nature, character and description, whether known or unknown, whether suspected or unsuspected, whether fixed or contingent, which the CJI Releasors have held or now hold against the KFC Releasees arising from or related to the Action or any claim which could have been alleged in the Action, or otherwise arising from or related to the relationship between the CJI Releasors and the KFC Parties, from the beginning of time to the date of execution of this Agreement (the "CJI Released Claims"). The CJI Releasors acknowledge that they have been advised by legal counsel and are familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED SETTLEMENT WITH THE DEBTOR."

The CJI Releasors, being aware of this code section, expressly waive to the maximum extent permissible under the law, any rights they may have thereunder, as well as under any other statutes or common law principles of similar effect.

5. <u>Release by KFC</u>. With the exception of the obligations of the CJI Parties under this Agreement, KFC, together with their principals, agents, attorneys, representatives, subsidiaries, parents, assigns, successors, and predecessors (the "KFC Releasors") hereby absolutely, fully and forever releases, relinquishes and discharges the CJI Parties, together with their principals, agents, attorneys, representatives, subsidiaries, parents, assigns, successors, and predecessors (the "CJI Releasees") from any and all claims, debts, actions, obligations, liabilities, demands, damages, losses, costs, attorneys' fees, interests and expenses of any kind or nature, character and description, whether known or unknown, whether suspected or unsuspected, whether fixed or contingent, which the KFC Releasors have held or now hold against the CJI Releasees arising from or related to the Action or any claim which could have been alleged in the Action, or otherwise arising from or related to the relationship

between the KFC Releasors and CJI, from the beginning of time to the date of execution of this Agreement (the "KFC Released Claims"). The KFC Releasors acknowledge that they have been advised by legal counsel and is familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED SETTLEMENT WITH THE DEBTOR."

The KFC Releasors, being aware of this code section, expressly waive to the maximum extent permissible under the law, any rights they may have thereunder, as well as under any other statutes or common law principles of similar effect.

6. **No Admission of Liability.** The Parties acknowledge and stipulate that this Agreement is executed in settlement and compromise of disputed claims and that nothing in this Agreement shall be construed as an admission of any wrongdoing, fault, violation of the law or liability of any kind by any party to this Settlement Agreement.

7. **Successors.** This Agreement shall be binding upon and inure to the benefit of the successors, heirs and assigns of each of the Parties.

8. **Execution of Further Documents.** Following the execution of this Agreement, the Parties shall take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

9. **Applicable Law.** This Agreement is made in, and shall be governed, construed and enforced under the laws of the State of California.

10. **Attorneys' Fees.** If any Party brings suit or any other proceeding arising out of or under this Agreement, including without limitation any such suit or proceeding to enforce or interpret any provision of this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees in addition to all other costs allowed by law.

11. **Entire Agreement.** This Agreement constitutes the entire understanding and agreement of the Parties with respect to the subject matter hereof, and it supersedes and replaces all prior negotiations, proposed agreements and agreements, written or oral. This is an integrated agreement. Each of the Parties acknowledges that no other Party, nor any agent, representative or attorney of any other Party, has made any promise, agreement, covenant, representation or warranty whatsoever, express or implied, concerning the subject matter of this Agreement that is not contained in this Agreement.

12. **Amendment.** This Agreement may not be modified, amended, supplemented or terminated, and no provision of this Agreement shall be waived, except by a writing executed by all Parties to this Agreement.

13. **Advice of Counsel.** In executing this Agreement, the Parties acknowledge that they have consulted with and have had the advice and counsel of attorneys licensed to practice law in California, and that they have executed this Agreement after independent investigation and without fraud, duress or undue influence.

14. **Prior Review of the Agreement.** Each Party acknowledges that this Agreement has been fully read, reviewed and understood by its authorized signatory.

15. **Execution in Counterparts.** The Parties agree that this Agreement may be executed in counterparts and that it is the intent of the Parties that the copy signed by a Party will be fully enforceable against such Party.

16. **Headings.** The headings contained in this Agreement have been inserted for convenience only and in no way define or limit the scope or interpretation of this Agreement.

17. **Interpretation.** The Parties acknowledge and agree that each has been given the opportunity to independently review this Agreement with legal counsel. In the event of an ambiguity in or dispute regarding the interpretation of same, the interpretation of this Agreement shall not be resolved by any rule of interpretation providing for interpretation against the party who causes the uncertainty to exist or against the draftsman.

18. **Facsimile or Electronic Signatures.** The signature of a Party on this Agreement or on any document authorized or related to this Agreement which is transmitted by facsimile or electronically shall have the same force and effect as an original signature.

19. **Authority of Signatories.** Each person signing this Agreement on behalf of a Party, Releasor and/or Releasee represents and warrants to the other Party, Releasor and/or Releasee that such person has the authority to execute and bind the Party, Releasor and/or Releasee on whose behalf such signatory is signing and that no other person or entity is required to sign this Agreement to make the Agreement fully enforceable against and binding upon such Party, Releasor and/or Releasee.

20. <u>Counterparts</u>. This Agreement may be executed in separate counterparts and each counterpart, when executed, shall have the same effect of a signed original.

**PLEASE READ THIS DOCUMENT CAREFULLY. THIS SETTLEMENT AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN PAST CLAIMS.**

IN WITNESS WHEREOF, the Parties execute this Agreement and make it effective as of the date first above written.

COMMISSION JUNCTION, INC.,
a Delaware corporation

By: _____
SCOTT HARLOW
Its: Vice President


THUNDERWOOD HOLDINGS, INC.,
a California corporation

By: _____
BRIAN DUNNING
Its: President


_____
BRIAN DUNNING, an individual


KESSLER'S FLYING CIRCUS,
a general partnership

By: THUNDERWOOD HOLDINGS, INC.,
a California corporation, General Partner

By: _____
BRIAN DUNNING
Its: President


By: DUNNING ENTERPRISE, INC.,
a California corporation, General Partner

By: _____
TODD DUNNING
Its: President

363126v1 is 3/9/09 3 (2785-0001)                             5