1   Seyamack Kouretchian (State Bar No. 171741)
    Seyamack@CoastLawGroup.com
2   Ross M. Campbell (State Bar No. 234827)
    Rcampbell@CoastLawGroup.com
3   COAST LAW GROUP, LLP
    169 Saxony Road, Suite 204
4   Encinitas, California 92024
    Tel: (760) 942-8505
5   Fax: (760) 942-8515
6
7   Attorneys for Defendants, SHAWN HOGAN
    and DIGITAL POINT SOLUTIONS, INC.
8
9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12  EBAY, INC.,                          )    Case No. CV 08-04052 JF PVT
                                         )
13               Plaintiff,              )    DEFENDANTS DIGITAL POINT
                                         )    SOLUTIONS, INC. AND SHAWN
14         v.                            )    HOGAN'S REPLY BRIEF IN SUPPORT
                                         )    OF MOTION TO DISMISS PLAINTIFF'S
15  DIGITAL POINT SOLUTIONS, INC., SHAWN )    SECOND AMENDED COMPLAINT FOR
    HOGAN, KESSLER'S FLYING CIRCUS,      )    FAILURE TO STATE A CLAIM
16  THUNDERWOOD HOLDINGS, INC., TODD     )    [FRCP RULE 12(b)(6)]
    DUNNING, DUNNING ENTERPRISE, INC.,   )
17  BRIAN DUNNING, BRIANDUNNING.COM,     )
    and Does 1-20,                       )    Date:   June 26, 2009
18                                       )    Time:   9:00 a.m.
                 Defendants.             )    Dept.:  Courtroom 3
19                                       )
                                         )
20  _____ )

21

22

23

24

25

26

27

28

Dockets.Justia.com

1

**TABLE OF CONTENTS**

2

I.    SUMMARY OF REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    The User Agreement Does Not Apply  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            1.    Language Quoted in the SAC Never Appears in the Exhibit Relied Upon by
                  Plaintiff  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            2.    The PSA and T&C Supplement Directly Apply to the Harms Alleged in the
                  SAC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Plaintiff's Attempts to Circumvent its Own Mandatory Form Agreements Should be
            Rejected  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Given Plaintiff's Own Allegations in the SAC, the "Disavowal" Argument
                  Lacks Merit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            2.    Plaintiff's Argument Should be Rejected under the Doctrine of Judicial
                  Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    Plaintiff is Bound by the One-Year Contractual Limitations Provision  . . . . . . . . . . . . . . 8

            1.    The T&C Supplement's Incorporating Language Applies to Plaintiff  . . . . . . . . 8

            2.    Plaintiff is Bound by the Language of the One-Year Limitations Provision . . . . . 9

            3.    Plaintiff's "Multi-Part Bargain" Argument is Misplaced  . . . . . . . . . . . . . . . . 12

      D.    Plaintiff's Factual Contentions Regarding the Termination Date Lack Merit  . . . . . . . 14

            1.    The Limitations Period Began to Run when the DPS Defendants were
                  Terminated from Plaintiff's Affiliate Program  . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    Given the Express Allegations of the SAC, Plaintiff Cannot Reasonably
                  Contend that it Did not Terminate Defendants in June of 2007  . . . . . . . . . . . 14

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

**TABLE OF AUTHORITIES**

2

**U.S. Supreme Court Cases**

3

*Bell Atlantic Corp. v. Twombly* (2007)

4
    550 U.S. 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5

**Federal Cases**

6

*Boyle v. Arrow Financial Services* (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7

*Benzman v. Whitman* (2 nd Cir. 2008)

8
    523 F.3d 119. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

*First Advantage Background Servs. Corp v. Private Eyes, Inc.*

10
    569 F. Supp 2d 929 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11

*Gingiss Int'l, Inc. v. L&H Tuxes, Inc.* (N.D. Ill. 2002)

12
    2002 U.S. Dist. LEXIS 12792 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13

