1  RONALD RUS, #67369
   rrus@rusmiliband.com
2  LEO J. PRESIADO, #166721
   lpresiado@rusmiliband.com
3  RUS, MILIBAND & SMITH
   A Professional Corporation
4  Seventh Floor
   2211 Michelson Drive
5  Irvine, California 92612
   Telephone:  (949) 752-7100
6  Facsimile:   (949) 252-1514

7
   Attorneys for Defendants
8  THUNDERWOOD HOLDINGS, INC.,
   BRIAN DUNNING, and BRIANDUNNING.COM

9  LAW OFFICES OF PATRICK K. McCLELLAN
   Patrick K. McClellan #077352
10 2211 Michelson Drive, Suite 700
   Irvine, CA 92612
11 Telephone  (949) 261-7615

12 Attorney for Defendant
   KESSLER'S FLYING CIRCUS
13

14              UNITED STATES DISTRICT COURT

15           NORTHERN DISTRICT OF CALIFORNIA

16                  SAN JOSE DIVISION

17

18 EBAY INC.,                              )  CASE NO. C 08-4052
                                           )
19              Plaintiff,                  )  **REPLY BY DEFENDANTS KESSLER'S**
                                           )  **FLYING CIRCUS, THUNDERWOOD**
20 vs.                                     )  **HOLDINGS, INC., BRIAN DUNNING**
                                           )  **AND BRIANDUNNING.COM TO**
21 DIGITAL POINT SOLUTIONS, INC.;          )  **OPPOSITION TO MOTION TO**
   SHAWN HOGAN; KESSLER's FLYING           )  **DISMISS PLAINTIFF'S SECOND**
22 CIRCUS; THUNDERWOOD HOLDINGS,           )  **AMENDED COMPLAINT;**
   INC.; TODD DUNNING; DUNNING             )  **DECLARATION OF LEO J. PRESIADO**
23 ENTERPRISES, INC.; BRIAN DUNNING;       )
   BRIANDUNNING.COM; and DOES 1-20,        )  DATE:     June 26, 2009
24                                         )  TIME:     9:00 a.m.
                Defendants.                )  CTRM:     3
25 _____)

26                                            Hon. Jeremy Fogel presiding

27

28

                                            _____
   370686v1 dd 6/12/09 23 (2785-0002)        REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S
                                             SECOND AMENDED COMPLAINT - CASE NO. C 08-4052

Dockets.Justia.com

1

## TABLE OF CONTENTS

2

3  1.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  2.   EBAY'S CONTENTION THAT THE USER AGREEMENT UNDERLIES
     EBAY'S CLAIMS IS WITHOUT MERIT . . . . . . . . . . . . . . . . . . . . . . . 1

5  3.   EBAY DOES NOT, BECAUSE IT CANNOT,  DENY THE EXISTENCE
     OF THE PSA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6
7  4.   EBAY'S ARGUMENT THAT DEFENDANTS HAVE DISAVOWED THE
     PSA IS MISGUIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8  5.   EBAY DOES NOT EFFECTIVELY REFUTE THAT THE LIMITATIONS
     PROVISION IN THE PSA BARS ITS CLAIMS . . . . . . . . . . . . . . . . . . . 9

9
10 6.   EBAY DOES NOT EFFECTIVELY REFUTE THAT THE SETTLEMENT
     BETWEEN DEFENDANTS AND CJ BARS ITS CLAIMS . . . . . . . . . . . . . . 11

11 7.   FEDERAL RULE OF CIVIL PROCEDURE 12(g) DOES NOT PRECLUDE
     DEFENDANTS' ARGUMENT THAT EBAY'S CLAIMS ARE BARRED BY
12   THE PSA CONTRACTUAL LIMITATIONS PERIOD . . . . . . . . . . . . . . . 15

13 8.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14 DECLARATION OF LEO J. PRESIADO . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - CASE NO. C 08-4052

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brown v. Trustees of Boston University*,
891 F.2d 337 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Comer v. Micor, Inc.*,
278 F. Supp. 1030 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commercial Molasses Corp. v. New York Barge Corp.*,
314 U.S. 104 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Global Network Communications v. City of New York*,
458 F.3d 150 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Janet Perez-Encinas v. Americus Life Ins. Co.*,
468 F. Supp. 2d 1127 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*O.F. Nelson & Co. v. U.S.*,
149 F.2d 692 (9th Cir. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATE CASES

*CPI Builders, Inc. v. Impco Technologies, Inc.* (2002)
94 Cal.App.4th 1167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hill v. Citizen Nat'l Trust & Sav. Bank* (2004)
117 Cal.App. 611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lippert v. Bailey* (1966)
241 Cal.App.2d 376 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Skylark and Skyview Memorial Lawn v. Superior Court* (1979)
88 Cal.App.3d 316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL STATUTES

FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FRCP 12(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FRCP 12(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATE STATUTES

California Civil Code Section 1542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

370686v1 dd 6/12/09 23 (2785-0002)

1    Defendants Kessler's Flying Circus, Brian Dunning, Thunderwood Holdings,

2    Inc. and Briandunning.com (collectively, "Defendants") reply to the Consolidated Opposition

3    to Motions to Dismiss Second Amended Complaint filed by Plaintiff eBay, Inc. ("Plaintiff"

4    and/or "eBay") as follows:

5    1.    INTRODUCTION

6    eBay cannot overcome this indisputable fact:  but for the PSA and T&C

7    Agreement (which incorporates the terms of the PSA) eBay's claims against Defendants would

8    not, and could not, exist.  Defendants' participation in eBay's Affiliate Marketing Program via

9    the PSA and T&C Agreement is the only reason eBay would have paid the commission

10   payment to Defendants which eBay now seeks to recover from Defendants.  Moreover,

11   Defendants would have no reason to perpetrate the cookie stuffing scheme alleged by eBay

12   (which Defendants did not do) unless attempting to increase the amount of commission

13   payments under the PSA and T&C Agreement.  On the other hand, eBay does not, because it

14   cannot, allege that a User Agreement was required for Defendants' participation in eBay's

15   Affiliate Marketing Program.  Neither the PSA, T&C Agreement, User Agreement nor MSA

16   say so.  Indeed, the User Agreement makes absolutely no mention of eBay's Affiliate

17   Marketing Program, and the PSA, T&C Agreement and MSA make absolutely no mention of a

18   User Agreement.  The PSA, T&C Agreement and MSA all cross-reference the other and make

19   specific and repeated reference to their application to eBay's Affiliate Marketing Program.

