eBay Inc. v. Digital Point Solutions, Inc. et al Doc. 101



Stewart H. Foreman (CSB #61149)
Daniel T. Bernhard (CSB #104229)
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone: (415) 541-0200
Facsimile: (415) 495-4332
Email: foreman@freelandlaw.com
bernhard@freelandlaw.com

Attorneys for Defendants Todd Dunning and Dunning Enterprise, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EBAY, INC.,

Plaintiff,

v.

DIGITAL POINT SOLUTIONS, INC., SHAWN HOGAN, KESSLER'S FLYING CIRCUS, THUNDERWOOD HOLDINGS, INC., TODD DUNNING, DUNNING ENTERPRISE, INC., BRIAN DUNNING, BRIANDUNNING.COM, and DOES 1-20,

Defendants.

CASE NO.: CV-08-4052 JF

REPLY BRIEF BY DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC. ON MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Date: June 26, 2009
Time: 9:00 a.m.
Place: Courtroom 3, 5th Floor



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Dockets.Justia.com

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. THE FORUM SELECTION CLAUSE IN THE PSA IS VALID AND BINDING .......... 2

A. The Court Should Not Reconsider The Previous Order Regarding The PSA's Venue Clause .......... 3

III. TRANSFER TO THE CENTRAL DISTRICT IS APPROPRIATE UNDER § 1404(a) .......... 4

A. Analysis of the Convenience of Most Witnesses Supports Transfer. .......... 4

B. Travel to San Jose is More Burdensome Than to the Central District for Most Non-Party Witnesses .......... 6

C. eBay Is Not Entitled to An Advantage of Being In Its Home District. .......... 7

IV. THE MSA, SPECIAL T&CS AND PSA CONTROL THE ACCESS ISSUE .......... 7

A. The User Agreement Only Applies To Those Who Accept It .......... 7

B. The Various Agreements Related to eBay's AMP Control Venue And Access. .......... 9

C. Review Of The Provisions of the Key Agreements .......... 9

V. CJ'S REQUIREMENTS UNDER THE MSA SHOW THAT EBAY KNEW OR SHOULD HAVE KNOWN ABOUT COOKIE STUFFING LONG AGO .......... 11

A. eBay Contracted to Receive Regular Reports That Would Show Cookie Stuffing. .......... 11

B. Todd Dunning's Alleged Admission Put eBay on Inquiry Notice in February 2006. .......... 12

VI. THE ONE YEAR LIMITATIONS PERIOD IN THE PSA APPLIES TO EBAY .......... 13

VII. THE PSA WAS TERMINATED ON JUNE 27, 2007. .......... 14

VIII. THE RICO STATUTE OF LIMITATIONS STARTED WITH THE INITIAL COOKIE STUFFING .......... 15

IX. CONCLUSION .......... 15


FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amini Innovation Corporation v. JS Imports, Inc,*
497 F. Supp 2d 1093 (C.D. Cal. 2007) ....................5

*Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*,
2006 U.S. Dist. Lexis 75339 (N.D. Cal. 2006) ....................5

*Chilicky v. Schweiker*,
796 F.2d 1131 (9th Cir. 1986) ....................14

*Comer v. Micor, Inc.*,
278 F. Supp. 2d 1030 (N.D. Cal. 2003) ....................3

*Commission Junction, Inc. v. Thunderwood Holdings, Inc. et al.*,
Case No. 30-2008-00101025 ....................3

*Conmar Corp. v. Mitsui & Co.*,
858 F.2d 499 (9th Cir. 1988) ....................11

*Dore v. Arnold Worldwide, Inc.*,
39 Cal. 4th 384 (2006) ....................13

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ....................7, 8, 11, 12

*Flotsam of California, Inc., v. Shoreline Surf Shop*,
2007 U.S. Dist. Lexis 31762 (N.D. Cal. 2007) ....................5

*Gundle v. Fireman's Fund Insurance Co.*,
844 F. Supp 1163 (S.D. Tex 1994) (cited in *Kina v. United Air Lines, Inc.*, 2008 U.S. Dist. Lexis 98948, N.D. Cal. 2008) ....................5

*Hendricks v. Bank of America*
408 F.3d 1127, 1137 (9th Cir. 2005) ....................3

*In re Rexplore, Inc. Securities Litigation*
671 F. Supp. 679, 688 (N.D. Cal. 1987) ....................12

*In Re: Yahoo! Inc.*,
2008 U.S. Dist. Lexis 20605 (C.D. Cal. 2008) ....................4, 6

*Intercall Telecommunications, Inc. Plaintiff(s) v. Instant Impact, Inc. and E-Impact.net, Inc.*,
376 F. Supp. 2d 155 (D. P.R. 2005) ....................3

*Ironworkers Local Union No. 68, et al. v. Amgen, Inc.*
2008 U.S. Dist. Lexis 8740 (C.D. Cal. 2008) ....................5



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

*Kina v. United Air Lines, Inc*
2008 U.S. Dist. Lexis 98948 (N.D. Cal. 2008) .......... 6

*Lewis v. Hooper*,
140 Cal. App. 2d 365 (1956) .......... 13

*Los Angeles Memorial Coliseum Commission, v. National Football League*,
89 F.R.D. 497 (9th Cir. 1981) .......... 4

