1

2                                                          **E-Filed 8/17/2009**

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                SAN JOSE DIVISION

11

12   EBAY INC.,                              Case Number C 08-4052 JF (PVT)

13                  Plaintiff,               ORDER[1] (1) DENYING MOTIONS TO
                                             DISMISS FOR IMPROPER VENUE; (2)
14       v.                                  DENYING MOTION TO DISMISS FOR
                                             FAILURE TO STATE A CLAIM UPON
15   DIGITAL POINT SOLUTIONS, INC.,          WHICH RELIEF MAY BE GRANTED;
     SHAWN HOGAN, KESSLER'S                  AND (3) DENYING MOTION TO
16   FLYING CIRCUS, THUNDERWOOD              TRANSFER
     HOLDINGS, INC., TODD DUNNING,
17   DUNNING ENTERPRISES, INC., BRIAN
     DUNNING, BRIANDUNNING.COM,              [re: doc. nos. 71, 73, 76, 82]
18   and DOES 1-20,

19                  Defendants.

20

21           In its Second Amended Complaint ("SAC"), Plaintiff eBay Inc. ("eBay") alleges that

22   Defendants Digital Point Solutions, Inc., Kessler's Flying Circus, Thunderwood Holdings, Inc.,

23   Todd Dunning, Todd Dunning Enterprises, Inc., Brian Dunning, BrianDunning.com, and Does 1-

24   20 engaged in scheme to defraud eBay in violation of the Computer Fraud and Abuse Act

25   ("CFAA"), 18 U.S.C. § 1030 *et seq*., and the Racketeer Influenced and Corrupt Organizations

26

27   _____
          [1] This disposition is not designated for publication in the official reports.
28

Case No. C 08-4052 JF (PVT)
ORDER DENYING MOTIONS TO DISMISS ETC.
(JFLC1)

Dockets.Justia.com

Act ("RICO"), 18 U.S.C. 1962(c).  eBay also asserts multiple state-law claims for relief.

Defendants move to dismiss the SAC for improper venue and for failure to state a claim upon

which relief may be granted.[2]  In the alternative, Defendants seek transfer of the instant action to

the United States District Court for the Central District of California pursuant to 28 U.S.C.

§1404(a).[3]  For the reasons set forth below, Defendants' motions will be denied.

## I.  BACKGROUND

eBay maintains an Affiliate Marketing Program ("AMP") through which persons or

entities that display eBay advertisements are reimbursed for referrals.  SAC ¶ 19.  Under the

AMP, eBay will pay a referral fee to those individuals—known as "affiliates"—when an

advertisement placed by an affiliate is clicked on by a web user.  *Id*.  When a user clicks on an

advertisement, that user's web browser is directed to eBay's website.  *Id*.  When the user

accesses eBay's website, a "cookie" is deposited onto the user's computer.  *Id*. ¶¶ 19, 21.  This

cookie contains information identifying the referring affiliate and may be used to track whether

the user returns to the eBay website.  *Id*. ¶¶ 21-22.  A subsequent visit to the eBay website may

result in payment of a referral fee to the referring affiliate if the user engages in a "Revenue

Action," which occurs when the user registers with eBay or utilizes eBay's auction service.  *Id*.

¶¶ 19, 22.  If multiple cookies are present on the user's computer, which may occur if the user

---

[2] Three separate motions to dismiss were filed by the following groups of Defendants:  (1) Kessler's Flying Circus, Thunderwood Holdings, Inc., Brian Dunning, BrianDunning.com (collectively, the "KFC Defendants"); (2) Todd Dunning and Dunning Enterprise, Inc. (collectively, the "Todd Dunning Defendants"); and (3) Digital Point Solutions ("DPS") and Shawn Hogan (collectively, the "DPS Defendants").  The SAC alleges that the KFC Defendants and the Todd Dunning Defendants are interrelated entities, SAC ¶¶ 5-11, and where appropriate those parties will be referred to collectively as the "Non-DPS Defendants."

