1  DAVID R. EBERHART (S.B. #195474)
    deberhart@omm.com
2  SHARON M. BUNZEL (S.B. #181609)
    sbunzel@omm.com
3  COLLEEN M. KENNEDY (S.B. #227107)
    ckennedy@omm.com
4  O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
5  San Francisco, CA  94111
    Telephone:   (415) 984-8700
6  Facsimile:   (415) 984-8701

7  Attorneys for Plaintiff eBay Inc.

8

9                 **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN JOSE DIVISION**

12  EBAY INC.,                     Case No.  C 08-04052 JF PVT

13          Plaintiff,        **EBAY INC.'S NOTICE OF MOTION**
                                   **AND MOTION TO COMPEL**
14      v.                     **RESPONSES TO REQUESTS FOR**
                                     **PRODUCTION,**
15  DIGITAL POINT SOLUTIONS, INC.,    **INTERROGATORIES AND**
    SHAWN HOGAN, KESSLER'S        **REQUESTS FOR ADMISSION**
16  FLYING CIRCUS, THUNDERWOOD  **FROM DIGITAL POINT**
    HOLDINGS, INC., TODD DUNNING,    **SOLUTIONS, INC. AND SHAWN**
17  DUNNING ENTERPRISE, INC., BRIAN  **HOGAN; MEMORANDUM OF**
    DUNNING, BRIANDUNNING.COM,    **POINTS AND AUTHORITIES IN**
18  and DOES 1-20,                 **SUPPORT THEREOF**

19          Defendants.       Hearing Date: November 3, 2009
20                          Time:         10:00 a.m.
                          Judge:       Hon. Patricia V. Trumbull
21

22

23

24

25

26

27

28

Dockets.Justia.com

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on November 3, 2009, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st St., San Jose, California, 95113, eBay Inc. will and hereby does move for an order that:

1. Defendant Shawn Hogan, notwithstanding his continuing invocation of his Fifth Amendment right, produce all documents responsive to eBay's First and Second Set of Requests for Production that were previously obtained by the FBI, including but not limited to any such documents that may be within his control at third party NetHere, Inc.;

2. Defendant Digital Point Solutions, Inc. conduct a diligent search for and produce all documents responsive to eBay's First and Second Set of Requests for Production, including by exercising any and all rights that it may have to obtain documents from third party NetHere, Inc.; and

3. Defendant Digital Point Solutions, Inc.'s objections to eBay's Interrogatories and certain of eBay's Requests for Admission and Requests for Production on the grounds that the definition of "DPS" is overbroad, unduly burdensome and oppressive be stricken and Digital Point Solutions, Inc. provide supplemental responses to those requests that include information regarding "DPS" as defined by eBay.

eBay's Motion is made pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), and seeks an order compelling substantive responses to eBay's Requests for Production, Interrogatories and Requests for Admission as required by Federal Rules of Civil Procedure 34(b)(2), 33(b) and 36(a), respectively.  *See* Declaration of Colleen M. Kennedy in Support of eBay Inc.'s Motion to Compel ("Kennedy Decl.").[1]

---

[1] A comprehensive list of eBay's discovery requests addressed in this Motion and Defendants' responses to those requests is set forth in an exhibit to the attached Kennedy Declaration.  *See* Kennedy Decl., Ex. 1.

EBAY'S MOTION TO COMPEL
CASE NO. C 08-4052 JF PVT

1         The motion is based on this notice, the attached memorandum of points and

2    authorities, all supporting declarations, the pleadings and other records on file with the

3    Court, the oral argument of counsel, all relevant matters judicially noticeable, and such

4    further evidence and arguments as the Court may consider.

