# EXHIBIT 4

Dockets.Justia.com

1  Seyamack Kouretchian (State Bar No. 171741)
2  Seyamack@CoastLawGroup.com
   Ross Campbell (State Bar No. 234827)
3  Rcampbell@Coast LawGroup.com
   COAST LAW GROUP, LLP
4  169 Saxony Road, Suite 204
   Encinitas, California 92024
5  Tel: (760) 942-8505
6  Fax: (760) 942-8515

7  Attorneys for Defendants, SHAWN HOGAN
   and DIGITAL POINT SOLUTIONS, INC.
8

9                    UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12 EBAY, INC.,                          )   Case No. CV 08-04052 JF PVT
                                        )
13           Plaintiff,                 )   **DEFENDANT DIGITAL POINT**
                                        )   **SOLUTIONS, INC.'S SUPPLEMENTAL**
14      v.                              )   **RESPONSES TO PLAINTIFF'S**
                                        )   **REQUESTS FOR PRODUCTION (SET**
15 DIGITAL POINT SOLUTIONS, INC., SHAWN )   **ONE)**
   HOGAN, KESSLER'S FLYING CIRCUS,      )
16 THUNDERWOOD HOLDINGS, INC., TODD     )
   DUNNING, DUNNING ENTERPRISE, INC.,   )
17 BRIAN DUNNING, BRIANDUNNING.COM,     )
   and Does 1-20,                       )
18                                      )
                                        )
19           Defendants.                )
                                        )
20 _____ )

21

22 PROPOUNDING PARTY:     Plaintiff EBAY, INC.
23
   RESPONDING PARTY:     Defendant DIGITAL POINT SOLUTIONS, INC.
24
   SET NUMBER:           One
25

26
       Defendant DIGITAL POINT SOLUTIONS, INC. ("Defendant") hereby provides supplemental
27
   responses to the Plaintiff EBAY, INC.'s ("Plaintiff's") First Set of Requests for Production, as follows:
28

---

Defendant Digital Point Solutions, Inc.'s Supplemental                    Case No. CV 08-04052 JF
Responses to Plaintiff's Requests For Production, Set One        1

# I. **PRELIMINARY STATEMENT**

Defendant SHAWN HOGAN ("Mr. Hogan") has asserted his privilege against self-incrimination under the Fifth Amendment to the United States Constitution (*United States v. Balsys* (1998) 524 U.S. 666, 672; *Lefkowitz v. Turley* (1973) 414 U.S. 70, 77); the Federal Rules of Evidence, Rule 501; the California Constitution, Article 1, Section 15; and California Evidence Code section 940. The provision of any responses by Defendant hereunder shall not be construed to be a waiver of the same.

Defendant further objects because conducting discovery is premature and inappropriate at this time given the ongoing criminal investigation of the FBI and U.S. Attorney's Office. As has been noted, Defendant intends to seek a stay of this action (and/or any other appropriate relief), including a stay of all discovery in this matter, pending the resolution of any potential criminal proceedings and/or until the statute of limitations on any such criminal proceedings has run. Further, Mr. Hogan's personal records do not constitute corporate records, and Defendant DIGITAL POINT SOLUTIONS, INC. does not have the legal right to obtain any such documents. To the extent Plaintiff contends Mr. Hogan's personal records constitute corporate records, Defendant further objects because Request Numbers 1-14, 18-20, 25, and 28-33 may be construed to seek the production and inspection of documents which contain proprietary/confidential information and/or trade secrets. In addition, Mr. Hogan, as the sole shareholder of Defendant and the only person with authority to verify responses on the corporation's behalf, reserves the right to pursue a stay under *United States v. Kordel* (1970) 397, U.S. 1, 9.

Defendant further objects to the definitions set forth in Plaintiff's requests as compound, vague and ambiguous; these objections further include, but are not limited to, the following: "DPS" is overbroad, unduly burdensome and oppressive in that it purports to apply to third parties collectively and/or individually, to information subject to the attorney-client privilege, and purports to seek responses from Mr. Hogan as phrased. "eBay" is further unduly burdensome and oppressive in that the phrases "eBay's internationally operated websites," and "any and all divisions, subdivisions, departments or subsidiaries of eBay" reference information that is within Plaintiff's control and/or is unknown to Defendant. Defendant further objects because the term "Cookie Stuffing" is vague and ambiguous.

Defendant reserves the right to amend or further supplement these responses to the extent circumstances so warrant. Discovery is ongoing.

1    Defendant incorporates the foregoing into each of Defendant's responses below.

2                              **II. RESPONSES**

3    **REQUEST FOR PRODUCTION NO. 1**

4        All documents relating to eBay, including all agreements, terms of service and terms and

5    conditions.

6    Response to Request for Production No. 1:

7        Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

8    vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

9    because this request may be construed to seek the production and inspection of documents which are

10   privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

11   Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to

12   and without waiving these objections, Defendant responds as follows:  Defendant DIGITAL POINT

13   SOLUTIONS, INC. never conducted business with Plaintiff at any time.  The only responsive

14   documents within the possession, custody or control of Defendant DIGITAL POINT SOLUTIONS, INC.

15   are those documents that have already been produced in this action and are in Plaintiff's possession,

16   including documents produced by Commission Junction, Inc. and Ernster Law Offices pursuant to

17   subpoenas served on those entities by Plaintiff; written correspondence produced by Any Taubman of

18   NetHere, Inc. in response to Plaintiff's amended subpoena; and documents produced by Plaintiff and the

19   Non-DPS Defendants to date.

20   **REQUEST FOR PRODUCTION NO. 2**

21       All documents relating to, or Communications with, eBay or any current or former employee of

22   eBay.

23   Response to Request for Production No. 2:

24       Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

25   vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

26   because this request may be construed to seek the production and inspection of documents which are

27   privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

28   Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to

1  and without waiving these objections, Defendant responds as follows:  Defendant DIGITAL POINT

2  SOLUTIONS, INC. never conducted business with Plaintiff at any time.  The only responsive

3  documents within the possession, custody or control of Defendant DIGITAL POINT SOLUTIONS, INC.

4  are those documents that have already been produced in this action and are in Plaintiff's possession,

5  including documents produced by Commission Junction, Inc. and Ernster Law Offices pursuant to

6  subpoenas served on those entities by Plaintiff; written correspondence produced by Any Taubman of

7  NetHere, Inc. in response to Plaintiff's amended subpoena; and documents produced by Plaintiff and the

8  Non-DPS Defendants to date.

9  **REQUEST FOR PRODUCTION NO. 3**

10         All documents relating to payment of commissions or other revenue obtained by DPS through

11  participation in, interaction with or manipulation of eBay's Affiliate Marketing Program.

12  Response to Request for Production No. 3:

13         Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

14  vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

15  because this request is compound and argumentative with respect to the term "manipulation."  Defendant

16  further objects because this request may be construed to seek the production and inspection of

17  documents which are privileged from disclosure by the attorney-client relationship and/or the attorney

18  work product doctrine.  Further, Defendant incorporates the above Preliminary Statement herein by

19  reference in full.  Subject to and without waiving these objections, Defendant responds as follows:

20  Defendant DIGITAL POINT SOLUTIONS, INC. never conducted business with Plaintiff at any time.

21  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of any

22  documents responsive to this request.

23  **REQUEST FOR PRODUCTION NO. 4**

24         All documents relating to eBay's Affiliate Marketing Program, including, but not limited to, all

25  methods and technologies used by DPS to obtain revenue from, manipulate or otherwise interact with

26  eBay's Affiliate Marketing Program, including, but not limited to, all software, source code, Javascript,

27  and HTML code.

28  /././

---

1   Response to Request for Production No. 4:

2           Objection.  This request, including the use of the definitions provided for"DPS" and "eBay," is

3   vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

4   because this request is compound, and is argumentative with respect to the term "manipulate."

5   Defendant further objects because this request may be construed to seek the production and inspection of

6   documents which are privileged from disclosure by the attorney-client relationship and/or the attorney

7   work product doctrine.  Further, Defendant incorporates the above Preliminary Statement herein by

8   reference in full.  Subject to and without waiving these objections, Defendant responds as follows:

9   Defendant DIGITAL POINT SOLUTIONS, INC. never conducted business with Plaintiff at any time.

10  The only documents relating to Plaintiff's Affiliate Marketing Program within the possession, custody or

11  control of Defendant DIGITAL POINT SOLUTIONS, INC. are those documents that have already been

12  produced in this action and are in Plaintiff's possession, including documents produced by Commission

13  Junction, Inc. and Ernster Law Offices pursuant to subpoenas served on those entities by Plaintiff;

14  written correspondence produced by Any Taubman of NetHere, Inc. in response to Plaintiff's amended

15  subpoena; and documents produced by Plaintiff and the Non-DPS Defendants to date.

16  **REQUEST FOR PRODUCTION NO. 5**

17          All documents relating to advertisements for eBay used, or purported to be used, on any website

18  or ad network that directed or referred Users to eBay as part of eBay's Affiliate Marketing Program.

19  Response to Request for Production No. 5:

20          Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

21  vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

22  because this request may be construed to seek the production and inspection of documents which are

23  privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

24  Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to

25  and without waiving these objections, Defendant responds as follows:  Defendant DIGITAL POINT

26  SOLUTIONS, INC. never conducted business with Plaintiff at any time.  Defendant DIGITAL POINT

27  SOLUTIONS, INC. is not in possession, custody or control of any documents responsive to this request.

28  /././

**REQUEST FOR PRODUCTION NO. 6**

All documents reflecting the number of Users who allegedly clicked on an advertisement for eBay used, or purported to be used, by DPS to direct or refer Users to eBay as part of eBay's Affiliate Marketing Program.

Response to Request for Production No. 6:

Objection. This request, including the use of the definitions provided for "DPS" and "eBay," is vague and ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this request may be construed to seek the production and inspection of documents which are privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine. Further, Defendant incorporates the above Preliminary Statement herein by reference in full. Subject to and without waiving these objections, Defendant responds as follows: Defendant DIGITAL POINT SOLUTIONS, INC. never conducted business with Plaintiff at any time. Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 7**

All documents relating to methods or techniques intended to, or causing, a User's browser to load any eBay webpage, webpage content or data therefrom.

Response to Request for Production No. 7:

Objection. This request, including the use of the definitions provided for "DPS" and "eBay," is vague and ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this request may be construed to seek the production and inspection of documents which are privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine. Further, Defendant incorporates the above Preliminary Statement herein by reference in full. Subject to and without waiving these objections, Defendant responds as follows: Defendant DIGITAL POINT SOLUTIONS, INC. never conducted business with Plaintiff at any time. Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of any documents responsive to this request.

/./.

/./.

/./.

1  **REQUEST FOR PRODUCTION NO. 8**

2      All documents sufficient to identify all advertising networks, advertising syndication services or

3  websites used or purportedly used by DPS to advertise or promote eBay or to interact in any way with

4  eBay or eBay's Affiliate Marketing Programs.

5  Response to Request for Production No. 8:

6      Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

7  vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

8  because this request may be construed to seek the production and inspection of documents which are

9  privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

10  Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to

11  and without waiving these objections, Defendant responds as follows:  Defendant DIGITAL POINT

12  SOLUTIONS, INC. never conducted business with Plaintiff at any time.  Defendant DIGITAL POINT

13  SOLUTIONS, INC. is not in possession, custody or control of any documents responsive to this request.

14  **REQUEST FOR PRODUCTION NO. 9**

15      All documents sufficient to identify all Affiliate Marketing Programs, not including eBay's

16  Affiliate Marketing Program, with whom DPS obtained revenue or otherwise interacted.

17  Response to Request for Production No. 9:

18      Objection.  This request, including the use of the definition provided for "DPS," is vague and

19  ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects because this

20  request may be construed to seek the production and inspection of documents which are privileged from

21  disclosure by the attorney-client relationship and/or the attorney work product doctrine.  Defendant

22  further objects because this request may be construed to seek the production and inspection of

23  documents which contain proprietary/confidential information.  Defendant further objects because this

24  request seeks the production of documents which are neither relevant to the subject matter of this action,

25  nor likely to lead to the discovery of admissible evidence.  Further, Defendant incorporates the above

26  Preliminary Statement herein by reference in full.  Subject to and without waiving these objections,

27  Defendant responds as follows:  A diligent search has been made in an effort to locate the items

28

1   requested.  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of

2   any documents responsive to this request.

