eBay Inc. v. Digital Point Solutions, Inc. et al Doc. 136
Case5:08-cv-04052-JF Document136 Filed10/15/09 Page1 of 32

Stewart H. Foreman (CSB #61149)
Daniel T. Bernhard (CSB #104229)
Cathleen S. Yonahara (CSB #203802)
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone: (415) 541-0200
Facsimile: (415) 495-4332
Email: foreman@freelandlaw.com
bernhard@freelandlaw.com
yonahara@freelandlaw.com

Attorneys for Defendants Todd Dunning and Dunning Enterprise, Inc.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EBAY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DIGITAL POINT SOLUTIONS, INC., SHAWN HOGAN, KESSLER'S FLYING CIRCUS, THUNDERWOOD HOLDINGS, INC., TODD DUNNING, DUNNING ENTERPRISE, INC., BRIAN DUNNING, BRIANDUNNING.COM, and DOES 1-20,<br><br>Defendants. | CASE NO.: CV-08-4052 JF<br><br>**DECLARATION OF TODD DUNNING IN SUPPORT OF DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC.'S MOTION TO STAY ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS**<br><br>Date: November 20, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br><br>Hon. Jeremy Fogel presiding |

1

DECLARATION OF TODD DUNNING ISO OF DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC.'S MOTION TO STAY ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS, CASE NO.: CV-08-4052 JF

{00129799-2}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

Dockets.Justia.com

Case5:08-cv-04052-JF Document136 Filed10/15/09 Page2 of 32

I, TODD DUNNING, declare as follows:

1. I am an individual over the age of eighteen, and am a named defendant in the above-referenced civil action commenced by e-Bay, Inc. ("Plaintiff"). I have personal knowledge of the facts set forth herein and I am competent to testify to these facts.

2. I was a general partner in Kessler's Flying Circus ("KFC") until December 27, 2006. Thereafter, Dunning Enterprise, Inc. ("DEI") became a general partner in my place. My wife and I are the only shareholders and officers of DEI. DEI was not involved in the operations of KFC, but only held an ownership interest as a general partner. My wife was not involved in DEI in its role as a general partner in KFC. After December 27, 2006, the partners of KFC were DEI and my brother Brian Dunning's company, Thunderwood Holdings, Inc.

3. KFC filed a federal partnership tax return in 2007 and provided Form K-1s to the partners who were Thunderwood Holdings, Inc. and DEI. KFC stated in its partnership tax return that its business address was 15 High Bluff, Laguna Niguel, California 92677, which is also Brian Dunning's home address. DEI has never had any documents relating to KFC's business.

4. Plaintiff eBay, Inc. commenced this action on August 25, 2008, and filed its Second Amended Complaint ("SAC") on March 26, 2009. A true and correct copy of Plaintiff's Second Amended Complaint is attached hereto and incorporated by reference as Exhibit A.

5. On June 18, 2007, the Federal Bureau of Investigation ("FBI") conducted an interview of me at my personal residence located in Aliso Viejo, California, regarding the topics referenced in Plaintiff's Second Amended Complaint. The FBI was interested in issues such as "forcing cookies," "forcing clicks," "inflating traffic", the function of "links" and "widgets," and the direction of internet traffic to the eBay website through KFC's services relating to Commission Junction, Inc. and eBay. The FBI did not request or receive any documents during this interview.

6. I also understand that the FBI served a search warrant on my brother, Brian Dunning, at which time they seized, itemized, and removed all computer equipment in his home including all computers, disk drives, hard drives, cell phones and servers. I also have been informed in the course of this litigation that the FBI seized electronically-stored documents at Rackspace US, Inc. I have been informed that these seized items contained, among other things, all the business records and

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

2

DECLARATION OF TODD DUNNING ISO OF DEFENDANTS TODD DUNNING AND DUNNING ENTERPRISE, INC.'S MOTION TO STAY ACTION PENDING RESOLUTION OF CRIMINAL PROCEEDINGS, CASE NO.: CV-08-4052 JF

{00129799-2}

other documents of KFC, although I do not know from my personal knowledge the contents or ownership of the seized documents. I have been informed in the course of this litigation that I am not authorized to access records stored at Rackspace US, Inc.

7. All business records and other documents of KFC were maintained at its principal place of business which was Brian Dunning's home. I did not independently maintain any business records of KFC and do not have possession, custody or control of such documents. I have been informed that all business records and other documents of KFC were seized by the FBI from Brian Dunning's home or from Rackspace US, Inc. I do not have possession, custody or control of any records seized by the FBI, and I do not have copies of the records seized. Other than the documents that have already been produced to eBay in this case, neither DEI nor I have possession, custody or control of any business records or other documents, in hard copy or electronic form, of KFC.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 15 day of October, 2009, at Aliso Viejo, California.

TODD DUNNING

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

# EXHIBIT "A"

DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
SHARON M. BUNZEL (S.B. #181609)
sbunzel@omm.com
COLLEEN M. KENNEDY (S.B. #227107)
ckennedy@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Plaintiff eBay Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

EBAY INC.,

Plaintiff,

v.

DIGITAL POINT SOLUTIONS, INC., SHAWN HOGAN, KESSLER'S FLYING CIRCUS, THUNDERWOOD HOLDINGS, INC., TODD DUNNING, DUNNING ENTERPISE, INC., BRIAN DUNNING, BRIANDUNNING.COM, and DOES 1 - 10 and 12 - 20,

Defendants.

Case No. CV 08-4052 JF (PVT)

**SECOND AMENDED COMPLAINT FOR**

**(1) Violations of 18 U.S.C. § 1030**
**(2) Violations of 18 U.S.C. § 1962(c)**
**(3) Fraud**
**(4) Violations of California Pen. Code § 502**
**(5) Restitution and Unjust Enrichment**
**(6) California B&P Code § 17200;**

**DEMAND FOR JURY TRIAL**

For its Second Amended Complaint, Plaintiff eBay Inc. alleges as set forth below. The factual allegations set forth herein have evidentiary support or, to the extent they are contained in a paragraph made on information and belief, likely will have evidentiary support after a reasonable opportunity for further investigation or discovery.

**PARTIES**

1. At all times relevant herein, Plaintiff eBay Inc. ("eBay") was a corporation

organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California.

2. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant Digital Point Solutions, Inc. ("Digital Point Solutions") was a California corporation, sole proprietorship or other business entity, doing business in the State of California. At various times relevant herein, Defendant Digital Point Solutions may also have been known as and/or done business as "Data Point Solutions," "Digital Point Solutions," and/or "Digital Point." Digital Point Solutions has succeeded to the obligations and liabilities of any and all of such predecessor entities. At all times relevant herein, Defendant Digital Point Solutions represented itself and held itself out to eBay as an independent business entity with legal status separate from that of its individual owner(s).

3. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant Shawn Hogan was an individual residing and doing business in the State of California and was the sole owner and/or sole proprietor of Defendant Digital Point Solutions in any and all of its incarnations.

4. Defendants Digital Point Solutions and Shawn Hogan will be collectively referred to herein as "DPS."

5. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant Kessler's Flying Circus was a California general partnership doing business in the State of California.

6. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant Thunderwood Holdings, Inc. was a California corporation and was a general partner of Defendant Kessler's Flying Circus.

7. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant Brian Dunning was an individual residing and doing business in the State of California and was the sole owner of Defendant Thunderwood Holdings, Inc.

8. eBay is informed and believes and, on that basis, alleges that at all times

relevant herein Dunning Enterprise, Inc., previously substituted for the fictitiously named defendant Doe 11, was a California corporation doing business in the State of California and was a general partner of Defendant Kessler's Flying Circus.

9. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant Todd Dunning was an individual residing and doing business in the State of California and was either a general partner of Defendant Kessler's Flying Circus or held a controlling interest in Dunning Enterprise, Inc., which was a general partner of Defendant Kessler's Flying Circus.

10. eBay is informed and believes and, on that basis, alleges that at all times relevant herein Defendant BrianDunning.com was a website and/or business entity through which Defendants Brian Dunning and/or Todd Dunning committed some or all of the acts alleged herein.

11. Defendants Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc., BrianDunning.com, Brian Dunning, and Todd Dunning will be collectively referred to herein as "KFC."

12. eBay is ignorant of the true names and capacities of defendants sued herein as Does 1 through 10 and 12 through 20, inclusive, and therefore sues said defendants by such fictitious names. eBay will amend this complaint to allege the true names and capacities of said defendants when they are ascertained. eBay is informed and believes and, on that basis, alleges that each of the fictitiously named defendants is responsible in some manner to pay the obligations described herein, and that eBay's losses as alleged herein were proximately caused by said defendants' conduct.

13. Unless otherwise specified, DPS, KFC and Does 1-10 and 12-20 will be referred to collectively herein as "Defendants."

**JURISDICTION AND VENUE**

14. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

15. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1),

1391(b)(2) and 1391(c), and 18 U.S.C. § 1965(a).

16. Pursuant to the User Agreements entered into by DPS and KFC, as discussed in paragraph 26 *infra*, they have consented to the jurisdiction of and venue in the Northern District of California. Specifically, under the User Agreements, the Defendants have agreed that any claim or controversy at law or equity that arises out of this Agreement or eBay's services must be resolved by a court located in Santa Clara County, California.

**INTRADISTRICT ASSIGNMENT**

17. Assignment to the San Jose Division is proper pursuant to Local Rules 3-2(c) and (e) because a substantial part of the events or omissions that give rise to eBay's claim occurred in San Jose, Santa Clara County, California. eBay's corporate headquarters are located in San Jose, Santa Clara County, California, and Defendants' wrongful actions were specifically and purposefully directed at and intended to affect eBay in San Jose, Santa Clara County, California as discussed in detail below.

**GENERAL ALLEGATIONS**

eBay's Affiliate Marketing Program

18. eBay offers to the public an online marketplace that enables trade on a local, national and international basis. Through eBay's website, sellers may list items for sale and buyers may bid on and purchase items of interest. eBay earns revenue when a seller places an item for sale and when the item is sold. eBay may also earn revenue depending on various features selected by the seller, *e.g.*, listing upgrades and photo displays.

19. eBay's Affiliate Marketing Program is designed to increase traffic to eBay's website through the placement of advertisements for eBay on third-party websites. eBay seeks to increase traffic to its site so that more people will be exposed to eBay's service and begin using eBay to buy or sell goods, thereby generating revenue for eBay. The persons and entities that advertise on behalf of eBay—whether on their own sites or on sites of other third parties—are known as "affiliates." eBay's Affiliate Marketing Program is intended to compensate affiliates only when the advertisement in question

causes a user to take some action at eBay's site that directly provides revenue to eBay or indicates that the new user is likely to take such an action in the future. Accordingly, affiliates earn commissions payable by eBay under the Affiliate Marketing Program when the following sequence of events occurs: (1) the affiliate publishes an eBay advertisement, (2) a user clicks on the eBay advertisement and is directed to eBay's website (the "Referred Visit"), and (3) that user subsequently engages in a commission-generating event (a "Revenue Action"). Revenue Actions, include, by way of example: (1) becoming a new, registered user of eBay within 30 days of the Referred Visit, or (2) purchasing an item from a third-party seller on eBay within seven days of the Referred Visit. Because compensation to the affiliate is tied to actions by the user, it is essential that eBay be able to determine whether a Revenue Action occurred by virtue of the fact that the user was referred to eBay by a particular affiliate's advertisement. eBay and/or Commission Junction, Inc. ("CJ") tracks this information using information placed in the new user's browser, as discussed below.

20. At all relevant times, eBay used the services of CJ, a subsidiary of ValueClick, Inc., in administering the Affiliate Marketing Program. The relationship between eBay and CJ was governed at all relevant times by various Advertiser Service Agreements. Under those agreements, CJ was responsible for, among other things, recruiting affiliates, tracking affiliate traffic, monitoring compliance by affiliates, preventing and detecting fraudulent activity, and paying affiliates using funds remitted by eBay.

21. eBay's obligation to pay commissions is tracked by matching a user's Revenue Actions on eBay's site to the affiliate that directed the user to eBay. This tracking is accomplished through the use of a digital tag called a "cookie" that is stored in the user's web browser. Cookies are collections of data commonly used by websites to store and associate useful information with a given user. Cookies typically store information such as usernames, passwords, and user preferences for a particular user; that information makes it more efficient for users to access web pages and provides a means

for websites to track and authenticate users. Cookies are placed or "dropped" in a user's browser by a website when that user visits the website.

