# EXHIBIT D

Dockets.Justia.com

00/00/0000       08:37       FIRST LEGAL SUPPORT       714 541 8162

1   RONALD RUS, #67369
    rrus@rusmiliband.com
2   LEO J. PRESIADO, #166721
    lpresiado@rusmiliband.com
3   RUS, MILIBAND & SMITH
    A Professional Corporation
4   Seventh Floor
    2211 Michelson Drive
5   Irvine, California 92612
    Telephone: (949) 752-7100
6   Facsimile: (949) 252-1514

7   Attorneys for Defendants BRIAN DUNNING and
8   THUNDERWOOD HOLDINGS, INC.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**SEP 29 2008**

ALAN CARLSON, Clerk of the Court

R. Lucey
BY R. LUCEY

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

12  COMMISSION JUNCTION, INC.,            )   CASE NO. 08-00101025
                                         )
13            Plaintiff,                  )   [ASSIGNED FOR ALL PURPOSES TO
                                         )   THE HONORABLE RANDELL L.
14  vs.                                   )   WILKINSON, DEPT. C25]
                                         )
15  THUNDERWOOD HOLDINGS, INC. dba        )   **NOTICE OF MOTION AND MOTION TO**
16  KESSLER'S FLYING CIRCUS; TODD         )   **STAY DISCOVERY PENDING**
    DUNNING; BRIAN DUNNING; and           )   **CONCLUSION OF CRIMINAL**
17  DOES 1 through 50, inclusive,         )   **PROCEEDINGS; MEMORANDUM OF**
                                         )   **POINTS AND AUTHORITIES;**
18            Defendants.                 )   **DECLARATIONS OF WILLIAM J.**
                                         )   **KOPENY AND BRIAN DUNNING IN**
19                                        )   **SUPPORT**

20                                            DATE:   October 29, 2008
                                             TIME:   1:30 p.m.
21                                            DEPT.:  C25

22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

                                1

                                            MOTION TO STAY DISCOVERY

337901v1 nl 9/26/08 25 (2785-0001)

## DECLARATION OF WILLIAM J. KOPENY

I, WILLIAM J. KOPENY, declare as follows:

1.      I am an attorney at law duly licensed to practice before the above-entitled Court. I represent Brian Dunning in connection with that certain criminal investigation described in more detail below. I have been a member of the bar of the United States District Court for the Central District of California since December 20, 1974, and have been representing individuals in connection with criminal investigations and criminal prosecutions for over 34 years. I have firsthand personal knowledge of the matters set forth herein, and if called upon to testify, would and could competently testify thereto.

2.      In June 2007, I was retained by Brian Dunning as criminal counsel, in connection with the execution of a search warrant at his home on June 18, 2007, and his interrogation by agents of the Federal Bureau of Investigation ("FBI"). I immediately contacted the local FBI agents, one of whom I knew from a prior federal criminal matter I had handled, and I was informed that: (a) Mr. Dunning was being investigated for computer crimes by agents from the San Francisco Bay area; and (b) the items seized under the search warrant, which consisted primarily of computers, computer media, and hard copy documents, were in the custody of the agents in charge of the case and/or the Office of the United States Attorney for the Northern District of California.

3.      I then contacted the FBI agents involved in the execution of the search warrant from the San Francisco Bay area and learned that the assigned federal prosecutor is Kyle F. Waldinger who is the United States Attorney in charge of the Computer Hacking and Intellectual Property Unit ("CHIP Unit") of the Office United States Attorney for the Northern District of California.

4.      Because initially, the searching agents had informed Mr. Dunning that anything the agents needed would be copied and that the computers and other materials seized would be returned within two weeks, on July 3, 2007, I contacted Mr. Waldinger to inquire whether Mr. Dunning was a "target" of the investigation, and whether we could expect his property to be returned within the time frame promised by the agents on the scene of the

10

MOTION TO STAY DISCOVERY

1   search.  Mr. Waldinger informed me that:  (a) Mr. Brian Dunning is a target of the

2   investigation, along with two other named persons; (b) the federal government is confident that

3   a criminal offense could be proven, based on the fraudulent conduct of one or more persons;

4   and ©) until the federal government has concluded its analysis of the computer media seized,

5   the federal government is unwilling to discuss any resolution of its case.  Since that first

6   telephone call with Mr. Waldinger, I have had at least six other phone conversations with him

7   and faxed to him at least three letters.

