1   Seyamack Kouretchian (State Bar No. 171741)
2   Seyamack@CoastLawGroup.com
    Ross M. Campbell (State Bar No. 234827)
3   Rcampbell@CoastLawGroup.com
    COAST LAW GROUP, LLP
4   1140 South Coast Highway 101
    Encinitas, California 92024
5   Tel: (760) 942-8505
    Fax: (760) 942-8515
6

7   Attorneys for Defendants, SHAWN HOGAN
    and DIGITAL POINT SOLUTIONS, INC.
8

9                        UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                            SAN JOSE DIVISION

12   EBAY, INC.,                          )   Case No. CV 08-04052 JF PVT
                                          )
13              Plaintiff,                )   DEFENDANTS DIGITAL POINT
                                          )   SOLUTIONS, INC. AND SHAWN
14       v.                               )   HOGAN'S REPLY IN SUPPORT OF
                                          )   MOTION FOR STAY OF PROCEEDINGS
15   DIGITAL POINT SOLUTIONS, INC., SHAWN )
     HOGAN, KESSLER'S FLYING CIRCUS,      )
16   THUNDERWOOD HOLDINGS, INC., TODD     )   Date:   November 20, 2009
     DUNNING, DUNNING ENTERPRISE, INC.,   )   Time:   9:00 a.m.
17   BRIAN DUNNING, BRIANDUNNING.COM,     )   Dept.:  Courtroom 3
     and Does 1-20,                       )
18                                        )
                                          )
19              Defendants.               )
                                          )
20   _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    SUMMARY OF REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Mr. Hogan's Fifth Amendment Rights are Directly Implicated in this Case, and Plaintiff's Contentions to the Contrary are Unfounded.  . . . . . . . . . . . . . . . . . . . 2

        1.    The Factual Scope of the Criminal Investigation is not "Speculative"  . . . 3

        2.    The Fact that the Government is not the Real Party in Interest in both Proceedings is not an Appropriate Basis for Denying the Stay . . . . . . . . . 4

        3.    A Pre-Indictment Stay is Warranted because any Harm to the Public will be Adequately Protected by the Criminal Investigation . . . . . . . . . . . . . . 6

    B.    The Motion Should be Granted, as Plaintiff will not Suffer any Prejudice by the Issuance of a Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.    Plaintiff has Failed to Articulate a Sufficient Injury to Warrant Denial of the Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    Plaintiff's Claims of Prejudice are Undermined by its Own Delays in Filing Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.    The Alternative Six-Month Stay is not "Functionally Equivalent" to an Indefinite Stay and would Address Plaintiff's Remaining Concerns . . . . . 8

    C.    Contrary to Plaintiff's Contentions, the DPS Defendants will Suffer Substantial Prejudice if the Stay is Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    Interests of Judicial Economy Weigh in Favor of Issuing the Stay . . . . . . . . . . . 12

    E.    The Public Interest Likewise Weighs in Favor of Issuing a Stay . . . . . . . . . . . . . 13

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

**TABLE OF AUTHORITIES**

2

**U.S. Supreme Court Cases**

3

*United States v. Kordel* (1970)
    397 U.S. 1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4

5

**Federal Cases**

6

*Akuna Matata Invs., Ltd v. Tex NOM Ltd. P'Ship* (W.D. Tex. 2008)
    US Dist. LEXIS 5-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7

8

*Brock v. Tolkow* (E.D.N.Y. 1985)
    109 F.R.D. 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,8,10,11,13

9

10

*Chao v. Fleming* (W.D. Mich. 2007)
    498 F. Supp 2d 1034  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5,7,13

11

12

*Continental Insurance Co. v. Cota* (N.D. Cal. 2008)
    WL 4298372  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13

*IBM Corp. V. Brown* (C.D. Cal. 1994)
    857 F. Supp. 1384  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14

15

*In re Adelphia Communs. Secs. Litig* (E.D. Pa. 2003)
    LEXIS 9736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16

17

*Javier H. v. Garcia-Botello* (W.D.N.Y. 2003)
    218 F.R.D. 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

18

19

*Jones v. Conte* (N.D. Cal. 2005)
    LEXIS 46962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,11

20

21

*Lizarraga v. City of Nogales Ariz.* (D. Ariz.2007 )
    U.S. Dist. LEXIS 5637 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22

23

*Marceca* (Bankr. S.D.N.Y. 1991)
    131 Bankr. 774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4,5,10

24

25

*Medina v. Argent Mortg. Co.* (N.D. Cal. 2006)
    LEXIS 30582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26

*Par Pharm. Sec. Litig.* (S.D.N.Y 1990)
    133 F.R.D 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,6