*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001)

14
    270 F.3d 778 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15

*Humetrix, Inc. v. Gemplus S.C.A.* (9th Cir. 2001)
    268 F.3d 910 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16

*Ibeto Petrochemical Indus. v. M/T Beffen* (2nd Cir. 2007 )

17
    475 F.3d 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18

*Import Export Steel Corp. v. Mississippi Valley Barge Line Co.* (2nd Cir. 1965 )

19
    351 F.2d 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's London* (9th Cir. 1998)
    139 F.3d 1234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21

*Missing Link, Inc. v. eBay, Inc.* (N.D. Cal. 2008)

22
    2008 U.S. Dist. LEXIS 63986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23

*Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela* (2nd Cir. 1993)

24
    991 F.2d 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25

*Scott Co. of Cal. v. U.S. Eng'g Co.* (N.D. Cal. 1994)

26
    1994 U.S. Dist. LEXIS 13585 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

27

*Sprint Telephony PCS, L.P. v. County of San Diego* (S.D. Cal. 2004)

28
    311 F. Supp. 2d 898 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1
2
**State Cases**

3  *Bell v Rio Grande Oil Co.* (1937)
4         23 Cal. App. 2d 436 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5  *Hambrecht & Quist Venture Partners v. American Med. Int'l* (1996)
         38 Cal. App. 4th 1532 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6
7  *Holbrook v. Fazio* (1948)
         84 Cal. App. 2d 700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
8
9  *Pacific Employers Ins. Co. v. City or Berkeley* (1984)
         158 Cal. App. 3d 145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11
10
11  *Sanders v. American Cas. Co.* (1996)
         269 Cal. App. 2d 306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27                              **I.  SUMMARY OF REPLY**
28

In a further attempt to circumvent the terms of the PSA and T&C Supplement, and avoid the legal consequences of its *own* form agreements, Plaintiff seeks to ignore the express factual allegations in the SAC regarding Defendants' participation in the affiliate program. During the initial round of motions to dismiss, Plaintiff did not contest the validity of those documents and instead argued that it was not bound by the PSA because it was not a signatory thereto. The Court relied on that position and proceeded to address the third-party beneficiary and incorporation by reference issues. Plaintiff now seeks to undo the Court's ruling and preclude the Court from addressing the limitations defense by asserting triable issues of fact as to the validity of both documents.[1] As detailed below, however, Plaintiff's "disavowal" claims are without merit given Plaintiff's own allegations in the SAC. Plaintiff cannot disown those allegations to suit its immediate needs in opposing the present motions.

Further, Plaintiff's contentions regarding the applicability of the purported User Agreement (UA) do not appear to be made in good faith. Notably, the SAC purports to directly quote the text of the applicable UA in alleging the types of interference prohibited by thereunder. However, the quoted phrase *never appears* in the purported UA now relied on by Plaintiff. In addition, Plaintiff's Opposition fails to address the fact that the precise harms alleged in the SAC fit squarely within the express terms of the PSA and T&C Supplement. As such, Plaintiff has not shown (and cannot show) that the purported breach of the UA is unrelated to the specific, affiliate-related agreements that control this dispute.

With respect to the PSA's one-year limitations provision, Plaintiff makes not attempt to refute or distinguish the specific authorities briefed in the DPS Defendants' moving papers and therefore concedes their applicability. Plaintiff contends it cannot be bound by the clause because it purports to prevent actions "against *the other party* to this agreement more than one year after the termination *of this agreement*." However, this precise argument has been raised and rejected by the Courts. Indeed, this Court has concluded that such language, when incorporated into a subsequent agreement, refers to *and is binding on the parties thereto*. Because the foregoing language is therefore directly applicable to Plaintiff and its affiliates under the T&C Supplement, Plaintiff's claims are subject to the clause.

---

[1] In doing so, as further discussed below, Plaintiff inappropriately attempts to group the DPS Defendants with the remaining Defendants with events that occurred during the Commission Junction action.