20   Simply put, eBay has not cured (and cannot cure) the deficiency which formed

21   the basis of the dismissal of eBay's FAC, namely a failure to show that the User Agreement,

22   and not the PSA and T&C Agreement, is the primary and controlling agreement underlying

23   eBay's claims.

24   2.    EBAY'S CONTENTION THAT THE USER AGREEMENT UNDERLIES EBAY'S

25   CLAIMS IS WITHOUT MERIT

26   eBay's contention that the User Agreement is the primary and controlling

27   agreement is without merit.  This contention is belied by the fact that the SAC does not even

28   attach a User Agreement, does not allege what particular User Agreement it contends is

1

1   operative as to the several Defendants and does not otherwise quote any of the terms of a User

2   Agreement.  Only after Defendants attached a User Agreement pulled off eBay's website in

3   support of the Motion to Dismiss does eBay quote certain portions of the User Agreement in a

4   self serving manner attempting to justify its misguided argument that the User Agreement

5   somehow governs this dispute and the relationship between the parties which underlies eBay's

6   claims.  Ebay's argument is nonsense.

7           First, although eBay quotes portions of the User Agreement submitted by

8   Defendants in support of their Motion to Dismiss, eBay ignores the very first lines of the User

9   Agreement which defines the scope of the agreement as regulating a person's use of the eBay

10  website *in connection with eBay's services*:

11          Your User Agreement
            The following describes the terms on which eBay offers you
12          *access to our services*.

13          Introduction
            Welcome to eBay. *By using the services on the eBay website*
14          (eBay.com  and other related websites where this agreement
            appears) you are agreeing to the following terms . . . *Before you*
15          *become a member of eBay* you must read and accept all of the
            terms and conditions in, and linked to, this User Agreement and
16          the Privacy Policy. (Defendants' Compendium of Exhibits
            ("Compendium") at Exhibit "7," emphasis added.)
17

18          Certainly, eBay does not, and cannot, contend that it was providing *services* to

19  Defendants in connection with the advertising/commission structure between eBay and

20  Defendants which underlies eBay's claims, much less the type of services offered a user of

21  eBay's website, i.e., the auction, sale and purchase of goods.  Indeed, under the "Fees and

22  Services" portion of the User Agreement, eBay specifies its services as either allowing "listing

23  items" or "bidding on listed items."  (Compendium at Exhibit "7.")  Nothing in the User

24  Agreement even vaguely refers to eBay's Affiliate Marketing Program which underlies eBay's

25  claims.

26          As demonstrated in Defendants' Motion to Dismiss, eBay's contention that the

27  User Agreement is the primary document governing its claims is further contradicted by the

28  fact that practically ever request for document, special interrogatory and request for admission

2

1   served by eBay in this case references eBay's Affiliate Marketing Program and that not a single

2   discovery request propounded by eBay on Defendants mentions a User Agreement.  (See,

3   Defendants' Motion to Dismiss at 10:7 to 11:24 and Compendium at Exhibits "4" through

4   "6.")  eBay completely ignores this fact in its Opposition.  eBay provides no explanation as to

5   why all of its discovery efforts are aimed at Defendants' participation in eBay's Affiliate

6   Marketing Program, which eBay concedes in the SAC was administered by its agent CJ via the

7   PSA and the T&C Agreement.  (SAC ¶¶ 19 -21.)

8          Moreover eBay's attempt to downplay the contractual arrangement between it,

9   CJ and Defendants to pay commissions to Defendants in exchange for Defendants efforts in

10  directing consumers to eBay's website fails.  Indeed, the very first section of the SAC under

11  the heading "General Allegations" and under the sub-heading "eBay's Affiliate Marketing

12  Program" describes the intent, purpose and mechanics of eBay's Affiliate Marketing Program.

13  Most significantly, eBay alleges that the Affiliate Marketing Program is designed to increase

14  traffic to eBay by the placement of advertisements for eBay by third party affiliates such as

15  Defendants.  (SAC at ¶ 19)  Such affiliates are compensated by eBay under the Affiliate

16  Marketing Program when the affiliate advertiser causes an internet user to take some action at

17  eBay's site resulting in revenue to eBay to that is likely to result in revenue to eBay in the

18  future.  (SAC at ¶ 19.)  In addition, eBay and/or its agent CJ tracked commission

19  compensation under eBay's Affiliate Marketing Program, and CJ, on behalf of eBay,

20  administered the Affiliate Marketing Program on behalf of eBay.  (SAC at ¶ 19: 12 -14 and

21  ¶ 20.)  eBay also alleges that "CJ pays Affiliates on a periodic basis with funds remitted by

22  eBay, based on the number of Revenue Actions taken by users referred by those affiliates."

23  (SAC at ¶ 23.)  These primary underlying allegations contradict any contention by eBay that its

24  claims are based on any User Agreement and not the PSA and T&C Agreement.