*Low v. SDI Vendome S.A.*,
2003 U.S. Dist. LEXIS 27603 (C.D. Cal. 2003) .......... 12

*Lubin v. Sybedon Corp.*,
688 F. Supp. 1425 (S.D. Cal. 1988) .......... 12

*Manetti-Farrow, Inc. v. Gucci America, Inc.*
858 F.2d 509, 512 (8th Cir. 1988) .......... 3

*Miller v. Bechtel Corp.*
33 Cal. 3d 868 (1983) .......... 12

*Molus v. Swan*,
2007 U.S. Dist. LEXIS 58997 (S.D. Cal. 2007) .......... 15

*Molus v. Swan*,
2009 U.S. LEXIS 4192 (S.D. Cal. 2009) .......... 15

*Sanders v. American Casualty Company of Reading, PA*,
269 Cal. App. 2d 306 .......... 14

*Sasser v. Amen*,
2001 U.S. Dist. LEXIS 9469 (N.D. Cal. 2001) .......... 15

*Volk v. D.A. Davidson & Co.*,
816 F.2d 1406 .......... 11

**STATUTES**

28 U.S.C. § 1404(a) .......... 2, 4, 7

**OTHER AUTHORITIES**

17 Moore's Federal Practice
§ 110.01 43[b] (2009) (Matthew Bender 3d ed.) .......... 3

FED. R. CIV. P. 12(b) 2-5, 12(b)(3), 12(g) .......... 4, 6, 14



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

## I. INTRODUCTION

Through innuendo and speculation eBay, Inc. ("eBay") suggests factual issues and uncertainties in the Publisher Service Agreement ("PSA") where none exist.[1] The relevant provisions of the PSA are clear and unambiguous, so the Court may interpret and apply them now as a matter of law. The PSA contains a clear forum selection clause and a definitive limitations provision enforceable against eBay.

eBay's Second Amended Complaint ("SAC") also contains new allegations which, when taken with facts in other undisputed documents, requires dismissal for failure to file these claims timely. If the case is not dismissed on its merits, it should be dismissed due to the binding forum selection clause in the PSA requiring filing of this case in the Central District. Finally, under 28 U.S.C. § 1404(a), and primarily for the convenience of the majority of the parties' and third-party witnesses, the case should be transferred to the Central District.[2]

## II. THE FORUM SELECTION CLAUSE IN THE PSA IS VALID AND BINDING

In the Order[3] the Court observed that "eBay does not contest the validity of the clause," Order, page 6, line 16-17, and clearly held that "eBay is a third-party beneficiary of the PSA." Order, page 7, lines 7-8. eBay was given leave to "present sufficient allegations as to why it is not bound by the forum selection clause contained in the PSA," Order page 7, lines 21-22. eBay renews its attack on the PSA by arguing that since the TD Defendants raised defenses about the PSA, eBay is not bound to it either. eBay's Consolidated Opposition Brief ("Opp Brief") fails to provide adequate arguments to demonstrate that the SAC meets the additional pleading requirement set forth in the Order, and it fails to challenge the enforceability of the PSA and its venue and limitation clauses.

[1] After filing the moving papers, counsel discovered that the full PSA document did not get properly e-filed as Exhibit 1 to the Foreman Decl. dated April 27, 2009. The Supplemental Declaration of Stewart Foreman In Support of TD Defendants' Motion to Dismiss. ("Foreman Supp Decl) contains the complete PSA as Exhibit 1.

[2] The Brian Dunning Defendants and KFC will make the reply argument for the motion to dismiss based on the settlement agreement between Commission Junction, Inc. and all the Dunning Defendants. Their arguments in the moving papers and the reply are incorporated by reference into TD Defendants' motion without being repeated. However, the Foreman Supp. Decl. Exhibit 2, contains a copy of the fully executed settlement agreement applicable to the TD Defendants.

[3] The word Order refers to the Court's Order (1) Granting Motions to Dismiss for Improper Venue and (2) Granting In Part Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted, dated February 24, 2009.



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

A. The Court Should Not Reconsider The Previous Order Regarding The PSA's Venue Clause

Rather than making adequate new allegations in the SAC as required by the Order, eBay points to litigation arguments made by TD Defendants[4] in the recently settled CJ Action[5] to argue that the forum selection clause in the PSA cannot be enforced in this case against eBay, as a third-party beneficiary. eBay cites to *Comer v. Micor, Inc.*, 278 F. Supp. 2d 1030 (N.D. Cal. 2003) to support its argument but this case is not applicable to this motion. eBay's claims fundamentally arise under the provisions of the PSA and its Special T&Cs. eBay is the author of the Special T&Cs, and it is a third-party beneficiary of the PSA. eBay's position therefore in relation to these contracts is vastly different than the plaintiff's in the *Comer* case.