[3] Both of the Non-DPS Defendants seek dismissal of the SAC pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6).  In the alternative, the Todd Dunning Defendants request transfer of the instant action to the Central District of California.  The DPS Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) or to transfer under §1404(a).

has clicked on several different advertisements before engaging in a revenue action, the most recently deposited cookie (and its corresponding affiliate) will be credited for any revenue actions. *See id.* ¶ 22. Many users visit eBay's website without being referred by an affiliate, and Revenue Actions performed by such users do not result in a commission payment. *Id.*

To administer the AMP, eBay engaged Commission Junction ("CJ"), a subsidiary of ValueClick, Inc. SAC ¶ 20. The SAC alleges that at all relevant times the relationship between eBay and CJ was governed by a series of advertiser service agreements. *See id.* Pursuant to those agreements, CJ was responsible for "recruiting affiliates, tracking affiliate traffic, monitoring compliance by affiliates, preventing and detecting fraudulent activity, and paying affiliates [for credited Revenue Actions] using funds remitted by eBay." *Id.* eBay alleges that each group of Defendants engaged in "cookie stuffing" to manipulate the AMP, resulting in over-payment of advertising fees. SAC ¶ 24. While Defendants' precise method of deception is not alleged, eBay surmises that Defendants used software code to direct users' web browsers to eBay's website, without the users' knowledge or any affirmative action on the part of users. *Id.* ¶¶ 24-25. Each time a web browser was redirected eBay's website, eBay would deposit a cookie on that user's computer, credited to one or more of the Defendants even though the user had not been referred to eBay by means of a legitimate advertisement. *Id.* ¶¶ 25-27. As a result, fees for subsequent Revenue Actions by that user were paid to Defendants. *Id.* ¶ 27. eBay also alleges that Defendants delayed eBay's investigation by communicating with each other in furtherance of their alleged cookie-stuffing scheme, and that they employed various technological measures to avoid detection. *Id.* ¶¶ 27-31. In addition, Defendants allegedly denied any wrongdoing when questioned by eBay about apparent abnormalities in the commissions being paid to Defendants under the AMP. *Id.* ¶¶ 32, 60.

3

At some point in mid-2007, eBay and CJ uncovered Defendants' alleged scheme. *See* SAC ¶¶ 52-57.  On January 4, 2008, CJ sued the Non-DPS Defendants for breach of contract in the Orange Superior Court (the "CJ Action"). *See id.* ¶ 34.  The issues in the CJ Action essentially arose out of the same conduct alleged in the SAC, with CJ seeking the return of fees paid to several Defendants on the ground that such fees were improperly credited because of the alleged cookie-stuffing scheme. *Id.*  The CJ Action settled prior to the filing of the SAC. *See id.*

eBay commenced the instant action on August 25, 2008 and the First Amended Complaint ("FAC") was filed on October 7, 2008.  The Non-DPS Defendants moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue and in the alternative also sought dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The DPS Defendants also moved to dismiss the FAC for failure to state a claim.[4]  The Court granted the motion to dismiss for improper venue with leave to amend, and granted in part the motion by DPS Defendants to dismiss for failure to state a claim, again with leave to amend.  eBay filed the operative SAC on March 26, 2009.

## II.  DISCUSSION

A.  Improper Venue

A valid forum selection clause may provide the basis of a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 323-24 (9th Cir. 1996).  In connection with a Rule 12(b)(3) motion, the allegations in the complaint need not be accepted as true, and the Court may consider evidence outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).  While the

---

[4] DPS Defendants state that they did not move to dismiss the FAC for improper venue or for failure to state a claim based on the ground now raised in their instant motion because they were unaware of certain key documents during the previous round of motions.

4

plaintiff ultimately bears the burden of showing that venue is proper, *see Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979), "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy*, 362 F.3d at 1138.[5]

### 1. The AMP Agreements

In support of their motions to dismiss for improper venue, the Non-DPS Defendants have submitted unsigned copies of two AMP-related agreements, a Publisher's Service Agreement ("PSA") and a Terms and Conditions ("T&C") Agreement.[6]  It appears that the PSA governs the contractual relationship between CJ and individual advertising affiliates.  *See* Compendium Ex. 2.  The T&C Agreement apparently governs the relationship between eBay and the advertising affiliates.  *See id*. Ex. 3.  *See also* Kennedy Decl. Ex. 19, ¶ 5.8.6.  As an exhibit to its opposition to the instant motions to dismiss, eBay has submitted a copy of a Master Service Agreement ("MSA") between eBay and CJ, which governs CJ's obligations to eBay under the AMP.  *See* Kennedy Decl. Ex. 19.  The MSA references both the PSA and the T&C Agreement.  *Id.* ¶¶ 1.23, 3.1.  Accordingly, and for purposes of the resolving the instant motions, the Court will assume that the AMP is maintained via a triangular contractual relationship between eBay, CJ, and various advertising affiliates.