5

6    DATED:  September 29, 2009         DAVID R. EBERHART
                                   SHARON M. BUNZEL
                                   COLLEEN M. KENNEDY
7                                  O'MELVENY & MYERS LLP

8                                  By: /s/ David R. Eberhart
                                            DAVID R. EBERHART
9
                                   Attorneys for Plaintiff eBAY INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3      I.      INTRODUCTION ............................................................................................ 1

4      II.     SUMMARY OF RELEVANT FACTS................................................................ 2

       III.    ARGUMENT .................................................................................................... 2

5              A.      Mr. Hogan Must Produce The Materials He Previously Provided To

6                      The FBI................................................................................................... 2

               B.      DPS, Inc. Has Access To Responsive Documents That Must Be

7                      Produced ................................................................................................ 5

8              C.      DPS, Inc. Cannot Limit Its Discovery Responses Based On Mr.

                       Hogan's Fifth Amendment Privilege ..................................................... 8

9                      1.      Requests For Admission ................................................................ 10

10                     2.      Requests For Production ............................................................... 11

                       3.      Interrogatories .............................................................................. 11

11     IV.     CONCLUSION ............................................................................................... 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Fed. Sav. & Loan Ins. Corp. v. Rodrigues*,
   717 F. Supp. 1424 (N.D. Cal. 1998) ..................................................................... 3

*Fisher v. United States*,
   425 U.S. 391 (1976) ...................................................................................... 3, 4

*Henry v. Sneiders*,
   490 F.2d 315 (9th Cir. 1974) ............................................................................. 4

*In re Grand Jury Proceedings*,
   759 F.2d 1418 (9th Cir. 1985) ........................................................................... 3

*In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*,
   1 F.3d 87 (2d Cir. 1993).................................................................................. 3, 4

*Martin-Trigona v. Gouletas*,
   634 F.2d 354 (7th Cir. 1980) ............................................................................. 5

*Thomas v. Tyler*,
   841 F. Supp. 1119 (D. Kan. 1993) ..................................................................... 4

*United States v. Clark*,
   847 F.2d 1467 (10th Cir. 1988) ......................................................................... 4

*United States v. Edgerton*,
   734 F.2d 913 (2d Cir. 1984)............................................................................... 5

*United States v. Harrington*,
   923 F.2d 1371 (9th Cir. 1991) ........................................................................... 4

*United States v. Rue*,
   819 F.2d 1488 (8th Cir. 1987) ........................................................................... 4

1    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2    **I.    <u>INTRODUCTION</u>**

3        eBay seeks an order compelling Digital Point Solutions, Inc. ("DPS, Inc.") and its

4    owner Shawn Hogan (collectively, "Defendants") to provide documents and proper

5    written discovery responses.  Defendants have improperly refused to produce documents

6    to eBay in two different ways.  ***First***, Shawn Hogan has improperly refused to produce

7    materials that were previously obtained from him by the government.  Although an act of

8    production may be incriminating under some circumstances, it is not incriminating under

9    the facts presented here: the existence and location of the materials is known to the

10   government, and the government can independently authenticate those materials.

11   Consequently, Mr. Hogan's Fifth Amendment rights cannot preclude production.

12       ***Second***, DPS, Inc. has refused to produce responsive documents by claiming it has

13   none or virtually none within its possession, custody or control.  This cannot be true.

14   DPS, Inc. was incorporated during the period of the wrongdoing and, during that same

15   period, took ownership of valuable servers from Mr. Hogan that were likely used in the

16   fraud.  Further, third party NetHere—a company that has provided co-location services for

17   servers owned by Defendants from 1996 to the present—possesses multiple servers that

18   are within the control of one or more of the Defendants.

19       In addition, DPS, Inc. has refused to provide the full extent of the discovery sought

20   by eBay based on the contention that the broad definition of "DPS" in eBay's requests

21   implicates Shawn Hogan's Fifth Amendment rights against self-incrimination.  But DPS,

22   Inc. has fundamentally confused the scope of the requests with the party responding to the

23   requests.  eBay is fully entitled to obtain information regarding, among others, Mr. Hogan

24   from DPS, Inc., and DPS, Inc. may not hide behind Mr. Hogan's Fifth Amendment

25   privilege to avoid responding to such discovery.