3   **REQUEST FOR PRODUCTION NO. 10**

4        All documents relating to and/or describing methods and techniques used by any other Affiliate

5   Marketing Program that DPS interacted with, participated in or manipulated.

6   Response to Request for Production No. 10:

7        Objection.  This request, including the use of the definition provided for "DPS," is vague and

8   ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects because this

9   request is compound, and argumentative with respect to the term "manipulated."  Defendant further

10  objects because this request may be construed to seek the production and inspection of documents which

11  are privileged from disclosure by the attorney-client relationship and/or the attorney work product

12  doctrine.  Defendant further objects because this request may be construed to seek the production and

13  inspection of documents which contain proprietary/confidential information.  Defendant further objects

14  because this request seeks the production of documents which are neither relevant to the subject matter

15  of this action, nor likely to lead to the discovery of admissible evidence.  Further, Defendant incorporates

16  the above Preliminary Statement herein by reference in full.  Subject to and without waiving these

17  objections, Defendant responds as follows:  A diligent search has been made in an effort to locate the

18  items requested.  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or

19  control of any documents responsive to this request.

20  **REQUEST FOR PRODUCTION NO. 11**

21       All documents sufficient to identify the source of any technology, technique or method used by

22  DPS to participate in, manipulate or interact with eBay Affiliate Marketing Program, or any other

23  Affiliate Marketing Program.

24  Response to Request for Production No. 11:

25       Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

26  vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

27  because this request is compound, and argumentative with respect to the term "manipulate."  Defendant

28  further objects because this request may be construed to seek the production and inspection of

---

1   documents which are privileged from disclosure by the attorney-client relationship and/or the attorney

2   work product doctrine. Defendant further objects because this request may be construed to seek the

3   production and inspection of documents which contain proprietary/confidential information. Defendant

4   further objects because this request seeks the production of documents which are neither relevant to the

5   subject matter of this action, nor likely to lead to the discovery of admissible evidence. Further,

6   Defendant incorporates the above Preliminary Statement herein by reference in full. Subject to and

7   without waiving these objections, Defendant responds as follows: A diligent search has been made in an

8   effort to locate the items requested. Defendant DIGITAL POINT SOLUTIONS, INC. is not in

9   possession, custody or control of any documents responsive to this request.

10   **REQUEST FOR PRODUCTION NO. 12**

11       All documents sufficient to identify any individuals, groups, books, manuals or other materials

12   consulted by DPS while developing any technology, technique or method used by DPS to participate in,

13   manipulate or interact with the eBay Affiliate Marketing Program, or any other Affiliate Marketing

14   Program.

15   Response to Request for Production No. 12:

16       Objection. This request, including the use of the definitions provided for "DPS" and "eBay," is

17   vague and ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects

18   because this request is compound, and argumentative with respect to the term "manipulate." Defendant

19   further objects because this request may be construed to seek the production and inspection of

20   documents which are privileged from disclosure by the attorney-client relationship and/or the attorney

21   work product doctrine. Defendant further objects because this request may be construed to seek the

22   production and inspection of documents which contain proprietary/confidential information. Defendant

23   further objects because this request seeks the production of documents which are neither relevant to the

24   subject matter of this action, nor likely to lead to the discovery of admissible evidence. Further,

25   Defendant incorporates the above Preliminary Statement herein by reference in full. Subject to and

26   without waiving these objections, Defendant responds as follows: A diligent search has been made in an

27   effort to locate the items requested. Defendant DIGITAL POINT SOLUTIONS, INC. is not in

28   possession, custody or control of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 13**

All documents relating to Commission Junction, including all agreements, terms of service and terms and conditions.

Response to Request for Production No. 13:

Objection.  This request, including the use of the definitions provided for "DPS" and "Commission Junction," is vague and ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this request may be construed to seek the production and inspection of documents which are privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.  Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to and without waiving these objections, Defendant responds as follows: Defendant DIGITAL POINT SOLUTIONS, INC. never conducted business with Plaintiff or Commission Junction at any time.  The only responsive documents within the possession, custody or control of Defendant DIGITAL POINT SOLUTIONS, INC. are those documents that have already been produced in this action and are in Plaintiff's possession, including documents produced by Commission Junction, Inc. and Ernster Law Offices pursuant to subpoenas served on those entities by Plaintiff; written correspondence produced by Any Taubman of NetHere, Inc. in response to Plaintiff's amended subpoena; and documents produced by Plaintiff and the Non-DPS Defendants to date.

**REQUEST FOR PRODUCTION NO. 14**

All documents relating to, or Communications with, Commission Junction or any current or former employee of Commission Junction.

Response to Request for Production No. 14:

Objection.  This request, including the use of the definitions provided for "DPS" and "Commission Junction," is vague and ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this request may be construed to seek the production and inspection of documents which are privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.  Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to and without waiving these objections, Defendant responds as follows: Defendant DIGITAL POINT SOLUTIONS, INC. never conducted business with Plaintiff or

1  Commission Junction at any time.  The only responsive documents within the possession, custody or

2  control of Defendant DIGITAL POINT SOLUTIONS, INC. are those documents that have already been

3  produced in this action and are in Plaintiff's possession, including documents produced by Commission

4  Junction, Inc. and Ernster Law Offices pursuant to subpoenas served on those entities by Plaintiff;

5  written correspondence produced by Any Taubman of NetHere, Inc. in response to Plaintiff's amended

6  subpoena; and documents produced by Plaintiff and the Non-DPS Defendants to date.

7  **REQUEST FOR PRODUCTION NO. 15**

8      All documents relating to, or Communications with, Kessler's Flying Circus, Thunderwood

9  Holdings, Inc., Dunning Enterprise, Inc. or briandunning.com.

10  Response to Request for Production No. 15:

11      Objection.  This request, including the use of the definition provided for "DPS," is vague and

12  ambiguous, compound, overbroad, and unduly burdensome and oppressive.  Defendant further objects

13  because this request may be construed to seek the production and inspection of documents which are

14  privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

15  Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to

16  and without waiving these objections, Defendant responds as follows:  The only documents relating to

17  said defendants within the possession, custody or control of Defendant DIGITAL POINT SOLUTIONS,

18  INC. are those documents that have already been produced in this action and are in Plaintiff's

19  possession, including documents produced by Commission Junction, Inc. and Ernster Law Offices

20  pursuant to subpoenas served on those entities by Plaintiff; and documents produced by Plaintiff and the

21  Non-DPS Defendants to date.

22  **REQUEST FOR PRODUCTION NO. 16**

23      All Communications with Shawn Hogan, Todd Dunning or Brian Dunning.

24  Response to Request for Production No. 16:

25      Objection.  This request, including the use of the definition provided for "DPS," is vague and

26  ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects because this

27  request may be construed to seek the production and inspection of documents which are privileged from

28  disclosure by the attorney-client relationship and/or the attorney work product doctrine.  Further,

1  Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to and

2  without waiving these objections, Defendant responds as follows:  A diligent search has been made in an

3  effort to locate the items requested.  Defendant DIGITAL POINT SOLUTIONS, INC is not in

4  possession, custody or control of any documents responsive to this request.

5  **REQUEST FOR PRODUCTION NO. 17**

6       All documents relating to, or Communications with, Rachael Hughes, or any companies or

7  entities owned, controlled, affiliated with or used by Rachael Hughes, relating to eBay's Affiliate

8  Marketing Program including, but not limited to, any agreements with Rachael Hughes and company

9  and any technology transferred to or from Rachael Hughes and company.

10  Response to Request for Production No. 17:

11       Objection.  This request is compound, vague and ambiguous.  Defendant further objects because

12  the identity of Rachel Hughes and company is unknown to Defendant and/or within Plaintiff's control.

13  Defendant reserves all other appropriate objections until Plaintiff properly identifies the referenced

14  persons/entities.  Further, Defendant incorporates the above Preliminary Statement herein by reference in

15  full. Subject to and without waiving these objections, Defendant responds as follows:  A diligent search

16  has been made in an effort to locate the items requested.  Defendant DIGITAL POINT SOLUTIONS,

17  INC. is not in possession, custody or control of any documents responsive to this request.

18  **REQUEST FOR PRODUCTION NO. 18**

19       All documents sufficient to describe all phone numbers, email addresses, web pages, instant

20  messenger or mail accounts and social network accounts maintained, formerly maintained or registered

21  to DPS.

22  Response to Request for Production No. 18:

23       Objection.  This request, including the use of the definition provided for "DPS," is vague and

24  ambiguous, overbroad, compound, and unduly burdensome and oppressive.  Defendant further objects

25  because this request may be construed to seek the production and inspection of documents which are

26  privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

27  Defendant further objects because this request seeks the production of documents which are neither

28  relevant to the subject matter of this action, nor likely to lead to the discovery of admissible evidence.

1   Further, Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to

2   and without waiving these objections, Defendant responds as follows:  A diligent search has been made

3   in an effort to locate the items requested.  Defendant DIGITAL POINT SOLUTIONS, INC. is not in

4   possession, custody or control of any documents responsive to this request.

5   **REQUEST FOR PRODUCTION NO. 19**

6        Documents sufficient to identify any Aliases used by DPS in any Internet Forum at or within

7   which DPS discussed any aspect of their participation in, manipulation of or interaction with eBay's

8   Affiliate Marketing Program, or any other Affiliate Marketing Programs, including, but not limited to,

9   forums such as blogs, listservs, Usenet newsgroups or chat rooms.

10  Response to Request for Production No. 19:

11       Objection.  This request, including the use of the definitions provided for "DPS" and "eBay" is

12  vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

13  because this request is compound, and argumentative with respect to the term "manipulation."

14  Defendant further objects because this request may be construed to seek the production and inspection of

15  documents which are privileged from disclosure by the attorney-client relationship and/or the attorney

16  work product doctrine.  Defendant further objects because this request seeks the production of

17  documents which are neither relevant to the subject matter of this action, nor likely to lead to the

18  discovery of admissible evidence.  Further, Defendant incorporates the above Preliminary Statement

19  herein by reference in full.  Subject to and without waiving these objections, Defendant responds as

20  follows:  A diligent search has been made in an effort to locate the items requested.  Defendant

21  DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of any documents

22  responsive to this request.

23  **REQUEST FOR PRODUCTION NO. 20**

24       Documents sufficient to identify any Internet Forum at or within which DPS discussed any aspect

25  of their participation in, manipulation of or interaction with eBay's Affiliate Marketing Programs, or any

26  other Affiliate Marketing Programs, including, but not limited to, forums such as blogs, listservs, Usenet

27  newsgroups or chat rooms.

28  /./.

1  Response to Request for Production No. 20:

2      Objection.  This request, including the use of the definitions provided for "DPS" and "eBay" is

3  vague and ambiguous, overbroad, compound, and unduly burdensome and oppressive.  Defendant

4  further objects because this request is compound, and argumentative with respect to the term

5  "manipulation."  Defendant further objects because this request may be construed to seek the production

6  and inspection of documents which are privileged from disclosure by the attorney-client relationship

7  and/or the attorney work product doctrine.  Defendant further objects because this request seeks the

8  production of documents which are neither relevant to the subject matter of this action, nor likely to lead

9  to the discovery of admissible evidence.  Further, Defendant incorporates the above Preliminary

10  Statement herein by reference in full.  Subject to and without waiving these objections, Defendant

11  responds as follows:  A diligent search has been made in an effort to locate the items requested.