22. In the case of eBay's Affiliate Marketing Program, cookies are used to confirm that a user was directed to eBay from a specific affiliate. When a user clicks on an affiliate advertisement and is directed to eBay's site, eBay's site drops a cookie on the user's computer. That cookie identifies the site that referred the user to eBay and/or the specific affiliate responsible for directing the traffic to eBay. If the user later engages in a Revenue Action within the specified time period, eBay and/or CJ determines—based on the data in the cookie—which affiliate, if any, should be credited with the referral and receive the commission. If cookies from multiple affiliates are present on the user's computer, the affiliate identified in the most recent cookie dropped is credited with the Revenue Action. If there is no qualifying cookie on the computer, then no affiliate is credited. A substantial number of the Revenue Actions taken at eBay's site are taken by users who were not referred to eBay by any affiliate; consequently, no commission is owed for those actions.

23. As part of the services it renders with respect to eBay's Affiliate Marketing Program, CJ pays affiliates on a periodic basis (usually monthly), with funds remitted by eBay, based on the number of Revenue Actions taken by users referred by those affiliates.

The Fraudulent "Cookie Stuffing" Schemes

24. "Cookie stuffing" is a term used to describe the forced placement of a cookie on a computer, typically by causing a cookie from a particular website to be placed on the user's computer without the user knowing that he or she visited the website that placed the cookie. DPS and KFC engaged in cookie stuffing intended to defraud eBay. The allegations made on eBay's information and belief set forth in paragraphs 25-34, 37-41, and 47-60 below describing Defendants' cookie stuffing schemes are based on eBay's analysis of the Defendants' websites and/or technology and the way in which a user's web browser interacts with Defendants' sites and/or technology, and on eBay's analysis of historical data relating to traffic purportedly driven to eBay by Defendants. Certain other

details regarding Defendants' cookie stuffing schemes are exclusively within Defendants' control.

25. eBay is informed and believes and, on that basis, alleges that DPS and KFC each accomplished their cookie stuffing through software programs and/or code that, unbeknownst to the user, redirected the user's computer to the eBay website without the user actually clicking on an eBay advertisement link, or even becoming aware that they had left the page they were previously viewing. As a result, the eBay site would be prompted to drop an eBay cookie on the user's computer even though the user never clicked on an eBay advertisement or even realized that their computer had ever visited the eBay site. DPS and KFC stuffed a large number of Internet users, with the expectation and intention that some subset of those users would later come to eBay and take a Revenue Action.

26. eBay is informed and believes and, on that basis, alleges that the software programs utilized by each of DPS and KFC caused the user's computer to access eBay's computers in an unauthorized way and/or to exceed the authorized access to eBay's computers. Because DPS and KFC caused this access through and without the knowledge or active participation of those users, the access of any such user's computer to eBay's site is attributable to DPS and KFC. The only authorization given to the Defendants to access eBay's site in any manner was by way of eBay's User Agreement. The User Agreement was explicitly agreed to by the individual Defendants when they became registered eBay users on the following dates: Shawn Hogan on May 17, 1999; Brian Dunning on November 10, 2000; and Todd Dunning on May, 21, 2003. The remaining named Defendants, Digital Point Solutions, Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc. and BrianDunning.com, were on constructive and/or actual notice that the User Agreement governed their access to eBay's website, based on the explicit agreement of their owners/principals to the terms of the User Agreement, as well as eBay's display on its website at all relevant times of the statement that use of the website constitutes acceptance of the User Agreement. Defendants' access to eBay was

unauthorized by, and violated, the terms of the User Agreement because it occurred solely to force the dropping of the eBay cookie and thereby wrongfully access eBay's computer servers. Each of the causes of action set forth herein arises out of those violations of the User Agreement.

27. eBay is informed and believes and, on that basis, alleges that once the cookie was stuffed on the user's computer by one or more of the Defendants, any future Revenue Actions initiated by that user when the user later visited eBay intentionally, and not as a result of any advertisement placed by Defendants, appeared to be eligible for commissions payable to one of the Defendants (provided those actions took place within the prescribed periods of time). Hence DPS or KFC would receive payment for actions by users who had not been referred to eBay by Defendants' advertisements, thereby injuring eBay.

28. eBay is informed and believes and, on that basis, alleges that after DPS and KFC independently began their cookie stuffing schemes, they communicated with each other regarding those cookie stuffing schemes. Those communications between DPS and KFC included, but were not limited to attempts by KFC to improve its software and/or otherwise improve the effectiveness of its cookie stuffing scheme in order to increase the amount of commissions that KFC could fraudulently obtain from eBay, as well as efforts by DPS to prevent detection of the DPS cookie stuffing scheme by eBay.

29. eBay is informed and believes and, on that basis, alleges that DPS and KFC used certain technological measures to prevent eBay from discovering their wrongdoing. At certain relevant times DPS and KFC used technology or technologies that would stuff cookies on only those computers that had not been previously stuffed by that Defendant. The purpose of this action was to avoid discovery by eBay and/or CJ of evidence of stuffing—e.g., by directly observing repeated stuffing to a test computer, by discovering that a single user had multiple cookies pointing to the same affiliate or by discovering that there was an abnormal ratio of cookies placed by DPS and KFC to the Revenue Actions

attributable to users referred by DPS and KFC—and thereby conceal the schemes from eBay's and/or CJ's monitoring activities. In addition, at certain relevant times DPS and/or KFC used technology that would avoid stuffing cookies on computers that appeared to be geographically located in San Jose, California (the location of eBay's headquarters) or Santa Barbara, California (the location of CJ's headquarters). The purpose of this action was to evade efforts by eBay and/or CJ to detect the cookie stuffing mechanism if they attempted to observe the wrongdoing from their normal places of business.

30. eBay is informed and believes and, on that basis, alleges that DPS also used at least one additional technological measure to conceal its wrongdoing: DPS used images placed on web pages to effectuate its cookie stuffing scheme, and caused those images to be so small that they were effectively invisible to the user and, accordingly, difficult to detect.

31. eBay is informed and believes and, on that basis, alleges that KFC also used at least one additional technological measure to conceal its wrongdoing: KFC used JavaScript code contained in web pages to effectuate its cookie stuffing scheme, and purposefully obscured the purpose and effect of that code so that, even when that code was discovered, it was difficult to determine its actual effect. This caused KFC's cookie stuffing to be difficult to detect, whether by human or machine efforts.

32. eBay is informed and believes and, on that basis, alleges that in addition to these technological measures, DPS and KFC each actively sought to prevent detection by eBay and CJ by explicitly denying to eBay and/or CJ that any wrongdoing had occurred. For example, when Shawn Hogan was contacted by CJ in connection with suspicions of cookie stuffing by DPS, he attributed the suspicious activity to "coding errors," which he later purported to have "corrected." Brian Dunning also gave false information to eBay in response to questions about unusual activity regarding his account. Additional false statements intended to conceal the cookie stuffing activity are set forth below in paragraph 60 and are incorporated herein.