8          5.      I have reviewed my file and in those letters I have confirmed in writing

9   that Mr. Waldinger advised me that:  (1) Mr. Dunning is a "target" of the federal criminal

10  investigation; (2) the investigation concerns Thunderwood Holdings, Inc. ("Thunderwood")

11  and Kessler's Flying Circus ("KFC") and its relationship with eBay, and allegations that

12  "cookies" had been "forced" in violation of the terms of service with eBay and/or Plaintiff

13  Commission Junction, Inc. ("Plaintiff"), which allegedly constitutes "cyber-fraud" under

14  various federal fraud statutes.

15         6.      Periodically, and as recently as September 18, 2008, I have conferred

16  with Mr. Waldinger, and he has continued to confirm that Mr. Dunning is a target of an active

17  investigation, that the federal government is not yet done with its investigation or analysis of

18  the computers seized, and that he will contact me in the event an indictment is issued naming

19  my client as a defendant, including any indictment for fraud, in which Plaintiff and/or eBay is

20  the named victim based on the above.  The investigation remains open and active.

21         7.      Mr. Waldinger has confirmed that the criminal investigation of

22  Mr. Dunning is ongoing, that search warrants other than that discussed above have issued, and

23  in my opinion, based on my experience, I believe it is likely that the federal government has

24  presented testimony in this investigation to the United States Grand Jury for the Northern

25  District of California.  In addition, the federal government has sought from the District Court,

26  and obtained, several extensions of time to return all the materials seized from Mr. Dunning's

27  home pursuant to the aforementioned federal search warrant, which called for its return within

28  60 days unless additional time is granted.  Typically, in order to obtain such permission from

11

1  the federal court, the United States Attorney must allege that there is an active criminal

2  investigation, that the federal government believes the property seized constitutes, or is likely

3  to constitute evidence of the suspected crime, and that additional time is reasonably needed to

4  complete the investigation. With the exception of approximately 10% of the items seized,

5  which items have nothing to do with eBay, Plaintiff or KFC, the federal government remains in

6  possession of all other materials seized from Mr. Dunning, on the basis of its continued

7  criminal investigation of him.

8           8.      By its own description on the United States Department of Justice

9  website, the CHIP Unit is charged with combating "cybercrime and intellectual property theft."

10  In fact, that unit, and Mr. Waldinger have acquired a national reputation for being the first

11  prosecutors in the nation to bring and win cyber-prosecutions based on previously untested

12  legal theories. A true and correct copy of this description found on the website of the

13  Department of Justice, is attached as Exhibit "3." In addition, the CHIP unit "works closely

14  with the FBI and other agencies to establish a relationship with the local high tech community

15  and encourage them to refer cases to law enforcement." A true and correct copy of this

16  description found on the website of the Department of Justice, is attached as Exhibit "4."

17  The CHIP Unit is specifically charged with coordinating law enforcement and the technology

18  industry "to share expertise and information technology, to assist each other 24 hours a day,

19  seven days a week, around the clock, to prevent cybercrime wherever possible..." A true and

20  correct copy of this description found on the website of the Department of Justice, is attached

21  hereto as Exhibit "5."

22           9.      The word "target" is a term of art within the United States Department of

23  Justice, and it is to be distinguished from a "witness" and/or a "person of interest." Under

24  Justice Department guidelines, the prosecutor is required to inform a person or his attorney

25  when he has achieved the status of "target" because that person is actively believed to be a

26  future defendant, based on an ongoing investigation. This guideline is in place to avoid any

27  later claim that the "target" failed to invoke his rights against self-incrimination because he or

28  she wrongly believed he was not going to be prosecuted. Thus, anyone who is informed that

12

337901v1 rsl 9/26/08 25 (2785-0001)

1   he is a "target" has an enormous motive to obtain counsel and assert his privilege against self-

2   incrimination.

3       10.   On advice of and through counsel, Mr. Dunning has asserted his right to

4   remain silent, i.e., has asserted his Constitutional privilege against self-incrimination under the

5   Fifth Amendment to the United States Constitution following the execution of a search warrant

6   at his home and the questioning by FBI agents, and I have advised him to assert the same

7   privilege in response to any question asked of him at any deposition, in response to any

8   interrogatory or request for admission, and in response to any demand for production of

9   documents (the possession of which is privileged under *United States v. Doe* (1988) 487 U.S.