27

28

*Reyes v. Freebery* (Del. 2004)
    LEXIS 15018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*SEC v. Sandifur* (W.D. Wash. 2006)
    U.S. Dist. LEXIS 40716 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Shell Offshore v. Courtney* (E.D. La. 2006)
    LEXIS 49973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,8,13

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D. Cal. 2009)
    LEXIS 60849 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

*Volmar Distribs. v. New York Post Co.* (S.D.N.Y. 1993)
    152 F.R.D. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Walsh Securities, Inc. v. Cristo Property Management, Ltd.* (D.N.J. 1998)
    7 F. Supp 2d 528 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5,6,7,11,12,13

**Federal Statutes and Regulations**

18 U.S.C. §1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,6,12

1

## I.  SUMMARY OF REPLY

As detailed in the DPS Defendants' moving papers, a stay of this action is warranted in the interests of justice.  Indeed, a stay is particularly appropriate in this case because the scope of the criminal investigation is based on the _same_ "cookie stuffing" allegations at issue in the present action and the _same_ remedial statute underlying Plaintiff's racketeering allegations – 18 U.S.C. § 1343.  The courts have repeatedly found that stays are warranted under such circumstances notwithstanding the pre-indictment status of the criminal investigation.  In that regard, the extent of the overlapping issues directly implicates the defendant's Fifth Amendment rights and is particularly prejudicial in terms of limiting the defendant's ability to meaningfully defend himself in the civil action.  Here, for these precise reasons, a stay is necessary to protect Mr. Hogan's Fifth Amendment rights.

Moreover, a stay is appropriate where, as here, the plaintiff has failed to establish _any_ particularized harm that would warrant a denial.  Indeed, a number of courts have expressly found that the generic harms raised by Plaintiff in this case are insufficient to outweigh the defendant's constitutional rights.  And in any event, Plaintiff's claims of prejudice are undermined by its own 14-month delay in filing suit.  Likewise, although Plaintiff now claims that the factual scope of the criminal investigation is entirely "speculative" and cannot be determined, this contention directly contradicts its prior representations that the authorities are investigating whether "the fraudulent activities _alleged by eBay in this case_ constitute federal crimes," and that "_it is those schemes_ that caused the Federal Bureau of Investigation to raid named Defendants Shawn Hogan and Brian Dunning in June 2007 and to seize their computers."  The factual basis of the criminal investigation has not become an inherent mystery, and numerous cases have issued pre-indictment stays in directly comparable circumstances.  Further, the alternative six-month stay proposed by the DPS Defendants is entirely reasonable and is not, as Plaintiff contends, "functionally equivalent to a stay of indefinite duration."

## II.  ARGUMENT

### A.  Mr. Hogan's Fifth Amendment Rights are Directly Implicated in this Case, and Plaintiff's Contentions to the Contrary are Unfounded.

Plaintiff contends that "Defendants' motions should be denied because no criminal action is pending against any Defendant" and the lack of an indictment is "fatal" to the motions for stay.  (Opp., p.

4:24-25). However, the courts have made clear that "a stay should not be categorically denied solely because the defendant has not yet been indicted." *Chao v. Fleming* (W.D. Mich. 2007) 498 F. Supp. 2d 1034, 1038; *Brock v. Tolkow* (E.D.N.Y. 1985) 109 F.R.D. 116, 119, fn. 2. And it is equally well established that the similarity of the issues underlying the civil and criminal actions is regarded as "the most important factor" in determining whether or not to grant a stay. *Chao, supra,* 498 F. Supp. 2d at 1039; *Walsh Securities, Inc. v. Cristo Property Management, Ltd.* (D.N.J. 1998) 7 F. Supp. 2d 523, 527.[1]

Indeed, the courts have indicated that a pre-indictment stay is "particularly appropriate" where the civil action and criminal investigation arise from **the same remedial statute _or_ the same factual transaction**. *Par Pharm. Sec. Litig.* (S.D.N.Y. 1990) 133 F.R.D. 12, 14; *see also In re Marceca* (Bankr. S.D.N.Y. 1991) 131 Bankr. 774, 778 (pre-indictment stay appropriate where "both civil and criminal charges arise from the same remedial statute or the same factual transaction" and granting stay because debtor was the "target of a federal criminal investigation concerning the same facts which are involved in the bankruptcy litigation."); *Walsh Securities, supra,* 7 F. Supp. 2d at 527 (granting pre-indictment stay where criminal investigation was based on "essentially the same allegation made by [the plaintiff] in its civil complaint."). Further, as discussed below, the pre-indictment status of the investigation does not warrant the denial of a stay where, as here, other factors, including the lack of prejudice suffered by the plaintiff, "render this factor less significant." *Chao, supra,* 498 F. Supp. 2d at 1039.