Finally, given Plaintiff's detailed allegations regarding the scope of its "multi-pronged" June 2007 investigation, its resulting awareness of Defendants' purported misconduct, its efforts to cease issuing payments, the FBI seizure that followed, and the express allegation that the activities ceased on June 18, 2007, Plaintiff's claims regarding the termination date are not plausible on their face.  As such, the SAC is subject to dismissal under applicable Rule 12(b)(6) standards.[2]

## II.  ARGUMENT

### A.    The User Agreement Does Not Apply.

#### 1.    Language Quoted in the SAC Never Appears in the Exhibit Relied Upon by Plaintiff.

Plaintiff first raised the notion that its UA supersedes the terms of the PSA during oral argument on the initial round of motions to dismiss.  (Order on Motions to Dismiss (Order), 7:14-15).  Based on that representation, the Court granted Plaintiff leave to amend its pleading to afford an opportunity "to explain how violation of the user agreement is unrelated to the alleged breach of the PSA" and "why the PSA should not be considered the primary and controlling agreement for all claims related to the PSA." (Order, 7:16-18).  Despite this clear direction from the Court and the obvious significance of the text of the applicable UA itself, Plaintiff failed to attach a copy of the document to the SAC.

With respect to the pending motions, Plaintiff attached no less than 34 exhibits to its Opposition, including multiple Travelocity and Map Quest printouts.  (*See* Kennedy Decl., ¶¶5-38).  Yet Plaintiff still has not provided the Court or Defendants with a copy of  the applicable UA.  Instead, without any explanation whatsoever, Plaintiff simply proceeds to make substantive arguments based on the terms of the UA attached as Exhibit 7 to the Non-DPS Defendants' Compendium of Exhibits (hereinafter referred to as "Exhibit 7").  (Opp., 26:8-28:12).  Notably, counsel for those defendants printed that document from Plaintiff's website in April of this year. (*See* Presiado Decl. ¶10).  And Plaintiff makes no attempt to reconcile the document's *August 13, 2008* effective date with Plaintiff's own allegation in the SAC that Shawn Hogan entered the UA *on May 17, 1999*.  (SAC ¶26; *see also* ¶37, "each Defendant was a registered eBay user and/or was bound by the eBay User Agreement *in effect at the time, as set forth in paragraph 26*.") (emphasis added).

---

[2] Because the motion to dismiss is based on new allegations in the SAC, Plaintiff's Rule 12(g) argument also fails.

Moreover, the SAC purports to directly quote the access prohibitions set forth in the relevant UA but the quoted language *never appears* in Exhibit 7.  The SAC affirmatively alleges:

> The User Agreements (a) prohibited the use of any *"device, software or routine"* to interfere with or attempt to interfere with the proper working of the eBay site or any activities conducted on the eBay site, and (b) required compliance with all applicable laws regarding the use of eBay's servers.  (SAC ¶ 37, emphasis added).

However, the phrase "device, software or routine" does not appear in Exhibit 7 (or the links set forth therein).  It is therefore clear that Exhibit 7 is not the document quoted by Plaintiff in the SAC and is not the document that should have been attached to the SAC from the outset.  Notwithstanding this discrepancy, Plaintiff finds no problem quoting Exhibit 7 at length and arguing that its access prohibitions were "directly violated by Defendants' actions as alleged in the SAC."  (Opp., 26:12-13).  Moreover, Plaintiff goes on to argue that Exhibit 7's "forum selection clause, *read in context*, applies to all parties to the agreement . . ." and therefore "provides the operative forum selection clause" in this action.  (*Id.* at 26:27-27:1, 31:25-26; emphasis added).  Given the above, these arguments appear to have been made in bad faith.  As such, the Court should order Plaintiff to produce the document quoted in the SAC.  And absent some compelling explanation, the Court should strike all references to the UA in the SAC and conclusively find that the PSA and T&C Supplement control this dispute.[3]