25         Furthermore, the Master Advertising Service Agreement ("MSA") submitted for

26  the first time by eBay in support of its Opposition supports Defendants' argument as to this

27  issue.  (See, eBay's Exhibit 19.)  In connection with its allegation that it "used the services of

28  CJ in administering the Affiliate Marketing Program" eBay alleges that "*the relationship*

3

1   *between eBay and CJ was governed by various Advertising Service Agreements.*" (SAC at

2   ¶ 20.) It cannot be reasonably disputed that the terms of the MSA establish that the PSA and

3   the T&C Agreement (which incorporates the terms of the PSA) govern Defendants'

4   participation in eBay's Affiliate Marketing Program which underlies eBay's claims. Indeed,

5   *the MSA makes repeated references to both the PSA and the T&C Agreement and does not*

6   *make a single reference to any User Agreement.* More specifically, "Publisher Service

7   Agreement" is a defined term in the MSA. The MSA defines "Publisher Service Agreement"

8   as an agreement between CJ and Publishers such as Defendants regarding a Publishers

9   participation in eBay's Affiliate Marketing Program. The MSA also provides how a Publisher

10  applies to eBay's Affiliate Marketing Program "for the opportunity to earn Payouts in

11  accordance with the terms of this Agreement, the Special T's & C's [ i.e., T&C Agreement

12  which incorporates the PSA] and eBay's stated [advertising] Campaign specifications." (MSA

13  at ¶ 3.1.) In doing so a Publisher such as Defendants must enter into the T&C Agreement

14  which incorporates the terms of the PSA. (MSA at ¶ 3.1 (b).)

15          Furthermore, under the MSA eBay has the "*sole authority to add or remove*

16  *Publishers from its Program in accordance with this Agreement and CJ will comply with all*

17  *eBay instructions regarding adding and removing Publishers.*" (MSA at ¶ 2.3.4.) More

18  specifically, under the MSA eBay has the right to terminate a Publisher for breach of the PSA

19  including termination for the exact conduct it now alleges against Defendants in the SAC:

20              *eBay may instruct CJ to terminate a Publisher and/or Sub-
                Publisher* with less than 7 days written notice (email is sufficient)
21              *if eBay is terminating the Publisher Service Agreement* or eBay's
                Program terms, *including without limitation the Special T's and
22              C's.* CJ shall effectuate such termination immediately upon
                receipt of eBay's notice (email to be sufficient), and no further
23              compensation may be earned by the Publisher/Sub-Publisher once
                eBay has provided such termination notice to CJ. eBay may
24              instruct CJ to terminate a Publisher for cause based on the breach
                of its Sub-Publisher. During the Term, *the Publisher Service
25              Agreement shall prohibit the following*:

26              (a)     *Publisher's operation of an illegal business through its
                        Web site* and/or subscription e-mail list or Promoting
27                      Content;

28  / / /

4

(b)     Publisher utilizing illegal content on its Web site or in its subscription e-mails or Promoting Content;

(c)     Publisher's operation of a Web site or e-mail link to Web sites or any other content *that contain or promote any of the following content: misleading*, abusive, violent, bigoted, hate-oriented, or pornographic;

(d)     *Publisher engaging in indiscriminate or unsolicited commercial advertising e-mails* or other types of spam, or distributing, including or using spy ware in any manner related to its participation in eBay's Program;

(e)     *Publisher placing Links to an eBay Web site in newsgroups, message boards, unsolicited e-mail and other types of spam, banner networks, counters, chatrooms, guestbooks, IRC channels or through similar Internet resources*;

(f)     *Publisher causing or enabling any sales, Leads or clicks to be made that are not in good faith, including, but not limited to, by means of any device, program, executable file, robot, Iframes, hidden frames, JavaScript popup windows and redirects*;

(g)     Publisher establishing or causing to be established any promotion that provides any rewards, points or compensation for clicks, sales, or Leads, or that allows Sub-Publishers to place Links to an eBay Web site or Web site content on the Sub-Publisher's Web site or in its subscription e-mails, without eBay's prior written permission;

(h)     *Publisher's breach of the licensing provisions of its Publisher Service Agreement*;

(i)     *Publisher's breach of any Intellectual Property Right provision of the Publisher Service Agreement* or other of eBay's Intellectual Property Rights;

(j)     Publisher's diluting, blurring or tarnishing the value of eBay's trademarks, trade names, and/or service marks, or *if eBay reasonably believes that Publisher's use of eBay's Links is harming eBay's reputation*;

(k)     *Publisher's violation of any of the then-current Program terms and conditions*; and

(l)     *Publisher infringing any rights or law within the framework of placing or using Links*. (MSA at ¶ 3.3.2, emphasis added.)

As such, it cannot be reasonably disputed that the terms of the MSA establish that the PSA and the T&C Agreement (which incorporates the terms of the PSA) govern

5

1  Defendants' participation in eBay's Affiliate Marketing Program which underlies eBay's

2  claims.  As set forth in Paragraph 3.3.2 of the MSA, eBay dictates that the PSA prohibit the

3  very conduct it accuses Defendants of perpetrating and eBay retains the power to terminate the

4  PSA both directly and through instruction to CJ.

5          eBay's insistence that the User Agreement is the primary and controlling

6  agreement underlying its claims is without merit. The fact that the PSA and T&C Agreement

7  initiated, controlled and governed Defendants' participation in eBay's Affiliate Marketing

8  Program is established by the allegations of the SAC, the language of the PSA, T&C

9  Agreement, MSA and the User Agreement itself, as well as eBay's tacit admission of the same

10  based on the scope and thrust of eBay's written discovery propounded in this case.

11  3.      EBAY DOES NOT, BECAUSE IT CANNOT,  DENY THE EXISTENCE OF THE

12          PSA

13          eBay's Opposition is noteworthy for its lack of denials as to several key points

14  of fact and law.

15          eBay does not affirmatively deny that the PSA was entered into between

16  Defendants and CJ.  Indeed, Plaintiff cannot deny this because there is no other basis for eBay

17  to have paid, and for Defendants to have received, the commission payments which eBay now

18  seeks to recover from Defendants.  In addition, eBay cannot deny the existence of the PSA

19  because its own T&C Agreement specifically references and incorporates the terms of the PSA.