The "separability doctrine" answers eBay's argument. The enforceability of the forum selection clause against a plaintiff is separate from the defenses to the contract. In *Intercall Telecommunications, Inc. Plaintiff(s) v. Instant Impact, Inc. and E-Impact.net, Inc.*, 376 F. Supp. 2d 155, 160 (D. P.R. 2005), the district court held:

> "Courts must distinguish between challenges to the validity of the underlying contract on the one hand, and to the validity of the forum selection clause in particular, on the other. Under the purview of this separability doctrine, a forum selection clause is deemed to be separate from, and independent of, the contract containing it." *See also, Hendricks v. Bank of America,* 408 F.3d 1127, 1137 (9th Cir. 2005); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (8th Cir. 1988); 17 Moore's Federal Practice § 110.01 43[b] (2009) (Matthew Bender 3d ed.)"

A defendant may enforce a forum selection clause while retaining all defenses to the substantive allegations. Here, the Court has determined that eBay is bound to the PSA as a third-party beneficiary; thus the PSA determines where eBay's[6] lawsuit must be filed regardless of the defenses.

---

[4] TD Defendants refers to defendants Todd Dunning and Dunning Enterprise, Inc. ("DEI"). Individual defendants' names are used only for context and clarity.

[5] CJ Action refers to *Commission Junction, Inc. v. Thunderwood Holdings, Inc. et al.*, Case No. 30-2008-00101025, Superior Court of the State of California, County of Orange. Commission Junction, Inc. is referenced as "CJ."

[6] eBay's extensive exhibits and argument about the TD Defendants' defenses and arguments in the CJ Action are completely irrelevant. eBay makes much of Todd Dunning's claim of his Fifth Amendment Constitutional Rights while the FBI criminal investigation remains pending. The assertion of his constitutional rights does not permit the expansive inferences argued by eBay. The PSA is an internet agreement entered into by clicking an "accept" button. The fact that Todd Dunning may not have the document explains nothing about the enforceability of the PSA against eBay for venue and limitations purposes. No inference is justified, as argued by eBay, that KFC did not "accept" the PSA.



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

The Opp Brief does not provide any case authority to the contrary.[7]

eBay's final argument to avoid the PSA's forum selection clause repeats its prior argument that the User Agreement trumps any other agreement between the parties thus its forum selection clause controls venue for this case.[8] However, most significantly, eBay failed to respond to TD Defendants' argument that the User Agreement's forum selection clause simply does not apply based on the unambiguous words making that provision inapplicable when eBay files the lawsuit. eBay's silence concedes this critical point. The User Agreement does not give eBay a contractual right to sue these defendants in this district. Therefore, this case should be dismissed pursuant to FED. R. CIV. P. 12(b)(3) based on the PSA's forum selection clause.

## III. TRANSFER TO THE CENTRAL DISTRICT IS APPROPRIATE UNDER § 1404(a)

### A. Analysis of the Convenience of Most Witnesses Supports Transfer.

eBay gives scant weight to the convenience of the witnesses in opposing a transfer of this action to the Central District. In comparison, Courts in this district and throughout the Ninth Circuit have consistently held that the convenience of witnesses,[9] and especially of third-party witnesses, is the most important single factor in analyzing a motion to transfer under section 1404(a).[10]

---

[7] If eBay's argument of "repudiation of the PSA by TD Defendants" to defeat the application of the PSA forum selection clause is relevant now, it was also relevant and should have been made in response to the Motion to Dismiss the First Amended Complaint ("FAC"). All of the pleadings and discovery responses relied on by eBay to argue that TD Defendants "repudiated the binding effect of the PSA in the CJ Action" (Opp Brief, page 23, line 4) are public records or were readily available from CJ, as recently demonstrated by eBay's subpoena. eBay knew of the CJ Action and could have obtained these pleadings timely in response to the Motion to Dismiss the FAC. Although the parties' trial briefs in the CJ Action are actually not relevant here, since eBay has submitted the Dunning Defendants' trial brief to support its arguments, the Foreman Supp Decl, Exhibit 4, is the CJ Trial Brief. At page 3, CJ states: "the defendants have admitted to entering into the attached Agreement [PSA]".

[8] eBay is essentially asking the Court to reconsider the Order without having first complied with Local Rule 7-9 governing Motions to Reconsider. Even if eBay attempted to properly make such a motion, it would be futile because eBay cannot satisfy the requirements of Local Rule 7-9(b)(1)-(3). eBay has not shown a "material difference in fact or law," the "emergence of new material facts," or its "exercise of reasonable diligence" in not knowing originally the facts that it now relies on to seek reconsideration of the Order.

[9] eBay sues three individuals who were not personally members of eBay's Affiliate Marketing Program ("AMP"). eBay has not alleged that any of these individuals specifically did anything in this district that supports venue in this district for these claims. The Order determined that venue is proper as to the entity defendants absent an enforceable forum selection clause. Only defendants Digital Point Solutions, Inc., BrianDunning.com, and Kessler's Flying Circus were members of the AMP. Therefore, even though the individuals are sued in this district, their personal inconvenience in defending here in this district rather than in their district of residence is entitled to considerable weight.