---

[5] Federal law applies to the interpretation of a forum selection clause.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  Contract interpretation under federal law is guided by "general principles for interpreting contracts."  *Id*. (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir.1999)).

[6] The T&C Agreement appears to be a "click-through" agreement, *see* Compendium Ex. 3, ¶ 19, while the copy of the PSA submitted as an exhibit contains a signature block.  *Id*. Ex. 2 at 6.

2.  Forum Selection Clause in PSA

The T&C Agreement between eBay and its advertising affiliates references the PSA explicitly, reciting in relevant part as follows:

> In consideration for Your participation in the Affiliate Program (the "Program") maintained by eBay Inc. ("eBay") through Commission Junction ("CJ"), You agree to comply with these Supplemental Terms and Conditions ("Terms and Conditions") in addition to the terms of the Commission Junction Publisher Service Agreement ("PSA").  If any of these Terms and Conditions conflict with those of the PSA, then these Terms and Conditions will control.  Capitalized terms not defined herein have the meanings set forth in the PSA.

Compendium Ex. 3 at 1.  This Court previously found that although eBay is not a signatory to the PSA, it may be a third-party beneficiary to that agreement.  *See* Order at 7, Feb. 24, 2009 ("the T&C Agreement, when read together with eBay's own allegations in the FAC with respect to the role of the PSA, indicates that eBay is a third-party beneficiary of the PSA.").  While the T&C Agreement is silent with respect to a mandatory forum for dispute resolution, the PSA does state that "[t]he exclusive forum for any actions related to this Agreement shall be in the state courts, and, to the extent that the federal courts have exclusive jurisdiction, in Los Angeles, California."  Compendium Ex. 2 at 5.[7]  The Court thus determined that although "eBay has met its burden of showing that venue would be proper in this district in the absence of an applicable forum selection clause, it has failed to present sufficient allegations as to why it is not bound by the forum selection clause contained in the PSA."  Order at 7, Feb. 24, 2009.  In granting leave to amend, the Court instructed that eBay's amended pleading should "explain how violation of the user agreement is unrelated to the alleged breach of the PSA or why the PSA should not be

---

[7]  The MSA contains a forum selection clause that does not conflict with the clause in the PSA.  *See* Kennedy Decl. Ex. 19, ¶ 12.1 ("Any legal suit, action, or proceeding arising out of or relating to this agreement will be commenced in a state or federal court in California…").

6

considered the primary and controlling agreement for all claims related to the PSA." *Id.*

### 3.  User Agreement

eBay contends that the SAC cures the inadequacies of its prior pleadings because the SAC alleges that eBay's claims arise from unauthorized access to its servers rather than a breach of either the PSA or the T&C Agreement.  The SAC alleges that any user who accesses eBay's website must comply with the terms of eBay's "User Agreement." *See* SAC ¶ 26.  The User Agreement governs the terms of use with respect to eBay's website, stating in relevant part:

> Your User Agreement
> The following describes the terms on which eBay offers you access
> to our services.
>
> Introduction
> Welcome to eBay.  By using the services on the eBay website
> (eBay.com and other related websites where this agreement
> appears) you are agreeing to the following terms…Before you
> become a member of eBay you must read and accept all of the
> terms and conditions in, and linked to, this User Agreement and the
> Privacy Policy…
>
> Using eBay
> While using eBay, you will not…
>
> > violate any laws, [or] third party rights…
>
> > distribute viruses or any other technologies that may harm
> > eBay, or the interests or property of eBay users…

Compendium Ex. 7 at 1.[8]  The User Agreement contains a forum selection clause that states "[y]ou agree that any claim or dispute you may have against eBay must be resolved by a court located in Santa Clara County, California, except as otherwise agreed by the parties." *Id* at 4.

---

[8] The parties dispute the actual language of the User Agreement in effect and allegedly entered into by certain Defendants, but that issue does not preclude resolution of the instant motions.