26       Defendants have improperly withheld all meaningful discovery from eBay and the

27   Court should compel compliance with eBay's discovery requests.

28

1

## II.    SUMMARY OF RELEVANT FACTS

Defendants are an individual and a corporation that misused eBay's computer systems and defrauded eBay through its affiliate marketing program.  Defendants' "cookie stuffing" scheme was identical in all relevant respects to the scheme described in detail in eBay's motion to compel discovery responses from the remaining defendants (filed on September 22, 2009), and that description is incorporated herein by reference.

eBay has diligently attempted to resolve its discovery disputes with Defendants without the need for court intervention, through both correspondence and two telephonic meet and confer discussions on August 27 and September 18, 2009.  Kennedy Decl., ¶ 2. Through these efforts, eBay has obtained (i) an acknowledgment from DPS, Inc. that it does not possess a Fifth Amendment privilege to avoid responding to discovery and (ii) certain supplemental responses from DPS, Inc. to eBay's interrogatories, requests for admission and first set of requests for production.  *See* Kennedy Decl., Exs. 2-4.  But the supplemental responses not only fail to resolve significant defects in Defendants' discovery positions, those responses provide compelling evidence of the remaining defects.

## III.    ARGUMENT

### A.    Mr. Hogan Must Produce The Materials He Previously Provided To The FBI

Shawn Hogan cannot legitimately invoke the Fifth Amendment privilege to withhold from production to eBay any documents already in the hands of the government.[2]  It is undisputed that Mr. Hogan possesses responsive materials that were provided to the federal government in the course of its criminal investigation of Defendants' cookie stuffing schemes.  *See, e.g.*, Kennedy Decl., Ex. 5, at 2 ("The Federal Bureau of Investigation has seized documents and materials potentially related to the present action.  As of the date of these responses, the FBI has not returned all of the seized

---

[2] The 32 specific document requests to which eBay moves to compel responses in this section are set forth in the Kennedy Declaration, at ¶ 4.

EBAY'S MOTION TO COMPEL
CASE NO. C 08-4052 JF PVT

1   materials to Defendant, some of which may be responsive to Plaintiff's requests

2   hereunder.").  Although some responsive material may still be in the government's hands,

3   Defendants concede that they currently possess the vast majority of the materials

4   previously obtained by the government, with the possible exception of some physical

5   documents.  Kennedy Decl., Ex. 6, at 13 ("[I]t appears that all computer-related materials

6   have been returned by the FBI.  However, the scope of the seizure is not entirely clear and

7   it appears that some physical documents are still in the possession of the FBI and/or the

8   U.S. Attorney's Office.").

9        The privilege against self-incrimination applies only to testimony; therefore, the

10  contents of voluntarily prepared documents, whether business or personal, are not

11  generally protected by the Fifth Amendment.  *In re Grand Jury Proceedings*, 759 F.2d

12  1418, 1419 (9th Cir. 1985).  Although in limited instances the act of producing voluntarily

13  created documents may implicate the Fifth Amendment, *id.* at 1420, such circumstances

14  are not present here.  This "act of production" privilege only applies if the act of

15  producing the documents is compelled, testimonial and incriminating.  *Fed. Sav. & Loan*

16  *Ins. Corp. v. Rodrigues*, 717 F. Supp. 1424, 1425 (N.D. Cal. 1998).  The production of

17  responsive documents to eBay would not be "testimonial and incriminating."

18       To determine whether the act of production is testimonial and incriminating,

19  federal courts generally consider two factors.  ***First***, they look to whether "the existence

20  and location of the [requested] papers are unknown to the government."  *In re Grand Jury*

21  *Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993).  If "the

22  existence and location of the papers are a foregone conclusion" based on information

23  already known to the government, then the act of producing the documents does not

24  implicate the privilege.  *Fisher v. United States*, 425 U.S. 391, 411 (1976) (holding that

25  the Fifth Amendment is not applicable to the production of documents where the

26  production "adds little or nothing to the sum total of the Government's information").

27       Because Mr. Hogan concedes that the government already possesses the documents

28  here at issue, the communicative aspects of the production regarding the "existence and

location" of the documents cannot be further incriminating to him.  *See In re Grand Jury Subpoena Duces Tecum*, 1 F.3d at 93 (where the government already has a copy of the requested document, the subsequent production of the original document "adds little or nothing to the sum total of the Government's information"); *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974) ("[E]ven if the records were incriminating, their disclosure in the civil case would not have tended to incriminate the defendant.  Any incriminating evidence was already in the hands of the prosecuting authorities.").  Because a document production in this action would add little, if anything, to the government's quantum of knowledge, its testimonial value is therefore negligible.  *Fisher*, 425 U.S. at 411; *see also United States v. Clark*, 847 F.2d 1467, 1472-73 (10th Cir. 1988) (declining to apply the act of production privilege where the government already has extensive knowledge and information regarding the requested documents).