12  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of any

13  documents responsive to this request.

14  **REQUEST FOR PRODUCTION NO. 21**

15      Documents sufficient to identify all internet service providers (ISPs) and IP addresses used by

16  DPS.

17  Response to Request for Production No. 21:

18      Objection.  This request, including the use of the definition provided for "DPS," is vague and

19  ambiguous, overbroad, compound, and unduly burdensome and oppressive.  Defendant further objects

20  because this request seeks the production of documents which are neither relevant to the subject matter

21  of this action, nor likely to lead to the discovery of admissible evidence.  Further, Defendant incorporates

22  the above Preliminary Statement herein by reference in full.  Subject to and without waiving these

23  objections, Defendant responds as follows:  A diligent search has been made in an effort to locate the

24  items requested.  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or

25  control of any documents responsive to this request.

26  / / /

27  / / /

28  / / /

1  **REQUEST FOR PRODUCTION NO. 22**

2      Documents sufficient to identify all computers, servers, electronic data storage and hosting

3  companies, entities, or facilities used by DPS.

4  Response to Request for Production No. 22:

5      Objection.  This request, including the use of the definition provided for "DPS," is vague and

6  ambiguous, overbroad, compound, and unduly burdensome and oppressive.  Defendant further objects

7  because this request seeks the production of documents which are neither relevant to the subject matter

8  of this action, nor likely to lead to the discovery of admissible evidence.  Further, Defendant incorporates

9  the above Preliminary Statement herein by reference in full.  A diligent search has been made in an effort

10  to locate the items requested. Subject to and without waiving these objections, Defendant responds as

11  follows:  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of

12  any documents responsive to this request.

13  **REQUEST FOR PRODUCTION NO. 23**

14      Documents sufficient to identify any entity used or hired to maintain or restore electronic data or

15  systems relating to DPS's participation in, manipulation of or interaction with eBay's Affiliate Marketing

16  Program.

17  Response to Request for Production No. 23:

18      Objection.  This request, including the use of the definitions provided for "DPS" and "eBay," is

19  vague and ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects

20  because this request is compound, and argumentative with respect to the term "manipulation."  Further,

21  Defendant incorporates the above Preliminary Statement herein by reference in full. Subject to and

22  without waiving these objections, Defendant responds as follows:  Defendant DIGITAL POINT

23  SOLUTIONS, INC. never conducted business with Plaintiff at any time.  Defendant DIGITAL POINT

24  SOLUTIONS, INC. is not in possession, custody or control of any documents responsive to this request.

25  **REQUEST FOR PRODUCTION NO. 24**

26      Documents sufficient to identify software used to clean, reformat or erase hard-drives used by

27  DPS, or any equipment owned, used or maintained by DPS.

28  /./.

---

1  Response to Request for Production No. 24:

2      Objection. This request, including the use of the definition provided for "DPS," is vague and

3  ambiguous, compound, overbroad, and unduly burdensome and oppressive. Further, Defendant

4  incorporates the above Preliminary Statement herein by reference in full. Subject to and without

5  waiving these objections, Defendant responds as follows: A diligent search has been made in an effort

6  to locate the items requested. Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession,

7  custody or control of any documents responsive to this request.

8  **REQUEST FOR PRODUCTION NO. 25**

9      All documents sufficient to identify all business entities or fictitious business names currently or

10  formerly maintained by DPS.

11  Response to Request for Production No. 25:

12      Objection. This request, including the use of the definition provided for "DPS," is vague and

13  ambiguous, overbroad, compound, and unduly burdensome and oppressive. Defendant further objects

14  because this request may be construed to seek the production and inspection of documents which are

15  privileged from disclosure by the attorney-client relationship and/or the attorney work product doctrine.

16  Defendant further objects because this request seeks the production of documents which are neither

17  relevant to the subject matter of this action, nor likely to lead to the discovery of admissible evidence.

18  Further, Defendant incorporates the above Preliminary Statement herein by reference in full. Subject to

19  and without waiving these objections, Defendant responds as follows: A diligent search has been made

20  in an effort to locate the items requested. Defendant DIGITAL POINT SOLUTIONS, INC. is not in

21  possession, custody or control of any documents responsive to this request.

22  **REQUEST FOR PRODUCTION NO. 26**

23      All documents relating to the incorporation of DPS.

24  Response to Request for Production No. 26:

25      Objection. This request, including the use of the definition provided for "DPS," is vague and

26  ambiguous, compound, overbroad, and unduly burdensome and oppressive. Further, Defendant

27  incorporates the above Preliminary Statement herein by reference in full. Subject to and without

28

1   waiving these objections, Defendant responds as follows:  Defendant agrees to produce all responsive

2   documents within its possession, custody or control.  Said documents are attached hereto.

3   **REQUEST FOR PRODUCTION NO. 27**

4        All documents filed by DPS with any Secretary of State.

5   Response to Request for Production No. 27:

6        Objection.  This request, including the use of the definition provided for "DPS," is vague and

7   ambiguous, compound, overbroad, and unduly burdensome and oppressive.  Further, Defendant

8   incorporates the above Preliminary Statement herein by reference in full.  Subject to and without

9   waiving these objections, Defendant responds as follows: Defendant agrees to produce all responsive

10  documents within its possession, custody, or control.  Said documents are attached hereto.

11  **REQUEST FOR PRODUCTION NO. 28**

12       Documents sufficient to show the structure and organization of DPS and all companies or other

13  entities owned or controlled by DPS that were involved in or interacted with any Affiliate Marketing

14  Program.

15  Response to Request for Production No. 28:

16       Objection.  This request, including the use of the definition provided for "DPS" and the phrase

17  "structure and organization," is vague and ambiguous, overbroad, compound, and unduly burdensome

18  and oppressive.  Defendant further objects because this request may be construed to seek the production

19  and inspection of documents which are privileged from disclosure by the attorney-client relationship

20  and/or the attorney work product doctrine.  Defendant further objects because this request seeks the

21  production of documents which are neither relevant to the subject matter of this action, nor likely to lead

22  to the discovery of admissible evidence.  Further, Defendant incorporates the above Preliminary

23  Statement herein by reference in full.  Subject to and without waiving these objections, Defendant

24  responds as follows: Defendant agrees to produce all responsive documents within its possession,

25  custody, or control.  Said documents are attached hereto.

26  **REQUEST FOR PRODUCTION NO. 29**

27       Documents sufficient to identify all employees, contractors or temporary employees of DPS, their

28  dates of employment, duties, salary and any other compensation.

1   Response to Request for Production No. 29:

2       Objection. This request, including the use of the definition provided for "DPS," is vague and

3   ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this

4   request seeks the production of documents which are neither relevant to the subject matter of this action,

5   nor likely to lead to the discovery of admissible evidence. Further, Defendant incorporates the above

6   Preliminary Statement herein by reference in full. Subject to and without waiving these objections,

7   Defendant responds as follows:   A diligent search has been made in an effort to locate the items

8   requested. Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or control of

9   any documents responsive to this request.

10  **REQUEST FOR PRODUCTION NO. 30**

11      All documents constituting DPS's annual, quarterly and monthly audited, compiled, reviewed or

12  unaudited financial statements, including all income statements and balance sheets of DPS.

13  Response to Request for Production No. 30:

14      Objection. This request, including the use of the definition provided for "DPS," is vague and

15  ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this

16  request seeks the production of documents which are neither relevant to the subject matter of this action,

17  nor likely to lead to the discovery of admissible evidence. Defendant further objects because this

18  demand may be construed to seek the production and inspection of documents which contain

19  confidential financial information, trade secrets/other proprietary information, and violates Defendant's

20  right to privacy. Further, Defendant incorporates the above Preliminary Statement herein by reference in

21  full.

22  **REQUEST FOR PRODUCTION NO. 31**

23      All documents sufficient to identify all assets and financial accounts (including those outside of

24  the United States) maintained or formerly maintained by DPS.

25  Response to Request for Production No. 31:

26      Objection. This request, including the use of the definition provided for "DPS," is vague and

27  ambiguous, overbroad, and unduly burdensome and oppressive. Defendant further objects because this

28  request seeks the production of documents which are neither relevant to the subject matter of this action,

1    nor likely to lead to the discovery of admissible evidence.  Defendant further objects because this

2    demand may be construed to seek the production and inspection of documents which contain

3    confidential financial information, trade secrets/other proprietary information, and violates Defendant's

4    right to privacy.  Further, Defendant incorporates the above Preliminary Statement herein by reference in

5    full.

6    **REQUEST FOR PRODUCTION NO. 32**

7        Documents constituting DPS's corporate tax returns for the years 2003 to the present.

8    Response to Request for Production No. 32:

9        Objection.  This request, including the use of the definition provided for "DPS," is vague and

10   ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects because this

11   request seeks the production of documents which are neither relevant to the subject matter of this action,

12   nor likely to lead to the discovery of admissible evidence.  Defendant further objects because this

13   demand may be construed to seek the production and inspection of documents which contain

14   confidential financial information, trade secrets/other proprietary information, and violates Defendant's

15   right to privacy.  Further, Defendant incorporates the above Preliminary Statement herein by reference in

16   full.

17   **REQUEST FOR PRODUCTION NO. 33**

18       All documents relating to the transfer or assumption of any liability by DPS.

19   Response to Request for Production No. 33:

20       Objection.  This request, including the use of the definition provided for "DPS" and the phrase

21   "transfer or assumption of any liability," is vague and ambiguous, overbroad, and unduly burdensome

22   and oppressive.  Defendant further objects because this request may be construed to seek the production

23   and inspection of documents which are privileged from disclosure by the attorney-client relationship

24   and/or the attorney work product doctrine.  Defendant further objects because this demand may be

25   construed to seek the production and inspection of documents which contain confidential financial

26   information and/or violates Defendant's right to privacy.  Defendant further objects because this request

27   is overbroad and seeks the production of documents which are neither relevant to the subject matter of

28   this action, nor likely to lead to the discovery of admissible evidence.  Further, Defendant incorporates

1   the above Preliminary Statement herein by reference in full.  Subject to and without waiving these

2   objections, Defendant responds as follows:  A diligent search has been made in an effort to locate the

3   items requested.  Defendant DIGITAL POINT SOLUTIONS, INC. is not in possession, custody or

4   control of any documents responsive to this request.

5   **REQUEST FOR PRODUCTION NO. 34**

6        All documents relating to any insurance policies relevant to this action.

7   Response to Request for Production No. 34:

8        Objection.  This request, including the use of the definition provided for "DPS," is vague and

9   ambiguous, overbroad, and unduly burdensome and oppressive.  Defendant further objects because this

10  request may be construed to seek the production and inspection of documents which are privileged from

11  disclosure by the attorney-client relationship and/or the attorney work product doctrine.  Further,

12  Defendant incorporates the above Preliminary Statement herein by reference in full.  Subject to and

13  without waiving these objections, Defendant responds as follows:   A diligent search has been made in

14  an effort to locate the items requested.  Defendant DIGITAL POINT SOLUTIONS, INC. is not in

15  possession, custody or control of any documents responsive to this request.

16  DATED: September 23, 2009                    COAST LAW GROUP LLP

17

18

19                                       By: _____
                                              Ross M. Campbell
20                                            Attorneys for Defendants, Shawn Hogan
                                              and Digital Point Solutions, Inc.