33. As a result of the cookie stuffing schemes employed by DPS and KFC, DPS

Case 5:08-cv-04052-JF Document 68 Filed 03/26/2009 Page 10 of 28

and KFC accessed eBay's servers millions of times in an unauthorized manner that violated the User Agreement and interfered with the proper working of those computers. The majority of those acts of unauthorized access did not cause the improper payment of a commission and did not involve the performance by CJ of any obligations under any contract it had with any of the parties to this action. A minority, but economically significant, of those acts of unauthorized access caused eBay to pay commissions (via CJ) to each of DPS and KFC for a substantial number of Revenue Actions that were in no way related to the legitimate referral of any user by either DPS's or KFC's advertisements and for which neither DPS nor KFC were due compensation.

34. On January 4, 2008, CJ filed an action against Defendants Kessler's Flying Circus, Brian Dunning and Todd Dunning for breach of contract and other claims based on KFC's cookie stuffing scheme perpetrated against eBay. CJ sought to recoup commissions it had paid to those Defendants for the month of May 2007, after eBay discovered KFC's cookie stuffing scheme and refused to reimburse CJ for the unearned commissions it had paid to those Defendants for the previous month. CJ's action was recently settled on undisclosed terms, and a request for dismissal has been filed. eBay was not a party to CJ's action, and had no opportunity to litigate any issue in the CJ action. eBay does not seek recovery through this litigation of any of the monies sought by CJ through its now-settled litigation against Defendants Kessler's Flying Circus, Brian Dunning and Todd Dunning.

## FIRST CAUSE OF ACTION

### (Violations of 18 U.S.C. § 1030)

35. eBay realleges each and every allegation set forth in Paragraphs 1 through 34, inclusive, and incorporates them by reference herein.

36. Through their cookie stuffing schemes as described above, DPS and KFC each knowingly, intentionally and with intent to defraud accessed eBay's computers without authorization and/or exceeded their authorized access to eBay's computers in order to further their fraudulent schemes.

37. DPS's and KFC's access of eBay's computers was unauthorized because the only purpose of that access was to defraud eBay. In addition, Defendants' access of eBay's computers was unauthorized and/or exceeded their authorized access, because each Defendant was a registered eBay user and/or was bound by the eBay User Agreement in effect at the time, as set forth in paragraph 26 above. The User Agreements that bound each of the Defendants were substantially similar. The User Agreements (a) prohibited the use of any "device, software or routine" to interfere with or attempt to interfere with the proper working of the eBay site or any activities conducted on the eBay site, and (b) required compliance with all applicable laws regarding the use of eBay's servers.

38. The User Agreements were the only basis on which any Defendant had authorization to access eBay's site. No agreement entered into by any Defendant in connection with eBay's Affiliate Marketing Program, including but not limited to any Publisher Service Agreement that may have been entered into between CJ and one or more of Defendants and/or any Terms and Conditions of the Affiliate Marketing Program agreed to by one or more of Defendants, provides for or in any way contemplates such access. The User Agreements therefore govern and control any access to eBay's site, whether authorized or unauthorized, by Defendants. Defendants, through their cookie stuffing schemes, violated those User Agreements by accessing eBay's computers without authorization and/or exceeded the authorized access granted to them by the User Agreements.

39. Upon information and belief, Defendants' access to eBay's computers that was either unauthorized or exceeded the authorization granted by the User Agreements did not always result in a commission being paid to any Defendant (for example, where a user, after having a cookie stuffed on his or her computer by one of Defendants, did not subsequently take any Revenue Action). In other cases, Defendants' access to eBay's computers that was unauthorized or exceeded the authorization granted by the User Agreements resulted in commissions being paid to Defendants for Revenue Actions

initiated by users that Defendants did not refer to eBay, which were in no way related to Defendants' advertisements, and for which Defendants were due no compensation. In both instances, Defendants' access caused harm to eBay's computers and caused damage and loss to eBay within the meaning of 18 U.S.C. § 1030, regardless of whether any commission was later paid to Defendants for any particular act of cookie stuffing.

40. Upon information and belief, through their unauthorized access, Defendants DPS and DOES 1-10 caused harm and damage to eBay's computers including, but not limited to, impairment of the integrity of eBay's data, and caused loss to eBay including, but not limited to, costs incurred by eBay in responding to and conducting an assessment of the damage caused by these Defendants' cookie stuffing scheme. Through their unauthorized access, Defendants DPS and DOES 1-10 also caused damage and loss to eBay as a result of commissions being wrongfully paid to those Defendants. The loss to eBay that resulted from the unauthorized access by Defendants DPS and DOES 1-10 was incurred in each year from at least December 2003 through June 2007, and totaled more than $5,000 in at least the one-month period ending June 30, 2007.

41. Upon information and belief, through their unauthorized access, Defendants KFC and DOES 12-20 caused harm and damage to eBay's computers including, but not limited to, impairment of the integrity of eBay's data, and caused loss to eBay including, but not limited to, costs incurred by eBay in responding to and conducting an assessment of the damage caused by these Defendants' cookie stuffing scheme. Through their unauthorized access, Defendants KFC and DOES 12-20 also caused damage and loss to eBay as a result of commissions being wrongfully paid to those Defendants. The loss to eBay that resulted from the unauthorized access by Defendants KFC and DOES 12-20 was incurred in each year from at least December 2004 through June 2007, and totaled more than $5,000 in at least the one-year period ending in June 2007.

42. eBay's computers are used in interstate and foreign commerce.

43. DPS's and KFC's actions, whether or not they resulted in the payment of any commissions to them, constitute violations of the Computer Fraud and Abuse Act, 18

U.S.C. § 1030, including but not limited to §§ 1030(a)(4), 1030(a)(5)(B) and 1030(a)(5)(C).

44. WHEREFORE, eBay prays for judgment against each of DPS and KFC, as more fully set forth below.

**SECOND CAUSE OF ACTION**

**(Violations of 18 U.S.C. § 1962(c))**

45. eBay realleges each and every allegation set forth in Paragraphs 1 through 44, inclusive, and incorporates them by reference herein.

46. Defendants Shawn Hogan's, Brian Dunning's, and Todd Dunning's unlawful, tortious and otherwise actionable conduct constitutes violations of 18 U.S.C. § 1962(c).