10  201, 108 S.Ct. 2341, 101 L.Ed.2d 184).[4/]

11      11.   Under the Fifth Amendment, a person need not be guilty of any crime to

12  enjoy a Constitutional privilege not to provide information that the government or any party

13  seeks to compel him or her to provide.  (*People v. Lucas* (1995) 12 Cal.4th 415, 453

14  ["Innocent persons, as well as the guilty, are entitled to invoke the privilege"]; *Grunewald v.*

15  *United States* (1957) 353 U.S. 391, 421, 77 S.Ct. 963, 982, 1 L.Ed.2d 931; see also Ratner,

16  *Consequences of Exercising the Privilege Against Self-Incrimination.*)  Rather, if the

17  information sought *could, conceivably,* form a single evidentiary or factual link in a chain of

18  circumstantial evidence which chain of evidence *could* support *an inference* that the person is

19  culpable for any criminal offense, in violation of any state or federal law, that person cannot be

20  compelled by legal process, subpoena or court order to provide such information, upon his or

21  her invocation of the protection of the Fifth Amendment.  (*Hoffman v. United States* (1951)

22  341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118; *United States v. Neff* (9th Cir. 1980)

23

24      4/   On behalf of Mr. Dunning I herewith assert that in producing such records he would be "testifying" as to
25  their existence and to his control over them in a way that is protected by his Fifth Amendment privilege against
    self-incrimination.  *Fisher v. United States* (1976) 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39; *United States v.*
26  *Doe* (1984) 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (*Doe I*),; and *Doe v. United States* (1988) 487 U.S.
    201, 108 S.Ct. 2341, 101 L.Ed.2d 184 (*Doe II*), a line of cases in which the Supreme Court emphasized that the
27  act of producing potentially incriminating documents under government compulsion may have impermissible
    testimonial aspects.  These cases are applicable to this case since they hold that the Fifth Amendment protects
28  against compulsory surrender of (1) personal business records, (2) in the possession of a sole proprietor or
    practitioner, (3) with respect to the testimonial act implicit in the surrender itself.

00/00/0000          08:37      FIRST LEGAL SUPPORT          714 541 8182

1  |  615 P.2d 1235, 1239; *Prudhomme v. Superior Court* (1970) 2 Cal.3d 320, 325-326; *In re*
2  |  *Misener* (1985) 38 Cal.3d 543, 546-551.)

        12.    I have reviewed the complaint in this matter and based on my understanding of the allegations and issues in this civil matter, Mr. Dunning has, through counsel, already asserted his Fifth Amendment privilege against self-incrimination in connection with an inquiry by the Federal Government into the identical facts alleged in this case, and clearly is entitled to its protection in the context of this case. In my opinion, any court order compelling Mr. Dunning to respond to the allegations of the complaint, and/or to respond to discovery propounded to him would constitute "compelled self-incrimination" within the meaning of the Fifth Amendment and California's constitutional privilege against self-incrimination. (Please see *People v. Lucas, supra,* 12 Cal.4th at 453.)[2/]

        13.    Based on these descriptions of the function, purpose and manner of operating on the part of the CHIP Unit, together with my 34 years of experience defending individuals in criminal cases, it is clear that any and all information obtained from Mr. Dunning in the course of discovery in this matter will be shared with, and will be monitored by, the federal government in aid of the criminal investigation and/or prosecution of Mr. Dunning.

        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

        Executed this 29th day of September, 2008, at Irvine, California.

WILLIAM J. KOPENY

---

[2/]  "[I]n order to approve invocation of the privilege '"it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered *might* be dangerous because injurious disclosure *could* result." ' (*People v. Cudjo, supra,* 6 Cal.4th at p. 617, 25 Cal.Rptr.2d 390, 863 P.2d 635, quoting *Hoffman v. United States* (1951) 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118.)" *Id.* at p. 453 [Underlining and italics supplied.]

14

# EXHIBIT
3

**EXHIBIT** 3

EXHIBIT "3"



**EXHIBIT** 4



Email this Document!