1. The Factual Scope of the Criminal Investigation is not "Speculative."

Plaintiff contends that the foregoing principles do not apply in this case because the factual scope of the criminal investigation is "speculative" at the pre-indictment stage. (Opp., p. 17, fn. 9; *see also* p. 9:1-3).[2] This contention is in stark contrast to Plaintiff's prior statements on this issue, where Plaintiff

---

[1] As discussed in the DPS Defendants' moving papers this principle has been adopted in the Northern District. *See Jones v. Conte* (N.D. Cal. 2005) 2005 U.S. Dist. LEXIS 46962, 3 (stay warranted where civil defamation action and criminal proceeding both arose from defendant's alleged involvement in distribution of performance-enhancing drugs); *Continental Insurance Co. v. Cota* (N.D. Cal. 2008) WL 4298372, 2 (stay particularly appropriate where proceedings arose from "same nucleus of facts").

[2] Citing *SEC v. Sandifur* (W.D. Wash. 2006) U.S. Dist. LEXIS 40716, 4, Plaintiff further contends that the issuance of a pre-indictment stay is not appropriate even when the underlying factual issues completely overlap. First, this contention is directly contradicted by the authorities cited above, which do not appear to have been raised in *Sandifur*. Indeed, the defendant in that case relied on cases involving motions to suppress, which the court found to be entirely irrelevant. *Id.* at 7. Further, in *Sandifur*, the investigating authorities were silent as to whether they intended to pursue an indictment and the court determined that the plaintiff would be

---

affirmatively represented that the authorities are investigating whether "the fraudulent activities *alleged by eBay in this case* constitute federal crimes," and that "*it is those schemes* that caused the Federal Bureau of Investigation to raid named Defendants Shawn Hogan and Brian Dunning in June 2007 and to seize their computers."  (Campbell Decl. Ex. 1, p. 4:13-16; Ex. 2, p. 1:4-8; italics added).  Without making any effort to address or reconcile those prior representations, Plaintiff now contends that "[a]ny determination of the potential degree of factual overlap is speculative prior to indictment." (Opp., p. 17, fn. 9).  Plaintiff's contentions are without merit.

As discussed in the DPS Defendants' moving papers, the United States Attorney's Office (USAO) has indicated that Mr. Hogan is the subject of an ongoing criminal investigation as to whether activities associated with Plaintiff's affiliate marketing program constitute wire fraud under 18 U.S.C. §1343, and the scope of the investigation relates to the "cookie stuffing" schemes alleged against the Defendants in this case.  (DPS Defendants' MPAs, p. 5:2-6).  Notwithstanding Plaintiff's claims, numerous courts have issued pre-indictment stays in directly comparable circumstances.  *See Walsh Securities, supra,* 7. F. Supp. 2d at 527 (issuing stay where criminal investigation was based on same alleged real estate transactions); *Chao, supra,* 498 F. Supp. 2d at 1039 (issuing stay where investigation involved same banking transactions); *Marceca*, *supra*, 131 Bankr. at 776, 778 (similar result).  Indeed, given the fact that Plaintiff itself has directed extensive discovery efforts at obtaining the materials *seized by the FBI*, its claims regarding the speculative factual basis of the investigation lack merit.

> **2.**  The Fact that the Government is not the Real Party in Interest in both Proceedings is not an Appropriate Basis for Denying the Stay.

Plaintiff contends that the issuance of a pre-indictment stay is inappropriate in the case because this is not a circumstance where the government is the real party in interest in both the civil action and the criminal investigation.  (Opp., p., 5:18-6:14).  However, the courts have repeatedly indicated that "[a] stay of civil proceedings *is most likely to be granted* where the civil and criminal actions involve the same subject matter [citation], and *is even more appropriate* when both actions are brought by the government."  *Brock, supra,* 109 F.R.D. at 119 (italics added); *see also Chao, supra,* 498 F. Supp. 2d at 1038.  Thus, the fact that the government is a party in both proceedings serves as a separate and

---

substantially prejudiced by the issuance of a stay.  *Sandifur* is therefore distinguishable.

1  independent basis for issuing a stay.  It is not, as Plaintiff contends, a limiting factor that serves as a

2  basis for denying a stay that is otherwise appropriate.

3        Plaintiff further contends that "[t]he only pre-indictment case cited by Defendants in support of

4  their 'factual overlap' argument granted a stay in reliance on the fact that the government was driving

5  both the civil action and the criminal investigation, heightening the possibility for discovery abuse."