**2.** The PSA and T&C Supplement Directly Apply to the Harms Alleged in the SAC.

As noted in Defendants' moving papers, the terms of the PSA and T&C Supplement could not more squarely address the harms alleged in the SAC.  (*See* DPS Def. P&A, 9:7-17).  Although the DPS Defendants have called specific attention to those provisions, Plaintiff *makes no attempt to address them in its Opposition* and instead engages in a lengthy discussion of how "linking" is not the equivalent of "access."  (Opp., 28:13-30:7).  Moreover, in contending the SAC establishes the primacy of the UA, Plaintiff refers to the following allegation as the "fundamental premise of this lawsuit."(Opp., 12:12-24).

> DPS and KFC each accomplished their cookie stuffing through software programs and/or code that, unbeknownst to the user, redirected the user's computer to the eBay website without the user actually *clicking* on an eBay advertisement link, or even becoming

---

[3] *See First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 944-945 (motion to dismiss granted where cross-complainant, after being granted leave to amend, failed to attach critical email claimed to apply and instead asserted inconsistent allegations regarding its contents - motion granted because cross-complaint "chose to give the Court no context for the allegedly false promise, rather than the full context.").

aware that they had left the page they were previously viewing.  (SAC ¶25; emphasis added).

Again, however, Plaintiff ignores the fact that the PSA and T&C Supplement directly apply to this issue.  For instance, the T&C Supplement states:

> To qualify as *a payable transaction*, a user must take *an affirmative action, clicking* on your properly coded-link in a browser or browser environment.  (T&C Supp., ¶4; emphasis added).

Thus, the "fundamental premise" of Plaintiff's lawsuit falls directly within the purview of the affiliate-related agreements.[4]  Plaintiff's claims regarding the applicability of the UA must therefore be rejected.

Finally, Plaintiff argues the following: "Defendants' claims that the User Agreement cannot control venue because it is 'generic,' because it is entered into by all users of eBay's site, or because it is superseded by the PSA are meritless."  (Opp., 27:12-14)  In support of this argument, Plaintiff cites two cases (including one of Plaintiff's own prior cases, *eBay, Inc. v. Bidder's Edge, Inc.*) for the proposition that user agreements have been routinely held to govern terms of access.  (*Id.* at 27:14-28:4).  However, Plaintiff's argument is misplaced, as neither of those cases involved a discrete program governed by separate, more specific agreements.  Notably, Plaintiff does not cite *Missing Link, Inc. v. eBay, Inc.* (N.D. Cal. 2008) 2008 U.S. Dist. LEXIS 63986, 12-13.  There, the Court indicated that to the extent a specific provision did "conflict with the general provision of the user agreement," it would control.[5]

**B.    Plaintiff's Attempts to Circumvent its Own Mandatory Form Agreements Should be Rejected.**

With respect to the initial round of motions to dismiss, Plaintiff chose not to contest the validity of the PSA or T&C Supplement and instead argued that it was not bound by the PSA's forum selection

---

[4] Further, the Court identified the specific deficiencies of the FAC as follows: "[T]he FAC does not explain how violation of the user agreement is unrelated to the alleged breach of the PSA or why the PSA should not be considered the primary and controlling agreement for all claims related to the PSA."  (Order, p. 7:15-18; emphasis added).  The Court raised this point because the PSA's forum selection clause clearly states that it applies "to any actions related to this Agreement."  (PSA, §(9)(d)); emphasis added).  On that point, it cannot reasonably be disputed that the PSA's one-year limitations provision applies to claims related to the affiliate program.  Here, for the reasons stated, Plaintiff has not shown (and cannot show) that its claims are "unrelated" to the PSA or T&C Supplement.