20  eBay does not dispute this Court's earlier finding that "the language in the T&C Agreement,

21  when read together with the eBay's own allegations in the FAC with respect to the role of the

22  PSA, indicates that eBay is a third party beneficiary of the PSA" (Order at 7:6-8).  Indeed, **the

23  T&C Agreement specifically conditioned Defendants' participation in eBay's Affiliate

24  Marketing Program on Defendant's agreement to the terms of both the PSA and the T&C

25  Agreement**:

26          In consideration for Your participation in the Affiliate Program
             (the 'Program') maintained by eBay Inc. ('eBay') through
27          Commission Junction ('CJ'), *You agree to comply with these
             Supplemental Term and Conditions ('Terms and Conditions') in*

28  / / /

6

1   ***addition to the terms of the Commission Junction Publisher
    Service Agreement ('PSA')."***   (Emphasis added.)

2

3       Furthermore, eBay does not, and cannot, deny the existence of the PSA because

4   both the PSA and the T&C Agreement are repeatedly referenced in the MSA submitted by

5   eBay in support of its Opposition.  (*E.g.,* MSA at Paragraphs 1.23 [definition of Publisher

6   Service Agreement], 2.3.2, 2.3.4, 3.1, 3.3.2, 5.8.6, and 5.8.10.)   Indeed, like the T&C

7   Agreement, the MSA expressly acknowledges that CJ is required to enter into a PSA with a

8   publisher such as Defendants in order for the publisher to participate in eBay's Affiliate

9   Marketing Program and that any such publishers consent to eBay's T&C Agreement.

10      eBay's attempt to cast doubt on the existence of the PSA attached to CJ's state

11  court complaint is belied by its own admissions and documents, as well as the admissions and

12  documents of its agent, CJ.  eBay cannot have it both ways.  In order to avoid the ramifications

13  of the forum selection clause in the PSA it must at least affirmatively deny the existence of the

14  PSA attached to CJ's state court complaint – which it does not do.  Of course, eBay is not

15  willing to do so because eBay's claims against Defendants rely upon the existence of such

16  document.  eBay's failure to affirmatively deny the PSA attached to CJ's state court complaint

17  constitutes an admission of the existence of the PSA.  It is well settled that when a party in the

18  position to have evidence of a fact fails to produce such evidence, an inference unfavorable to

19  such party as to such evidence (or lack thereof) must be drawn.  *Commercial Molasses Corp.*

20  *v. New York Barge Corp.*, 314 U.S. 104, 110-111 (1941); *see also*, *O.F. Nelson & Co. v.*

21  *U.S.*, 149 F.2d 692, 694 (9th Cir. 1945).  Certainly eBay is in a position to know whether

22  Defendants entered into the T&C Agreement (which expressly incorporates the terms of the

23  PSA) and whether the PSA attached to CJ's state court complaint is the PSA expressly

24  incorporated into the T&C Agreement between eBay and Defendants.  eBay's silence and

25  failure of proof establishes these facts.

26  / / /

27  / / /

28  / / /

7

4.    EBAY'S ARGUMENT THAT DEFENDANTS HAVE DISAVOWED THE PSA IS
      MISGUIDED

eBay's contention that Defendants have "disavowed" the PSA is neither relevant nor accurate.

eBay contends that in a trial brief filed by Defendants in the CJ state court action Defendants "claimed the PSA was invalid." This is not accurate. In the subject trial brief Defendant's simply outlined for the trial court the evidentiary hurdles that CJ would have to overcome at trial based on the fact that CJ had the burden of proof as to all of its claims. More specifically, Defendants argued that "CJI cannot meet its *evidentiary burden* of proving the terms of a binding contract." Defendants did not deny the existence or validity of the PSA nor did Defendants deny being a party to the PSA. Defendant's only pointed out to the Court that the burden was on CJ to establish these facts which Defendants had no obligation to admit.

In addition, nothing in the discovery responses provided by Defendants in this action establishes that the PSA is not valid. The fact that certain Defendant's indicated in response to eBay's document requests that their records were confiscated by the FBI and, as such, they do not possess a copy of the PSA does not prove that the PSA does not exist or is otherwise invalid. On the other hand, eBay admits that it has obtained all the documents form CJ pertaining to the relationship between CJ, eBay and Defendants. (See, eBay Exhibits 16 and 17.) Despite this, eBay does not submit any documents in support of its Opposition indicating that the PSA is not valid.

Furthermore, the purported admission of Defendant KFC that it did not *participate* in eBay's Affiliate Marketing Program does not establish that the PSA does not exist or that KFC was not a party to it as admitted by eBay's agent CJ. As affirmatively and unequivocally alleged by eBay's agent CJ in the state court complaint, all Defendants were parties to the PSA regardless of the extent of their respective participation in eBay's Affiliate Marketing Program.

In sum, eBay's argument that Defendants disavowed the PSA is inaccurate and irrelevant.

8

5.  **EBAY DOES NOT EFFECTIVELY REFUTE THAT THE LIMITATIONS PROVISION IN THE PSA BARS ITS CLAIMS**

Just as the PSA governs the question of proper venue, it also provides the period of time in which actions may be brought among CJ, eBay and the Defendants based on any claim related to eBay's Affiliate Marketing Program. More specifically, Paragraph 7(a) of the PSA states that the contractual limitations period as follows:

> "NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST THE OTHER PARTY TO THIS AGREEMENT MORE THAN ONE YEAR AFTER THE TERMINATION OF THIS AGREEMENT."