[10] *See*, e.g., *Los Angeles Memorial Coliseum Commission, v. National Football League*, 89 F.R.D. 497, 501 (9th Cir. 1981) ("The convenience of witnesses is said to be the most important factor in passing on a transfer motion."); *In Re: Yahoo! Inc.*, 2008 U.S. Dist. Lexis 20605 (C.D. Cal. 2008) ("The convenience of the witnesses is usually the



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

CJ's present and former employees in Santa Barbara constitute the most significant group of potential witnesses. eBay agrees with this point at Opp Brief page 32, lines 13-14. TD Defendants do not at this time know which or how many of the 24 CJ employees will be deposed or become trial witnesses. However, their names were derived from the email documents produced in the CJ Action relating to KFC's activities under eBay's AMP, so these people would seem to have knowledge about the monitoring, tracking and maintenance of KFC's participation in eBay's AMP program. The only eBay employees significantly appearing in those emails are Christine Kim, a current eBay employee, and Lily Shen, a former eBay employee. *See,* Adam R. Sand Decl. accompanying the Opp Brief, ¶6.

CJ identified numerous eBay employees as potential trial witnesses on the eve of trial in the CJ Action but their depositions were never taken, and their potential knowledge about the computer fraud issue in this case is unknown. As demonstrated by Exhibit 34 to the Colleen Kennedy Decl. accompanying the Opp Brief, the only eBay witness that CJ actually subpoenaed for trial in the CJ Action on the issue of cookie stuffing was Christine Kim. KFC provided in its Initial Disclosures the names of all the eBay employees identified in the CJ trial witness list out of an abundance of caution to comply with its broad obligations under this Court's rules, not because the TD Defendants knew or even believed these eBay employees have relevant information related to the computer fraud claims here. eBay's initial disclosures did not include any of those people except for Christine Kim, so apparently the other eBay employees from the CJ Action trial witness list do not have relevant evidence related to the computer fraud issues. For purposes of evaluating transfer for the convenience of the parties, only the few percipient witnesses identified in eBay's Amended Initial Disclosures in this case should be considered.

Even if the Court considers all the eBay witnesses on the CJ Action trial list in ruling on this motion to transfer, the convenience of witnesses who are employees of a party is not entitled to equal consideration to the convenience of non-party witnesses *Gundle v. Fireman's Fund Insurance Co.*,

---

most important factor to consider in deciding whether to transfer an action.") Citing *Ironworkers Local Union No. 68, et al. v. Amgen, Inc.*, 2008 U.S. Dist. Lexis 8740 (C.D. Cal. 2008); *Flotsam of California, Inc., v. Shoreline Surf Shop*, 2007 U.S. Dist. Lexis 31762 (N.D. Cal. 2007) ("... the Court considers the convenience of third-party witnesses, which often is the most significant factor.") See, *Amini Innovation Corporation v. JS Imports, Inc*, 497 F. Supp 2d 1093, 1111 (C.D. Cal. 2007); *Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, 2006 U.S. Dist. Lexis 75339 (N.D. Cal. 2006).

844 F. Supp 1163, 1166 (S.D. Tex 1994) (cited in *Kina v. United Air Lines, Inc.*, 2008 U.S. Dist. Lexis 98948, N.D. Cal. 2008). As the Court in *Kina* said, " ... since all the witnesses identified [by defendant] are employees of [defendant] their inconvenience is given less weight in the §1404 context as they can be compelled to testify." *Id.*, at 20. *See, also*, *In re Yahoo!, Inc., supra.* CJ's present and former employees are non-party witnesses in this case whose convenience is to be considered more heavily than eBay's employees.

The Opp Brief, page 30, line 27-page 31, line 4, states that the presence of eBay's computers allegedly in San Jose is relevant to the transfer question. The location of eBay's computer is not alleged in the SAC nor is it the subject of witness's declaration. In this case, CJ's computers that monitored, tracked and reported on KFC's activities of alleged cookie stuffing will contain relevant information. CJ's computers are admittedly in Santa Barbara in the Central District, not this district.[11]

B. Travel to San Jose is More Burdensome Than to the Central District for Most Non-Party Witnesses.

The Opp Brief at pages 32-33 makes the astounding argument that driving times between destinations for non-party and party witnesses if this case is transferred are equivalent to the time it takes to fly between destinations if the case remains here. While the additional cost of flying rather than driving, and the prospect of overnight hotel costs, may not be a material consideration for a corporation like eBay, these costs are very significant for an individual such as Todd Dunning, who has essentially been put out of work by eBay's lawsuit.[12] The CJ Action is resolved so there is no reason to think that CJ is willing to incur the higher cost of its employees traveling to San Jose for this case rather than within its own federal district.

The Opp Brief suggests that CJ employees may not reside in the Central District, and even if

[11] eBay attempts to use arguments made by the parties in the CJ Action as if these were applicable or binding here, but they are not. For example, the Opp Brief, page 31, lines 16-24, points to an early motion in the CJ Action that resulted in moving that case from Los Angeles Superior Court to Orange County Superior Court. Under California's state venue law, TD Defendants argued that the PSA's forum selection clause could not designate an improper Superior Court venue. CJ voluntarily refiled in Orange County Superior Court. This litigation history is not relevant to resolve this motion to transfer.

[12] Undoubtedly, everyone knows or has heard the comment which is partly true and part hyperbole: "By the time I get to the airport, go through security, get delayed, fly, get through the airport at [LAX or SFO], I could have driven in the same time." The point is that a one-hour flight between LAX or Orange County Airport, and SFO or San Jose, is not even remotely equivalent to a one-hour drive from Orange County to downtown Los Angeles. eBay's argument on this point is simply preposterous.