Case No. C 08-4052 JF (PVT)
ORDER DENYING MOTIONS TO DISMISS ETC.
(JFLC1)

In response the Court's earlier order, the SAC now contains the following allegations with respect to the User Agreement and Defendants' actions:

> [T]he software programs utilized by each [Defendant] caused the user's computer to access eBay's computers in an unauthorized way and/or to exceed the authorized access to eBay's computers. Because [Defendants] caused this access through and without the knowledge or active participation of those users, the access of any such user's computer to eBay's site is attributable to [Defendants]. The only authorization given to the Defendants to access eBay's site in any manner was by way of eBay's User Agreement.  The User Agreement was explicitly agreed to by the individual Defendants when they became registered eBay users on the following dates: Shawn Hogan on May 17, 1999; Brian Dunning on November 10, 2000; and Todd Dunning on May, 21, 2003.  The remaining named Defendants, Digital Point Solutions, Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc. and BrianDunning.com, were on constructive and/or actual notice that the User Agreement governed their access to eBay's website, based on the explicit agreement of their owners/principals to the terms of the User Agreement, as well as eBay's display on its website at all relevant times of the statement that use of the website constitutes acceptance of the User Agreement.  Defendants' access to eBay was unauthorized by, and violated, the terms of the User Agreement because it occurred solely to force the dropping of the eBay cookie and thereby wrongfully access eBay's computer servers.  Each of the causes of action set forth herein arises out of those violations of the User Agreement.

SAC ¶ 26.  While the parties dispute whether one or more Defendants actually entered into any User Agreement, that factual issue cannot be resolved on a motion to dismiss, and eBay has claimed that any access that exceeded the bounds of the User Agreement was unauthorized.  *See id.* ("The only authorization given to the Defendants to access eBay's site in any manner was by way of eBay's User Agreement.").  *See also Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780, 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) ("Access for purposes that explicitly are prohibited by the terms of use is clearly unauthorized.").

8

In addition, the Court need not resolve whether any of the Defendants in fact were parties to the User Agreement to find that the facts alleged in the SAC could support a cognizable CFAA claim.  Instead, and as the Court held previously with respect to Defendant DPS, unauthorized access to eBay's website for the purposes of corrupting data may constitute a CFAA violation, regardless of whether such actions also violated the User Agreement.  *See* Order at 9, Feb. 24, 2009.

### 4.  Applicability of Forum Selection Clause in PSA

In contrast to eBay's assertions as to the primacy of the User Agreement, the Non-DPS Defendants contend that all of the claims for relief set forth in the SAC arise out of the alleged abuse of the AMP program, and thus the PSA's forum selection clause applies because eBay is a third-party beneficiary to that agreement.  *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("it is well-settled contract law that the scope of a third-party beneficiary's rights is defined by the contract…a forum selection clause can restrict a third-party beneficiary to the designated forum.").  In addition, while eBay is not suing for breach of the PSA or the T&C Agreement as such, a forum selection clause nonetheless may apply to non-contract claims if resolution of those claims "relates to interpretation of the contract."  *Manetti-Farrow, Inc. v. Gucci Am.*, Inc., 858 F.2d 509, 514 (9th Cir. 1988).  Accordingly, the pertinent inquiry here is whether eBay's claims for relief can be "adjudicated without analyzing whether the parties were in compliance with the contract."  *Id. See also Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) ("pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."); *Multimin USA, Inc. v. Walco International, Inc.*, CV 06-0226, 2006 WL 1046964, at *7 (E.D. Cal. Apr. 11, 2006)

9

("Even if claims in an action do not allege breach of the contract containing the forum selection clause, the forum selection clause still applies if the claims asserted arise out of the contractual relation or implicate the contract's terms."). In other words, the question is whether eBay is seeking relief for violations of the User Agreement (or injuries caused by unauthorized access to eBay's website), or whether the SAC more properly is viewed as an end-around attempt to recover funds that should not have been paid out under the AMP program.

The SAC does recite allegations that sound in contract, including a quasi-contractual claim for unjust enrichment that seeks restitution. *See* SAC ¶¶ 82-86. A quasi-contract "is a noncontractual obligation that is treated procedurally as if it were a contract and is also referred to by some courts as unjust enrichment or restitution." Williston on Contracts § 1:6 (4th Ed. 2009). In addition, eBay's civil RICO, common-law fraud, § 502, and UCL claims refer to Defendants' scheme to obtain undeserved commission payments and allege injury based upon those improper payments. Accordingly, the resolution the non-CFAA claims as currently pled, including a determination as to which payments were proper as opposed to payments for fraudulently obtained Revenue Actions, would appear to require at least some interpretation of the AMP agreements. Indeed, certain allegations in the SAC could be read as referencing implicitly breach of the PSA and T&C Agreements. *See id.* ¶ 38 ("No agreement entered into by any Defendant in connection with eBay's Affiliate Marketing Program, including but not limited to any Publisher Service Agreement that may have been entered into between CJ and one or more of Defendants and/or any Terms and Conditions of the Affiliate Marketing Program agreed to by one or more of Defendants [allowed unauthorized access to eBay's website]"); ¶ 27 ("once the cookie was stuffed on the user's computer by one or more of the Defendants, any future Revenue Actions initiated by that user when the user later visited eBay intentionally, and not as a result of