    *Second*, the act of producing documents is not incriminating when the government "can independently authenticate the [documents] without using [the party's] act of producing the [documents] as evidence of their authenticity."  *United States v. Rue*, 819 F.2d 1488, 1494 (8th Cir. 1987).  If the government can do so, then authentication of the documents is a foregone conclusion that does not sufficiently implicate the right against self-incrimination.  *Id.*; *see also In re Grand Jury Subpoena Duces Tecum*, 1 F.3d at 93 (where the government already possesses the document and can provide alternative means of authentication, no Fifth Amendment privilege applies to a subsequent production).  Here, the government has an independent means of authentication: documents obtained from Mr. Hogan may be authenticated by testimony that the documents are in "substantially the same condition" as they were when originally obtained.  *See United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991).  Therefore, the authentication of the documents sought by eBay is a "foregone conclusion," and the act of production is not incriminating.  *See Thomas v. Tyler*, 841 F. Supp. 1119, 1131 (D. Kan. 1993) (ordering defendant to produce all documents that have already been delivered to a third party because the third party can be relied upon by the government to show their

existence, possession and authenticity).

Mr. Hogan has suggested that the allegedly involuntary nature of the "seizure" of his documents requires the application of the act of production doctrine. *See* Kennedy Decl., Ex. 7. But he has not identified any case holding that the applicability of the act of production doctrine turns on voluntariness of the prior production. Nor has Mr. Hogan provided proof that the seizure was, in fact, involuntary—a question that simply cannot be assumed. *See United States v. Edgerton*, 734 F.2d 913, 919 (2d Cir. 1984) (mere assertion of privilege against self-incrimination is not sufficient to establish the hazard of incrimination and thus warrant the exercise of a privilege). The law does not require that the Court take Mr. Hogan's word that the Fifth Amendment is applicable; the law requires him to prove that providing the discovery would tend to incriminate him. *See Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980) (a witness's "say-so does not of itself establish the hazard of incrimination," rather, the witness must "tender some credible reason why a response would pose a real danger of incrimination"). Mr. Hogan should therefore be compelled to produce all documents in his possession, custody or control that have previously been obtained by the FBI.[3]

### B.   DPS, Inc. Has Access To Responsive Documents That Must Be Produced

DPS, Inc. contends that its purportedly "late" incorporation—on May 14, 2007— means that it "does not have any responsive documents or information within its possession, custody or control because it never conducted business with [eBay] and was never involved in [eBay]'s affiliate marketing program." Kennedy Decl., Ex. 7. DPS, Inc. further claims that any interaction with eBay was undertaken by Mr. Hogan and/or a sole proprietorship called "Digital Point Solutions" that existed prior to DPS, Inc.'s formation. Kennedy Decl. ¶ 3, Ex. 7. Because DPS, Inc.'s claim is untenable in at least

---

[3] To the extent any documents previously obtained by the FBI are located on servers stored at third party NetHere, Inc.—which are discussed in detail below—Mr. Hogan should be ordered to exercise any control he may have over those documents and produce them as well.

two ways, DPS Inc. should be ordered to produce the documents in its possession, custody, or control.[4]

First, the evidence strongly suggests that DPS, Inc. participated in the fraud against eBay's affiliate marketing program, even if only for a month.  It is undisputed that DPS, Inc. existed from at least May 14, 2007 forward.  *See* Kennedy Decl., Ex. 4, at DPS 000002-3.  And eBay's Second Amended Complaint ("SAC") alleges that DPS, Inc.'s and Mr. Hogan's cookie stuffing scheme persisted through June 18, 2007.  (*See* SAC ¶¶ 40, 48, 57.)  Defendants concede this timeline (although they contest the substance of their behavior): in motion practice, Defendants claimed that DPS, Inc. existed "from mid-May to [at least] June 2007," Kennedy Decl., Ex. 8, at 2-3, and that their participation in eBay's affiliate marketing program "terminated in June of 2007."  Kennedy Decl., Ex. 9, at 11.  Defendants' statements in their motion to dismiss the SAC also impliedly concede both DPS, Inc.'s participation in the affiliate marketing program and DPS, Inc.'s ownership of the servers used in the fraud.  Defendants stated, "Moreover, ***Defendants' membership*** in the affiliate marketing program terminated in June of 2007, when Plaintiff 'verif[ied]' the existence of the purported scheme, ceased authorizing payouts for the alleged unearned commissions (SAC ¶¶ 34, 52-56), and the FBI seized ***Defendants' computers***."  *Id.*