21

22

23

24

25

26

27

28

2998539

## State of California
### Secretary of State



I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of _____2_____ page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

MAY 1 9 2007

**DEBRA BOWEN**
Secretary of State

Sec/State Form CE-107 (REV 1/2007)

OSP 06 99734

DPS000001

2998539

ARTICLES OF INCORPORATION

OF

DIGITAL POINT SOLUTIONS, INC.

**ENDORSED - FILED**
In the office of the Secretary of State
of the State of California

MAY 1 4 2007

ONE:     The name of this corporation is Digital Point Solutions, Inc.

TWO:     The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

THREE:   The name and address in this state of the corporation's initial agent for service of process is:

Shawn D. Hogan
8465 Regents Road, Apt. 448
San Diego, CA  92122

FOUR:    This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is one million (1,000,000).

FIVE:    (a) The liability of the directors of this corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

(b) The corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) through bylaw provisions, agreements with the agents, vote of shareholders or disinterested directors,

1

or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code, subject only to the limits set forth in Section 204 of the California Corporations Code with respect to actions for breach of duty to the corporation or its shareholders.   The corporation is further authorized to provide insurance for agents as set forth in Section 317 of the California Corporations Code, provided that, in cases where the corporation owns all or a portion of the shares of the company issuing the insurance policy, the company and/or the policy must meet one of the two sets of conditions set forth in Section 317, as amended.

(c)  Any repeal or modification of the foregoing provisions of this Article FIVE by the shareholders of this corporation shall not adversely affect any right or protection of an agent of this corporation existing at the time of such repeal or modification.

Dated:  May 1, 2007

Eric I. Weitzen, Incorporator



2

DPS000003

BYLAWS

OF

DIGITAL POINT SOLUTIONS, INC.

A CALIFORNIA CORPORATION

DPS000004

TABLE OF CONTENTS

ARTICLE I - OFFICES . . . . . . . . . . . . . . . . . . . 1
    Section 1 - Principal Office . . . . . . . . . . . . . 1
    Section 2 - Other Offices . . . . . . . . . . . . . . 1

ARTICLE II - MEETINGS OF SHAREHOLDERS . . . . . . . . . . 1
    Section 1 - Place of Meetings . . . . . . . . . . . . 1
    Section 2 - Annual Meeting . . . . . . . . . . . . . 1
    Section 3 - Special Meeting . . . . . . . . . . . . . 1
    Section 4 - Notice of Shareholders' Meetings . . . . 1
    Section 5 - Manner of Giving Notice; Affidavit of
           Notice . . . . . . . . . . . . . . . . . . 2
    Section 6 - Quorum . . . . . . . . . . . . . . . . . 3
    Section 7 - Adjourned Meeting; Notice . . . . . . . . 3
    Section 8 - Voting . . . . . . . . . . . . . . . . . 4
    Section 9 - Waiver of Notice or Consent by Absent
           Shareholders . . . . . . . . . . . . . . . 4
    Section 10- Shareholder Action by Written Consent
           Without a Meeting . . . . . . . . . . . . . 5
    Section 11- Record Date for Shareholder Notice, Voting
           and Giving Consents. . . . . . . . . . . . 6
    Section 12- Proxies . . . . . . . . . . . . . . . . . 6
    Section 13- Inspectors of Election . . . . . . . . . 7
    Section 14- Validation of Shareholders' Meetings . . 7

ARTICLE III - DIRECTORS . . . . . . . . . . . . . . . . . 8
    Section 1 - Powers . . . . . . . . . . . . . . . . . 8
    Section 2 - Number and Qualification of Directors . . 8
    Section 3 - Election and Term of Office of Directors . 8
    Section 4 - Vacancies . . . . . . . . . . . . . . . . 8
    Section 5 - Place of Meetings and Meetings by
           Telephone . . . . . . . . . . . . . . . . . 9
    Section 6 - Annual Meeting . . . . . . . . . . . . . 9
    Section 7 - Other Regular Meetings . . . . . . . . . 9
    Section 8 - Special Meetings . . . . . . . . . . . . 9
    Section 9 - Quorum . . . . . . . . . . . . . . . . . 9
    Section 10- Waiver of Notice . . . . . . . . . . . . 10
    Section 11- Adjournment . . . . . . . . . . . . . . . 10
    Section 12- Notice of Adjournment . . . . . . . . . . 11
    Section 13- Action Without Meeting . . . . . . . . . 11
    Section 14- Fees and Compensation of Directors . . . 11

ARTICLE IV - COMMITTEES . . . . . . . . . . . . . . . . . 11
    Section 1 - Committees of Directors . . . . . . . . . 11
    Section 2 - Meetings and Action of Committees . . . . 12

ARTICLE V - OFFICERS . . . . . . . . . . . . . . . . . . 12
    Section 1 - Officers . . . . . . . . . . . . . . . . 12
    Section 2 - Election of Officers . . . . . . . . . . 12
    Section 3 - Subordinate Officers . . . . . . . . . . 13
    Section 4 - Removal and Resignation of Officers . . . 13
    Section 5 - Vacancies in Offices . . . . . . . . . . 13
    Section 6 - Chairman of the Board . . . . . . . . . . 13

DPS000005

Section 7 - President . . . . . . . . . . . . . .                           13
Section 8 - Vice Presidents . . . . . . . . . . .                           14
Section 9 - Secretary . . . . . . . . . . . .                               14
Section 10- Chief Financial Officer . . . . . . . . .                       14
Section 11- Excessive Compensation . . . . . . . . .                        15

ARTICLE VI - INDEMNIFICATION . . . . . . . . . .                            15
Section 1 - Indemnification . . . . . . . . . . .                           15

ARTICLE VII - RECORDS AND REPORTS . . . . . . . . .                         16
Section 1 - Maintenance and Inspection of Share
             Register . . . . . . . . . . . .                               16
Section 2 - Maintenance and Inspection of Bylaws . . .                      17
Section 3 - Maintenance and Inspection of Other
             Corporate Records . . . . . . . .                              17
Section 4 - Inspection by Directors . . . . . . . .                         17
Section 5 - Annual Report to Shareholders . . . . . .                       17
Section 6 - Financial Statements . . . . . . . . .                          17
Section 7 - Annual Statement of General Information .                       18

ARTICLE VIII- GENERAL CORPORATE MATTERS . . . . . . . .                     19
Section 1 - Record Date for Purposes Other Than Notice
             and Voting . . . . . . . . . . .                               19
Section 2 - Checks, Drafts, Evidences of Indebtedness                       19
Section 3 - Corporate Contracts and Instruments; How
             Executed . . . . . . . . . . . .                               19
Section 4 - Certificate for Shares . . . . . . . .                          19
Section 5 - Lost Certificates . . . . . . . . . .                           20
Section 6 - Representation of Share of Other
             Corporations . . . . . . . . . .                               20
Section 7 - Construction and Definitions . . . . . .                        20

ARTICLE IX - S CORPORATION . . . . . . . . . . .                            20
Section 1 - S Corporation Status . . . . . . . . .                          20

ARTICLE X - AMENDMENTS . . . . . . . . . . . .                              21
Section 1 - Amendment by Shareholders . . . . . . .                         21
Section 2 - Amendment by Directors . . . . . . . . .                        21

BYLAWS

OF

DIGITAL POINT SOLUTIONS, INC.

A CALIFORNIA CORPORATION

ARTICLE I - OFFICES

<u>Section 1 - Principal Offices</u>.  The board of directors shall fix the location of the principal executive office of the corporation at any place within or outside the State of California. If the principal executive office is located outside this state, and the corporation has one or more business offices in this state, the board of directors shall fix and designate a principal business office in the State of California.

<u>Section 2 - Other Offices</u>.  The board of directors may at any time establish branch or subordinate offices at any place or places where the corporation is qualified to do business.

ARTICLE II - MEETINGS OF SHAREHOLDERS

<u>Section 1 - Place of Meetings</u>.  Meetings of shareholders shall be held at any place within or outside the State of California designated by the board of directors.  In the absence of any such designation, shareholders' meetings shall be held at the principal executive office of the corporation.

<u>Section 2 - Annual Meeting</u>.  The annual meeting of the shareholders shall be held on the 15th of December each year at 10:00 a.m. If this day shall be a legal holiday, then the meeting shall be held on the next succeeding business day, at the same hour.  At the annual meeting, the shareholders shall elect a board of directors, consider reports of the affairs of the corporation and transact such other business as may be properly brought before the meeting.

<u>Section 3 - Special Meeting</u>.  Special meetings of the shareholders may be called at any time by the board of directors, the chairman of the board, the president, a vice president, the secretary or by one or more shareholders holding not less than one-tenth (1/10th) of the voting power of the corporation.  Except as next provided, notice shall be given as for the annual meeting.

Upon receipt of a written request addressed to the chairman, president, vice president or secretary, mailed or delivered personally to such office by any person (other than the board)

1

DPS000007

entitled to call a special meeting of shareholders, such officer shall cause notice to be given, to the shareholders entitled to vote, that a meeting will be held at a time requested by the person or persons calling the meeting, not less than twenty-five (25) nor more than sixty (60) days after the receipt of such request.   If such notice is not given within twenty (20) days after receipt of such request, the persons calling the meeting may give notice thereof in the manner provided by these bylaws or apply to the Superior Court as provided in Section 305(c) of the General Corporation Law.

Section 4 - Notice of Shareholders' Meetings.  All notices of meetings of shareholders shall be sent or otherwise given in accordance with Section 5 of this Article II not less than ten (10) nor more than sixty (60) days before the date of the meeting.  The notice shall specify the place, date and hour of the meeting and (i) in the case of a special meeting, the general nature of the business to be transacted, the business to be transacted, or (ii) in the case of the annual meeting, those matters which the board of directors, at the time of giving the notice, intends to present for action by the shareholders.  The notice of any meeting at which directors are to be elected shall include the name of any nominee or nominees whom, at the time of the notice, management intends to present for election.

If action is proposed to be taken at any meeting for approval of (i) a contract or transaction in which a director has a direct or indirect financial interest, pursuant to Section 310 of the Corporations Code of California, (ii) an amendment of the articles of incorporation, pursuant to Section 902 of that Code, (iii) a reorganization of the corporation, pursuant to Section 1201 of that Code, (iv) a voluntary dissolution of the corporation, pursuant to Section 1900 of that Code, or (v) a distribution in dissolution other than in accordance with the rights of outstanding preferred shares, pursuant to Section 2007 of that Code, the notice shall also state the general nature of that proposal.

Section 5 - Manner of Giving Notice; Affidavit of Notice. Notice at any meeting of shareholders shall be given either personally or by first-class mail or telegraphic or other written communication, charges prepaid, addressed to the shareholder at the address of that shareholder appearing on the books of the corporation or given by the shareholder to the corporation for the purpose of notice.  If no such address appears on the corporation's books or is given, notice shall be deemed to have been given if sent to that shareholder by first-class mail or telegraphic or other written communication to the corporation's principal executive office, or if published at least once in a newspaper of general circulation in the county where that office is located. Notice shall be deemed to have been given at the time when delivered personally or deposited in the mail or sent by telegram or other means of written communication.

2

DPS000008

If any notice addressed to a shareholder at the address of that shareholder appearing on the books of the corporation is returned to the corporation by the United States Postal Service marked to indicate that the United States Postal Service is unable to deliver the notice to the shareholder at that address, all future notices or reports shall be deemed to have been duly given without further mailing if these shall be available to the shareholder on written demand of the shareholder at the principal executive office of the corporation for a period of one year from the date of giving of the notice.

An affidavit of the mailing or other means of giving any notice of any shareholders' meeting shall be executed by the secretary, assistant secretary or any transfer agent of the corporation giving the notice, and shall be filed and maintained in the minute book of the corporation.