47. Defendant Shawn Hogan and DOES 1-10 (the "Hogan Group") engaged in activities through the company Digital Point Solutions. Digital Point Solutions has been in existence as a business entity since at least 1999. On information and belief, based on information provided on the company's website, from 1999 to the present, Digital Point Solutions has had at least four employees, including owner, President, CEO and Senior Systems Analyst Shawn Hogan, Vice President and Staff Systems Analyst R. Robin Quasebarth, Associate System Analyst Richard L. Crook, and Sales Representative D. Shawn Callahan. On information and belief, based on information provided on the company's website and information provided to an eBay employee by Defendant Shawn Hogan, at various times Digital Point Solutions also had other employees as well as a group of "volunteers" who provided services to Digital Point Solutions. Digital Point Solutions was incorporated on and/or before May 14, 2007. At all times relevant herein, Digital Point Solutions constituted an enterprise under RICO.

48. At all times relevant herein, through Digital Point Solutions, the Hogan Group associated with each other and others for the common purpose of causing millions of computers to access eBay's servers to defraud eBay of commission fees by designing and implementing the cookie stuffing scheme described above. Upon information and

belief, the Hogan Group's activities were ongoing, and Digital Point Solutions functioned as a continuing unit in operating the fraudulent cookie stuffing scheme from approximately December 2003 through June 2007.

49. Defendants Brian Dunning, Todd Dunning and DOES 12-20 (the "Dunning Group") engaged in activities through the companies Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc., and BrianDunning.com, and each company constitutes a RICO enterprise. Through Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc., and BrianDunning.com, the Dunning Group associated with each other and others for the common purpose of defrauding eBay of commission fees by designing and implementing the cookie stuffing scheme described above. Upon information and belief, the Dunning Group's activities were ongoing, and Kessler's Flying Circus, Thunderwood Holdings, Inc., Dunning Enterprise, Inc. and BrianDunning.com functioned individually, and with each other, as continuing units in operating the fraudulent cookie stuffing scheme from approximately December 2004 through June 2007.

50. The members of the Hogan Group and Dunning Group each committed multiple violations of the predicate act of mail and wire fraud, 18 U.S.C. § 1343, both through their cookie stuffing schemes and through communications with eBay and Commission Junction designed to fraudulently conceal those schemes.

51. As described in Paragraphs 25-33 above, schemes to defraud eBay existed by which the members of the Hogan Group and Dunning Group each stuffed eBay cookies onto computers for the purpose of defrauding eBay of commission fees due only for legitimate Revenue Actions associated with a given affiliate. The members of the Hogan Group and Dunning Group each participated in these schemes with the specific intent to defraud eBay. Use of the Internet was essential to the schemes: the members of the Hogan Group and Dunning Group stuffed a cookie onto a computer when a user was browsing the Internet, and the stuffed cookie was later read and recognized when that Internet user accessed eBay's website on the Internet and either registered with the site,

purchased an item or engaged in some other Revenue Action. The members of the Hogan Group and Dunning Group each, by use of their technologies, caused users' web browsers to convey a representation by the Hogan Group and/or the Dunning Group to eBay that the user had accessed the eBay website via an advertisement placed by either DPS or KFC, when in fact, a substantial portion of those users never knowingly or intentionally visited the eBay website based on an advertisement placed by either DPS or KFC. These fraudulent acts and representations were repeated multiple times, and each act constitutes a violation of 18 U.S.C. § 1343 through the use of interstate wires. Moreover, because the Hogan Group's and the Dunning Group's cookie stuffing activities were undertaken as part of a scheme to defraud and for the purpose of executing that fraud by wire transmissions, each instance of cookie stuffing constitutes a completed violation of 18 U.S.C. § 1343 regardless of whether any commission was credited or paid as a result.

52. On or about June 2007, eBay undertook an investigation into suspected cookie stuffing by the Hogan Group and the Dunning Group. eBay was able to verify the existence of the two schemes and to track specific instances of cookie stuffing through several different methods.

53. eBay first ran its own tests and was able to observe and confirm fraudulent cookie stuffing by both the Hogan Group and the Dunning Group.

a. For example, on or about June 5, 2007, an eBay employee visited the website www.drago-sim.com using a secure computer that had its IP address masked (to overcome countermeasures that prevented cookies from being stuffed onto computers with San Jose IP addresses) and that was equipped to monitor and record Internet activity occurring on the computer. The website www.drago-sim.com was a participant in DPS's advertising network and contained a DPS-controlled banner ad. Although the eBay employee never clicked on, or requested, any eBay ad or link to an eBay website, the Hogan Group's code in the DPS-controlled banner ad secretly redirected the computer being used by the eBay employee to an eBay website, and a DPS-associated cookie was dropped. eBay observed an identical cookie stuff by the Hogan Group on the same date

by visiting the site www.songlyrics.com, which was also a participant in the DPS ad network and which also contained a DPS-controlled banner ad.

b. Also on or about June 5, 2007, eBay was able to observe and record fraudulent cookie stuffing activity caused by the Dunning Group's wholinked and profilemaps applications. As with the investigation of the Hogan Group's cookie stuffing, secure computers equipped with Internet monitoring and recording equipment were directed to sites containing the Dunning Group's wholinked and profilemaps applications. Without any further action being taken by the computers' users, the Dunning Group's wholinked and profilemaps applications secretly redirected the computers to an eBay website, and KFC-associated cookies were stuffed onto the computers.

54. In addition, on June 6, 2007, eBay asked Gallivan, Gallivan & O'Melia LLC ("GGO") to undertake a cookie stuffing investigation. On that date, a GGO employee visited the website www.jokes-time.com using a secure computer located in Mountain View, California that had its IP address masked and had been equipped to monitor and record Internet activity occurring on the computer. The jokes-time.com website was a participant in DPS's advertising network and contained a DPS-controlled banner ad. Without any action by the GGO employee other than visiting that website, the Hogan Group's code in the DPS-controlled banner ad secretly redirected the GGO computer to another DPS site and then to eBay's website, causing eBay's site to drop cookies that were associated with DPS onto the GGO computer. On or about June 14, 2007, an employee of GGO created a new eBay account using the computer that still contained the cookies stuffed by the Hogan Group. The GGO employee then purchased an item from eBay using the newly created account through the "buy it now" function. Using information provided by GGO, eBay then tracked this new account and purchase, and determined that DPS was credited both for the "new user" acquisition and for the sale.