## CHIP (COMPUTER HACKING AND INTELLECTUAL PROPERTY)
## FACT SHEET

### HISTORY

Nine additional units will be added to a program called CHIP (Computer Hacking and Intellectual Property) that has proven successful in Northern California. That project demonstrated the benefits of a unit of prosecutors working closely with the FBI and other agencies to establish a relationship with the local high tech community and encourage them to refer cases to law enforcement. In addition, the project provides the skills and training not yet available to law enforcement on a widespread basis.

The new CHIP units are the next phase in the Department's ongoing efforts to combat cybercrime and Intellectual Property theft. In 1991, the Department created what is now the Computer Crime and Intellectual Property Section (CCIPS) in the Criminal Division. This Section is comprised of 22 attorneys who specialize in these crimes and provide national training, advice and coordinate prosecution of computer intrusion and intellectual property cases. The CHIP team members will complement the highly trained network of prosecutors at CCIPS and the US Attorneys' Offices.

### PROGRAM DETAILS

CHIP units will be established in eight cities in addition to San Francisco, where the concept was pioneered. The cities have been chosen based on a number of factors, including their proximity to high-tech industry areas, their potential for growth in that area and the presence of adequate FBI resources to investigate these crimes.

-Los Angeles                    -Dallas
-San Diego                      -Seattle
-Atlanta                        -Alexandria, Virginia
-Boston
-New York (Brooklyn and Manhattan)

• Together, the 10 units will have a total of 77 **positions, including 48 prosecutors.**
• This will provide 4 to 6 prosecutors in each participating district, through combining new and existing resources in the selected districts.

### RESOURCES

The FY 2001 Appropriation provided $3,074,000 to **fund 50 positions and 25 FTE, including 28 attorneys.**

The following chart shows the proposed unit composition:

| Districts | New AUSA Allocation | "AUSA" District Match | Total CHIP AUSAs | New Paralegal Allocation | New Support Allocation | "Support" District Match | Unit Position Total |
|---|---|---|---|---|---|---|---|
| California CD | 2 | 4 | 6 | 1 | 1 | 2 | 10 |
| California ND | 4 | 2 | 6 | 1 | 2 | 1 | 10 |
| California SD | 2 | 2 | 4 | 1 | 1 | 2 | 8 |
| Georgia ND | 2 | 1 | 4 | 0 | 0 | 0 | 6 |

00/00/0000          08:37          FIRST LEGAL SUPPORT          714 541 8182

| | | | | | | |
|---|---|---|---|---|---|---|
| Massachusetts | | 2 | 4 | | 2 | 0 | 6 |
| New York ED | 2 | 2 | 4 | 0 | 2 | 0 | 6 |
| New York SD | 3 | 2 | 5 | 0 | 1 | 1 | 7 |
| Texas ND | 3 | 1 | 4 | 0 | 2 | 0 | 6 |
| Virginia ED | 4 | 2 | 6 | 1 | 2 | 1 | 10 |
| Washington WD | 3 | 2 | 5 | 0 | 2 | 1 | 8 |
| Total | 28 | 20 | 48 | 4 | 17 | 8 | 77 |

## COMPONENTS

The program has 3 components: (1) Prosecution, (2) Regional Prevention and Outreach and (3) Regional Training.

### 1. Prosecution

• CHIP units will prosecute computer intrusions, copyright and trademark violations, theft of trade secrets and economic espionage, theft of computer and high tech components and other Internet crimes.

### 2. Regional Prevention and Outreach

• Prosecutors will work with CCIPS, the FBI and other agencies to establish good working relationships with the high tech community and to encourage victims of high tech crime to report such crimes to law enforcement.

### 3. Regional Training

• Cybercrime fighting requires special skills. CHIP units will receive the same high-level training provided by CCIPS, but will also be expected to develop and offer regional training programs to increase expertise among federal, state and local prosecutors.

• CHIP units will also be encouraged to send attorneys to work at CCIPS to train, and to call upon CCIPS for assistance in providing local training.

- **More information on: CHIPs Program**
- **More information on: Attorney General Ashcroft's Remarks**
- **More information on: Law Enforcement Coordination for High-Tech Crimes**
- **More information on: Intellectual Property Policy**
- **More information on: Computer Crime Policy**

Want to receive news of updates to the cybercrime.gov website?
Send a blank message to: cybercrime-subscribe@topica.com and we will add you to our email newsletter list.
(Mailing list privacy information)

Go to . . . CCIPS home page || Justice Department home page

*Updated page December 9, 2002*
*usdoj-crm/mts/krr*

00/00/0000          08:37          FIRST LEGAL SUPPORT          714 541 8182

EXHIBIT "4"



00/00/0000          08:37     FIRST LEGAL SUPPORT          714 541 8182

Email this Document!