6  (Opp., p. 17, fn. 9, citing *Chao*, 498 F. Supp. 2d at 1038).  Again, Plaintiff's contentions are without

7  merit.  (*See* DPS Defendants' MPAs, p. 8:22-24).

8        For instance, in *Walsh Securities*, the plaintiff, a private lending institution, filed a civil RICO

9  action against a number of corporate entities and their principals based on a series of allegedly fraudulent

10  real estate transactions.  *Walsh Securities, supra,* 7 F. Supp. 2d at 525-526.  At the same time, the United

11  States Attorney's Office was investigating "whether the transactions amounted to criminal conduct."  *Id.*

12  at 526.  Several defendants, including one Stanley Yacker, had confirmed that they were the targets of

13  the investigation and moved for a stay of the civil proceedings based thereon.  *Id.*  In evaluating the

14  relevant factors, the court first addressed the extent to which the proceedings involved the same factual

15  underpinnings.  *Id.* at 527.  After recognizing this factor as the most significant consideration in

16  determining whether to issue the stay, the Court noted the following:

17        There is no dispute that the civil and criminal cases here involve many of the same issues
        arising out of these real estate transactions. According to Yacker's attorney, the
18        Government is investigating whether any of the real estate transactions were fraudulent.
        (Lustberg Aff., P 3.)  This is <u>essentially the same allegation made by Walsh in its civil</u>
19        <u>complaint.  Therefore, this factor weighs in favor of a stay</u>.

20
21  *Id.* (Emphasis added).

22        Thus, contrary to Plaintiff's contentions, the propriety of issuing a pre-indictment stay is not

23  limited to those situations where the government is the real party in interest in both proceedings.[3]  *See*

24  *also Marceca, supra*, 131 Bankr. at 776, 778 (granting pre-indictment stay where private creditor's claim

25
26        [3] Plaintiff's attempt to distinguish *Walsh Securities* is misplaced.  The fact that the government was
    concerned that discovery could impact its investigation was not the primary basis for issuing the stay in that case.
27  Rather, the court issued the stay based on the "Fifth Amendment problems" associated with the parallel criminal
    investigation and found that a stay was further appropriate because "interrogatory and deposition discovery
28  pose[d] a substantial risk of self-incrimination."  *Walsh Securities*, 7 F. Supp. 2d at 527.  As detailed above, the
    factual circumstances at issue in Walsh Securities are directly analogous to those at issue here.

involved "same facts" as pending USAO investigation).

      **3.**    <u>A Pre-Indictment Stay is Warranted because any Harm to the Public will be Adequately Protected by the Criminal Investigation</u>.

As explained in the DPS Defendants' moving papers, a pre-indictment stay is "particularly appropriate" where both the proceedings arise from the same remedial statute because the criminal investigation is likely to vindicate the same public interest at issue in the civil suit.  (*See* DPS Defendants' MPAs, p. 8, citing *Par Pharm. Sec. Litig*. (S.D.N.Y. 1990) 133 F.R.D. 12, 14).

Plaintiff claims that the DPS Defendants have "misappl[ied]" this principle because Plaintiff's monetary claims are not "identical to the interests of the public at large."  (*Id*. at p. 6:26-28).  Plaintiff further contends that "[t]he interests of a private plaintiff seeking to recover for monetary harms are not the equivalent of the public interest and none of the cases cited by the Defendants hold otherwise." (Opp., p. 6:17-19).  However, in *Shell Offshore, Inc. v. Courtney* (E.D. La. 2006) 2006 U.S. Dist. LEXIS 49973 at 2, 4, the court found that there would not be any harm associated with Plaintiff's civil RICO claim "that will not be remedied by the criminal investigation."  Similarly, in *Walsh Securities*, the court found that any harm to the public associated with the plaintiff's civil RICO claim would be fully remedied by the criminal investigation.  *Walsh Securities, supra,* 7 F. Supp. 2d at 529.

Thus, relevant case law simply does not support Plaintiff's "identical interest" standard.  Indeed, because the public's interest in a civil action would never be identical to the civil plaintiff's *monetary* interests, Plaintiff's distinction is untenable.  Here, given the fact that both proceedings are predicated on Section 1343, the public interest will be adequately addressed through the criminal investigation and the issuance of a stay is entirely warranted.[4]

    **B.**    **The Motion Should be Granted, as Plaintiff will not Suffer any Prejudice by the Issuance of a Stay.**

      **1.**    <u>Plaintiff has Failed to Articulate a Sufficient Injury to Warrant Denial of the Stay</u>.

"When 'evaluating the plaintiff's burden associated with the stay, courts may insist that the