[5] Plaintiff further argues that it is the PSA that sets forth "a generic 'Performance Marketing Program' . . ." and therefore should not control.  (Opp., 25:6-14).  This argument is disingenuous at best.  As detailed in Defendants' moving papers, the PSA and T&C Supplement must be construed together under California law.  (DPS Def. P&A, 17:9-18:18).  Plaintiff's Opposition does not dispute that fact.  In that context, the PSA's "generic" performance marketing program clearly refers to *Plaintiff's affiliate marketing program.*

clause because it was not a direct party to the agreement.  In adjudicating the motions, the Court relied on Plaintiff's position and concluded as follows: "<u>eBay does not contest the validity of the clause</u>; rather, it asserts that it is not bound by the clause because it is not a signatory to the PSA."  (Order, 6:16-17; emphasis added).  On that basis, the Court proceeded to address the issue of whether Plaintiff constitutes a third-party beneficiary of the PSA.  In doing so, the Court found that the opening paragraph of the T&C Supplement, "when read together with eBay's <u>own allegations</u> in the FAC with respect to the role of the PSA, indicates that eBay is a third-party beneficiary of the PSA." (*Id.* at 7:6-8; emphasis added).

Now, in an effort to undo that result and avoid the consequences of <u>its own mandatory form agreements</u>, Plaintiff contends that there is a factual question as to whether the PSA "reflects the true terms and conditions of any agreement between Defendants and CJ" and further asserts that the Court's prior reliance on the PSA is "irrelevant" in light of Defendants' "disavowals" of the document.  (*Id.* at 4:17-18; 5:12-16).[6]  As detailed below, these contentions are entirely disingenuous given Plaintiff's <u>own allegations</u> in the SAC regarding Defendants' participation in the affiliate program, and Plaintiff's contradictory positions regarding the validity of the PSA.

    **1.**   <u>Given Plaintiff's Own Allegations in the SAC, the "Disavowal" Argument Lacks Merit</u>.

As a preliminary matter, Plaintiff's "disavowal" argument is without merit, as the PSA expressly states, "Your use of the Network Service is *<u>irrefutable</u>* acknowledgment by You that You have read, understood and *agreed to each and every term and provision of this Agreement*."  (PSA, §9(g); emphasis added).  Here, there is no question that "Network Services" refers to CJ's administration services (*see* PSA, intro. par.) or that CJ provided those services at "all relevant times."  (SAC ¶20.  And in light of Plaintiff's own factual representations regarding the nature of the affiliate program (SAC ¶¶18-23), CJ's administration of the program (SAC ¶¶20, 22, 23, 32-34), the DPS Defendants' participation in the

---

[6] In support of this argument (and throughout much of its Opposition), Plaintiff relies heavily on events that occurred in the CJ action. (*See* Opp. at 4:11-5:7).  On numerous occasions, Plaintiff includes the DPS Defendants in these arguments even though it is well aware that the DPS Defendants were not parties to the CJ action.  For instance, Plaintiff states that it objects to the "DPS Defendants' requests for judicial notice of 'the content of' the CJ settlement and the 'entire case file' of the CJ Action." (*Id.* at 4, fn. 2).  Similarly, Plaintiff cites the Declaration of Ross Campbell in conjunction with its argument that the KFC Defendants "disavowed" the PSA in their trial brief and contends, "The Court should not countenance such brazen gamesmanship."  (Opp., 5:4-7).  However, the DPS Defendants were not parties to that litigation and its attempts to confuse the issues by apply these arguments to the DPS Defendants is improper.

program (SAC ¶¶56, 57, 60 ), and the harm associated with CJ's payment of commissions to Defendants under the program (SAC ¶¶20, 27), Plaintiff's argument should be rejected outright.

For instance, before prospective affiliates can participate in Plaintiff's program, they must agree to the terms of the T&C Supplement by affirmatively clicking their approval. (T&C Supp., ¶15). Once they do so, they are assigned publisher identification numbers (PIDs) to allow CJ to track their activity. (*See* T&C Supp., ¶9a, indicating PIDs are also required to track the activity of affiliate agents). Relevant here, Plaintiff affirmatively alleges that specific PIDs have been ascribed to the DPS Defendants.  (See SAC ¶56, p. 18, "PID 2225634 was an affiliate account number assigned to DPS.")(emphasis added).