This Court has already determined that eBay is a third party beneficiary of the PSA . Nevertheless, eBay cites *Comer v. Micor, Inc.*, 278 F. Supp. 1030 (N.D. Cal. 2003) for the proposition that it is not bound by the limitations provision in the PSA even as a third party beneficiary of the PSA because eBay is not asserting a breach of the PSA. The *Comer* case does not support eBay's argument.

The *Comer* case does not involve the enforcement of a contractual limitations provision on a third party beneficiary to the contract. As such *Comer* does not disrupt the well settled law cited by Defendants establishing that third party beneficiaries are bound by all provisions of the contract, including the contractual limitations provision in the contract. *Janet Perez-Encinas v. Americus Life Ins. Co.*, 468 F. Supp. 2d. 1127, 1134 (N.D. Cal. 2006); *Skylark and Skyview Memorial Lawn v. Superior Court* (1979) 88 Cal. App 3d 316, 319. eBay makes no attempt to distinguish these cases nor otherwise explain why they do not apply in the context of this action.

Furthermore, although eBay does not assert a claim against Defendants for breach of contract, eBay attempts to enforce the terms of the PSA (and T&C Agreement which incorporates the terms of the PSA) by its claims, particularly its claim for restitution and unjust enrichment. In the SAC eBay alleges that it is entitled to monetary damages based on Defendants' alleges "cookie stuffing scheme" whereby eBay paid Defendants "commissions"

9

1   for "Revenue Actions" which were not actually earned.  (SAC at ¶ 83.)  As such, eBay seeks

2   damages against Defendants in the amount it contends it overpaid Defendants under the

3   agreements whereby eBay contracted to pay Defendants commissions for Revenue Actions

4   generated by Defendants, namely the PSA and T&C Agreement.  It cannot be reasonably

5   disputed that but for the PSA and T&C Agreement there would be no basis for the claims

6   alleged in the SAC.  Indeed, without these agreements there would have been no commission

7   relationship between eBay and Defendants at all, much less any reason for Defendants to

8   employ a "cookie stuffing scheme" to bilk eBay of commissions as falsely alleged by eBay.

9        eBay also argues that the limitations provision in the PSA does not apply to the

10  claims alleged in the SAC because "as a non-party (even if a third party beneficiary), eBay is

11  entirely without authority to terminate any contractual relationship between the Defendants and

12  CJ."  (Opposition at 7:19-21.)  This contention, however, is directly contradicted by the MSA

13  submitted by eBay in support of its Opposition.  More specifically, the MSA expressly states

14  that "*eBay has the sole authority to add and remove Publishers from its Program in*

15  *accordance with this Agreement and CJ will comply with all such eBay instructions regarding*

16  *adding and removing publishers*."  (eBay's Exhibit 19 at ¶ 2.3.4.)  The only way CJ can

17  remove a publisher such as Defendants from the eBay Affiliate Marketing Program is to

18  terminate the publisher under the PSA.  As such, contrary to eBay's representations regarding

19  its inability to terminate Defendants under the PSA, the terms of the MSA between eBay and

20  CJ provide that CJ must terminate a publisher such as Defendants upon eBay's instruction to do

21  so.

22       As it turns out, eBay did instruct CJ to terminate the PSA as to Defendants.

23  eBay alleges the exact date of such termination in the SAC as June 18, 2007.  (SAC at ¶ 57.)

24  This was confirmed in a CJ email dated July 19, 2007 wherein CJ confirms that eBay

25  instructed CJ to place "Kesslers and Briandunning.com on payout hold and expire their

26  affiliations from ALL eBay programs globally effective immediately."  In addition,

27  Defendants' termination under the PSA was confirmed in a letter dated July 19, 2007 authored

28  by counsel for CJ wherein CJ confirms both that Defendants and CJ entered into the PSA on

10

1   April 14, 2007 (the date on the PSA attached to CJ's state court complaint) and that the PSA

2   had been terminated based on the "cookie stuffing" scheme alleged by eBay.[1/]

3        The Court can properly consider these documents because the facts stated in the

4   documents have been deliberately omitted form the SAC and the authenticity of the documents

5   cannot be contested.  See, *Parrino v. FHP, Inc.*, 146 F. 3d 699, 706 (9th Cir. 1998); *Global*

6   *Network Communications v. City of New York*, 458 F. 3d 150, 156-157 (2nd Cir. 2006)

7   ("prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever

8   drafting").  eBay dedicates a substantial portion of the SAC to pleading its claims with

9   sufficient particularity as required by the Federal Rules of Civil Procedure including alleging in

10  detail its particular efforts to detect the "cookie stuffing" scheme, the number of cookies

11  allegedly stuffed and the time period in which Defendants were allegedly perpetrating the

12  scheme.  (SAC ¶¶ 56 and 57.)  Despite such particularity, eBay employs "clever drafting"

13  regarding the cessation of the alleged "cookie stuffing" scheme.  The facts stated in these

14  documents are facts basic to eBay's claims.  The authenticity of these documents cannot be

15  questioned and, as such, can be considered by the court in the context of Defendants' Motion to

16  Dismiss.

17  6.   EBAY DOES NOT EFFECTIVELY REFUTE THAT THE SETTLEMENT

18       BETWEEN DEFENDANTS AND CJ BARS ITS CLAIMS

19       eBay does not dispute the previous finding of this Court that "the issues in the

20  [CJ State Court Action] arise out of the same conduct alleged in [eBay's] FAC, with

21  Commission Junction seeking the return of fees paid to [Defendants] on the grounds that such

22  fees were improperly credited because of the cookie stuffing scheme described above."  (Order

23  at 3:12 -21.)  eBay does not include any new allegations in the SAC negating the Court's

24  finding in this regard.  In fact, the SAC contains the very same allegations in the FAC which

25  led the Court to reach its finding in this regard.  (See, SAC at ¶¶ 18 -34.)  As such it is an

26  established fact that the claims in the CJ State Court Action arise out of the same wrongful

27

28  [1/]  A true and correct copy of the July 19, 2007 termination letter is attached as
    Exhibit "2."