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

they do, requiring them to drive from Santa Barbara to Los Angeles is not less burdensome than driving or flying from Santa Barbara to San Jose for trial. This is not a credible argument to make to anyone who drives or flies either of those routes.[13] Besides, Santa Barbara is in the Central District, not the Northern District, and it is more appropriate for witnesses to attend trial within their district of residence rather than a different district.[14]

C. eBay Is Not Entitled to An Advantage of Being In Its Home District.

The Opp Brief opposes transfer on the ground that "local interest" and the Court's familiarity with the case supports keeping the case here. On this latter point, the Court's familiarity with the case is only a function of the fact that eBay has amended its complaint twice since filing. While the Court's involvement to date has consumed Court time and resources, this occurs in every motion to transfer under 28 U.S.C. § 1404(a), and is not part of the equation for ruling on the venue issue.

eBay also blatantly argues that it is entitled to a home-town advantage and even potential bias from a jury in stating that eBay is "an important member of the local community in terms of employment and tax base" and that defendants "defrauded it of significant amounts of money." Opp Brief, page 34, lines 1-3. If other venue factors are neutral or weigh in favor of a transfer, then eBay is not entitled to receive any weight in its favor based on this suggestion.

In summary, after considering all the factors, the weight to be given to the convenience of likely non-party and party witnesses indicates that the Central District is the preferred and appropriate district for this case. Accordingly, the Court should transfer this action to the Central District pursuant to 28 U.S.C. § 1404(a).

## IV. THE MSA, SPECIAL T&CS AND PSA CONTROL THE ACCESS ISSUE

A. The User Agreement Only Applies To Those Who Accept It

eBay argues in its Opp Brief, Section D.2, that it has adequately met the requirement of the

[13] Exhibits 27-32 in the Colleen Kennedy Declaration regarding travel pointedly omits information about flying in and out of Santa Barbara.

[14] eBay also suggest that defendants can appear telephonically to avoid the cost of flights to San Jose, while "eBay, of course, is a short drive from the San Jose courthouse." Opp. Brief. page 33, lines 11-12. eBay's argument is that it should have the advantage of easy personal appearances before the Court while defendants should have to choose between incurring significant travel expenses or making appearances over the telephone and foregoing personal appearances. This argument must be rejected as simply outlandish.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Order to "present sufficient allegations as to why it [eBay] is not bound by the forum selection clause contained in the PSA" by continuing to allege that the User Agreement defines authorized access for the defendants, and thus its forum selection clauses should apply. Order, page 7, lines 21-22. A careful reading of eBay's SAC and its arguments demonstrate the fallacy of its position (putting aside for this discussion that the clause is not even applicable by its own terms). eBay argues that unauthorized access occurred: (a) with internet users who independently became new eBay registered users after receiving a stuffed cookie and taking a Revenue Action, and (b) with internet users who did ***not*** become new registered eBay users after receiving a stuffed cookie. In fact, this latter group allegedly constitutes the vast majority of the unauthorized accesses according to eBay. Opp Brief, page 25, lines 5-20 and page 29, lines 2-4. However, the User Agreement only "offers access to our services" to registered users,[15] so even under eBay's argument, the User Agreement does not apply to most of the internet users who were surrogates for TD Defendants' alleged unauthorized access to eBay's computers through cookie stuffing.

The SAC alleges, page 7, lines 22-28, that even though DEI never signed a User Agreement, it was "on constructive and/or actual notice" and thus bound by the User Agreement. This argument does not square with the words in the User Agreement. The User Agreement says nothing about being binding on any person or entity other than the internet user who voluntarily accepts the agreement. eBay is in sole control of the contents of this agreement as stated in its second to last paragraph, so eBay cannot credibly argue in its Opp Brief that an agreement it prepared has a scope beyond what it expressly states. The User Agreement does not have provisions making it binding on DEI or any other defendant who did not "accept" it.[16] Therefore, the User Agreement does not define

[15] The User Agreement contains a section called "Fees and Services" that discusses "services, such as listing items" for which a fee is charged, whereas the service of "bidding on listed items is free." All of these services occur ***after*** access and registration. The User Agreement applies only to this subset of eBay users. All other internet users may access eBay's website simply by directing a browser to www.eBay.com to search for items without accepting the User Agreement. Only at the time of bid or purchase must the User Agreement be "accepted." The User Agreement has nothing to do with access to eBay's computer for other purposes such as merely browsing. This is why cases such as *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) plead claims for trespass, for example, rather than breach of the User Agreement, because such unauthorized access may violate a property right but does not violate the User Agreement.

[16] Of course, Todd Dunning is not conceding that his alleged personal acceptance of the User Agreement is at all relevant to the computer fraud allegations in the SAC.



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

or control the "access" issue in this case, and thus its forum clause is similarly not applicable.

B. The Various Agreements Related to eBay's AMP Control Venue And Access.

The PSA/MSA/Special T&Cs together govern access to eBay's website for Publishers operating under the AMP.[17] eBay suggests that the PSA/MSA/T&Cs cannot apply to internet users' access because these agreements are only between CJ, eBay and KFC, but this argument misses the point. Since the SAC alleges that the defendants used surrogate internet users to access its computer, then the agreements governing the defendants' access are the relevant documents, not the agreement governing the surrogate internet users' conduct. Regardless of eBay's allegations in the SAC, there can be no reasonable doubt that the PSA/MSA/Special T&Cs are the operative documents against which to measure the issue of authorized access to eBay's computers by the TD Defendants, the performance of the TD Defendants under these agreements, and the alleged cookie stuffing. The User Agreement provides no help in analyzing these important legal and factual issues.