10

any advertisement placed by Defendants, appeared to be eligible for commissions payable to one of the Defendants (provided those actions took place within the prescribed periods of time). Hence [Defendants] would receive payment for actions by users who had not been referred to eBay by Defendants' advertisements, thereby injuring eBay."); ¶ 83 ("Through their cookie stuffing schemes, as described above, [Defendants] received a benefit from eBay, in the form of artificially and fraudulently inflated commissions paid to [Defendants] (via CJ) for Revenue Actions that were not associated with any referral from those Defendants.").

eBay nonetheless argues that it is not bound by the PSA's forum selection clause because it is not suing to enforce the terms of the agreements.  eBay cites *Comer v. Micor, Inc.*, 278 F. Supp. 2d 1030 (N.D. Cal. 2003), in which the district court declined to enforce an arbitration clause against a plaintiff, a purported third-party beneficiary under the relevant agreements, because the plaintiff was not suing for breach of the agreements.  *Id.* at 1040 ("Plaintiff himself is not suing for breach of contract; that is, he is not suing to enforce the terms of the Agreements, but instead to enforce the Plans' rights vis-à-vis their fiduciaries under ERISA.").  The *Comer* court concluded that the plaintiff was not bound by the forum selection clause because "a third-party *beneficiary* is not a third-party *obligor*."  *Id.* at 1041 (emphasis in original) (citing *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985)).  In the instant case, however, certain claims clearly are founded upon rights and obligations created by the AMP agreements, namely including the right to commissions and referral fees.  In addition, a formal third-party beneficiary relationship is not required to enforce the forum selection clause against eBay. Instead, the test for non-signatories to an agreement is broader:  "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."  *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)

11

(quoting *Manetti-Farrow*, 858 F.2d at 514 n.5).  As discussed previously, it is apparent that eBay

exercises significant control over all aspects of the AMP and its underlying agreements.

Accordingly, the Court concludes that any claims relating to interpretation of the PSA ordinarily

would be subject to the forum selection clause.

At the same time, however, as discussed above and apart from any alleged violation of

the PSA, eBay has presented a cognizable CFAA claim that does not require interpretation of the

PSA.  Defendants' alleged scheme had the effect of corrupting data relating to user visits, and as

a result the overall number of site visits may have been grossly inflated.  The SAC alleges that

certain users who were driven to eBay's website and received a cookie never engaged in any

subsequent revenue action that would result in a commission payment to defendants.  *See* SAC ¶

39 ("Defendants' access caused harm to eBay's computers and caused damage and loss to eBay

within the meaning of 18 U.S.C. § 1030, regardless of whether any commission was later paid to

Defendants for any particular act of cookie stuffing.").[9]  A determination as to whether data was

corrupted does not require interpretation of the PSA, nor is such an interpretation necessary in

order for eBay to obtain certain remedies available under the CFAA.  *See* 18 U.S.C. § 1030(e)(8)

("damage" under CFAA "means any impairment to the integrity or availability of data, a

program, a system, or information"); § 1030(e)(11) ("loss" under CFAA includes "any

reasonable cost to any victim, including the cost of responding to an offense, conducting a

damage assessment, and restoring the data, program, system, or information to its condition prior

to the offense, and any revenue lost, cost incurred, or other consequential damages incurred

because of interruption of service"); § 1030(g) (injunctive relief available).

---

[9] *See also* SAC ¶ 43 ("[Defendants'] actions, whether or not they resulted in the payment
of any commissions to them, constitute violations of the Computer Fraud and Abuse Act, 18
U.S.C. § 1030, including but not limited to §§ 1030(a)(4), 1030(a)(5)(B) and 1030(a)(5)(C).").