Documents produced last week by DPS, Inc., moreover, reveal that Mr. Hogan sold computer servers worth $108,000 to DPS, Inc. on May 19, 2007—only five days after its incorporation—in exchange for all of DPS, Inc.'s issued stock.  Kennedy Decl., Ex. 4, at DPS 000030, 000036, 000040.  It strains credulity that Mr. Hogan would have chosen to incorporate his "Digital Point Solutions" business using the same name, sold his valuable servers to that corporation, and thereafter completely insulated that corporation from any involvement in his (fraudulently) lucrative affiliate relationship with eBay.

---

[4] The 64 specific document requests to which eBay moves to compel responses in this section are set forth in the Kennedy Declaration, at ¶ 5.  DPS, Inc. has produced 41 pages of documents in connection with its supplemental responses to eBay's first set of requests for production.

1        Second, it is clear that, whatever it possesses, DPS, Inc. has failed to conduct a

2   diligent search for responsive documents during the eight months that eBay's document

3   requests have been outstanding.  DPS, Inc.'s document production on September 23, 2009

4   was the first time that eBay learned of DPS, Inc.'s ownership of the servers obtained from

5   Mr. Hogan in 2007.  But DPS, Inc. has certainly known of those servers since 2007; yet,

6   when eBay inquired on September 24, 2009 whether those servers contained any

7   responsive material, counsel for DPS, Inc. responded: "It is my understanding that the

8   servers at issue have not been used, remain idle and do not contain any responsive

9   information.  However, I will confer with Mr. Hogan upon his return [from an out-of-

10  town engagement] and will respond to your inquiry at that time."  Kennedy Decl., Ex. 10.

11  DPS, Inc. has long had a duty to search these servers, especially given that they were

12  transferred from Mr. Hogan during the period of the fraud.  It is, moreover, simply not

13  credible that servers transferred at a valuation of $108,000 were never used.

14       Aside from documents currently in DPS, Inc.'s direct possession, it appears that

15  DPS, Inc. has access to and control over a substantial collection of records stored at third

16  party NetHere—a company that provides co-location services for servers owned by

17  Defendants.  eBay subpoenaed NetHere in early June 2009.  *See* Kennedy Decl., Ex. 11.

18  NetHere has stated that, although it provides services to Defendants, it has no access to

19  the documents sought by eBay and Defendants have exclusive access to and control over

20  their servers and the data on those servers stored at NetHere.  Kennedy Decl., Exs. 12-13.

21  NetHere also indicated in its response to the subpoena that Defendants have been using

22  NetHere's services since 1996, and are currently maintaining five different servers at

23  NetHere's facility.  Kennedy Decl., Ex. 12, at 2, 4.  This raises a strong inference that the

24  servers stored at NetHere would contain documents relating to Defendants' relationship

25  with eBay during the period of the fraud: 2003-2007.  As part of its subpoena response,

26  NetHere also produced an invoice dated July 6, 2009, issued to "Digital Point Solutions,

27  Shawn Hogan."  *Id.* at 6.  This invoice strongly suggests that both Mr. Hogan and DPS,

28  Inc. have control of the materials stored at NetHere.  But DPS, Inc. has never exercised

7

1   that control despite its obligation to produce documents to eBay.[5]

2         DPS, Inc. surely has documents in its possession, custody, or control that are

3   responsive to eBay's requests for production.  DPS, Inc. should be compelled to produce

4   all such documents, whether they exist on the servers sold to it by Mr. Hogan, at NetHere,

5   or otherwise.