Section 6 - Quorum. The presence in person or by proxy of the holders of a majority of the shares entitled to vote at any meeting of shareholders shall constitute a quorum for the transaction of business. The shareholders present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

Section 7 - Adjourned Meeting; Notice. Any shareholders' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of the majority of the shares represented at that meeting, either in person or by proxy, but in the absence of a quorum, no other business may be transacted at that meeting, except as provided in Section 6 of this Article II.

When any meeting of shareholders, either annual or special, is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place are announced at a meeting at which the adjournment is taken, unless a new record date for the adjourned meeting is fixed, or unless the adjournment is for more than forty-five (45) days from the date set for the original meeting, in which case the board of directors shall set a new record date. Notice of any such adjourned meeting shall be given to each shareholder of record entitled to vote at the adjourned meeting in accordance with the provisions of Section 4 and 5 of this Article II. At any adjourned meeting the corporation may transact any business which might have been transacted at the original meeting.

Section 8 - Voting. The shareholders entitled to vote at any meeting of shareholders shall be determined in accordance with the provisions of Section 11 of this Article II, subject to the

3

DPS000009

provisions of Sections 702 to 704, inclusive, of the Corporations Code of California (relating to voting shares held by a fiduciary, in the name of a corporation or in joint ownership). The shareholders' vote may be by voice vote or by ballot; provided, however, that any election for directors must be by ballot if demanded by any shareholder before the voting has begun. On any matter other than elections of directors, any shareholder may vote part of the shares in favor of the proposal and refrain from voting the remaining shares or vote them against the proposal, but, if the shareholder fails to specify the number of shares which the shareholder is voting affirmatively, it will be conclusively presumed that the shareholder's approving vote is with respect to all shares that the shareholder is entitled to vote. If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on any matter (other than the election of directors) shall be the act of the shareholders, unless the vote of a greater number or voting by classes is required by California General Corporation Law or by the articles of incorporation.

At a shareholders' meeting at which directors are to be elected, no shareholder shall be entitled to cumulate votes (i.e., cast for any one or more candidates a number of votes greater than the number of the shareholder's shares) unless the candidates' names have been placed in nomination prior to commencement of the voting and a shareholder has given notice prior to commencement of the voting of the shareholder's intention to cumulate votes. If any shareholder has given such a notice, then every shareholder entitled to vote may cumulate votes for candidates in nomination and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which that shareholder's shares are entitled, or distribute the shareholder's votes on the same principle among any or all of the candidates, as the shareholder thinks fit. The candidates receiving the highest number of votes, up to the number of directors to be elected, shall be elected.

<u>Section 9 - Waiver of Notice or Consent by Absent Shareholders</u>. The transactions at any meeting of shareholders, either annual or special, however called and noticed, and wherever held, shall be as valid as though had at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy, and if, either before or after the meeting, each person entitled to vote, who was not present in person or by proxy, signs a written waiver of notice, a consent to holding of the meeting or an approval of the minutes. The waiver of notice or consent need not specify either the business to be transacted or the purpose of any annual or special meeting of shareholders, except that if action is taken or proposed to be taken for approval of any of those matters specified in the second paragraph of Section 4 of this Article II, the waiver of notice or consent shall state the general nature of the proposal. All such waivers, consents or

4

DPS000010

approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

Attendance by a person at a meeting shall also constitute a waiver of notice of that meeting, except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened, and except that attendance at a meeting is not a waiver of any right to object to the consideration of matters not included in the notice of the meeting if that objection is expressly made at the meeting.

Section 10 - Shareholder Action by Written Consent Without a Meeting.  Any action which may be taken at any annual or special meeting of shareholders may be taken without a meeting and without prior notice, if a consent in writing, setting forth the action so taken, is signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all shares entitled to vote on that action were present and voted.  In the case of election of directors, such a consent shall be effective only if signed by the holders of all outstanding shares entitled to vote for the election of directors; provided, however, that a director may be elected at any time to fill a vacancy on the board of directors that has not been filled by the directors, by the written consent of the holders of a majority of the outstanding shares entitled to vote for the election of directors.  All such consents shall be filed with the secretary of the corporation and shall be maintained in the corporate records.  Any shareholder giving a written consent, or the shareholder's proxy holders, or a transferee of the shares or a personal representative of shareholder or their respective proxy holders, may revoke the consent by a writing received by the secretary of the corporation before written consents of the number of shares required to authorize the proposed action have been filed with the secretary.

If the consents of all shareholders entitled to vote have not been solicited in writing, and if the unanimous written consent of all such shareholders shall not have been received, the secretary shall give prompt notice of the corporate action approved by the shareholders without a meeting.  This notice shall be given in the manner specified in Section 5 of this Article II.  In the case of approval of (i) contracts or transactions in which a director has a direct or indirect financial interest, pursuant to Section 310 of the Corporations Code of California, (ii) indemnification of agents of the corporation, pursuant to Section 317 of that Code, (iii) a reorganization of the corporation pursuant to Section 1201 of that Code, and (iv) a distribution in dissolution other than in accordance with the rights of outstanding preferred shares, pursuant to Section 2007 of that Code, the notice shall be given at least ten (10) days before the consummation of any action authorized by that approval.

5

DPS000011

<u>Section 11 - Record Date for Shareholder Notice, Voting and Giving Consents.</u>   For purposes of determining the shareholders entitled to notice of any meeting or to vote or entitled to give consent to corporate action without a meeting, the board of directors may fix, in advance, a record date, which shall not be more than sixty (60) days nor less than ten (10) days before the date of any such meeting nor more than sixty (60) days before any such action without a meeting, and in this event only shareholders of record on the date so fixed are entitled to notice and to vote or to give consents, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date, except as otherwise provided in the California General Corporation Law.

If the board of directors does not so fix a record date:

(a)   The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the business day next preceding the day on which notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held.

(b)   The record date for determining shareholders entitled to give consent to corporate action in writing without a meeting, (i) when no prior action by the board has been taken, shall be the day on which the first written consent is given, or (ii) when prior action of the board has been taken, shall be at the close of business on the day on which the board adopts the resolution relating to that action, or the sixtieth (60th) day before the date of such other action, whichever is later.

<u>Section 12 - Proxies.</u>   Every person entitled to vote for directors or on any other matter shall have the right to do so either in person or by one or more agents authorized by a written proxy signed by the person and filed with the secretary of the corporation.   A proxy shall be deemed signed if the shareholder's name is placed on the proxy (whether by manual signature, typewriting, telegraphic transmission, or otherwise) by the shareholder or the shareholder's attorney in fact.   A validly executed proxy which does not state that it is irrevocable shall continue in full force and effect unless (i) revoked by the person executing it, before the vote pursuant to that proxy, by a writing delivered to the corporation stating that the proxy is revoked, or by a subsequent proxy executed by, or attendance at the meeting and voting in person by, the person executing the proxy; or (ii) written notice of the death or incapacity of the maker of that proxy is received by the corporation before the vote pursuant to that proxy is counted; provided, however, that no proxy shall be valid after the expiration of eleven (11) months from the date of the proxy, unless otherwise provided in the proxy.   The revocability of a proxy that states on its face that it is

6

DPS000012

irrevocable shall be governed by the provisions of Section 705(e) and 705(f) of the Corporations Code of California.

Section 13 - Inspectors of Election.  Before any meeting of shareholders, the board of directors may appoint any persons other than nominees for office to act as inspectors of election at the meeting or its adjournment.  If no inspectors of election are so appointed, the chairman of the meeting may, and on the request of any shareholder or a shareholder's proxy shall, appoint inspectors of election at the meeting.  The number of inspectors shall be either one (1) or three (3).  If inspectors are appointed either at a meeting on the request of one or more shareholders or proxies, the holders of a majority of shares or their proxies present at the meeting shall determine whether one (1) or three (3) inspectors are to be appointed.  If any person appointed as inspector fails to appear or fails or refuses to act, the chairman of the meeting may, and upon the request of any shareholder or a shareholder's proxy shall, appoint a person to fill that vacancy.

These inspectors shall:

(a)  Determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum and the authenticity, validity and effect of proxies;

(b)  Receive votes, ballots or consents;

(c)  Hear and determine all challenges and questions in any way arising in connection with the right to vote;

(d)  Count and tabulate all votes or consents;

(e)  Determine when the polls shall close;

(f)  Determine the result; and

(g)  Do any other acts that may be proper to conduct the election or vote with fairness to all shareholders.

Section 14 - Validation of Shareholders' Meetings.  The transactions of any meeting of shareholders, however called and noticed, shall be valid as though had at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy, and if, either before or after the meeting, each of the shareholders entitled to vote, not present in person or by proxy, signs a written waiver of notice, or a consent to the holding of such meeting or an approval of the minutes thereof.  All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.  Attendance shall constitute a waiver of notice, unless objection shall be made

DPS000013

as provided in Section 601(e) of the Corporations Code of California.

## ARTICLE III - DIRECTORS

**Section 1 - Powers**.  Subject to the provisions of the California General Corporation law and any limitations in the articles of incorporation and these bylaws relating to action required to be approved by the shareholders or by the outstanding shares, the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board of directors.

**Section 2 - Number and Qualification of Directors**.  The authorized number of directors shall be one (1) until changed by a duly adopted amendment to the articles of incorporation or by an amendment to this bylaw adopted by the vote or written consent of holders of a majority of the outstanding shares entitled to vote. After the issuance of shares, a bylaw specifying or changing a fixed number of directors or the maximum or minimum number or changing from a fixed to a variable board or vice versa may only be adopted by approval of the outstanding shares; provided, however, that a bylaw or amendment of the articles reducing the fixed number or the minimum number of directors to a number less than five cannot be adopted if the votes cast against its adoption at the meeting or the shares not consenting in the case of action by written consent are equal to more than 16-2/3 percent of the outstanding shares entitled to vote.

**Section 3 - Election and Term of Office of Directors**. Directors shall be elected at each annual meeting by the shareholders to hold office until the next annual meeting.  Each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified.

**Section 4 - Vacancies**.  Vacancies in the board of directors may be filled by a majority of the remaining directors, though less than a quorum, or by a sole remaining director, except that a vacancy created by the removal of a director by the vote or written consent of the shareholders or by court order may be filled only by the vote of a majority of the shares entitled to vote represented by a duly held meeting at which a quorum is present, or by the written consent of holders of a majority of the outstanding shares entitled to vote.  Each director so elected shall hold office until the next annual meeting of the shareholders and until a successor has been elected and qualified.

A vacancy or vacancies in the board of directors shall be deemed to exist in the event of the death, resignation, or removal of any director, or if the board of directors by resolution

8

DPS000014

declares vacant the office of a director who has been declared of unsound mind by an order of court or convicted of a felony, or if the authorized number of directors is increased, or if the shareholders fail, at any meeting of shareholders at which any director or directors are elected, to elect the number of directors to be voted for at that meeting.

The shareholders may elect a director or directors at any time to fill any vacancy or vacancies not filled by the directors, but any such election by written consent shall require the consent of a majority of the outstanding shares entitled to vote.

Any director may resign effective on giving written notice to the chairman of the board, the president, the secretary or the board of directors, unless the notice specifies a later time for that resignation to become effective. If the resignation of a director is effective at a future time, the board of directors may elect a successor to take office when the resignation becomes effective.

No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

Section 5 - Place of Meetings and Meetings by Telephone. Regular meetings of the board of directors may be held at any place within or outside the State of California that has been designated from time to time by resolution of the board. In the absence of such a designation, regular meetings shall be held at the principal executive office of the corporation. Special meetings of the board shall be held at any place within or outside the State of California that has been designated in the notice of the meeting or, if not stated in the notice or there is no notice, at the principal executive office of the corporation. Any meeting, regular or special, may be held by conference telephone or similar communication equipment, so long as all directors participating in the meeting can hear one another, and all such directors shall be deemed to be present in person at the meeting.