55. On or about June 6, 2007, GGO also performed a second cookie stuffing test from its offices located in the Seattle, Washington area, following the same steps taken in Mountain View. As in the Mountain View test, the Hogan Group's code stuffed

DPS-associated cookies onto the GGO computer even though the computer user did not navigate to eBay's website. An eBay "buy it now" purchase was made by a GGO employee in the Seattle area the following day using the computer containing the stuffed cookies. eBay was again able to track a commission from the sale that was credited to DPS.

56. Having confirmed the ongoing cookie stuffing by both the Hogan Group and the Dunning Group, eBay next set out to determine the extent of that unlawful activity. On or about June 8-19, 2007, eBay made certain alterations to its website to both detect further evidence of the cookie stuffing and, if found, to assess the volume of cookie stuffing by the Hogan Group and the Dunning Group. eBay placed a special "gif" image on the eBay.com home page. This special gif was served to any browser receiving an eBay cookie. eBay had observed that Defendants' cookie stuffing schemes caused the user's browser to be secretly redirected to eBay's home page for only a short period of time—sufficient time for the cookie to be stuffed and little or no more. A browser that had been redirected to eBay for purposes of cookie stuffing would not access eBay's site long enough to be served the special gif, but a legitimate browser redirect to eBay (during which a user clicks on an ad and comes to the eBay site) would be served that gif. eBay then examined the data or traffic sent by all of its affiliates, including DPS and KFC. eBay was able to review this data with a tremendous amount of granularity, capturing individual cookie stuffs by the Hogan Group and the Dunning Group. The following are examples of such individual cookie stuffs:

- On June 8, 2007, at approximately 12:32 p.m. PST, a cookie stuffed with information for the affiliate using PID 2326993 was dropped from an eBay California server to IP address 84.13.180.86. The user of this IP address was located in Surrey, UK. PID 2326993 was an affiliate account number assigned to KFC. The special gif was not served.
- On June 8, 2007, at approximately 12:37 p.m. PST, a cookie stuffed with information for the affiliate using PID 2028993 was dropped from an eBay

California server to IP address 83.67.105.219. The user of this IP address was located in South Yorkshire, UK. PID 2028993 was an affiliate account number assigned to KFC. The special gif was not served.

- On June 8, 2007, at approximately 12:52 p.m. PST, a cookie stuffed with information for the affiliate using PID 2028993 was dropped from an eBay California server to IP address 172.174.248.28. The user of this IP address was a customer utilizing the ISP America Online located in Virginia. PID 2028993 was an affiliate account number assigned to KFC. The special gif was not served.
- On June 8, 2007, at approximately 12:58 p.m. PST, a cookie stuffed with information for the affiliate using PID 2225634 was dropped from an eBay California server to IP address 68.57.17.37. The user of this IP address was located in Pennsylvania. PID 2225634 was an affiliate account number assigned to DPS. The special gif was not served.
- On June 9, 2007, at approximately 12:43 p.m. PST, a cookie stuffed with information for the affiliate using PID 2326993 was dropped from an eBay California server to IP address 81.104.118.168. The user of this IP address was located in Glasgow, Scotland. PID 2326993 was an affiliate account number assigned to KFC. The special gif was not served.
- On June 9, 2007, at approximately 12:56 p.m. PST, a cookie stuffed with information for the affiliate using PID 2225635 was dropped by an eBay California server on IP address 71.210.107.53. The user of this IP address was located in Arizona. PID 2225635 was an affiliate account number assigned to DPS. The special gif was not served.
- On June 11, 2007, at approximately 12:18 p.m. PST, a cookie stuffed with information for the affiliate using PID 2225634 was dropped by an eBay California server on IP address 206.40.234.2 18. The user of this IP address is located in Utah. PID 2225634 is an affiliate account number assigned to DPS. The special gif was not served.

The cumulative results of the investigation demonstrated that over 99% of the traffic directed by DPS and KFC during the time period of the investigation did not receive the gif image, and was therefore fraudulent cookie stuffing traffic. During the short period of this investigation, the data demonstrated that the Hogan Group had stuffed over 650,000 cookies and the Dunning Group had stuffed close to 20,000 cookies.

57. eBay also performed an additional analysis of historical data that uncovered further evidence of cookie stuffing by the Hogan Group and the Dunning Group over the period from April 1, 2004 through June 18, 2007. Cookie stuffing is premised on the notion that if one stuffs a large number of Internet users, some subset of those users will later come to eBay (by chance and through no action of the cookie stuffer) and take a Revenue Action. eBay examined its historical data regarding the behavior of eBay users in an effort to determine whether user behavior provided proof of cookie stuffing. eBay's analysis showed that, in fact, there were substantial differences in the behavior of legitimately-referred users and users referred by DPS and KFC, which supported the conclusion that the Hogan Group and the Dunning Group engaged in cookie stuffing. For legitimately-referred users, the historical data showed that a high percentage of Revenue Actions (e.g., establishing a new eBay account or placing a winning bid on an item) occurred within the first hour of a cookie drop. Such behavior was to be expected, because the cookie was dropped at the same time that the user visited eBay's site and was exposed to the content on the site that would drive a Revenue Action. The contrasting historical data for DPS and KFC demonstrated that both the Hogan Group and the Dunning Group had been engaged in cookie stuffing. Users allegedly referred by DPS and/or KFC demonstrated behavior consistent with cookie stuffing and inconsistent with legitimate referrals: those users did not take the high percentage of their Revenue Actions during the first hour following the cookie drop and, instead, took Revenue Actions at a nearly uniform rate over the life of the cookie. This behavior showed that those users had not been exposed to the content of the eBay site at the same time that the cookie was dropped; instead, the users had been stuffed and visited eBay at some random time after

the stuffing.

58. On information and belief, based on eBay's analysis and understanding of how the Defendants' cookie stuffing schemes worked and on statements made by Todd Dunning to one of eBay's employees, DPS and KFC retained electronic records of the IP addresses of the individual computers they stuffed with cookies in order to prevent stuffing multiple cookies on a single computer.

59. The Hogan Group and the Dunning Group fraudulently stuffed cookies onto the computers of a large group of users without exposing them to the content on eBay's site and a subset of those users later engaged in Revenue Actions that were unrelated to any action by DPS or KFC but still produced enormous commissions for them. In other words, DPS and KFC received commissions based on Revenue Actions by users for which they were not responsible. But every act of cookie stuffing by the Hogan Group and the Dunning Group, regardless of whether it resulted in the payment of a commission, constituted a separate violation of 18 U.S.C. § 1343, because it constituted a use of interstate wire communications in furtherance of the Defendants' schemes to defraud eBay.