## CHIP (COMPUTER HACKING AND INTELLECTUAL PROPERTY) FACT SHEET

### HISTORY

Nine additional units will be added to a program called CHIP (Computer Hacking and Intellectual Property) that has proven successful in Northern California. That project demonstrated the benefits of a unit of prosecutors working closely with the FBI and other agencies to establish a relationship with the local high tech community and encourage them to refer cases to law enforcement. In addition, the project provides the skills and training not yet available to law enforcement on a widespread basis.

The new CHIP units are the next phase in the Department's ongoing efforts to combat cybercrime and Intellectual Property theft. In 1991, the Department created what is now the Computer Crime and Intellectual Property Section (CCIPS) in the Criminal Division. This Section is comprised of 22 attorneys who specialize in these crimes and provide national training, advice and coordinate prosecution of computer intrusion and intellectual property cases. The CHIP team members will complement the highly trained network of prosecutors at CCIPS and the US Attorneys' Offices.

### PROGRAM DETAILS

CHIP units will be established in eight cities in addition to San Francisco, where the concept was pioneered. The cities have been chosen based on a number of factors, including their proximity to high-tech industry areas, their potential for growth in that area and the presence of adequate FBI resources to investigate these crimes.

-Los Angeles                    -Dallas
-San Diego                      -Seattle
-Atlanta                        -Alexandria, Virginia
-Boston
-New York (Brooklyn and Manhattan)

• Together, the 10 units will have a total of 77 positions, including 48 prosecutors.
• This will provide 4 to 6 prosecutors in each participating district, through combining new and existing resources in the selected districts.

### RESOURCES

The FY 2001 Appropriation provided $3,074,000 to fund 50 positions and 25 FTE, including 28 attorneys.

The following chart shows the proposed unit composition:

| Districts | New AUSA Allocation | "AUSA" District Match | Total CHIP AUSAs | New Paralegal Allocation | New Support Allocation | "Support" District Match | Unit Position Total |
|---|---|---|---|---|---|---|---|
| California CD | 2 | 4 | 6 | 1 | 1 | 2 | 10 |
| California ND | 4 | 2 | 6 | 1 | 2 | 1 | 10 |
| California SD | 2 | 2 | 4 | 1 | 1 | 2 | 8 |
| Georgia ND | 3 | 1 | 4 | 0 | 2 | 0 | 6 |

| | 00/00/0000 | | 08:37 | FIRST LEGAL SUPPORT | | 714 541 8182 | |
|---|---|---|---|---|---|---|---|
| Massachusetts | ● | 2 | 4 | 0 ● | 2 | 0 | 6 |
| New York ED | 2 | 2 | 4 | 0 | 2 | 0 | 6 |
| New York SD | 3 | 2 | 5 | 0 | 1 | 1 | 7 |
| Texas ND | 3 | 1 | 4 | 0 | 2 | 0 | 6 |
| Virginia ED | 4 | 2 | 6 | 1 | 2 | 1 | 10 |
| Washington WD | 3 | 2 | 5 | 0 | 2 | 1 | 8 |
| Total | 28 | 20 | 48 | 4 | 17 | 8 | 77 |

## COMPONENTS

The program has 3 components: (1) Prosecution, (2) Regional Prevention and Outreach and (3) Regional Training.

### 1. Prosecution
• CHIP units will prosecute computer intrusions, copyright and trademark violations, theft of trade secrets and economic espionage, theft of computer and high tech components and other Internet crimes.

### 2. Regional Prevention and Outreach
• Prosecutors will work with CCIPS, the FBI and other agencies to establish good working relationships with the high tech community and to encourage victims of high tech crime to report such crimes to law enforcement.

### 3. Regional Training
• Cybercrime fighting requires special skills. CHIP units will receive the same high-level training provided by CCIPS, but will also be expected to develop and offer regional training programs to increase expertise among federal, state and local prosecutors.

• CHIP units will also be encouraged to send attorneys to work at CCIPS to train, and to call upon CCIPS for assistance in providing local training.