---

[4] Plaintiff spends a substantial portion of its brief attacking the motions for stay previously filed by the Dunning Defendants in the CJ action. As has been previously noted, the DPS Defendants were not parties to that litigation and Plaintiff's assertions regarding the "recycled" nature of those arguments, to the extent relevant at all, do not apply to the DPS Defendants.

plaintiff establish more prejudice than simply a delay in her right to expeditiously pursue her claim.'" *Reyes v. Freebery* (Del. 2004) 2004 U.S. Dist. LEXIS 15018, 15 (quoting *In re Adelphia Communs. Secs. Litig.* (E.D. Pa. 2003) 2003 U.S. Dist. LEXIS 9736 at 19). "Delays in civil cases are fairly common" and a stay is appropriate where the Plaintiff has "asserted no injury that is particularly unique." *Walsh Securities, supra,* 7 F. Supp. 2d at 528. This factor therefore weighs in favor of granting the stay to the extent the plaintiff "fails to set forth any evidence beyond mere speculation and argument that a delay in the civil case" will result in prejudice. *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D.Cal. 2009) 2009 U.S. Dist. LEXIS 60849, 9.

Here, Plaintiff claims that it will be severely prejudiced by a stay of the proceedings because any delay "could prevent eBay from discovering other witnesses or evidence in support of its case." (Opp, p. 12:2-17). Plaintiff contends this factor weighs in favor of denying the stay because witnesses relocate and memories fade. (*Id*. at pp. 12:28-13:1). However, under the authorities set forth above, these harms are not sufficiently particularized to warrant the denial of a stay. For instance, in *Chao*, the court addressed the precise harms now raised by Plaintiff. The court concluded that while the plaintiff "contends that fading memories and loss of documentation and witnesses are at stake, she offers no specific examples making this case any more compelling than other cases in which a stay is sought." *Chao, supra,* 498 F. Supp. 2d at 1040. Notably, because the Plaintiff's failed to articulate any particularized harm, the court found that the pre-indictment status of the investigation was "less significant." *Id.* at 1039. Here, as in *Chao*, Plaintiff's generic allegations are insufficient to warrant denial of the stay and the DPS Defendants' motion should therefore be granted.

**2.**   Plaintiff's Claims of Prejudice are Undermined by its Own Delays in Filing Suit.

As detailed in the DPS Defendants' moving papers, a plaintiff cannot legitimately claim prejudice when the plaintiff itself has delayed in pursuing its claims. *Medina v. Argent Mortg. Co.* (N.D. Cal 2006) 2006 U.S. Dist. LEXIS 30582, 8. Here, even though Plaintiff claims to have completed detailed investigations of the alleged wrongdoing on specific dates in June of 2007, Plaintiff waited over 14 months to file the present action.[5] For instance, Plaintiff alleges that a third party, Gallivan, Gallivan & O'Melia LLC, conducted a "cookie stuffing investigation" on Plaintiff's behalf on June 6 and 14,

---

[5] Plaintiff filed this action on August 25, 2008.

2007, which allegedly confirmed Plaintiff's allegations. (SAC ¶¶ 54-55). In addition, Plaintiff contends that it performed its own detailed investigation from approximately June 8-19, 2007, which purportedly established specific instances of wrongdoing based on specific Publisher Identification Numbers. (SAC ¶56). Further, Plaintiff itself contends that alleged scheme ended in June of 2007. (SAC ¶¶ 48, 57).

In opposing the motion, Plaintiff contends that any delay in filing suit was reasonable, given its obligation to comply with Rule 11. (Opp., p. 13:8-20). However, based on Plaintiff's own allegations in the SAC, this standard would have been satisfied in June of 2007. While the DPS Defendants do not dispute the necessity of conducting a thorough pre-filing investigation, Plaintiff simply has not made any attempt to explain why an additional 14-month period was necessary to comply with the Rule. For instance, Plaintiff clearly felt that it had sufficient information to file a complaint with the FBI and pursue federal criminal charges against the Defendants as of June of 2007.[6] Even assuming that an additional *eight-month* pre-filing investigation was reasonably required, Plaintiff would not be able to justify the remaining six-month delay. At a minimum, as detailed in the following section, a six-month stay would be appropriate and commensurate with Plaintiff's delay in bringing this action.[7]

**3.** <u>The Alternative Six-Month Stay is not "Functionally Equivalent" to an Indefinite Stay and would Address Plaintiff's Remaining Concerns.</u>

Plaintiff repeatedly claims that the issuance of a stay would be prejudicial in this case because the relevant criminal statutes of limitation will not run for some time and the resulting delay will be "potentially indefinite." (Opp., p. 5:11). Indeed, Plaintiff repeats this claim in support of almost every

---

[6] As noted in the DPS Defendants' moving papers, the consideration of prejudice to the plaintiff supports a stay where, as here, "the plaintiff does not continue to suffer losses and does not dispute that it filed a criminal complaint . . ." *Shell Offshore, supra,* 2006 U.S. Dist. LEXIS 49973 at 4.