Notwithstanding the above, Plaintiff contends that the DPS Defendants "disavowed" the PSA in their discovery responses by denying that they participated in Plaintiff's affiliate program. (Opp., 5:19-21).  First, the denial is only accurate with respect to Digital Point Solutions, Inc.[7]  But in any event, Plaintiff cannot have it both ways.  If, as Plaintiff expressly alleges, the Defendants participated in the program, Plaintiff's mandatory form agreements apply - indeed it constitutes an "irrefutable acknowledgment" on that point.  Again, Plaintiff's attempts to raise a triable issue of fact to circumvent the terms of its own form agreements are disingenuous at best.

  **2.** Plaintiff's Argument Should be Rejected under the Doctrine of Judicial Estoppel.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778; *see also Humetrix, Inc. v. Gemplus S.C.A.* (9th Cir. 2001)  268 F.3d 910, 917.  A majority of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent position. The Ninth Circuit has adopted that rule.  *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London* (9th Cir. 1998) 139 F.3d 1234.

Here, Plaintiff chose not to contest the validity of the PSA or T&C Supplement in opposing the initial motions to dismiss.  Rather, Plaintiff argued that it is not bound by the PSA because it is not a direct signatory to the agreement.  As noted above, the Court relied on Plaintiff's position and concluded

---

[7]  Again, the entity was not incorporated until May of 2007. However, Plaintiff expressly alleges the corporation was involved in the program at all relevant times (and has gone to great lengths to claim that it existed before it was incorporated).

as follows: "<u>eBay does not contest the validity of the clause</u>; rather, it asserts that it is not bound by the clause because it is not a signatory to the PSA."  (Order, 6:16-17; emphasis added).  Accordingly, the Court proceeded to adjudicate the third-party beneficiary issue and noted that the T&C Supplement appeared expressly to incorporate the terms of the PSA. (*Id.* at 7:6-8).  Plaintiff now inappropriately seeks to undo that result and prolong the Court's application of the PSA and T&C Supplement.  Plaintiff should be precluded from doing so under the doctrine of judicial estoppel.[8]

**C.**   **<u>Plaintiff is Bound by the One-Year Contractual Limitations Provision.</u>**

Plaintiff asserts a number of arguments in support of its contention that the T&C Supplement does not incorporate the terms of the PSA and that the one-year limitations provision therefore does not apply.  As detailed below, each of these contentions lack merit.

**1.**   <u>The T&C Supplement's Incorporating Language Applies to Plaintiff.</u>

First, Plaintiff argues that the limitations provision does not apply to its claims because the T&C Supplement only binds *affiliates* to the terms of the PSA.  In that regard, the introductory paragraph of the T&C Supplement states as follows:

> In consideration of Your participation in the Affiliate Program (the "Program") maintained by eBay Inc. ("eBay") through Commission Junction, Inc. ("CJ"), <u>*You agree*</u> to comply with these Supplemental Terms and Conditions ("Terms and Conditions") in addition to the terms of the Commission Junction Publisher Service Agreement ("PSA"). If any of these Terms and Conditions conflict with those of the PSA, then these Terms and Conditions will control. (T&C Supp., p. 1; emphasis added).

Focusing on the italicized language, Plaintiff argues that "the T&C Supplement does not incorporate the PSA.  Instead, it states that the affiliates (such as Defendants) 'agree to comply with' the PSA." (Opp., p. 11:9-11).  Notably, the exact same language is contained in the forum selection clause of the UA set forth in Exhibit 7.  That provision states:

> <u>*You agree*</u> that any claim or dispute that you may have against eBay must be resolved by a court located in Santa Clara County . . . ." (Exhibit 7, p. 4; emphasis added).