11

REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - CASE NO. C 08-4052

1   conduct alleged by eBay in this action.  What is more, eBay does not dispute that it was well

2   aware of the existence of the CJ State Court Action at all times.  eBay both responded to a

3   subpoena served on it in that action and produced employees to testify against Defendants on

4   the first day of trial.

5            As such, eBay is left only to dispute its agency relationship with CJ.  eBay's

6   attempt to deny that CJ acted as its agent for all purposes in connection with Defendants'

7   participation in eBay's Affiliate Marketing Program is futile.  This fact is affirmatively

8   established by three documents which are part of the record as to Defendants' motion and the

9   authenticity of which is not in dispute, namely the SAC, the MSA and the Settlement

10  Agreement.

11           First, it cannot be reasonably disputed that eBay has plead an agency

12  relationship between it and CJ for all purposes as to Defendants' participation in eBay's

13  Affiliate Marketing Program, specifically including preventing and detecting fraudulent

14  activities and payment of commissions under the PSA:

15           20.  At all relevant times, eBay used the services of CJ, a
             subsidiary of ValueClick, Inc., in administering the Affiliate
16           Marketing Program.  The relationship between eBay and CJ was
             governed at all relevant times by various Advertiser Service
17           Agreements.  Under those agreements, CJ was responsible for,
             among other things, recruiting affiliates, tracking affiliate traffic,
18           monitoring compliance by affiliates, preventing and detecting
             fraudulent activity, and paying affiliates using funds remitted by
19           eBay.

20                              * * *

21           23.  As part of the services it renders with respect to eBay's
             Affiliate Marketing Program, CJ pays affiliates on a periodic
22           basis (usually monthly), with funds remitted by eBay, based on
             the number of Revenue Actions taken by users referred by those
23           affiliates.

24           These allegations of the SAC are consistent with the MSA submitted by eBay in

25  support of its Opposition which expressly confirms the agency relationship between these

26  parties as to eBay's Affiliate Marketing Program.  More specifically, the "services" provided

27  by CJ under the MSA are all inclusive and cover every aspect of a publisher's participation and

28  involvement in eBay's Affiliate Marketing Program.  Indeed, all publisher contact with eBay

12

1  was through CJ including reporting, payment, support, and quality control. (See, MSA at ¶ 5,

2  sub-paragraphs 5.1 through 5.9 – pages 18 through 22.)

3        Pursuant to the Settlement Agreement eBay's acknowledged agent, CJ, released

4  Defendants on behalf of itself and eBay as its principal in connection with the Affiliate

5  Marketing Program as follows:

6        4. <u>Releases by CJI</u>. With the exception of the obligations of
the KFC Parties under this Agreement, ***CJI, together with their***

7  ***principals***, agents, attorneys, representatives, subsidiaries,
parents, assigns, successors, and predecessors (the "CJI

8  Releasors") hereby absolutely, fully and forever releases,
relinquishes and discharges the KFC Parties, together with their

9  principals, agents, attorneys, representatives, subsidiaries,
parents, assigns, successors, and predecessors (the "KFC

10  Releasees") from any and all claims, debts, actions, obligations,
liabilities, demands, damages, losses, costs, attorneys' fees,

11  interests and expense of any kind or nature, character and
description, whether known or unknown, whether suspected or

12  unsuspected, whether fixed or contingent, which the CJI
Releasors have held or now hold against the KFC Releasees

13  arising from or related to the Action or any claim which could
have been alleged in the Action, or otherwise arising from or

14  related to the relationship between the CJI Releasors and the KFC
Parties, from the beginning of time to the date of execution of this

15  Agreement (the "CJI Released Claims"). The CJI Releasors
acknowledge that they have been advised by legal counsel and are

16  familiar with the provisions of California Civil Code Section
1542, which provides as follows:

17   

18      "A GENERAL RELEASE DOES NOT EXTEND TO
CLAIMS WHICH THE CREDITOR DOES NOT KNOW
OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

19  THE TIME OF EXECUTING THE RELEASE, WHICH
IF KNOWN BY HIM OR HER MUST HAVE

20  MATERIALLY AFFECTED SETTLEMENT WITH
THE DEBTOR."

21   

22  The CJI Releasors, being aware of this code section, expressly
waive to the maximum extent permissible under the law, any
rights they may have thereunder, as well as under any other

23  statutes or common law principles of similar effect.[2/]

24        The Settlement Agreement expressly provides that CJ has the authority to

25  execute the Settlement Agreements on behalf of its principals including eBay and bind eBay as

26  to its terms including the releases:

27

28

---

[2/]  The "KFC Parties" are defined as the KFC Defendants in the Settlement Agreement.

13

REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - CASE NO. C 08-4052

1
2
3
4
5

19. <u>Authority of Signatories</u>.  Each person signing this Agreement on behalf of a Party, Releasor and/or the Releasee represents and warrants to the other Party, Releasor and/or Releasee that such person has the authority to execute and bind the Party, Releasor and/or Releasee on whose behalf such signatory is signing and that no other person or entity is required to sign this Agreement to make the Agreement fully enforceable against and binding upon such Party, Releasor and/or Releasee.