C. Review Of The Provisions of the Key Agreements.

The provisions of the PSA/MSA/Special T&Cs describe a three-way relationship between eBay, CJ and KFC creating multiple obligations and rights among them. The MSA between eBay and CJ requires CJ to detect, monitor, track and report through its Network Services compliance by eBay's approved Marketing affiliates with the terms of the PSA and the Special T&Cs. *See,* MSA, Section 5 generally. The PSA establishes the Network Services administered by CJ to provide links, tracking codes, and identification numbers, called PID, for approved affiliate Publishers accepted into eBay's AMP. The Special T&Cs are issued by eBay and incorporated into the PSA for Publishers accepted into the AMP. The Special T&Cs provide additional compliance conditions for accepted Publishers. None of these documents contain any reference to the User Agreement, and the User Agreement does not contain any reference to the PSA, MSA, or Special T&Cs.

eBay makes an incomplete and distorted summary of the MSA to aid its argument that the MSA does not grant access to its computers to participants in the AMP. However, paragraph 1.27 of the MSA resolves the access issue under the AMP by defining a User as "a person who Links to an

[17] The Foreman Supp Decl, Exhibit 5, is a diagram illustrating the relationships among those agreements and their signatories.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

eBay Web site to ***access*** eBay Listings from a Publisher Web site"[18](emphasis supplied). The MSA also governs in significant ways how a Publisher, such as KFC, becomes part of the AMP. Paragraph 3.1 of the MSA gives eBay the right to approve a Publisher provided the Publisher accepts the Special T&Cs. After approval, the Publisher "may post Links to eBay's Web site ... that eBay provides to the Network Services [CJ] in accordance with the Agreement." Paragraph 3.2 contains numerous conditions regarding the Publisher's use of Links and obliges CJ to "monitor and enforce" compliance with the AMP and Special T&Cs.[19]

Section 5 of the MSA describes CJ's services and obligations to eBay. Paragraph 5.2 requires CJ to have "pixel imaging impression tracking code and action tracking code ... to facilitate CJ's tracking of Users' actions resulting from eBay's Publisher to any eBay Web site or Web site content." "***CJ will track critical information regarding eBay's Program through the Tracking Codes, and review User actions using a confirmation process that CJ will perform on eBay's behalf.***" CJ is also required to provide reports to eBay "***segmented by Publisher***" showing the "metrics as eBay may reasonably request regarding the results of Links placed by eBay's Publishers through the Network Services." Finally, and of critical significance, Paragraph 5.8.10(a) of the MSA specifically requires CJ "to detect and monitor for every eBay Web site ... ***forced clicks***,[20] hijacked cookies ... and non-compliance software."

In summary, the MSA ties together with the PSA and Special T&Cs: (a) to provide the Links that allow access to eBay's computers by internet users who receive cookies containing a Publisher's PID under the AMP, and (b) to require CJ to detect, monitor and report on these matters. The PSA/MSA/Special T&Cs govern the authorization, or lack thereof, for access to eBay's computer

---

[18] There are other related and important definitions in the MSA relating to the access issue such as in paragraph 1.21, "Publisher" and 1.23, "Publisher Service Agreement." In paragraph 1.16 "Network Services" is defined as the services "CJ provided to eBay and Publisher to facilitate the operation of performance marketing programs via the Internet." In paragraph 1.15, "Link" means a hyperlink or click from a Publisher Web site... as outlined in the Commission Junction Publisher Service Agreement and the eBay US Program Special Terms and Conditions through an Internet ***connection to*** an eBay Web site."

[19] Under Paragraph 3.3 eBay also obtains substantial rights to enforce directly the PSA. eBay has the right under Paragraph 3.3.2 to "instruct CJ to terminate a Publisher ... for breach of the material provisions of the Publisher Service Agreement or eBay's Special T and C's." Other provisions in Section 3 of the MSA give eBay the right to control many other aspects of the PSA. Paragraph 4.5 of the MSA gives eBay the right through the Network Services and the PSA to establish the commissions to be paid to Publishers under its AMP.

[20] The term "forced clicks" is synonymous with "cookie stuffing".



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

which is alleged to be the central issue for liability under the allegations of the SAC.