12

eBay also contends that the Non-DPS Defendants cannot invoke the PSA to dismiss or transfer the instant action because there is a significant factual dispute with respect to whether Defendants in fact are parties to the PSA.  In response to eBay's initial discovery requests, Defendants have denied any knowledge or possession of the PSA or other AMP agreements.  Defendants contend that they may deny being parties to the PSA and at the same time argue that the forum selection clause in the PSA applies under what they refer to as the "separability doctrine."  Defendants rely upon *Intercall Telecommunications, Inc. v. Instant Impact, Inc.*, 376 F. Supp. 2d 155 (D.P.R. 2005), which held that "Courts must distinguish between challenges to the validity of the underlying contract on the one hand, and to the validity of the forum selection clause in particular, on the other.  Under the purview of this separability doctrine, a forum selection clause is deemed to be separate from, and independent of, the contract containing it." *Id*. at 160.  However, while this rule appears sound, it is not controlling here.  In *Intercall*, the issue was whether a forum selection clause could be enforced despite a potential finding that the contract itself was invalid due to fraud.  *See id.* at 159.  In contrast, Defendants' response to eBay's initial discovery requests either has been to deny being a party to the PSA, *see* DPS Defendants' Reply Br. at 6, or to deny possessing the PSA, *see* KFC Defendants' Reply Br. at 8; Todd Dunning Defendants' Reply Br. at 3 n.6.[10]

---

[10] In addition, during the CJ Action the Non-DPS Defendants submitted filed a "Joint Trial Brief" that stated in relevant part:

> No contract between CJI and Kessler's was produced.  CJI has never produced during pretrial discovery a copy of a contract that Kessler's "accepted" for participation in CJI's affiliate marketing program.  CJI attached to its Second Amended Complaint a copy of a Publisher Service Agreement ("PSA") dated in June 2005, but this date is several months after CJI's own records show, and the Second Amended Complaint claims, that Kessler joined the program.  CJI has not provided evidence of the applicable PSA, or Kessler's "acceptance" in April 2005, and therefore CJI cannot

13

In light of the factually inconsistent positions taken by the parties as to the authenticity of the PSA, resolution of the motion to dismiss for improper venue is premature. *See Murphy*, 362 F.3d at 1139 ("at least until facts are resolved, in many cases the non-moving party will survive the Rule 12(b)(3) motion."). Presumably, the applicability of the PSA and its forum selection clause will be revealed through additional discovery, especially discovery obtained from nonparty CJ. Alternatively, affidavits submitted by either party, either affirming or denying the existence of the PSA, may be sufficient to resolve the factual dispute.[11]   *See id.* at 1138-39. Accordingly, the motion by the Non-DPS Defendants to dismiss for improper venue will be denied, but the denial is without prejudice to a renewed motion once the record is developed more fully. *See id.* ("district court may deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the record eliminates any genuine factual issue."). *See also Long v. Postorivo*, C 07-01547, 2007 WL 2990457, at *2 (N.D. Cal. Oct. 11, 2007) (denying

---

> meet its evidentiary burden of proving the terms of a binding contract and CJI cannot prove the terms allegedly breached by Kessler's.

Kennedy Decl. Ex. 1 at 3. However, these representations are not necessarily binding here, as they relate to substantive defenses that were to be raised at trial in the CJ Action.

[11] The SAC, perhaps intentionally, does not provide specific details with respect to the content of the agreements governing the AMP. *See* SAC ¶ 20 ("The relationship between eBay and CJ was governed at all relevant times by various Advertiser Service Agreements."). Defendants further argue that eBay *itself* has not—and cannot—disclaim the existence of the PSA because the Defendants in fact *were* parties to the PSA. eBay's conclusory allegations that the User Agreement is the only agreement at issue may be disregarded under the Rule 12(b)(3) standard. *See Argueta*, 87 F.3d at 324 ("Under the Supreme Court's standard for resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis.").

14

motion to dismiss for improper venue without prejudice and with right to renew motion upon additional evidence).[12]

B.  Dismissal for Failure to State a Claim

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "[d]ismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1990). Exceptions to this rule include material submitted with the complaint and documents whose "'authenticity…is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). *See also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

---

[12] Denial without prejudice also is warranted because there is evidence that Defendants were participants in the AMP program (and thus signatories to the PSA) in light of the language of the MSA as well as the eBay's tracking of Defendants' actions through their "PID" numbers. *See* SAC ¶ 56.  "PID" is not defined in the SAC but may refer to a "Publisher ID," thus indicating that Defendants were "Publishers," *i.e.*, advertising affiliates and participants in the AMP.