6       **C.**    **DPS, Inc. Cannot Limit Its Discovery Responses Based On Mr. Hogan's**
      **Fifth Amendment Privilege**

7

8         DPS, Inc. has also improperly refused to provide discovery to eBay on the

9   purported grounds of a Fifth Amendment privilege of Shawn Hogan and/or any purported

10  sole proprietorship that may have existed prior to DPS, Inc.'s formation.[6]  DPS, Inc. bases

11  this argument on a claim that the broad definition of "DPS" used by eBay implicates the

12  privilege of Mr. Hogan and those other entities because it "arguably seek[s] information

13  from Mr. Hogan individually."  Kennedy Decl., Ex. 7.  But DPS, Inc.'s argument

14  fundamentally confuses the identity of the responding party with the subject matter of the

15  request.

16        There is a compelling reason for eBay's broad definition of "DPS"—only

17  Mr. Hogan and DPS, Inc. know the details of their business organizations.  eBay

18  understood that, during the relevant period, it was dealing with an entity called "Digital

19  Point Solutions" that was owned and controlled by Shawn Hogan.  *See* SAC ¶ 47.  But, as

20  discussed above, DPS, Inc. now contends that it was not involved in eBay's affiliate

21  marketing program and that the "Digital Point Solutions" entity interacting with eBay

22

23  [5] Nor has DPS, Inc. conducted a reasonable search for non-electronic materials.  The Bylaws of
    DPS, Inc.—also belatedly produced last week—indicate that DPS, Inc. was required to: (i) hold

24  annual meetings of the shareholders and board of directors and maintain minutes of all such
    meetings, and (ii) file an Annual Statement of General Information.  Kennedy Decl., Ex. 4, at

25  DPS 000007, 000015, 000020, 000024.  When asked why DPS, Inc. had not produced all such
    documents, counsel replied: "The fact that statements may be referenced in the bylaws does not

26  mean they were subsequently prepared or exist. . . . .  However, I will confer with Mr. Hogan
    further on this issue."  Kennedy Decl., Ex. 10.  But DPS, Inc. was obliged to undertake that

27  search long ago.

28  [6] The 23 requests for admission, 11 requests for production and 2 interrogatories to which eBay
    moves to compel responses in this section are set forth in the Kennedy Declaration, at ¶ 6.

EBAY'S MOTION TO COMPEL
CASE NO. C 08-4052 JF PVT

1   from 2003 to 2007 was a sole proprietorship controlled by Mr. Hogan. *See, e.g.*, Kennedy

2   Decl. ¶ 3, Ex. 7. Because Mr. Hogan and DPS, Inc. have the only direct knowledge of the

3   true nature of their organization(s) that dealt with eBay, eBay's discovery requests to

4   DPS, Inc. define the term "DPS" broadly:

5               "DPS" shall mean Digital Point Solutions, Inc., and each of its
            successor, predecessor, and related entities, including, without
6            limitation, its subsidiaries, parent corporations, divisions,
            assigns, and any officers, directors, agents, employees,
7            representatives, attorneys, or other persons or entities acting
            on its behalf, collectively, in any combination, or singly,
8            whichever is broader.

9   *See, e.g.*, Kennedy Decl., Ex. 14, at 2. As with any defined term, the use of this definition

10  indicates that the party to whom the discovery requests are issued—here, DPS, Inc.—must

11  provide all responsive information in its possession regarding the entities and individuals

12  referenced in the definition. In other words, the definition of "DPS" describes the ***scope***

13  of the information that DPS, Inc. must provide; it does not somehow redirect the requests

14  to Mr. Hogan or otherwise require him to incriminate himself.

15          But DPS, Inc. has refused to provide responses based on a tortured reading of this

16  definition that construes eBay's discovery requests as seeking information directly from

17  Mr. Hogan. DPS, Inc.'s initial discovery responses asserted the Fifth Amendment

18  privilege on that basis. *See* Kennedy Decl., Exs. 15-17. And DPS, Inc.'s counsel

19  reiterated in meet and confer correspondence that "[T]he Fifth Amendment has been

20  appropriately asserted because the definitions of 'DPS' set forth in plaintiff's discovery

21  requests are ambiguous and arguably seek information from Mr. Hogan individually."