Section 6 - Annual Meeting. Immediately following each annual meeting of shareholders, the board of directors shall hold a regular meeting for the purpose of organization, any desired election of officers and the transaction of other business. Notice of this meeting shall not be required.

Section 7 - Other Regular Meetings. Other regular meetings of the board of directors shall be held without call at such time as shall from time to time be fixed by the board of directors. Such regular meetings may be held without notice.

Section 8 - Special Meetings. Special meetings of the board of directors for any purpose or purposes may be called at any time

9

by the chairman of the board, the president, any vice president, the secretary or any two directors.

Notice of the time and place of special meetings shall be delivered personally or by telephone to each director or sent by first-class mail or telegram, charges prepaid, addressed to each director at that director's address as it is shown on the records of the corporation. In the event that the notice is mailed, it shall be deposited in the United States mail at least four (4) days before the time of the holding of the meeting. In the event that the notice is delivered personally or by telephone or telegram, it shall be delivered personally or by telephone or to the telegraph company at least forty-eight (48) hours before the time of the holding of the meeting. Any oral notice given personally or by telephone may be communicated either to the director or to a person at the office of the director who the person giving the notice has reason to believe will promptly communicate it to the director. The notice need not specify the purpose of the meeting, or the place of the meeting if the meeting is to be held at the principal executive office of the corporation.

Section 9 - Quorum. A majority of the authorized number of directors shall constitute a quorum for the transaction of business, except to adjourn as provided in Section 11 of this Article III. Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present shall be regarded as the act of the board of directors, subject to the provisions of Section 310 of the Corporations Code of California (as to approval of contracts or transactions in which a director has a direct or indirect material financial interest), Section 311 of that Code (as to appointment of committees) and Section 317(e) of that Code (as to indemnification of agents). A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

Section 10 - Waiver of Notice. The transaction of any meeting of the board of directors, however called and noticed or wherever held, shall be as valid as though had at a meeting duly held after regular call and notice if a quorum is present and if, either before or after the meeting, each of the directors not present signs a written waiver of notice, a consent to holding the meeting or an approval of the minutes. The waiver of notice or consent need not specify the purpose of the meeting. All such waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting. Notice of a meeting shall also be deemed given to any director who attends the meeting without protesting, before or at its commencement, the lack of notice to that director.

DPS000016

Section 11 - Adjournment.  A majority of the directors present, whether or not constituting a quorum, may adjourn any meeting to another time and place.

Section 12 - Notice of Adjournment.  Notice of the time and place of holding an adjourned meeting need not be given, unless the meeting is adjourned for more than twenty-four (24) hours, in which case notice of the time and place shall be given before the time of the adjourned meeting, in the manner specified in Section 8 of this Article III, to the directors who were not present at the time of the adjournment.

Section 13 - Action Without Meeting.  Any action required or permitted to be taken by the board of directors may be taken without a meeting, if all members of the board shall individually or collectively consent in writing to that action.  Such action by written consent shall have the same force and effect as a unanimous vote of the board of directors.  Such written consent or consents shall be filed with the minutes of the proceedings of the board.

Section 14 - Fees and Compensation of Directors.  Directors and members of committees may receive such compensation, if any, for their services, and such reimbursement of expenses, as may be fixed or determined by resolution of the board of directors.  This Section 14 shall not be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, employee or otherwise, and receiving compensation for those services.

ARTICLE IV - COMMITTEES

Section 1 - Committees of Directors.  The board of directors may, by resolution adopted by a majority of the authorized number of directors, designate one or more committees, each consisting of two (2) or more directors, to serve at the pleasure of the board. The board may designate one or more directors as alternate members of any committee, who may replace any absent member at any meeting of the committee.  Any committee, to the extent provided in the resolution of the board, shall have all the authority of the board, except with respect to:

(a)   the approval of any action which, under the General Corporation Law of California, also requires shareholders' approval or approval of the outstanding shares;

(b)   the filling of vacancies on the board of directors or any committee;

(c)   the fixing of compensation of the directors for serving on the board or any committee;

11

(d)   the amendment or repeal of bylaws or the adoption of new bylaws;

(e)   the amendment or repeal of any resolution of the board of directors which by its express terms is not so amendable or repealable;

(f)   a distribution to the shareholders of the corporation, except at a rate or in a periodic amount or within a price range determined by the board of directors;

(g)   the appointment of any other committees of the board of directors or the members of these committees.

<u>Section 2 - Meetings and Action of Committees</u>.  Meetings and action of committees shall be governed by, and held and taken in accordance with, the provisions of Article III of these bylaws, Section 5 (place of meetings), Section 7 (regular meetings), Section 8 (special meetings and notice), Section 9 (quorum), Section 10 (waiver of notice), Section 11 (adjournment), Section 12 (notice of adjournment) and Section 13 (action without meeting), with such changes in the context of those bylaws as are necessary to substitute the committee and its members for the board of directors and its members, except that the time of regular meetings of committees may be determined either by resolution of the board of directors or by resolution of the committee; special meetings of committees may also be called by resolution of the board of directors; and notice of special meetings of committees shall also be given to all alternate members, who shall have the right to attend all meetings of the committee.  The board of directors may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws.


ARTICLE V - OFFICERS

<u>Section 1 - Officers</u>.  The officers of the corporation shall be a president, secretary and chief financial officer.  The corporation may also have, at the discretion of the board of directors, a chairman of the board, one or more vice presidents, one or more assistant secretaries, one or more assistant treasurers and such other officers as may be appointed in accordance with the provisions of Section 3 of this Article V.  Any number of offices may be held by the same person.

<u>Section 2 - Election of Officers</u>.  The officers of the corporation, except such officers as may be appointed in accordance with the provision of Section 3 or Section 5 of this Article V, shall be chosen by the board of directors, and each shall serve at the pleasure of the board, subject to the rights, if any, of an officer under any contract of employment.

12

DPS000018

Section 3 - Subordinate Officers.  The board of directors may appoint, and may empower the president to appoint, such other officers as the business of the corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are provided in the bylaws or as the board of directors may from time to time determine.

Section 4 - Removal and Resignation of Officers.  Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by the board of directors, at any regular or special meeting of the board, or, except in case of an officer chosen by the board of directors, by any officer upon whom such power of removal may be conferred by the board of directors.

Any officer may resign at any time by giving written notice to the corporation.  Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective.  Any resignation is without prejudice to the rights, if any, of the corporation under any contract to which the officer is a party.

Section 5 - Vacancies in Offices.  A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these bylaws for regular appointments to that office.

Section 6 - Chairman of the Board.  The chairman of the board, if such an officer is elected, shall, if present, preside at meetings of the board of directors and exercise and perform such other powers and duties as may be from time to time assigned to him by the board of directors or prescribed by the bylaws.  If there is no president, the chairman of the board shall in addition be the chief executive officer of the corporation and shall have the powers and duties prescribed in Section 7 of this Article V.

Section 7 - President.  Subject to such supervisory powers, if any, as may be given by the board of directors to the chairman of the board, if there be such an officer, the president shall be the chief executive officer of the corporation and shall, subject to the control of the board of directors, have general supervision, direction and control of the business and the officers of the corporation.  He shall preside at all meetings of the shareholders and, in the absence of the chairman of the board, or if there be none, at all meetings of the board of directors.  He shall have the general powers and duties of management usually vested in the office of president of a corporation, and shall have such other powers and duties as may be prescribed by the board of directors or the bylaws.

13

DPS000019

Section 8 - Vice Presidents.  In the absence or disability of the president, the vice presidents, if any, in order of their rank as fixed by the board of directors or, if not ranked, a vice president designated by the board of directors, shall perform all the duties of the president, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the president.  The vice presidents shall have such other powers and perform such other duties as from time to time may be prescribed for each of them, respectively, by the board of directors or the bylaws, and the president or the chairman of the board.

Section 9 - Secretary.  The secretary shall keep or cause to be kept, at the principal executive office or such other place as the board of directors may direct, a book of minutes of all meetings and actions of directors, committees of directors and shareholders, with the time and place of holding, whether regular or special, and, if special, how authorized, the notice given, the names of those present at directors' meetings or committee meetings, the number of shares present or represented at shareholders' meetings, and the proceedings.

The secretary shall keep, or cause to be kept, at the principal executive office or at the office of the corporation's transfer agent or registrar, as determined by resolution of the board of directors, a share register, or a duplicate share register, showing the names of all shareholders and their addresses, the number and classes of shares held by each, the number and date of certificates issued for the same, and the number and date of cancellation of every certificate surrendered for cancellation.

The secretary shall give, or cause to be given, notice of all meetings of the shareholders and of the board of directors required by the bylaws or by law to be given, and shall keep the seal of the corporation, if one be adopted, in safe custody, and shall have such other powers and perform such other duties as may be prescribed by the board of directors or by the bylaws.

Section 10 - Chief Financial Officer.  The chief financial officer shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, retained earnings and shares.  The books of account shall at all reasonable times be open to inspection by any directors.

The chief financial officer shall deposit all moneys and other valuables in the name and to the credit of the corporation with such depositories as may be designated by the board of directors. He shall disburse the funds of the corporation as may be ordered by the board of directors, shall render to the president and

14

directors, whenever they request it, an account of all of his transactions as chief financial officer and of the financial condition of the corporation, and shall have the powers and perform such other duties as may be prescribed by the board of directors or the bylaws.

Section 11 - Excessive Compensation.  If the Internal Revenue Service disallows as a business deduction to the corporation any part of the salary or other compensation paid by it to any officer, director or employee, as being excessive compensation, that part disallowed shall be repaid to the corporation by the officer, director or employee.

ARTICLE VI - INDEMNIFICATION

Section 1 - Indemnification.  The corporation may, at its option, indemnify, defend and hold harmless to the maximum extent permitted by law, each Agent (as defined below) who is or was a party or is threatened to be made a party to or is or was involved (as a party, witness, or otherwise) in or to any proceeding (as defined below), whether or not by or in the right of the corporation, by reason of the fact that such person is or was an Agent of the corporation, whether the basis of the proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent.   Further, pursuant to provisions in the corporation's Articles of Incorporation, the corporation may provide such indemnification and hold harmless in excess of that expressly permitted by Section 317 of the California Corporations Code for any Agent to the fullest extent permitted by applicable law, as such law exists from time to time.

To the fullest extent permitted by law, the indemnification and hold harmless provided herein shall include, but is not limited to, expenses (including attorneys' fees), levies, costs, judgments, liability, loss, amounts paid in settlement, penalties and fines, which were incurred or paid in connection with, related to or arising from any proceeding; and, in the manner provided by law, any such expenses may, at the option of the corporation, be paid by the corporation in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of the Agent to repay such amount if it shall be determined ultimately that the Agent is not entitled to be indemnified.

The indemnification provided herein shall not be deemed to limit the right of the corporation to indemnify any person to the fullest extent permitted by law, nor shall it be deemed exclusive of any other rights to which any Agent seeking indemnification from the corporation may be entitled under any agreement, bylaws, vote of shareholders or disinterested directors or otherwise, both as to action in an official capacity and as to action in another capacity

15

DPS000021

while holding such office. For purposes of this Article, "proceeding" shall mean any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative; and "Agent" shall mean a person, or a person who is the legal representative of a person, who is or was a director, officer, employee, or agent of the corporation or is or was serving at the request of the corporation as a director, officer, employee, trustee, agent or fiduciary of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, or was a director, officer, employee, or agent of a foreign or domestic corporation that was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

The corporation may, to the full extent permitted by law, purchase and maintain insurance on behalf of any Agent against any liability asserted against or incurred by the Agent in such capacity or arising out of the Agent's status as such whether or not the corporation would have the power to indemnify the Agent against such liability under the provisions of applicable law.