60. In addition to their cookie stuffing schemes, which occurred over several years and involved hundreds of thousands or even millions of acts that each constituted a separate violation of 18 U.S.C. § 1343, the Hogan Group and the Dunning Group also engaged in efforts to conceal and avoid detection of their schemes through fraudulent communications involving the interstate mails and wires. Examples of such communications include the following:

- On or about September 5, 2005, after being contacted by (then) CJ employee Christine Kim regarding suspicions of possible cookie stuffing by DPS, Defendant Shawn Hogan falsely told Ms. Kim in a telephone conversation that the apparent cooking stuffing arose from a "coding error" that had since been fixed.
- On or about February 15, 2006, Todd Dunning telephoned eBay employee Dan Burkhart and reported that DPS and Hogan were cookie stuffing, which was true.

During the same telephone conversation, Mr. Dunning told Mr. Burkhart that his brother Brian Dunning was an honest affiliate. That statement was false. Mr. Dunning later told eBay employees that he had lied when he said that DPS and Mr. Hogan were cookie stuffing. That statement was also false.

- On or about August 9, 2006, Brian Dunning falsely told eBay employee Christine Kim in an email that he would explain KFC's "innovative" business model "in detail." Mr. Dunning subsequently provided Ms. Kim with descriptions of KFC's business model that failed to accurately describe KFC's methods, and created the false impression that KFC was actually driving users to eBay's site, instead of engaging in a fraudulent cookie stuffing scheme.
- On or about August 29, 2006, Brian Dunning falsely stated in an email to CJ employee Andrea Bardakos and eBay employee Christine Kim that the success of KFC's methods was based on "staggering amounts of up-front adoption."
- On or about August 31, 2006, Brian Dunning emailed CJ employees Andrea Bardakos and Jeff Ransdell, and eBay employee Christine Kim, thanking them for maintaining confidentiality regarding the "inner workings" of his business model and stating that "a conversation was 'due' at some point, especially given the high simplicity-to-effectiveness ratio of what we're doing." In fact, KFC's "effectiveness" in receiving commissions was due to its fraudulent cookie stuffing scheme.
- On or about September 1, 2006, eBay employee Christine Kim and Shawn Hogan conducted an instant message exchange during which Ms. Kim asked Mr. Hogan to provide specifics regarding the DPS ad network, and Mr. Hogan made various statements to actively conceal the existence of his cookie stuffing, including claims that his system "works like evolution in nature" and refusing to provide his code or analytics because "while it's really (REALLY) neat and would like to show everyone just to show off … it's really not a good idea if I give it away."
- On or about September 7, 2006, Brian Dunning falsely stated in an email to eBay

employee Christine Kim that he was "absolutely confident" that KFC's methods were "in line with the intended spirit of the terms" of the AMP.

- In early November 2006, eBay employee Christine Kim questioned Shawn Hogan after an eBay employee based in Amsterdam had written to her about DPS's results in the Netherlands, noting that "[n]ormally we only see these low conversion rates when cookiedropping is involved." On or about November 6, 2006, Mr. Hogan falsely told Ms. Kim in a conversation via telephone or instant message that low conversion rates in the Netherlands were caused by Mr. Hogan's failure to "deep link" his ads there after a bug fix had been made.
- On or about January 22, 2007, Brian Dunning responded by email to eBay employee Christine Kim's query as to why KFC's "winning bids and clicks" were below the norm by falsely stating, "I wonder if the demographic of MySpace users has much to do with it. They're generally quite young, maybe they're too poor to win auctions." This statement was false and was intended to conceal his cookie stuffing because Mr. Dunning knew that the unusual statistics noted by Ms. Kim were the result of his cookie stuffing.
- On or about February 7, 2007, Brian Dunning falsely stated in an email to eBay employee Christine Kim that "in the past 3 days we've received click-throughs on ads from 97,743 profiles. That only counts profiles where someone clicked the ad, no telling how many other profiles people have added it to." In fact, as Mr. Dunning knew at the time, his click-throughs were the result of cookie stuffing and not from users clicking on ads.

61. Each violation of 18 U.S.C. § 1343 constitutes a separate instance of "racketeering activity" as defined in 18 U.S.C. § 1961(1) and was committed in furtherance of the conspiracy to defraud eBay of commission fees not legitimately earned by either DPS or KFC. Together, these violations constitute a pattern of racketeering activity: the violations have the same or similar purposes, results, participants, victims and/or methods of commission.

62. The racketeering activity committed by each of the members of the Hogan Group and the Dunning Group affected the interstate activity of Internet web browsing. In addition, Internet marketing, including the marketing at issue here that utilizes advertisements seen by Internet users in all 50 states and provides commissions for actions taken by eBay users across all 50 states, is also an interstate activity that was affected by the racketeering activity committed by each of the members of the Hogan Group and Dunning Group.

63. The actions of each of the members of the Hogan Group and the Dunning Group were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of eBay. Therefore, eBay is entitled to an award of exemplary and punitive damages against each of the members of the Hogan Group and the Dunning Group, in an amount according to proof at trial.

64. WHEREFORE, eBay prays for judgment against each of the members of the Hogan Group and the Dunning Group, as more fully set forth below.

**THIRD CAUSE OF ACTION**

**(Fraud)**

65. eBay realleges each and every allegation set forth in Paragraphs 1 through 64, inclusive, and incorporates them by reference herein.

66. DPS and DOES 1-10, by use of their cookie stuffing computer programs and/or code, caused users' web browsers to convey a representation by those Defendants to eBay that the user had accessed the eBay website via an advertisement placed by DPS. eBay is informed and believes and, on that basis, alleges that this conduct began in or around December 2003 and continued through at least June 2007.

67. KFC and DOES 12-20, by use of their cookie stuffing computer programs and/or code, caused users' web browsers to convey a representation by those Defendants to eBay that the user had accessed the eBay website via an advertisement placed by KFC. eBay is informed and believes and, on that basis, alleges that this conduct began in or around December 2004 and continued through at least June 2007.

68. DPS and KFC also made a number of false statements regarding their business methods, described above, in an effort to conceal their fraudulent cookie stuffing schemes from detection by eBay or CJ.