- More information on: CHIPs Program
- More information on: Attorney General Ashcroft's Remarks
- More information on: Law Enforcement Coordination for High-Tech Crimes
- More information on: Intellectual Property Policy
- More information on: Computer Crime Policy

Want to receive news of updates to the cybercrime.gov website?
Send a blank message to: cybercrime-subscribe@topica.com and we will add you to our email newsletter list.
(Mailing list privacy information)

Go to ... CCIPS home page || Justice Department home page

*Updated page December 9, 2002*
*usdoj-crm/mis/krr*

# EXHIBIT

## 5

00/00/0000          08:37          FIRST LEGAL SUPPORT          714 541 8182

EXHIBIT "5"



# Computer Crime and Intellectual Property Section (CCIPS)

## Law Enforcement Coordination for High-Tech Crimes

A. The Computer Hacking and Intellectual Property (CHIP) Program
B. High Technology Law Enforcement Training Opportunities
C. Coordination Between Law Enforcement and Industry
D. DOJ Speaks Out on Law Enforcement Coordination to Address Cybercrime

---

**A. The Computer Hacking and Intellectual Property (CHIP) Program**

In 1995, at the recommendation of the then-Computer Crime Unit (now the Computer Crime and Intellectual Property Section (CCIPS)), the Department of Justice created the Computer and Telecommunication Coordinator (CTC) Program to protect the nation's businesses and citizens from the rising tide of computer crime and intellectual property theft by designating one or more prosecutors in every U.S. Attorney's Office to be responsible for these issues. In 2001, following a successful model developed in the Northern District of California, the Department expanded the program in ten cities by designating Computer Hacking and Intellectual Property (CHIP) units. These units typically involved more prosecutors than under the CTC program and were specifically charged with building relationships in-district with the FBI, other agencies, and the local high tech community. New units were added frequently thereafter. In 2005, the CTC and CHIP programs were combined into a unified CHIP program. More information on the CHIP Program and historical information on the CTC program is available below.

- **CHIPs Unit Established in the Eastern District of California United States Attorney Office (October 19, 2004)**

- **CHIPs Unit Established in the Eastern District of Virginia United States Attorney Office (January 14, 2002)**

- **CHIPs Unit Established in Central District of California United States Attorney Office (September 6, 2001)**

- **CHIPs Unit Established in Southern District of New York United States Attorney Office (September 5, 2001)**

- **CHIPs Unit Established in the Eastern District of New York (August 21, 2001)**

- **Fact sheet on Computer Hacking and Intellectual Property (CHIP) units (July 20, 2001)**

- **Attorney General Ashcroft's Speech Announcing Expansion of CHIP Program and Establishment of Nine New CHIP units (July 20, 2001)**
- **The Computer and Telecommunications Coordinator (CTC) Program, Stacey Levine, USA Bulletin (May 2001)**
- **CTC Responsibilities**

**B.  High Technology Law Enforcement Training Opportunities**

- **Training Opportunities**

**C.  Coordination Between Law Enforcement and Industry**

Cybercrime Summit:  A Law Enforcement/Information Technology Industry Dialogue

On April 5, 2000, the Department of Justice hosted a Cybercrime Summit at Stanford Law School, titled "Cybercrime Summit:A Law Enforcement/Information Technology Industry Dialogue on Prevention, Detection, Investigation and Cooperation," at which Attorney General Janet Reno and members of the Justice Department and other law enforcement agencies met with representatives of information technology and Internet companies. The main topic of the Summit was how to improve cooperation between law enforcement and industry in investigating computer network hacking.  Linked below are the Attorney General's Opening Remarks from the Summit, as well as the Question & Answer session between industry representatives and the Attorney General.

- **Opening Remarks of Attorney General Janet Reno at the Cybercrime Summit (April 5, 2000)**
- **Question and Answer Session with Attorney General Janet Reno at the Cybercrime Summit (April 5, 2000)**

The Cybercitizen Partnership:  Industry and Government Alliance

On March 15, 1999, Attorney General Janet Reno announced a new Cybercitizen Partnership, a new alliance between law enforcement and the technology community.  The goal of the partnership is to coordinate the efforts of government, industry and the public to ensure public safety and responsible computer use. The partnership will also promote computer ethics and civic responsibility in the cyber age and aid law enforcement and industry in the battle against  "on-line outlaws."  The partnership will consist of three complementary segments.  The first segment is a "good cybercitizenship" public awareness campaign.  The second is a user-friendly computer and network security directory to help public and private sector organizations quickly find computer security resources.  The third is an Information Security Professional fellowship program between industry and government that will raise the awareness levels of participants with respect to the views, perspectives and needs of their respective counterparts.