[7] Plaintiff claims that a stay would be improper because Defendants have already delayed this case with the successive motions to dismiss and "obstructionist" discovery behavior. However, Plaintiff fails to recognize that the DPS Defendants' initial motion to dismiss the RICO claim was *granted*, as Plaintiff failed to plead the same with sufficient particularity. Further, the subsequent motions to dismiss/transfer were entirely appropriate given the forum selection clause in the PSA and the Court's initial ruling thereon. Moreover, the pending discovery disputes are largely based on Mr. Hogan's constitutional rights. The invocation of those rights does not constitute "obstructionist" behavior, and the DPS Defendants have met and conferred with Plaintiff in good faith throughout the discovery process. The courts have indicated that a stay is the proper remedy where "no one to whom the civil discovery request is addressed can answer 'without subjecting himself to a "real and appreciable" risk of self incrimination.'" *Brock, supra,* 109 F.R.D. at 120 (citing *United States v. Kordel* (1970) 397 U.S. 1, 8-9). The DPS Defendants' pursuit of such relief is not improper.

---

section of its opposition brief.  (*See* Opp., pp. 5, 11, 12, 13, 14, 18, 19, 22 ).  Plaintiff further contends that even accepting the USAO's intention to seek an indictment, the present motion should be denied because there is "little guarantee that an indictment will in fact be returned, or that charges are imminent."  (Opp., p. 8:20-23).  However, Plaintiff fails to recognize that the alternative six-month stay would squarely address both of these concerns.  Such a limited stay would be entirely reasonable given the relevant timeline identified by the USAO, the constitutional rights at issue, Plaintiff's own 14-month delay in filing suit, and Plaintiff's failure to articulate any prejudice that would result from the stay other than the generic inconveniences that always apply in such cases.

Moreover, Plaintiff's attempts to discredit the viability of an abbreviated stay are wholly without merit.  For instance, Plaintiff contends that because "Defendants will certainly seek an extension at the expiration of the six-month period unless they have been informed that the criminal investigation is closed," the six-month stay "is functionally equivalent to a stay of indefinite duration."  (*Id.*, p. 11:14-22).  Plaintiff's logic is flawed, however, as the stay would cease *by its own terms* at the end of the six-month period and it would then be the DPS Defendants' burden to establish an appropriate factual and legal basis for any continuance.  Plaintiff's argument presumes that the Court will automatically grant any requested continuance, which is simply not the case.[8]  Because the foregoing would strike a reasonable balance between the parties' competing interests, Plaintiff's claims regarding the "indefinite" nature of the abbreviated stay lack merit.

**C.    Contrary to Plaintiff's Contentions, the DPS Defendants will Suffer Substantial Prejudice if the Stay is Denied.**

As detailed in the DPS Defendants' moving papers, a stay is appropriate to the extent the civil action may expand the scope of criminal discovery or expose defense strategies to investigating authorities.  *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum* (C.D.Cal. 2009) 2009 U.S. Dist. LEXIS 60849, 6.  Plaintiff contends that no such concerns are at issue here "[i]nsofar as the government is not a party to this action and already has obtained its evidence against the Defendants through seizures

---

[8] Plaintiff's reliance on *Lizarraga v. City of Nogales Ariz.* (D. Ariz. 2007) U.S. Dist. LEXIS 5637 is similarly misplaced.  (Opp., p. 11:16-19).  In that case, the court was constrained to issue even a six-month stay due to the deteriorating state of the plaintiff's mental stability and financial resources.  No such circumstances are at issue here.

. . ." (Opp., p. 4:17-19).  However, the fact that government has executed a search warrant only serves to further establish the extent to which Mr. Hogan's Fifth Amendment rights are implicated.

Plaintiff further claims that Mr. Hogan is not at risk of any prejudice in this case because he can simply assert his Fifth Amendment privilege.  Plaintiff states, "Defendants' contention that the government could unfairly obtain any incriminating information from the conduct of the civil case is therefore *utterly without basis*."  (Opp., p. 16:20-25, italics added).  This misses the point entirely, as the purpose for requesting a stay in the first instance is to avoid compromising the defendant's constitutional rights:

> Concededly, it does not offend the Constitution if a defendant in a civil case is asked questions the answers to which might incriminate him. But even if the defendant's dilemma does not violate the fifth amendment or due process, it certainly undercuts the protections of those provisions, and a Court can exercise its discretion to enable a defendant to avoid this unpalatable choice when to do so would not seriously hamper the public interest.