---

[8]   Plaintiff seeks to delay adjudication of the issues to improve its chances of defeating any subsequent motions to transfer based on the Court's familiarity with the case. For instance, in its opposition to the pending Motions to Transfer, Plaintiff argues: "eBay commenced this action in August 2008. This Court therefore has over nine months of experience with this case, which includes two rounds of dispositive motions that have required briefing and analysis of the specific and highly technical details of Defendants' fraudulent cookie stuffing scheme. In light of the Court's experience, retaining this case in the Northern District would conserve judicial resources." (Opp., p. 33:20-24).

1   Conveniently, in attempting to further its interests with respect to this provision, Plaintiff takes

2   the *exact opposite position* and contends that it binds both parties.  In addressing the "You agree"

3   language here, Plaintiff states that "the contract binds *both eBay and the user* to the forum selection

4   clause" because the User Agreement "is in the form of a 'click-through' agreement and for clarity,

5   addresses the user's commitment ('You Agree')."  (Opp., p. 27:6-9; emphasis added).  Again, Plaintiff

6   cannot have it both ways.

7       Notably, the same considerations apply with respect to the T&C Supplement.  For instance, the

8   T&C Supplement is a "click-through" agreement which states, "By clicking on the accept "ACCEPT"

9   link below, *You are agreeing* to be bound the [*sic*] terms in these Terms and Conditions."  (T&C Supp.,

10  ¶16; emphasis added).  Despite this language, there is no question that the T&C Supplement constitutes

11  a mutually binding agreement between Plaintiff and its affiliates, and Plaintiff has never contended

12  otherwise.  Particularly relevant, the T&C Supplement's introductory paragraph uses the same language

13  with respect to the Supplement itself as well as the applicability of the PSA.  Based on the foregoing and

14  Plaintiff's own contentions regarding the "You agree" language contained in Exhibit 7's forum selection

15  clause, Plaintiff's claim that the terms of the PSA only apply to the Defendants are entirely misplaced.[9]

16      **2.**    Plaintiff is Bound by the Language of the One-Year Limitations Provision.

17

18

19

20

21  ─────────────────

22  [9] In support of its argument regarding the applicability of the forum selection clause, Plaintiff references a separate provision in the User Agreement which states, "you and eBay agree that we will resolve [any disputes] in accordance with one of the subsections below . . ."  (Ex. 7, p. 4).  Because this language places an affirmative obligation on Plaintiff, Plaintiff

23  contends the forum selection clause applies to both parties.  The PSA contains similar language and is likewise binding on Plaintiff.  For instance, it states, "The Advertiser compensates the Publisher, in accordance with this Agreement and the

24  Program Payout specifications."  (PSA, intro. par.; *see also* PSA §4(a), setting forth grant of right to link to Plaintiff's site).

25      [10] As a preliminary matter, Plaintiff's contention that the limitations provision can only apply to the direct parties to the PSA ignores the specific case law briefed by the DPS Defendants at length in their moving papers.  In that regard,

26  Plaintiff makes no attempt to distinguish or refute the principles set forth in the *Pacific Employers*, *Boys Club*, and *Republic Bank* decisions and therefore concedes their applicability.  Again, where the non-signatory necessarily contracts with

27  reference to the underlying agreement and shares a sufficiently direct relationship with a party thereto, the non-signatory is bound by language referring to the underlying parties under the doctrine of incorporation by reference.  *See e.g. Pacific*

28  *Employers Ins. Co. v. City of Berkeley* (1984) 158 Cal.App.3d 145, 150-152.  As detailed in the DPS Defendants of moving papers, these requirements have clearly been satisfied in this case.  (*See* DPS Def. P&A, 14:18-20:13).

─────────────────

DPS Defendants' Reply Brief in Support of                                    Case No. CV 08-04052 JF PVT
Motion to Dismiss Plaintiff's SAC              8