6    It is well established that an agent can, and does bind its principal to the extent it

7   purports to do so to a third party, particularly while acting within the scope of its apparent

8   authority.  *Lippert v. Bailey* (1966) 241 Cal.App.2d 376, 382 (an agent may alter the

9   principal's legal relationship when acting within the scope of its agency and may enter into

10  contracts which bind the principal and so create legal obligations that the principal must fulfill);

11  *CPI Builders, Inc. v. Impco Technologies, Inc.* (2002) 94 Cal.App.4th 1167, 1174.  *eBay does*

12  *not dispute, or otherwise attempt to distinguish these cases.*

13   The MSA and Settlement Agreement together with eBay's own allegations

14  establish that CJ was its *actual* agent for all purposes in connection with Defendants'

15  participation in eBay's Affiliate Marketing Program.  Nevertheless, the *conduct* of CJ and eBay

16  in connection with Defendants' participation in eBay's Affiliate Marketing Program establishes

17  that CJ was at the very least the ostensible agent of eBay.  As pointed out be eBay, ostensible

18  agency is established in this case if Defendants had reason to believe that CJ was acting as

19  eBay's agent, that such belief was a result of some act of eBay and Defendants were not

20  negligent in failing to investigate.  *Hill v. Citizen Nat'l Trust & Sav. Bank* (2004) 117 Cal.

21  App. 611, 620.  This standard is easily met.

22   First, it cannot be reasonably disputed that Defendants had reason to believe that

23  CJ was acting as eBay's agent for all purposes as to Defendants' participation in eBay's

24  Affiliate Marketing Program.  eBay admits in the SAC that CJ administered eBay's Affiliate

25  Marketing Program including "recruiting affiliates, tracking affiliate traffic, *monitoring*

26  *compliance by affiliates, preventing and detecting fraudulent activity, and paying affiliates*

27  *using funds remitted by eBay.*"  (SAC at ¶ 20.)  These activities (alleged fraud and the

28  payment of eBay commissions) are exactly what was at issue and settled by the Settlement

14

1   Agreement.  Next, it cannot be reasonably disputed that Defendants' belief as to CJ's agency

2   was a result of some act or neglect of eBay.  Indeed, eBay required Defendants to enter into the

3   T&C Agreement which incorporated the terms of the PSA for the purpose of CJ's

4   administration of Defendants participation in eBay's Affiliate Marketing Program.  Finally,

5   Defendants were not negligent in failing to investigate the agency relationship between CJ and

6   eBay because it was as plain as day and confirmed by CJ on a daily basis.  The very purpose of

7   CJ's state court action was to recoup allegedly unearned commissions that it paid to Defendants

8   under the PSA and T&C Agreement as the agent administrator of eBay's Affiliate Marketing

9   Program.  Moreover, the language of the Settlement Agreement made it very clear that CJ was

10  releasing all claims arising from the PSA including those on behalf of its *principal* eBay. The

11  Settlement Agreement also expressly requires CJ to acknowledge and confirm that it has the

12  express authority of eBay to release all such claims ( ***"no other person or entity is required to***

13  ***sign this Agreement to make the Agreement fully enforceable against and binding upon such***

14  ***Party, Releasor and/or Releasee."***)

15         In sum, eBay does not, because it cannot, effectively refute that the release

16  contained in the Settlement Agreement bars the SAC.

17  7.     FEDERAL RULE OF CIVIL PROCEDURE 12(g) DOES NOT PRECLUDE

18         DEFENDANTS' ARGUMENT THAT EBAY'S CLAIMS ARE BARRED BY THE

19         PSA CONTRACTUAL LIMITATIONS PERIOD

20         eBay erroneously contends that Rule 12(g) precludes Defendants from arguing

21  that eBay's claims are barred by the contractual limitations clause contained in the PSA because

22  Defendants did not raise the argument in connection with its motion to dismiss eBay's FAC.

23  Not surprisingly, eBay omits an important caveat to the rule requiring consolidation of

24  defenses, namely that Rule 12(g) cannot apply to Defendants' arguments because the defense of

25  a failure to state claim is a non-waivable defense.  *See*, FRCP 12(h)(2); *Brown v. Trustees of*

26  *Boston University*, 891 F. 2d 337, 357 (1ˢᵗ Cir. 1989).

27         In any event, the allegation of the SAC which forms the basis of Defendants

28  argument that the contractual limitations period of the PSA bars eBay's claims was not alleged

15

in the FAC.  Nowhere in the FAC does the exact termination date of June 18, 2007 appear as it does at Paragraph 56 of the SAC.  Having alleged an exact termination date of the PSA for the first time in the SAC, the contractual limitations defense became available to Defendants.

8.      CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC without leave to amend.


DATED:  June 12, 2009                    Respectfully submitted,

                                         RUS, MILIBAND & SMITH
                                         A Professional Corporation


                                         By:_____
                                             LEO J. PRESIADO
                                             Attorneys for Defendants
                                             Thunderwood Holdings, Inc., Brian Dunning
                                             and BrianDunning.com


DATED: June 12, 2009                     LAW OFFICES OF PATRICK K. MCCLELLAN


                                         By:_____ for
                                             PATRICK K. McCLELLAN
                                             Attorney for Defendants
                                             KESSLER'S FLYING CIRCUS

16

## DECLARATION OF LEO J. PRESIADO

I, LEO J. PRESIADO, declare as follows:

1.    I am an attorney at law, duly licensed to practice before all of the courts of the State of California and the United States District Court for the Northern District of California and am a member of the law firm of Rus, Miliband & Smith, A Professional Corporation, attorneys for Defendants Thunderwood Holdings, Inc., Brian Dunning and BrianDunning.com

2.    I base this declaration upon my personal knowledge, and if called upon as a witness, I could and would competently testify to the following.

3.    A true and correct copy of that certain email authored by Peter Bexelius of Commission Junction, Inc. ("CJ") dated June 19, 2007 and produced by CJ in the State Court Action and to eBay in this action is attached as Exhibit"1."

4.    A true and correct copy of that certain letter dated July 19, 2007 authored by counsel for eBay's agent, CJ is attached as Exhibit "2."

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 12th day of June, 2009, at Irvine, California.