## V. CJ'S REQUIREMENTS UNDER THE MSA SHOW THAT EBAY KNEW OR SHOULD HAVE KNOWN ABOUT COOKIE STUFFING LONG AGO

### A. eBay Contracted to Receive Regular Reports That Would Show Cookie Stuffing.

The information that CJ was obliged to collect and report to eBay under the terms of the MSA establishes for statute of limitations purposes that eBay knew or should have known of cookie stuffing shortly after it allegedly started to occur.

eBay contracted to receive data that would show cookie stuffing if it was occurring, because eBay always anticipated that Publishers might engage in cookie stuffing. eBay required CJ to "detect and monitor" for such activity through requirements in the MSA. eBay understood that cookies might be placed on internet users' computers even when those users did not actually view eBay's Web site simultaneously with receipt of the cookie (i.e. click the button and go to eBay's website to receive a cookie). Thus, the MSA requires CJ to have "imaging impression tracking code" and "action tracking code." CJ was required to monitor when a user received a cookie and when the user actually visited the eBay Web site and engaged in a Revenue Action. This is the "historical data" referenced in the SAC, paragraph 57, that CJ continuously collected and reported to eBay as required by the MSA from the time that CJ started to provide Network Services for eBay's AMP. The monitoring and tracking reports required by the MSA provided eBay with the facts so that it should have discovered or did discover, TD Defendants' alleged cookie stuffing conduct long ago.

eBay relies on *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 504 (9th Cir. 1988) for the standard that diligent inquiry is only required when facts exist that would "excite the inquiry of a reasonable person." This quote is from *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 – 1417 (9th Cir. 1987) in which the receipt of annual reports was held to have alerted the plaintiff to the fraud. Here eBay contracted with CJ to receive monthly reports to monitor and detect the precise conduct for which these defendants are accused. Just as in *Volk*, those reports did or should have "excited" eBay to act diligently to protect its rights at the first signs of cookie stuffing. eBay's failure to act shows lack of diligence and does not prevent the statute of limitations from running.



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

The SAC fails to describe how or why the alleged cookie stuffing scheme may have been undetected or unreported although eBay contracted to receive the data and reports from CJ to specifically identify alleged cookie stuffing activity by Publishers. Absent such allegations in the SAC, the statute of limitations for any claim based on alleged unauthorized access accrued when eBay knew or should have known that the data collected by CJ under the MSA revealed cookie stuffing by a Publisher. TD Defendants' moving papers describe that the allegations in the SAC effectively admit eBay's knowledge or inquiry notice of the alleged cookie stuffing by virtue of the data CJ collected and reported under the MSA. Whether a reasonable person is on inquiry notice or should have suspicions for purpose of the statute of limitations is a factual question, the answer is determined by an objective standard. Thus, the Court may determine as a matter of law that a reasonable person would have or should have been on notice when this information was collected by CJ. The facts alleged in the SAC and the contents of the relevant agreements indicate that the Court should make this legal conclusion in applying the statues of limitations to eBay's claims.

*Low v. SDI Vendome S.A.*, 2003 U.S. Dist. LEXIS 27603 (C.D. Cal. 2003), which is relied on by eBay, confirms that the standard for a reasonable person is that "a plaintiff has reason to discover a cause of action when he has reason at least to suspect that his injury was caused by wrongdoing." *Id.* *10 (emphasis in text), citing, *Miller v. Bechtel Corp.*, (1983) 33 Cal. 3d 868. Accordingly, in the *Low* case, the court relied on statements in the complaint and other documents to determine that plaintiff discovered the facts for statute of limitations purposes much earlier as a matter of law.[21]

B. Todd Dunning's Alleged Admission Put eBay on Inquiry Notice in February 2006.

eBay argues that in paragraph 60 of the SAC describing the alleged February 15, 2006

[21] eBay also cites to *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425 (S.D. Cal. 1988) which not only restates the objective standard for evaluating the exercise of reasonable diligence, but says that if the plaintiff claims that fraudulent concealment by defendant caused a failure to discover those facts, the alleged "excusable failure" must be pled with 'at least some particularity.'" Citing, *In re Rexplore, Inc. Securities Litigation*, 671 F. Supp. 679, 688 (N.D. Cal. 1987). For the SAC, this rule means that, when eBay argues that tolling of the statute due to defendants' fraudulent concealment, eBay is required to plead with particularity how or why, as a result of any conduct by the defendants, the detection, monitoring and reporting system created by the MSA and performed by CJ for eBay did not provide the facts, reasonable inquiry or suspicions to eBay that cookie stuffing was allegedly occurring by KFC under the PSA. The allegations about alleged technology measures employed by KFC to exclude certain geographical areas from cookie stuffing do not meet this pleading requirement. The allegations in the SAC do not provide a legal excuse for eBay's lengthy delay in filing this action.



FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

telephone conversation between Todd Dunning and an eBay employee demonstrates concealment or fraud that tolled any statute of limitations. TD Defendants point to the same allegation to show that eBay was put on inquiry notice at that time of potential cookie stuffing. The latter argument is far more plausible as a matter of law. The Court only needs to consider the normal suspicion any reasonable person would have when confronting person A about a bad act and person A says "I didn't do anything wrong, but B did!" A reasonable adult would take some steps to make sure A's statement was not just a diversion or deception to draw the attention to B, and away from A. The reasonable person would take steps to determine if A is telling the truth about whether B did it, and about whether A did it also. For the same reason, Todd Dunning's alleged statement that "DPS and Hogan" were cookie stuffing, but that "Brian Dunning" was not, created as a matter of law, inquiry notice for eBay to determine from this conversation and the data it received under the AMP ***if any of these people were cookie stuffing***. The fact that eBay did nothing when it was put on inquiry notice by these statements has a legal consequence – the statute of limitations started to run or continued to run.