15

motion to dismiss.").  A court also may take judicial notice of "matters of public record."  *Lee*,

250 F.3d at 689 (citation omitted).

1.  Statute of Limitations Clause in PSA

All Defendants contend that eBay's revised allegations reveal that the PSA was

terminated in June 2007, more than one year prior to the filing of the instant action.  Section 7(e)

of the PSA states:

> ANY OBLIGATION OR LIABILITY OF CJ UNDER THIS
> AGREEMENT SHALL BE LIMITED TO THE TOTAL OF
> YOUR PAYOUTS PAID TO YOU BY CJ UNDER THIS
> AGREEMENT DURING THE YEAR PRECEDING THE
> CLAIM.  NO ACTION, SUIT OR PROCEEDING SHALL BE
> BROUGHT AGAINST THE OTHER PARTY TO THIS
> AGREEMENT MORE THAN ONE YEAR AFTER THE
> TERMINATION OF THIS AGREEMENT.  YOU AGREE
> THAT CJ SHALL NOT BE LIABLE TO YOU, OR ANY
> THIRD PARTY (INCLUDING BUT NOT LIMITED TO A
> CLAIM BY ANOTHER PUBLISHER OR AN ADVERTISER
> OF THE NETWORK SERVICE), FOR ANY
> CONSEQUENTIAL, EXEMPLARY, SPECIAL,
> INCIDENTAL, OR PUNITIVE DAMAGES, INCLUDING,
> BUT NOT LIMITED TO, LOSS OF GOODWILL, LOST
> PROFITS, BUSINESS INTERRUPTION, LOSS OF
> PROGRAMS OR OTHER DATA, EVEN IF ADVISED OF
> THE POSSIBILITY OF SUCH DAMAGES OR CLAIM.

Compendium Ex. 2 at 4.  Defendants point out that the SAC repeatedly alleges that the cookie

stuffing continued from 2004 through at least June 2007, and that by June 2007 eBay had

gathered sufficient evidence to determine that Defendants had misled eBay.  *See* SAC ¶¶ 57-58.

The Todd Dunning Defendants also have submitted a purported termination letter from CJ, dated

June 27, 2007, that stated in relevant part:  "You are removed from the CJ Network and your

earnings have been forfeited.  You are not eligible to rejoin the CJ Network and any attempt to

do so shall be rejected."  Foreman Supp. Decl. Ex. 3.  However, the termination language of the

PSA creates a scenario in which actual termination might be a question of fact, as an affiliate's

16

account "may be deactivated during investigation of breach of this Agreement." Foreman Decl. Ex. 1 at 3. eBay also argues that dismissal would be premature because the authenticity of the PSA is in question.[13] Because factual issues exist with respect to when the Defendants were terminated from the AMP, as well as whether Defendants were in fact parties to the PSA, the limitations clause does not bar eBay's claim at this stage of the proceedings.[14]

### 2. RICO Claim

The Todd Dunning Defendants seek dismissal of eBay's RICO claim on the ground that the statute of limitations has expired. A civil RICO claim must be brought within four years of when the plaintiff discovers the injury. *See Rotella v. Wood*, 528 U.S. 549, 552 (2000). In the Ninth Circuit, a cause of action begins to accrue once a plaintiff "has reason to discover the cause of action when he has reason at least to *suspect* a factual basis for its elements." *Soliman v. Philip Morris Inc.*, 311 F.3d 966 (9th Cir. 2002) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999)). The SAC alleges that the cookie stuffing scheme began in 2004, and the Todd

---

[13] eBay contends that Fed. R. Civ. P. 12(g) bars Defendants from presenting any limitations arguments in the instant motions. Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." However, "Under Rule 12(h), defenses for failure to state a claim may be presented at any time up to and including trial, and under Rule 12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss." *In re Harmonic, Inc., Sec. Litig.*, No. C 00-2287, 2006 WL 3591148, at *12 (N.D. Cal. Dec. 11, 2006) (citing Fed. R. Civ. P. 12(g), (h)). In addition, the SAC contains new allegations with respect to when eBay may have discovered the cookie stuffing scheme.

[14] Even if the above-quoted language is true and correct, it does not preclude eBay from bringing a CFAA claim unrelated to the PSA. In addition, the relevant language does not appear to bind third parties: "NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST *THE OTHER PARTY TO THIS AGREEMENT* MORE THAN ONE YEAR AFTER THE TERMINATION OF THIS AGREEMENT." (emphasis added). This specific language contrasts the broader language found in the forum selection clause. The Court also is not convinced that the T&C Agreement incorporates all of the obligations of the PSA, so that eBay stands in the shoes of CJ.