22  Kennedy Decl., Ex. 7.

23          Following a lengthy meet-and-confer process, DPS, Inc. finally agreed to serve

24  supplemental discovery responses that it claimed would provide the responsive

25  information in its possession. eBay, moreover, explicitly agreed that it would not contend

26  that DPS, Inc.'s service of proper responses somehow waived Mr. Hogan's Fifth

27  Amendment rights. Kennedy Decl., Ex. 18. eBay received those supplemental responses

28  last week, but they are still improperly limited. The supplemental responses continue to

EBAY'S MOTION TO COMPEL
CASE NO. C 08-4052 JF PVT

1   assert the general objection that eBay's definition of "DPS" is "overbroad, unduly

2   burdensome and oppressive in that it purports to apply to third parties collectively and/or

3   individually . . . and purports to seek responses from Mr. Hogan as phrased."  Kennedy

4   Decl., Exs. 2-4, at 2.  And, more importantly, DPS, Inc. continues to improperly limit the

5   scope of its responses by refusing to provide information regarding any entity other than

6   DPS, Inc., as discussed below.

7               1.    **Requests For Admission**

8          In response to eBay's requests for admission, which asked DPS, Inc. to admit or

9   deny statements regarding "DPS's" participation in eBay's affiliate marketing program,

10  DPS, Inc. responded to all but two of those requests by restricting its responses to

11  information regarding only DPS, Inc.  For example:

12      • "Defendant denies that DIGITAL POINT SOLUTIONS, INC. conducted

13          business with Plaintiff at any time, and on that basis denies this request."

14      • "Defendant denies that DIGITAL POINT SOLUTIONS, INC. participated in

15          any eBay affiliate marketing programs, and on that basis denies this request."

16      • "Defendant denies that DIGITAL POINT SOLUTIONS, INC. received any

17          commissions from eBay at any time, and on that basis denies this request."

18  Kennedy Decl., Ex. 3, at 3-10.  But each of eBay's requests for admission required that

19  DPS, Inc. provide admissions or denials with respect to the activities of any of the

20  entities/individuals defined as "DPS."

21         While the responses are improper on their face, DPS, Inc. has also demonstrated

22  that it knows how to provide a proper response when it so chooses.  In its responses to

23  requests for admission Nos. 24 and 25—which requested that DPS, Inc. admit or deny that

24  "DPS engaged in cookie stuffing with intent to defraud eBay" and that "DPS defrauded

25  eBay"—DPS, Inc. stated simply that "Defendant denies this request."  *See id.* at 11.

26  These responses demonstrate that DPS, Inc. is capable of accepting eBay's definition of

27  "DPS" without compromising Mr. Hogan's Fifth Amendment privilege when it pleases.

28  But the rules do not give DPS, Inc. such discretion, and it must provide complete

EBAY'S MOTION TO COMPEL
CASE NO. C 08-4052 JF PVT

1  responses to all of eBay's requests for admission.

2          2. **Requests For Production**

3       DPS, Inc. has also improperly restricted its responses to many of eBay's requests

4  for production.  In response to requests for production No. 1-8, 13-14 and 23, DPS, Inc.

5  asserted that it has no responsive documents to produce, but only after making the

6  prefatory statement that "Defendant DIGITAL POINT SOLUTIONS, INC. never

7  conducted business with Plaintiff at any time."  *See* Kennedy Decl., Ex. 4, at 3-15.  These

8  responses stand in marked contrast to DPS, Inc.'s supplemental responses to eBay's other

9  requests for production, in which DPS, Inc. either agrees to produce documents (Nos. 26-

10  28), or states affirmatively that "[a] diligent search has been made in an effort to locate the

11  items requested (Nos. 9-12, 16-22, 24-25, 29).[7]  *See id.* at 7-18.  This contrasting behavior

12  strongly suggests that DPS, Inc.'s statement that "Defendant DIGITAL POINT

13  SOLUTIONS, INC. never conducted business with" eBay means that DPS, Inc. is again

14  limiting its responses to those requests to documents regarding "DIGITAL POINT

15  SOLUTIONS, INC." rather than to documents regarding eBay's broader definition of

16  "DPS."