## ARTICLE VII - RECORDS AND REPORTS

Section 1 - Maintenance and Inspection of Share Register. The corporation shall keep at its principal executive office, or at the office of its transfer agent or registrar, if either be appointed and as determined by resolution of the board of directors, a record of its shareholders, giving the names and addresses of all shareholders and the number and classes of shares held by each shareholder.

A shareholder or shareholders of the corporation holding at least five percent (5%) in the aggregate of the outstanding voting shares of the corporation may (i) inspect and copy the records of shareholders' names and addresses and shareholdings during usual business hours on five (5) days prior written demand on the corporation, and (ii) obtain from the transfer agent of the corporation, on written demand and on the tender of such shareholders' names and addresses, a list of who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which that list has been compiled or as of a date specified by the shareholder after the date of demand. This list shall be made available to any such shareholder by the transfer agent on or before the later of five (5) days after the demand is received or the date specified in the demand as the date as of which the list is to be compiled. The record of shareholders shall also be open to inspection on the written demand of any shareholder or holder of a voting trust certificate, at any time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate. Any inspection and copying under this

16

DPS000022

Section 1 may be made in person or by an agent or attorney for the shareholder or holder of a voting trust certificate making the demand.

<u>Section 2 - Maintenance and Inspection of Bylaws</u>.  The corporation shall keep at its principal executive office, or if its principal executive office is not in the State of California, at its principal business office in this state, the original or a copy of the bylaws as amended to date, which shall be open to inspection by the shareholders at all reasonable times during office hours. If the principal executive office of the corporation is outside the State of California and the corporation has no principal business office in this state, the Secretary shall, upon the written request of any shareholder, furnish to that shareholder a copy of the bylaws as amended to date.

<u>Section 3 - Maintenance and Inspection of Other Corporate Records</u>.  The accounting books and records and minutes of proceedings of the shareholders and the board of directors and any committee or committees of the board of directors shall be kept at such place or places designated by the board of directors or, in the absence of such designation, at the principal executive office of the corporation. The minutes shall be kept in written form and the accounting books and records shall be kept either in written form or in any other form capable of being converted into written form.  The minutes and accounting books and records shall be open to inspections upon the written demand of any shareholder or holder of a voting trust certificate, at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate.  The inspection may be made in person or by an agent or attorney, and shall include the right to copy and make extracts. These rights of inspection shall extend to the records of each subsidiary corporation of the corporation.

<u>Section 4 - Inspection by Directors</u>.  Every director shall have the absolute right at any reasonable time to inspect all books, records and documents of every kind and the physical properties of the corporation and each of its subsidiary corporations.  This inspection by a director may be made in person or by an agent or attorney and the right of inspection includes the right to copy and make extracts of documents.

<u>Section 5 - Annual Report to Shareholders</u>.  The annual report to shareholders referred to in Section 1501 of the California General Corporation Law is expressly dispensed with, but nothing herein shall be interpreted as prohibiting the board of directors from issuing annual or other periodic reports to the shareholders of the corporation as they consider appropriate.

<u>Section 6 - Financial Statements</u>.  A copy of any annual financial statement and any income statement of the corporation for

17

DPS000023

each quarterly period of each fiscal year, and any accompanying balance sheet of the corporation as of the end of each such period, that has been prepared by the corporation shall be kept on file in the principal executive office of the corporation for twelve (12) months and each such statement shall be exhibited at all reasonable times to any shareholder demanding an examination of any such statement or a copy shall be mailed to any such shareholder.

If a shareholder or shareholders holding at least five percent (5%) of the outstanding shares of any class of stock of the corporation makes a written request to the corporation for an income statement of the corporation for the three-month, six-month or nine-month period of the then current fiscal year ended more than thirty (30) days before the date of the request, and a balance sheet of the corporation as of the end of that period, the chief financial officer shall cause that statement to be prepared, if not already prepared, and shall deliver personally or mail that statement or statements to the person making the request within thirty (30) days after the receipt of the request.   If the corporation has not sent to the shareholder an annual report which is available for the last fiscal year, this report shall likewise be delivered or mailed to the shareholder within thirty (30) days after the request.

The corporation shall also, on the written request of any shareholder, mail to the shareholder a copy of the last annual, semi-annual or quarterly income statement which it has prepared, and a balance sheet as of the end of that period.

The quarterly income statements and balance sheets referred to in this section shall be accompanied by the report, if any, of any independent accountants engaged by the corporation or the certificate of an authorized officer of the corporation that the financial statements were prepared without audit from the books and records of the corporation.

Section 7 - Annual Statement of General Information.  The corporation shall, by the end of the calendar month of the anniversary date of its incorporation each year, file with the Secretary of State of the State of California, on the prescribed form, a statement setting forth the authorized number of directors, the number of any vacancies on the board, the names and complete business or residence addresses of all incumbent directors, the names and complete business or residence addresses of the chief executive officer, secretary and chief financial officer, the street address of its principal executive office, if the principal executive office is not in this state, the principal business office in this state, and the general type of business constituting the principal business activity of the corporation, together with a designation of the agent of the corporation for the purpose of service of process, all in compliance with Section 1502 of the Corporations Code of California.

18

DPS000024

ARTICLE VIII- GENERAL CORPORATE MATTERS

Section 1 - Record Date for Purposes Other Than Notice and Voting. For purposes of determining the shareholders entitled to receive payment of any dividend or other distribution or allotment of any rights or entitled to exercise any rights in respect of any other lawful action (other than action by shareholders by written consent without a meeting), the board of directors may fix, in advance, a record date, which shall not be more than sixty (60) days before any such action, and in that case only shareholders of record on the date so fixed are entitled to receive the dividend, distribution, allotment, rights or authority to exercise the rights, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date so fixed, except as otherwise provided in the California General Corporation Law.

If the board of directors does not so fix a record date, the record date for determining shareholders for any such purpose shall be at the close of business on the day on which the board adopts the applicable resolution or the sixtieth (60th) day before the date of that action, whichever is later.

Section 2 - Checks, Drafts, Evidences of Indebtedness. All checks, drafts or other orders for payment of money, notes or other evidences of indebtedness, issued in the name of or payable to the corporation, shall be signed or endorsed by such person or persons and in such manner as from time to time determined by resolution of the board of directors.

Section 3 - Corporate Contracts and Instruments; How Executed. The board of directors, except as otherwise provided in these bylaws, may authorize any officer or officers, agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation, and this authority may be general or confined to specific instances; and, unless so authorized or ratified by the board of directors or within the agency power of an officer, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

Section 4 - Certificate for Shares. A certificate or certificates for shares of the capital stock of the corporation shall be issued to each shareholder when any of these shares are fully paid, and the board of directors may authorize the issuance of certificates or shares as partly paid provided that these certificates shall state the amount of consideration to be paid for them and the amount paid. All certificates shall be signed in the name of the corporation by the chairman of the board or vice chairman of the board or the president or vice president and by the

19

chief financial officer or an assistant treasurer or the secretary or any assistant secretary, certifying the number of shares and the class or series of shares owned by the shareholder. Any or all of the signatures on the certificate may be facsimile. In the event that any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed on a certificate shall have ceased to be that officer, transfer agent or registrar before that certificate is issued, it may be issued by the corporation with the same effect as if that person were an officer, transfer agent or registrar at the date of issue.

Section 5 - Lost Certificates. Except as provided in this Section 5, no new certificates for shares shall be issued to replace an old certificate unless the latter is surrendered to the corporation and cancelled at the same time. The board of directors may, in case any share certificate or certificate for any other security is lost, stolen or destroyed, authorize the issuance of a replacement certificate on such terms and conditions as the board may require, including provision for indemnification of the corporation secured by a bond or other adequate security sufficient to protect the corporation against any claim that may be made against it, including any expense or liability on account of the alleged loss, theft or destruction of the certificate or the issuance of the replacement certificate.

Section 6 - Representation of Share of Other Corporations. The chairman of the board, the president, any vice president or any other person authorized by resolution of the board of directors or by any of the foregoing designated officers, is authorized to vote on behalf of the corporation any and all shares of any other corporation or corporations, foreign or domestic, standing in the name of the corporation. The authority granted to these officers to vote or represent on behalf of the corporation any and all shares held by the corporation in any other corporation or corporations may be exercised by any of these officers in person or by any person authorized to do so by a proxy duly executed by these officers.

Section 7 - Construction and Definitions. Unless the context requires otherwise, the general provisions, rules of construction and definitions in the California General Corporation law shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular and the term "personal" includes both the corporation and a natural person.


ARTICLE IX - S CORPORATION

Section 1 - S Corporation Status. If at any time the corporation elects to be treated for federal or state tax purposes

20

DPS000026

as an S Corporation, unless such S election has been revoked by the affirmative action of the majority of the shares entitled to vote on such action, the corporation will not, nor be compelled to recognize, for so long as the Corporation's status as an S Corporation continues, any transfer to whom or to which in the opinion of counsel to the corporation could disqualify the corporation as an S Corporation.

## ARTICLE X - AMENDMENTS

Section 1 - Amendment by Shareholders.  New bylaws may be adopted or these bylaws may be amended or repealed by the vote or written consent of holders of a majority of the outstanding shares entitled to vote; provided, however, that if the articles of incorporation of the corporation set forth the number of authorized directors of the corporation, the authorized number of directors may be changed only by an amendment of the articles of incorporation.

Section 2 - Amendment by Directors.  Subject to the rights of the shareholders as provided in Section 1 of this Article X, bylaws other than a bylaw or an amendment of a bylaw changing the authorized number of directors may be adopted, amended or repealed by the board of directors.

DPS000027

# CERTIFICATE OF ADOPTION OF BYLAWS

## OF

## DIGITAL POINT SOLUTIONS, INC.

I, Shawn D. Hogan, hereby certify as follows:

I am the duly elected, qualified and acting Secretary of the above-named corporation; and

The foregoing Bylaws were adopted as the Bylaws of said corporation on May 14, 2007 by the persons appointed as directors of this corporation.

IN WITNESS WHEREOF, I have executed this certificate and affixed the corporate seal hereto on August 8, 2007.

SHAWN D. HOGAN,
Secretary

DPS000028

MEMORANDUM OF RESOLUTIONS

IN LIEU OF THE FIRST MEETING OF

THE SOLE DIRECTOR OF

DIGITAL POINT SOLUTIONS, INC.

The undersigned, the sole director of Digital Point Solutions, Inc., a California corporation (the "Corporation"), hereby adopts the following resolutions without a meeting as authorized by Section 307(b) of the California Corporations Code.

RESOLVED: That all actions of the incorporator, whether pertaining to the affairs of the Corporation, to its incorporation or otherwise, and whether taken before or after incorporation, are hereby ratified and approved.

RESOLVED: That the Corporation shall maintain a minute book containing the minutes of this meeting and of all the subsequent meetings of the directors and shareholders of the Corporation and such other documents as the Corporation, the directors and the shareholders thereof shall from time to time direct.

RESOLVED: That a copy of the Articles of Incorporation of the Corporation, duly certified by the Secretary of State of the State of California, shall be inserted in the minute book of the Corporation, and the contents of said Articles of Incorporation are hereby ratified.

RESOLVED: That the Bylaws presented to and considered by the Board of Directors are adopted as the Bylaws of the Corporation, and the Secretary of the Corporation is ordered to certify a copy of such Bylaws and maintain them in the principal office of the Corporation for the transaction of its business, open for inspection by the shareholders at all reasonable times during office hours; the Secretary is further ordered to certify a copy of such Bylaws and insert them in the minute book of the Corporation.

RESOLVED: That the officers of the Corporation, and each of them, are hereby authorized and directed to prepare and file a Statement of Information with the California Secretary of State at such times as the California Secretary of State requires.