69. The representations made and/or caused to be made by each of DPS, KFC and DOES 1-10 and 12-20 were in fact false. The true facts were that a substantial portion of the users ostensibly referred by each of DPS, KFC and DOES 1-10 and 12-20 to the eBay site had not been referred by those Defendants, that those users had never knowingly or intentionally visited the eBay site based on any advertisement or referral from any of those Defendants, and that the information contained in cookies in those users' web browsers was actually the product of the false and misleading cookie stuffing schemes employed by each of DPS, KFC and DOES 1-10 and 12-20.

70. When DPS, KFC and DOES 1-10 and 12-20 made these representations (or caused them to be made), they knew them to be false and made these representations (or caused them to be made) with the intention to deceive and defraud eBay and induce eBay to act in reliance on these representations.

71. eBay, at the time these representations were made (or caused to be made) by DPS, KFC and DOES 1-10 and 12-20, was ignorant of the falsity of the representations and believed them to be true. In reliance on these representations, eBay was induced to, and did, make commission payments to each of DPS and KFC (via CJ) in consideration for referrals that eBay believed to be legitimate and bona fide. Had eBay known the true facts, it would not have made such commission payments. eBay's reliance on the representations of DPS, KFC and DOES 1-10 and 12-20 was justified.

72. As a proximate result of the fraudulent conduct of each of DPS, KFC and DOES 1-10 and 12-20, eBay paid commissions and fees to DPS and KFC (via CJ) for referrals that had never occurred, for which eBay received no value, and for which eBay owed nothing to DPS or KFC.

73. As a proximate result thereof, eBay has been damaged in an amount to be proven at trial.

74. Defendants' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of eBay and, therefore, eBay is entitled to an award of exemplary and punitive damages against each of DPS, KFC and DOES 1-10 and 12-20, in an amount according to proof at trial.

75. WHEREFORE, eBay prays for judgment against each of DPS, KFC and DOES 1-10 and 12-20, as more fully set forth below.

**FOURTH CAUSE OF ACTION**

**(Violations of California Penal Code § 502)**

76. eBay realleges each and every allegation set forth in Paragraphs 1 through 75, inclusive, and incorporates them by reference herein.

77. Each of DPS and KFC have knowingly and without permission: altered, damaged, deleted, destroyed, or otherwise used eBay's computer, computer system, or computer network in order to devise and execute a cookie stuffing scheme or artifice in order to defraud and deceive; and/or altered, damaged, deleted, destroyed, or otherwise used eBay's computer, computer system, or computer network in order to wrongfully control or obtain money and property; and/or accessed or caused to be accessed eBay's computer, computer system, or computer network.

78. DPS's and KFC's unauthorized access and use of eBay's computers has damaged and caused loss to eBay.

79. DPS's and KFC's actions constitute violations of California Penal Code § 502(c), whether or not any commissions were credited or paid as a result of those actions.

80. DPS's and KFC's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of eBay and, therefore, eBay is entitled to an award of exemplary and punitive damages against each of DPS and KFC, in an amount according to proof at trial.

81. WHEREFORE, eBay prays for judgment against each of DPS and KFC, as more fully set forth below.

**FIFTH CAUSE OF ACTION**

**(Restitution and Unjust Enrichment)**

82. eBay realleges each and every allegation set forth in Paragraphs 1 through 81, inclusive, and incorporates them by reference herein.

83. Through their cookie stuffing schemes, as described above, each of DPS and KFC received a benefit from eBay, in the form of artificially and fraudulently inflated commissions paid to DPS and KFC (via CJ) for Revenue Actions that were not associated with any referral from those Defendants.

84. In light of DPS's and KFC's conduct, it would be unjust for DPS and KFC to retain the benefits they obtained from eBay.

85. DPS and KFC have been unjustly enriched by eBay's payments and should be required in equity to make restitution of these payments to eBay.

86. WHEREFORE, eBay prays for judgment against each of DPS and KFC, as more fully set forth below.

**SIXTH CAUSE OF ACTION**

**(California Business and Professions Code § 17200)**

87. eBay realleges each and every allegation set forth in Paragraphs 1 through 86, inclusive, and incorporates them by reference herein.

88. Through their cookie stuffing schemes, as described above, each of DPS and KFC engaged in unlawful, unfair and/or fraudulent business practices. Such conduct by each of DPS and KFC violates California Business and Professions Code § 17200 et. seq.

89. As discussed herein, DPS's and KFC's business practices of engaging in cookie stuffing were unlawful under state and federal laws, including but not limited to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the civil RICO statute, 18 U.S.C. § 1962(c), California Penal Code § 502, and constituted common law fraud.

90. DPS's and KFC's conduct was also fraudulent and deceptive, and was unfair to eBay, in that it offended established public policy, and/or was immoral, unethical, oppressive, unscrupulous and substantially injurious to eBay.

91. As a direct result of DPS's and KFC's conduct, eBay has suffered an injury in fact and has lost money and/or property that has been wrongfully retained by each of DPS and KFC.

92. WHEREFORE, eBay prays for judgment against each of DPS and KFC, as more fully set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, eBay prays for judgment against Defendants, and each of them, for:

i. Judgment in favor of eBay and against all Defendants on all causes of action;

ii. An award of compensatory damages according to proof at trial;

iii. An award of punitive damages according to proof at trial;

iv. An award of treble damages against Defendants Shawn Hogan, Brian Dunning and Todd Dunning, pursuant to 18 U.S.C. § 1964 according to proof at trial;

v. An award requiring Defendants to disgorge all ill-gotten gains and to return the eBay funds by which Defendants have been unjustly enriched;

vi. An award of restitution, according to proof at trial;

vii. An injunction prohibiting Defendants from (a) disseminating, sharing or otherwise making available any cookie stuffing technology to others; (b) possessing, disseminating, sharing, or otherwise making available any technology intended or capable of being used to defraud eBay; and (c) having any further involvement with any person or entity participating in the eBay Affiliate Marketing Program;

viii. An award of pre-judgment and post-judgment interest;

ix. An award of attorney's fees and costs of suit incurred herein; and

x. Such other further relief as the Court may deem just and proper.

Dated: March 26, 2009

O'MELVENY & MYERS LLP

By: /s/ David R. Eberhart
David R. Eberhart
Sharon M. Bunzel
Colleen M. Kennedy
Attorneys for Plaintiff eBAY INC.

**DEMAND FOR JURY TRIAL**

eBay hereby demands a trial by jury of all claims in this action.

Dated: March 26, 2009

O'MELVENY & MYERS LLP

By: /s/ David R. Eberhart
David R. Eberhart
Sharon M. Bunzel
Colleen M. Kennedy
Attorneys for Plaintiff eBAY INC.