- <u>Statement by Attorney General Janet Reno to Announce the
  Cybercitizen Partnership at the ITAA Policy Summit (March
  15, 1999)</u>
- <u>ITAA and Attorney General Janet Reno Unveil New Tech
  Partnership (March 15, 1999)</u>

### D. DOJ Speaks Out on Law Enforcement Coordination to Address Cybercrime

Assistant Attorney General Michael Chertoff's Testimony Before the House
Subcommittee on Crime

On June 12, 2001, Assistant Attorney General Michael Chertoff
testified before the Members of the Subcommittee on Crime of the
Committee on the Judiciary. In his statement he addressed the
nature of cybercrime and the Department's current efforts to
combat that problem.

- <u>Text of Assistant Attorney General Michael Chertoff's
  testimony before the House Subcommittee on Crime of the
  Committee on the Judiciary (June 12, 2001)</u>

Attorney General Ashcroft's Remarks Before the First Annual Computer
Privacy, Policy & Security Institute

On May 22, 2001, videotaped remarks by Attorney General John
Ashcroft were presented before the first Annual Computer Privacy,
Policy and Security Institute.
In his speech, the Attorney General addressed the Institute's
concerns of computer security and threats to information assets
and the means by which industry and law enforcement can work
together in fighting cybercrime.

- <u>Text of Attorney General Ashcroft's Remarks Before the
  First Annual Computer Privacy, Policy & Security Insititute
  (May 22, 2001)</u>

- <u>View Video Taped Remarks (21 Megabytes)</u>
  *Approximate download time: 56K Modem=55 minutes

- <u>View Video Taped Remarks (13 Megabytes)</u>
  *Approximate download time: 56K Modem=35 minutes

*Note: the listed download times are estimated times under optimal conditions. Your
actual download times may vary depending on your modem, internet traffic, and
your internet
connection type.*

Attorney General Reno's Address to the ITAA Cybercrime Summit

On June 9, 2000, Attorney General Janet Reno gave the keynote
address at the ITAA Cybercrime Summit. In her speech, the
Attorney General discussed the means by which industry and law
enforcement can work together in fighting cybercrime. The text
also includes the question and answer section.

- <u>Text of Attorney General Reno's Keynote Address at the
  ITAA Cybercrime Summit (June 9, 2000)</u>

Attorney General Janet Reno Testifies Before Senate Appropriations
Committee

On Monday, February 16, 2000, Attorney General Janet Reno
testified before the United States Senate Committee on
Appropriations. Her testimony provided an overview of
cybercrime and the challenges that it presents to law enforcement
today.

- Testimony by Attorney General Janet Reno before the United
  States Senate Committee on Appropriations (February 16,
  2000)

Attorney General Janet Reno Introduces Law Net Initiative

On January 10, 2000, Attorney General Janet Reno gave remarks
before the National Association of Attorneys General in which she
announced a new Law Net Initiative. The Law Net will be a
"strong, permanent network of federal, state and local computer
crime experts to do the following: To share expertise and
information technology, to assist each other 24 hours a day, seven
days a week, around the clock. to prevent cybercrime wherever
possible, and to bring those responsible for such crime, when it does
occur, to justice; To work with industry, the academic world and
privacy groups to build trust and to protect our privacy and the
Constitutional rights of all Americans; And finally, to ensure that
the Internet is a force that brings this world together and builds
understanding across peoples and places and time.

- Remarks of the Honorable Janet Reno, Attorney General of
  the United States, to the National Association of Attorneys
  General (January 10, 2000)

Attorney General Janet Reno Addresses the High Technology Crime
Investigation Association 1999 International Training Conference

On Monday, September 20, 1999, Attorney General Janet Reno
addressed the High Technology Crime Investigation Association
1999 International Training Conference in San Diego, California.
Her speech focused on the importance of interagency and state and
federal law enforcement cooperation, as well as on the Department
of Justice's policy position on encryption regulation.