*Brock, supra,* 109 F.R.D. 116, 120-121 (emphasis added).  Here, as the DPS Defendants have explained, a stay of the civil case in this action will not seriously hamper the public interest, as the criminal investigation will continue to serve any such interests.

Moreover, the foregoing concerns are magnified in this case:  "The risk that civil discovery will be used to circumvent criminal discovery limitations becomes much greater where the same facts are at issue." *Javier H. v. Garcia-Botello* (W.D.N.Y. 2003), 218 F.R.D. 72, 74.  For instance, in the *Marceca* decision cited above, the court granted a bankruptcy debtor's request for a pre-indictment stay under circumstances directly analogous to those at issue here:

> [T]he plaintiff's right to proceed expeditiously in the bankruptcy litigation is not substantially impaired by a limited delay, whereas the debtor's *fifth amendment* rights would be seriously jeopardized if he is required to defend the bankruptcy litigation while he is a target of a federal criminal investigation concerning the same facts which are involved in the bankruptcy litigation.

*In re Marceca* (Bankr. S.D.N.Y. 1991) 131 Bankr. 774, 778 (emphasis added).  Because these concerns are equally at issue in this case, there can be no question that Mr. Hogan will be substantially prejudiced by denial of the stay.

/././

Plaintiff further contends that the DPS Defendants' claims of prejudice are unfounded because corporate plaintiffs may provide the results of their own investigations to the government. (Opp., p. 16:26-17:18, citing *IBM Corp. v. Brown* (C.D. Cal. 1994) 857 F. Supp. 1384)). The DPS Defendants do not dispute that the provision of such information is appropriate. However, Plaintiff's contention misses the mark: the concerns articulated in the case law are based on the *potential* for prejudice associated with materials or information obtained **as a result of the civil discovery process.**[9]  *See Javier, supra*, 218 F.R.D. at 74 (noting that the "*risk*" of prejudice becomes "*much greater*" when the same facts are at issue) (italics added). Indeed, notwithstanding Plaintiff's assertions to the contrary, the decision to issue a stay "does not require a finding of bad faith . . ." *See Brock, supra,* 109. F.R.D. at 120, fn. 3; *see also Walsh Securities, supra,* 7 F. Supp. 2d at 529  (noting "*strong potential* for an unjust result outweighs" plaintiff's concerns) (italics added).

Plaintiff asserts that alternative protective measures and remedies could be adopted to address these concerns, and that "most obviously, the individual Defendants can simply assert their Fifth Amendment privileges as necessary." (Opp., pp. 17-18). First, the assertion of the Fifth Amendment is not a "remedy" for the reasons stated above. Further, Plaintiff does not explain how any alternative measures would adequately protect Mr. Hogan's Fifth Amendment rights. For instance, over the course of the litigation, specific information regarding particular defenses could easily be communicated to third parties, including the authorities, even if such communications were not deliberate. In that regard, a stay is the appropriate mechanism to ensure that the defendant's constitutional rights remains protected. Indeed, if alternatives measures were sufficient to protect those rights, stays would never be issued or required.

Moreover, Plaintiff does not deny that it has provided information to the authorities in the past, or that it has a direct interest in furthering prosecutions related to its affiliate marketing program. In circumstances where the plaintiff has a particularized interest in the defendant's prosecution, the courts have found that a stay is appropriate. *See Akuna Matata Invs., Ltd. v. Tex. NOM Ltd. P'ship* (W.D. Tex.

---

[9]  In any event, Plaintiff's repeated reliance on the *IBM* decision is misplaced. As previously explained by this Court, *IBM* is distinguishable because the defendants in that case "had already submitted sworn testimony in the civil matter, which minimized the remaining Fifth Amendment protection they could assert." *See Jones v. Conte* (N.D. Cal. 2005) 2005 U.S. Dist. LEXIS 46962, 4-5.

2008) 2008 U.S. Dist. LEXIS, 5-6 (issuing pre-indictment stay where Plaintiff had a pecuniary interest in the successful prosecution of the defendant and issues in criminal case "overlap[ped] substantially" with those of the civil case). Given the circumstances associated with the pending investigation and the direct factual overlap between the proceedings, a stay is necessary to ensure that Mr. Hogan's constitutional rights are adequately protected.