_____

LEO J. PRESIADO

17

# EXHIBIT "1"

**From:** Peter Bexellus
**Sent:** den 19 juni 2007 22:46
**To:** Agnieszka Ambrozewicz; Redouane Bellani; Krystofer Glover; Rebekka Barnhusen; Ida Gustafsson; Paul Koura; Todd Miller; Jennifer Burnett
**Cc:** Alyson Emmer
**Subject:** DPS, Kessler, Briandunning.com - Attorney Work Request

Hi:

By now I think you may have been contacted by your eBay counterparts regarding May invoicing for the above publishers.  To recap what's happened so far:

1.  Yesterday, eBay US informed us to place DPS, Kessler and Briandunning.com on payout hold and expire their affiliations from ALL eBay programs globally effective immediately.  They gave very little information as to why but allude to cookie stuffing and a ongoing investigation on a federal level (i.e. US Government).
2.  VC has been subpoenaed for records of traffic (url, payment, advertisers relationships, etc).
3.  NQ has placed publishers on payout hold for ALL programs CJ wide (bug #94219)
4.  We will NOT expire publishers until we have evidence of violations.
5.  NQ compliance reversals will also not be done until we have sufficient evidence.

The affected publishers will likely not find out about the payout hold until their May payment is delayed which means anywhere between 24 to 72 hours from now.  If we are contacted, we will simply follow standard NQ protocols for communication and respond that their account is on hold for NQ investigation.  (Todd:  Can you provide me with standard messaging for payout holds please).

While we await evidence and more information from eBay, we need to keep this confidential.  eBay will likely request that you revise the invoice for May.  I'm speaking to our legal team and hope to have more information by tomorrow.  For now, you should plan for these publishers to remain on payout hold and to be expired from your program in the near future.

Please include the following subject line in any email regarding this matter, "Attorney Work Request", and cc aemmer@valueclick.com.

Cheers,

Peter Bexellus
Account Manager - Strategic Accounts

Commission Junction, a ValueClick Company
130 East Montecito Street
Santa Barbara, CA 93103
Direct: 805 730 8100
Fax: 805 730 8458
Email: pbexellus@cj.com

Any disclosure, copying, distribution, posting or use of the contents of this information is prohibited and may be unlawful. This e-mail may contain proprietary or confidential information and is for the sole use of the intended recipient(s). Thank you.

**CONFIDENTIAL**
ATTORNEY'S EYES ONLY

# EXHIBIT "2"



July 13, 2007

<u>VIA E-MAIL AND VIA HAND-DELIVERY</u>

Stewart Foreman, Esq.
Freeland Cooper et al LLP
150 Spear St #1800
San Francisco, CA 94105-1541

 Re: *Kessler's Flying Circus*

Dear Mr. Foreman:

  As you are aware, your client, Kessler's Flying Circus ("Kessler's"), entered into the Commission Junction Publisher Service Agreement on April 14, 2005 (the "PSA"). Kessler's breached the PSA in various ways and on numerous occasions. Moreover, Kessler's is currently in possession of $565,517.84 that it has no right to possess and has unlawfully converted from Commission Junction. This letter shall serve as a formal demand to you that if Kessler's does not immediately remit $565,517.84, plus interest (the "Amount Due") to Commission Junction, Commission Junction will file a lawsuit against your client for, *inter alia*, conversion, unfair competition and breach of contract.

  By entering into the PSA, Kessler's agreed to abide by specific obligations to avoid termination of the PSA and its Publisher Account. Such obligations include, but are not limited to the following:  not causing any Transactions to be made that are not in good faith (Section 1(d)(ii)); not conducting promotional activities that may infringe on a third party's proprietary rights (Section 1(d)(iii)); not misleading others and using unethical and illegal business practices (Section 2(b)); and having the appropriate authority for the promotional methods it uses (Section 7(c)(ii)).

  Kessler's violations of the PSA are legion. Kessler's violations include, but are not limited to, the following: it caused Transactions to be made that were not in good faith; it conducted promotional activities that may have infringed on a third party's proprietary rights; it did not have the appropriate authority for the promotional methods it used; and it misled others and used unethical and illegal business practices.

  After carefully examining such non-bonafide transactions, Commission Junction had no choice but to terminate Kessler's account pursuant to the PSA. Section 2(b)(iv) of the PSA states that Commission Junction has the ability to deem Kessler's promotional activities inappropriate and a material breach of the PSA in Commission Junction's sole discretion, and any "suspected fraudulent, abusive or otherwise illegal content or activity" by Kessler's is a breach of the PSA, which is grounds for immediate termination.

30699 Russell Ranch Road  ■  Suite 250  ■  Westlake Village, CA 91362
P. 818.575.4500  ■  F. 818.575.4501  ■  www.valueclick.com

Further, Kessler's has no right to be paid for breaching the PSA and conducting non-bonafide transactions, and thus, it must immediately pay the Amount Due to Commission Junction. Section 3(b) of the PSA states that Commission Junction may apply a debit to a Publisher's account in an amount equal to a Payout previously credited to the Publisher's account in circumstances of non-bonafide transactions or Publisher's failure to comply with agreements it has with Advertisers ("Charge-back"). As stated above, Kessler's has been completing non-bonafide transactions, and therefore, Commission Junction has every right to charge-back the amount due. Because Kessler's account does not have an adequate account balance to cover charge-back amounts, it has a negative balance in its account, and pursuant to Section 3(g) of the PSA, Kessler's must immediately remit the amount due to Commission Junction as the amount sufficient to bring its Account to a zero balance.

Accordingly, if Commission Junction does not receive the amount due by the close of business on July 20, 2007, we will aggressively pursue all legal claims at our disposal, including, but not limited to those for unfair business practice and conversion. In addition, Commission Junction will seek recovery of attorney's fees expended in collecting this debt, Charge-backs to Kessler's account for previous payment cycles prior to May, 2007, as well as punitive damages.

I await your response.

Very truly yours,

Scott Patrick Barlow
Vice President & General Counsel
ValueClick, Inc.