## VI. THE ONE YEAR LIMITATIONS PERIOD IN THE PSA APPLIES TO EBAY

eBay cites *Lewis v. Hooper*, 140 Cal. App. 2d 365 (1956) and *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384 (2006) to argue that the one-year limitations period in the PSA is unambiguous in its application only to CJ and a Publisher, and must be construed against the TD Defendants who seek to enforce it against eBay. However, these cases do not inform the Court's analysis here. eBay is a party to the PSA both by virtue of its third-party beneficiary status and through eBay's own Special T&Cs. eBay and CJ controlled the terms in these agreements. Therefore, strict construction against these defendants of contract terms in documents prepared and controlled by plaintiff is not the rule.

eBay's argument also parses the paragraph in the PSA containing the limitations period but it overlooks a critical point. Basically eBay suggests that each sentence in the paragraph should repeat *ad nauseam* words that would explicitly make the provisions apply to eBay. Absent such repetition, eBay argues that the limitations provision does not apply. The Court however should read the paragraph in total and apply its terms as would be understood by a reasonable person reading its unambiguous words. In this context, the one year limitation language clearly applies to a third-party beneficiary such as eBay who is the Advertiser under the PSA and who has intentionally brought itself

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

into the PSA with its Special T&Cs. In this light, the phrase "other party" applies equally to eBay, as well as to CJ and the Publisher. This is further confirmed by the fact that the very next sentence in the PSA, after limiting the time for making claims, limits the damages for such claims. This next sentence specifically limits the damage recovery for timely "claim[s] by another Publisher or an ***Advertiser*** of the Network Service." (emphasis supplied) *Accord, see, Sanders v. American Casualty Company of Reading, PA*, 269 Cal. App. 2d 306, 309 – 310 (1969) (applying one year limitations period in a contract against a third-party beneficiary to the contract). Accordingly, eBay is subject to this unambiguous provision that claims against a Publisher be brought within one year of termination of the PSA.

## VII. THE PSA WAS TERMINATED ON JUNE 27, 2007.

eBay devotes several pages and citations for its speculation that the PSA was not terminated, and thus the one-year limitation period in the PSA barring eBay's claim does not apply. This argument is readily dismissed by one undisputed document already in eBay's possession. On June 27, 2007, CJ sent KFC an email declaring the PSA terminated. *See,* Foreman Supp. Decl., Exhibit 3. The termination notice states: "You are removed from the CJ Network and your earnings have been forfeited. You are not eligible to rejoin the CJ Network and any attempt to do so shall be rejected."

There is no dispute about the fact of termination under this document. Accordingly, the one year limitations period commenced on June 27, 2007. All claims under the PSA and the incorporated Special T&Cs between CJ, eBay and KFC relating to access issues expired after June 27, 2008, which is well before the filing of this action. TD Defendants' statute of limitations arguments is also timely because it is based on the new allegations in the SAC and on the Order declaring eBay a third-party beneficiary of the PSA. These factual and legal foundations were not available at the time of the motion to dismiss the FAC.[22]

[22] In support of its argument that the motion to dismiss based on the contractual limitation is not timely, eBay cites to *Chilicky v. Schweiker*, 796 F.2d 1131 (9th Cir. 1986), but this case is not on point. *Chilicky* restates the standard rule that certain Rule 12(b)2-5, and 12(g) defenses (personal jurisdiction, service of process, etc.) must be raised in a pre-answer motion, or those defenses are lost. There is no discussion in that case about when the defenses are raised in a motion in response to a new amended complaint with additional allegations, as here.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

## VIII. THE RICO STATUTE OF LIMITATIONS STARTED WITH THE INITIAL COOKIE STUFFING

eBay cites in its footnote 19 to *Molus v. Swan,* 2007 U.S. Dist. LEXIS 58997 (S.D. Cal. 2007) to suggest that the "separate accrual" rule does not apply here under a theory that each act of cookie stuffing starts a new statute of limitations period under RICO. However, the subsequent history of *Molus v. Swan,* 2009 U.S. LEXIS 4192 (S.D. Cal. 2009) is consistent with the "separate accrual" rule as applied in *Sasser v. Amen,* 2001 U.S. Dist. LEXIS 9469 (N.D. Cal. 2001) relied on in the moving papers. In the final *Molus* decision, the court determined that the invoices arguably sent within the limitations period were ***not "a new and independent act"*** from the invoices sent outside the limitations period, and therefore the RICO claim was time barred because the conduct "began outside the limitations period." *Molus, supra at *23.* Properly applying the "separate accrual" rule in this case leads to the conclusion that each act of cookie stuffing is not a distinctly separate unlawful act under RICO. The RICO statute of limitations started to run when eBay knew or should have known of the cooking stuffing.

## IX. CONCLUSION

eBay's Opp Brief does not create factual issues or ambiguities to persuade the Court to deny the motion to dismiss or the motion to transfer. The Court should dismiss this case based on the statute of limitations arguments presented. Or, at a minimum, the Court should transfer this case to the Central District. No further amendments to the complaint should be allowed.

Dated: June 12, 2009 FREELAND COOPER & FOREMAN LLP

By: /s/
STEWART H. FOREMAN
Attorneys for Defendants Todd Dunning and Dunning Enterprise, Inc.