17

Dunning Defendants argue that eBay should have been tipped off as early as April 2004 because of "excessive" commission payments. However, the SAC alleges that all Defendants actively concealed the scheme, employing technological measures to avoid detection as well as providing misinformation to eBay when questioned about the commission payments. While eBay eventually was able to discern that the scheme may have reached back to 2004, the SAC alleges that this discovery occurred more recently, well within the statute of limitations period, and through a retrospective analysis of data. *See* SAC ¶ 57. At best, there is a question of fact with respect to when eBay had reason to discover the scheme. Accordingly, the motion to dismiss the RICO claim will be denied.

### 3. Effect of Settlement in CJ Action

The Non-DPS Defendants contend that the settlement in the CJ Action released all claims against them relating to their alleged breach of the PSA. The settlement agreement stated in relevant part that CJ, "together with their principals, agents, attorneys, representatives, subsidiaries, parents, assigns, successors, and predecessors…fully and forever release[] [the Non-DPS Defendants]" from all claims. Compendium Ex. 10 at 2. The Non-DPS Defendants argue that eBay is a principal as contemplated by the settlement, and thus is precluded from maintaining the instant action.

Contrary to Defendants' assertion that there is "no question" that CJ acted as eBay's agent when it executed the settlement agreement, the limited record before the Court instead indicates that the CJ Action did not involve eBay at all. Irrespective of whether the breach of contract claims at issue in the CJ Action are related to the claims asserted in the instant case, the fact that eBay had superior bargaining power in connection with the AMP agreements does not mean that a settlement entered into by a separate and independent corporate entity is binding

18

upon eBay.  The Non-DPS Defendants have presented no factual proof that eBay "controlled" CJ as an agent in the traditional sense, and the MSA expressly disclaims any principal-agent relationship between eBay and CJ.  *See* Kennedy Decl. Ex. 19, ¶ 12.3.  Defendants have the burden of proving the existence of any agency relationship, *see Burbank v. Nat'l Cas. Co.*, 43 Cal. App. 2d 773, 781 (1941), and that burden has not been met here.[15]

C.  Motion to Transfer

In the Ninth Circuit, a transfer pursuant to § 1404(a) lies within the discretion of the district court and depends on the facts of each particular case.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 843 (9th Cir. 1986).  Because the Court has declined to enforce the forum selection clause at least for the time being, eBay's choice of forum (and the fact that the CFAA-related harm occurred in this district) outweigh any considerations favoring transfer.[16]

**III.  ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that the motions by the Non-DPS Defendants to dismiss for improper venue are DENIED without prejudice.  The motions to

---

[15] The Non-DPS Defendants may raise this defense in the future if additional discovery reveals facts to the contrary.

[16] Additional factors that the Court must consider include:  (1) the location where the relevant agreements were negotiated and executed; (2) the forum that is most familiar with the governing law; (3) the parties' respective contacts with the forum; (4) the contacts relating to the plaintiff's cause of action in the chosen forum; (5) the differences in the costs of litigation in the two forums; (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (7) the ease of access to sources of proof; and (8) the relevant public policy of the forum state, if any.  *See Jones*, 211 F.3d at 498-99.

19

Case No. C 08-4052 JF (PVT)
ORDER DENYING MOTIONS TO DISMISS ETC.
(JFLC1)

dismiss for failure to state a claim upon which relief may be granted and the motions to transfer are

DENIED.


DATED: August 17, 2009


_____
JEREMY FOGEL
United States District Judge

This Order was served on the following persons:

Colleen M. Kennedy      ckennedy@omm.com, arofkahr@omm.com

David R. Eberhart      deberhart@omm.com, modonnell@omm.com, smeblin@omm.com

Leo J. Presiado      lpresiado@rusmiliband.com, rradford@rusmiliband.com

Patrick Kelly McClellan      pkellymc@pacbell.net

Seyamack Kouretchian      seyamack@coastlawgroup.com, rcampbell@coastlawgroup.com,

sbrill@coastlawgroup.com

Sharon M. Bunzel      sbunzel@omm.com, rgonzalez@omm.com

Stewart H. Foreman      foreman@freelandlaw.com, johnson@freelandlaw.com

Case No. C 08-4052 JF (PVT)
ORDER DENYING MOTIONS TO DISMISS ETC.
(JFLC1)