17       DPS, Inc. may not withhold otherwise responsive documents in its possession

18  based on its contention that the production of any documents related to Mr. Hogan or his

19  business as it existed prior to DPS, Inc.'s incorporation is protected by Mr. Hogan's Fifth

20  Amendment privilege.  And again, DPS, Inc. made its qualifying statement in only some

21  of its responses to eBay's requests for production, demonstrating that it is able to provide

22  proper responses to eBay's requests when it suits its interests, and further undercutting the

23  basis for its improper refusal to accept eBay's defined term.

24          3. **Interrogatories**

25       DPS, Inc. used a virtually identical qualifying statement in its supplemental

26  _____

27  [7] DPS, Inc. did not provide responses to requests for production No. 30, 31 and 32, which seek documents relating to DPS, Inc.'s financial assets, financial statements and tax returns.  eBay continues to meet and confer with DPS, Inc. regarding these requests and will file a separate

28  motion to compel responses to those requests, if necessary.

                                              EBAY'S MOTION TO COMPEL
                                              CASE NO. C 08-4052 JF PVT

1    responses to eBay's two interrogatories.  When asked in interrogatory No. 1 to "[i]dentify

2    all persons or entities with knowledge regarding DPS's participation . . . in any Affiliate

3    Marketing Program," DPS, Inc. responded: "Defendant DIGITAL POINT SOLUTIONS,

4    INC. has never conducted any business of any kind with Plaintiff.  Defendant otherwise

5    identifies the following persons and entities: Shawn Hogan and Google, Inc."  Similarly,

6    DPS, Inc. responded to interrogatory No. 2's request that DPS, Inc. "[i]dentify all Internet

7    Forums at, within or through which DPS discussed any aspect of their participation in . . .

8    eBay's Affiliate Marketing Program, or any other Affiliate Marketing Program," by

9    stating: "Defendant DIGITAL POINT SOLUTIONS, INC. has never conducted any

10   business of any kind with Plaintiff.  No such forums exist."  Kennedy Decl., Ex. 2, at 3.

11   Again, the use of the qualifying statement regarding DPS, Inc's interaction with eBay

12   (putting aside its veracity) strongly suggests that DPS, Inc. has limited the content of its

13   responses by refusing to accept eBay's definition of "DPS."

14          If DPS, Inc. were not attempting to limit its responses, there would be no reason to

15   state that "Defendant DIGITAL POINT SOLUTIONS, INC." never conducted business

16   with eBay.  In response to interrogatory No. 2, for example, DPS, Inc. could have simply

17   stated "No such forums exist."  DPS, Inc. may not refuse to provide information in its

18   possession or control regarding Mr. Hogan's business.  To the extent it has not already

19   done so, DPS, Inc. must be compelled to provide all information in its possession or

20   control regarding the subject of eBay's discovery responses, including eBay's definition

21   of "DPS."

22   **IV.   <u>CONCLUSION</u>**

23          For the foregoing reasons, eBay respectfully requests that the Court issue an order

24   compelling discovery, as follows:

25              1.  compelling Defendant Shawn Hogan, notwithstanding his continuing

26                  invocation of his Fifth Amendment right, to produce all documents

27                  responsive to eBay's First and Second Set of Requests for Production that

28                  were previously obtained by the FBI, including but not limited to any such

1    documents that may be within his control at third party NetHere, Inc.;

2    2.   ordering Defendant DPS, Inc. to conduct a diligent search for and produce

3         all documents responsive to eBay's First and Second Set of Requests for

4         Production, including by exercising any and all rights that it may have to

5         obtain documents from third party NetHere, Inc.; and

6    3.   striking Defendant DPS, Inc.'s objections to eBay's Interrogatories and

7         certain of eBay's Requests for Admission and Requests for Production on

8         the grounds that the definition of "DPS" is overbroad, unduly burdensome

9         and oppressive and ordering DPS, Inc. to provide supplemental responses to

10        those requests that include information regarding "DPS" as defined by eBay.

11

12

      DATED:  September 29, 2009              DAVID R. EBERHART
13                                            SHARON M. BUNZEL
                                              COLLEEN M. KENNEDY
14                                            O'MELVENY & MYERS LLP

15                                            By:  /s/ David R. Eberhart
16                                                  DAVID R. EBERHART

17                                            Attorneys for Plaintiff eBAY INC.

18

19

20

21

22

23

24

25

26

27

28