1

DPS000029

RESOLVED: That Shawn D. Hogan is hereby elected as President, Chief Financial Officer (Treasurer), and Secretary of the Corporation.

RESOLVED: That no director of the Corporation shall be compensated for performing services as a director unless so resolved by subsequent action of the shareholders.

RESOLVED: That a corporate seal shown by the impression thereof on the margin of this page, is hereby adopted as the corporate seal of the Corporation.

RESOLVED: That the location of the principal office for the transaction of the business of the Corporation, until changed by subsequent resolution of the directors, shall be 8465 Regents Road, #448, San Diego, California.

RESOLVED: That the Corporation hereby adopts that certain form of share certificate attached hereto as the form of certificate that will be used to evidence ownership of shares of the Corporation.

RESOLVED: That a record of all such certificates issued, transferred or canceled shall be kept by the secretary on the stubs in a stock certificate book, on a share register or by any other reasonable method of accurately keeping such record.

RESOLVED: That the Corporation, pursuant to California Corporations Code section 25102(f) and the intrastate offering exemption under the Securities Act of 1933, as amended (the "Act"), issue 1,000 shares of its common stock to Shawn D. Hogan, in consideration of computer servers with an aggregate fair market value of $108,000, a Hummer H2 with a fair market value of $64,000.00, and cash in the amount of $1,000.00.

WHEREAS: California Corporations Code Section 25102(f) reads as follows:

"The following transactions are exempted from the provisions of Section 25110:

Nonpublic Offerings and
Sales of Any Security

(f) Any offer or sale of any security in a transaction (other than an offer or sale to a pension or profit-sharing trust of the issuer) which meets each of the following criteria:

2

(1) Sales of the security are not made to more than 35 persons, including persons not in this state.

(2) All purchasers either have a pre-existing personal or business relationship with the offeror or any of its partners, officers, directors or controlling persons, or by reason of their business or financial experience or their professional advisors who are unaffiliated with and who are not compensated by the issuer or any affiliate or selling agent of the issuer, directly or indirectly, could be reasonably assumed to have the capacity to protect their own interests in connection with the transaction.

(3) Each purchaser represents that the purchaser is purchasing for the purchaser's own account (or a trust account if the purchaser is a trustee) and not with a view to or for sale in connection with any distribution of the security.

(4) The offer and sale of the security is not accomplished by the publication of any advertisement. The number of purchasers referred to above is exclusive of any described in subdivision (i), any officer, director or affiliate of the issuer and any other purchaser who the commissioner designates by rule. For purposes of this section, a husband and wife (together with any custodian or trustee acting for the account of their minor children) are counted as one person and a partnership, corporation or other organization which was not specifically formed for the purpose of purchasing the security offered in reliance upon this exemption, is counted as one person. The commissioner may by rule require the issuer to file a notice of transactions under this subdivision; provided, however, that the failure to file the notice or the failure to file the notice within the time specified by the rule of the commissioner shall not affect the availability of this exemption. An issuer who fails to file the notice as provided by rule of the commissioner shall, within 15 business days after demand by the commissioner, file the notice and pay to the commissioner a fee equal to the fee

3

DPS000031

payable had the transaction been qualified under Section 25110."

RESOLVED: That on receipt by the Corporation of the consideration to be paid for its shares, the officers of the Corporation are directed to issue to Shawn D. Hogan 1,000 shares of common stock of the Corporation.

RESOLVED: That the issuance of shares of capital stock by the Corporation is intended to qualify under the provisions of Section 1244 of the Internal Revenue Code of 1986, as amended.

RESOLVED: That any one or more officers of the Corporation are hereby authorized and directed to establish one or more bank accounts for and in the name of the Corporation, with one or more recognized banking institutions; that there is hereby adopted as part of this resolution as though fully set forth herein the form of corporate resolutions and agreements as required by such bank, or banks, in establishing such banking relationship; that on the insertion in the minute book of the Corporation of the form of resolutions and agreements as so required, their incorporation herein shall thereby be completed; and that until further order of the Board of Directors of the Corporation, withdrawals may be made from such bank accounts on the signatures of the President, Chief Financial Officer or Secretary.

RESOLVED: That the Corporation elects to be taxed as an S Corporation (a small business corporation) under the Internal Revenue Code of 1986, as amended, and the California Revenue and Taxation Code, as amended.

RESOLVED: That the officers of the Corporation are authorized and directed to prepare, execute, and file or cause to be filed, Internal Revenue Service Form 2553 and California FTB Form 3560, together with a statement by each shareholder consenting to the S Corporation election, and to do all other acts that may be required to make the election effective.

RESOLVED: That the President, Secretary and Chief Financial Officer of the Corporation are authorized and directed to cause the Corporation from its own funds to pay the expense of incorporation and organization of the Corporation.

RESOLVED: That the Corporation adopt an accounting year ending December 31.

4

DPS000032

RESOLVED: That the officers and directors of the Corporation are hereby authorized as may be required from time to time, to make such filings with governmental agencies, to pay such filing fees as may be necessary, to conduct the business of the Corporation, and to protect the rights of the Corporation to do business in any state in which it is qualified to do so.

The undersigned, the sole director of Digital Point Solutions, Inc., hereby executes this Memorandum of Resolutions effective as of May 14, 2007.

SHAWN D. HOGAN

5

DPS000033

## ACTION BY INCORPORATOR

Pursuant to Section 210 of the California General Corporation Law, the undersigned, Eric I. Weitzen, certifies that:

1.   The undersigned is the incorporator named in the Articles of Incorporation of Digital Point Solutions, Inc., a California corporation (the "Corporation"), which were filed on May 14, 2007 in the office of the Secretary of State of the State of California.

2.   Shawn D. Hogan is hereby elected to serve as the sole director of the Corporation until the next annual meeting of the shareholder of the Corporation and until a successor is duly elected and qualified.

3.   The incorporator hereby resigns as incorporator.

IN WITNESS WHEREOF, the undersigned has executed the foregoing Action by Incorporator effective as of May 14, 2007.

ERIC I. WEITZEN,
Incorporator

## PURCHASER REPRESENTATION

A.    The undersigned, constituting a purchaser of 1,000 common shares of Digital Point Solutions, Inc. (the "Corporation"), is purchasing the shares for his own account and not with a view to or for sale in connection with any distribution of the security.

B.    The undersigned is a bona fide resident and domiciliary, not a temporary transient resident, of and has his principal residence in the State of California, and does not have any present intention of moving his principal residence from California.

C.    The undersigned is an officer and director of the Corporation and could be reasonably assumed to have the capacity to protect his interests in connection with this transaction.

D.    The undersigned understands that applicable federal securities regulations require that during the period in which the stock is being offered and sold by the Corporation, and for a period of nine (9) months from the date of the last sale by the Corporation of such stock, all resales by any person shall be made only to persons resident within California.

E.    The undersigned acknowledges that the share certificates shall bear a restrictive legend stating that the shares have not been registered or qualified under the Securities Act of 1933 or the securities or blue sky laws of California or any other state, and may be offered and sold only if registered and qualified pursuant to the relevant provisions of federal and state securities or blue sky laws or if an exemption from such registration or qualification is applicable.  Such restrictive legend will be noted in the Corporation's stock records.

Date:   May 14, 2007

SHAWN D. HOGAN

DPS000035

## STOCK TRANSFER LEDGER

| NAME OF STOCKHOLDER | PLACE OF RESIDENCE | DATE BECAME OWNER | FROM WHOM SHARES WERE TRANSFERRED (IF ORIGINAL ISSUE, ENTER AS SUCH) | CERTIFICATES ISSUED | | CERTIFICATES SURRENDERED | | AMOUNT PAID THEREON | BALANCE SHARES HELD | DATE OF TRANSFER | TO WHOM TRANSFERRED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | NOS. | NO. OF SHARES | NOS. | NO. OF SHARES | | | | |
| Shawn D. Hogan | California | 5/18/00 | orig issue | 1 | 1,000 | | | | | 11/26/07 | Shawn D. Hogan Trustee |
| Shawn D. Hogan, Trustee of the Shawn D. Hogan Trust | California | 11/26/07 | Shawn D. Hogan | 2 | 1,000 | 1 | 1,000 | | | | |

DPS000036



## STOCK ASSIGNMENT SEPARATE FROM CERTIFICATE

For no consideration, the undersigned hereby assigns and transfers unto SHAWN D. HOGAN, Trustee of the SHAWN D. HOGAN TRUST, dated November 26, 2007, 1,000 shares of the common stock of Digital Point Solutions, Inc., a California corporation (the "Corporation"), represented by share certificate number 1 of the Corporation.

The undersigned hereby irrevocably constitutes and appoints Eric I. Weitzen Attorney to transfer such stock on the books of the Corporation with full power of substitution in the premises.

Dated:  November 26, 2007

SHAWN D. HOGAN

In the Presence of:



INCORPORATED UNDER THE LAWS

OF THE STATE OF CALIFORNIA

*No.* ___2___

May 14, 2007

1,000 ___*Shares*___

# DIGITAL POINT SOLUTIONS, INC.

Authorized Capital Stock: 1,000,000 Common Shares

*This Certifies that* Shawn D. Hogan, Trustee of the Shawn D. Hogan Trust, dated November 26, 2007 *is the record holder of* one thousand _____ *Shares transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed or assigned.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed this* 26th *day of* November *A.D.* 2007

Shawn D. Hogan
Secretary

Shawn D. Hogan
President

BILL OF SALE

The undersigned, for valuable consideration received, hereby sells, assigns, and transfers to DIGITAL POINT SOLUTIONS, INC., a California corporation, the following assets: computer servers and a 2007 Hummer H2.

May 19, 2007

SHAWN D. HOGAN

DPS000040

2998539



## State of California
## Secretary of State

**[S]**

07-389158

### STATEMENT OF INFORMATION
(Domestic Stock Corporation)

TV

| FEES (Filing and Disclosure): $25.00. If amendment, see instructions. |
|---|
| **IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM** |

**ENDORSED - FILED**
In the office of the Secretary of State
of the State of California

**AUG 1 3 2007**



This Space For Filing Use Only

1.  CORPORATE NAME (Please do not alter if name is preprinted.)

    DIGITAL POINT SOLUTIONS, INC.

| DUE DATE: | **AUGUST 14, 2007** |
|---|---|

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code section 1502.1)

A publicly traded corporation must file with the Secretary of State a Corporate Disclosure Statement (Form SI-PT) annually, within 150 days after the end of its fiscal year. Please see reverse for additional information regarding publicly traded corporations.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| 2. | STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | | ZIP CODE |
|---|---|---|---|---|
| | 8465 Regents Road #448 | San Diego, CA | | 92122 |
| 3. | STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
| | | | CA | |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 4. | CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|---|
| | Shawn D. Hogan | same as above | | |
| 5. | SECRETARY/ | ADDRESS | CITY AND STATE | ZIP CODE |
| | Shawn D. Hogan | same as above | | |
| 6. | CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
| | Shawn D. Hogan | same as above | | |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

| 7. | NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|---|
| | Shawn D. Hogan | same as above | | |
| 8. | NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | | |
| 9. | NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | | |

10. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY: None

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 12 must be completed with a California address. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 12 must be left blank.)

| 11. | NAME OF AGENT FOR SERVICE OF PROCESS |
|---|---|
| | Shawn D. Hogan |

| 12. | ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| | 8465 Regents Road #448 | San Diego | CA | 92122 |

**TYPE OF BUSINESS**

13. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
    software development

14. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| Shawn D. Hogan | _Sh_____ | President | 8-8-07 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

| SI-200 C (REV 03/2007) | | APPROVED BY SECRETARY OF STATE |
|---|---|---|

DPS000041