- Speech by Attorney General Janet Reno before the High
  Technology Crime Investigation Association 1999
  International Training Conference (September 20, 1999)

President Clinton Addresses National Academy of Sciences on Keeping
America Secure for the 21st Century

On January 22, 1999, President William Jefferson Clinton
addressed the National Academy of Science. His speech was titled
"Keeping America Secure for the 21st Century." The speech he
gave is available via the link below:

- President Clinton's Speech to National Academy of Sciences
  (January 22, 1999)

00/00/0000          08:37        FIRST LEGAL SUPPORT          714 541 8182

Go to . . . **CCIPS home page** || **Justice Department home page**

1

## PROOF OF SERVICE

2

*Commission Junction, Inc. v. Thunderwood Holdings, Inc., et. al.*
OCSC Case No. 00101025

3

4   STATE OF CALIFORNIA   )
                          ) ss.
5   COUNTY OF ORANGE      )

6          I am employed in the County of Orange, State of California. I am over the age of
7   18 and not a party to the within action; my business address is 2211 Michelson Drive, Seventh
    Floor, Irvine, California 92612.

8          On **September 29, 2008**, I served the foregoing documents described as **NOTICE
    OF MOTION AND MOTION TO STAY DISCOVERY PENDING CONCLUSION OF**
9   **CRIMINAL PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES;
    DECLARATIONS OF WILLIAM J. KOPENY AND BRIAN DUNNING IN SUPPORT** on the
10  interested parties in this action by placing a copy thereof enclosed in sealed envelopes addressed as
    follows:

11

12                       **SEE ATTACHED SERVICE LIST**

13
          ✓   As follows: I am "readily familiar" with the firm's practice of collection and
14        processing correspondence for mailing. Under that practice, it would be deposited
          with U.S. Postal Service on that same day with postage thereon fully prepaid at
15        Irvine, California, in the ordinary course of business. I am aware that on motion of
          the party served, service is presumed invalid if postal cancellation date or postage
16        meter date is more than one day after date of deposit for mailing in affidavit.

17        ___   (By Electronic Transmission (E-Mail)) I e-mailed the above-referenced document(s)
          as indicated in the attached service list.
18
          ___   (By Facsimile) As follows: I caused the above-referenced document(s) to be
19        transmitted as indicated in the attached service list.

20        ___   (By Hand Delivery) As follows: I caused the above-referenced document(s) to be
          hand delivered to the office(s) of the addressee(s) noted on the attached service list.
21
          ___   (By Overnight Delivery) As follows: By overnight delivery via Overnite Express
22        and/or Federal Express to the office(s) of the addressee(s) noted on the attached
          service list.
23
          Executed on **September 29, 2008**, at Irvine, California.
24
          ✓   (State) I declare under penalty of perjury under the laws of the State of California
25        that the above is true and correct.

26

27                                                    JEANNIE MENDEZ

28

1          **SERVICE LIST**
          *Commission Junction, Inc. v. Thunderwood Holdings, Inc., et. al.*
2          OCSC Case No. 30-2008 00101025 CU BC CJC

3

4
          <u>ATTORNEYS FOR PLAINTIFF</u>
5          <u>COMMISSION JUNCTION, INC.</u>:

6          John H. Ernster, Esq.
          Phil J. Montoya, Jr., Esq.
7          Ernster Law Offices, P.C.
          70 South Lake Avenue, Suite 750
8          Pasadena, CA 91101
          Telephone:      (626) 844-8800
9          Facsimile:       (626) 844-8944

10
          <u>CO-COUNSEL FOR PLAINTIFF</u>
11          <u>COMMISSION JUNCTION, INC.</u>:

12          Scott Patrick Barlow, Esq.
          General Counsel
13          30699 Russell Ranch Road, Suite 250
          Westlake Village, CA 91362
14          Telephone:      (818) 575-4500
          Facsimile:       (818) 575-4501

15

16          <u>ATTORNEYS FOR CO-DEFENDANTS</u>
          <u>KESSLER'S FLYING CIRCUS AND</u>
17          <u>TODD DUNNING</u>:

18          Stewart H. Foreman, Esq.
          Freeland, Cooper & Foreman LLP
19          150 Spear Street, Suite 1800
          San Francisco, CA 94105
20          Telephone:      (415) 541-0200
          Facsimile:       (415) 495-4332
21          E-mail:         foreman@freelandlaw.com

22

23

24

25

26

27

28

706154v1 as 9/10/08 16 C72RS 0001)                         -2-