A stay is likewise appropriate as to Digital Point Solutions, Inc. Plaintiff contends that "[b]ecause a pre-indictment stay is not warranted for the individual Defendants, its is not warranted for any of the Defendants." (Opp., p. 19:7-9). However, as explained in the preceding sections, the issuance of a pre-indictment stay is particularly appropriate in this case. Because Plaintiff's arguments for denying the stay as to Digital Point Solutions, Inc. are premised on the same pre-indictment arguments addressed above, they similarly fail. *See Walsh Securities, supra,* 7 F. Supp. 2d at 529 (issuing pre-indictment stay as to all defendants, including entity defendants, where relevant factors weighed in favor of doing so). And as noted in the DPS Defendants' moving papers, a stay as to all parties is preferred over a partial stay, as it avoids the duplication of effort and waste of resources during discovery. *See Volmar Distribs. v. New York Post Co.* (S.D.N.Y. 1993) 152 F.R.D. 36, 39, 41.

### D. Interests of Judicial Economy Weigh in Favor of Issuing the Stay.

With respect to issues of judicial economy, Plaintiff repeats the same claims that it raises throughout its opposition brief: (i) a stay would result in an indefinite delay of the action, and (ii) the factual scope of the criminal investigation is speculative. For instance, Plaintiff claims that "unless and until criminal charges are actually brought and the contours of the criminal action are defined, any argument regarding resolution of common issues is mere speculation." (Opp., p. 20:17-19). Again, this statement is directly contradicted by Plaintiff's prior representations that the investigation is based on "the fraudulent activities alleged by eBay in this case." Contrary to Plaintiff's claims, the scope of the criminal investigation has not become an inherent mystery – the USAO has expressly indicated that the investigation is focused on Plaintiff's affiliate marketing program and potential violations of 18 U.S.C. § 1343. Plaintiff's racketeering allegations are predicated on the same alleged wrongdoing and the same remedial statute.

/ / /

In situations where, as here, there is substantial overlap between the underlying issues, staying the civil action has a strong potential to promote judicial economy. *See Brock, supra,* 109 F.R.D. at 120; *see also Chao, supra,* 498 F.Supp. 2d at 1040 (concluding "that scarce judicial resources" would be best used "by staying this case in favor of the criminal case, which may ultimately reduce or eliminate the need for discovery or result in a settlement of this case if Defendants are convicted.")

In addition, contrary to Plaintiff's assertions, an abbreviated six-month stay would not indefinitely disrupt the Court's calendar. Indeed, a stay is appropriate where, as in this case, "an indictment appears to be much more than some fanciful and far-off possibility, and it is likely that any delay will not be substantial." *Chao, supra,* 498 F. Supp 2d at 1040; *see also Shell, supra,* 2006 U.S. Dist. LEXIS 49973 at 4 (the court's interests in managing its docket "are not seriously implicated by a stay of limited duration to be revisited at its expiration."). And as previously explained, without an appropriate stay, Defendants will be forced to continue to assert their Fifth Amendment rights, which will "burden the Magistrate Judge and this Court with deciding a constant stream of privilege issues." *Walsh Securities, supra,* 7 F.Supp. 2d at 528.

### E.   The Public Interest Likewise Weighs in Favor of Issuing a Stay.

Plaintiff asserts that it would be particularly inappropriate to stay its RICO claim, because such claims are necessary to vindicate the public interest. And Plaintiff again claims that the only cases cited by the DPS Defendants in support of the public interest factor are those involving governmental plaintiffs or post-indictment stays. Again, however, this contention is inaccurate. As noted above, a number of cases have expressly found that any public interest associated with the plaintiff's civil RICO claim is fully protected by the criminal investigation, and have issued pre-indictment stays accordingly. *See Shell, supra,* 2006 U.S. Dist. LEXIS 49973 at 4 ("no showing of harm from alleged fraud that will not be remedied by the criminal investigation . . ."); *Walsh, supra,* 7 F. Supp. 2d at 529 ("there is no tangible harm to the public from these alleged frauds that could not be remedied by the criminal investigation."). Further, as explained in the DPS Defendants' moving papers, this case does not involve any of the traditional bases for denying a stay based on the public interest, such as those associated with ongoing harms related to public safety, and Plaintiff does not contend otherwise.

The public interest therefore weighs in favor of issuing a stay.

1

### III.  CONCLUSION

2       For the foregoing reasons, the DPS Defendants respectfully request that the Court stay this action

3 pending resolution of the parallel criminal investigation.  In the alternative, the DPS Defendants request

4 that the Court issue the abbreviated six-month stay.

5 DATED: November 6, 2009                 s/Ross M. Campbell

6                                  COAST LAW GROUP, LLP
                                 Attorneys for Defendants, Shawn Hogan

7                                  and Digital Point Solutions, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28