# EXHIBIT 13

Dockets.Justia.com

1　RONALD RUS, #67369
　　rrus@rusmiliband.com
2　LEO J. PRESIADO, #166721
　　lpresiado@rusmiliband.com
3　RUS, MILIBAND & SMITH
　　A Professional Corporation
4　Seventh Floor
　　2211 Michelson Drive
5　Irvine, California 92612
　　Telephone:　(949) 752-7100
6　Facsimile:　(949) 252-1514

7
　　Attorneys for Defendants
8　THUNDERWOOD HOLDINGS, INC.,
　　BRIAN DUNNING, and BRIANDUNNING.COM

9

10　　　　　　　UNITED STATES DISTRICT COURT

11　　　　　　NORTHERN DISTRICT OF CALIFORNIA

12　　　　　　　　　SAN JOSE DIVISION

13

| | |
|---|---|
| EBAY INC., | CASE NO. C 08-4052 |
| Plaintiff, | **COMPENDIUM OF EXHIBITS IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS THUNDERWOOD HOLDINGS, INC., BRIAN DUNNING AND BRIANDUNNING.COM** |
| vs. | |
| DIGITAL POINT SOLUTIONS, INC.; SHAWN HOGAN; KESSLER's FLYING CIRCUS; THUNDERWOOD HOLDINGS, INC.; TODD DUNNING; DUNNING ENTERPRISES, INC.; BRIAN DUNNING; BRIANDUNNING.COM; and DOES 1-20, | |
| Defendants. | DATE:　　December 12, 2008<br>TIME:　　9:00 a.m.<br>CTRM:　　3<br><br>Hon. Jeremy Fogel presiding |

　　　　Defendants Thunderwood Holdings, Inc., Brian Dunning and

BrianDunning.com (collectively, "Defendants") hereby submit the following Compendium of

Exhibits in support of the Motion To Dismiss Plaintiff's First Amended Complaint filed

concurrently herewith:

/ / /

/ / /

/ / /

1

COMPENDIUM OF EXHIBITS IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - CASE NO. C 08-4052

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Second Amended Complaint with attached Exhibits "A" and "B" filed in Case No. 30-2008 00101025, California Superior Court of the County of Orange, dated May 15, 2008. |
| 2 | Publisher Service Agreement, Exhibit "A" to Second Amended Complaint (*i.e.*, Exhibit "1") |
| 3 | eBay Affiliate Global T&C's October 1, 2005 |
| 4 | E-mail from Phillip Montoya, Esq. to Leo J. Presiado and Stewart Foreman dated October 22, 2008 |
| 5 | California Secretary of State Business Record (Thunderwood Holdings, Inc.) |
| 6 | California Secretary of State Business Record (Dunning Enterprises, Inc.) |
| 7 | California Secretary of State Business Record (Digital Point Solutions, Inc.) |
| 8 | California Secretary of State Business Record (Commission Junction, Inc.) |
| 9 | County of Orange Business Record (Kessler's Flying Circus) |

DATED: October 27, 2008

Respectfully submitted,

RUS, MILIBAND & SMITH
A Professional Corporation

By: _____
LEO J. PRESIADO
Attorneys for Defendants
Thunderwood Holdings, Inc., Brian Dunning
and BrianDunning.com

2

**EXHIBIT "1"**

1    **ERNSTER LAW OFFICES, P.C.**
     **John H. Ernster, Esq., State Bar No. 59338**
2    **Phil J. Montoya, Jr., Esq., State Bar No. 124085**
     70 South Lake Avenue, Suite 750
3    Pasadena, California   91101
     Telephone:    (626) 844-8800
4    Facsimile:    (626) 844-8944

5

6    **Scott Patrick Barlow, Esq., State Bar No. 182295**
     General Counsel
     4353 Park Terrace Drive
7    Westlake Village, California   91361
     Telephone:    (818) 575-4500
8    Facsimile:    (818) 575-4505

9

10    Attorneys for Plaintiff
     Commission Junction, Inc.

11

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13             FOR THE COUNTY OF ORANGE, CENTRAL BRANCH

14

15

| | |
|---|---|
| COMMISSION JUNCTION, INC., | CASE NO.:   30-2008 00101025 |
| Plaintiff, | ASSIGNED FOR ALL PURPOSES TO: JUDGE RANDELL L. WILKINSON DEPARTMENT C25 |
| v. | |
| THUNDERWOOD HOLDINGS, INC. dba KESSLER'S FLYING CIRCUS; TODD DUNNING; BRIAN DUNNING; and DOES 1 through 50, inclusive, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| Defendants. | 1.   Breach of Contract<br>2.   Open Book Account<br>3.   Account Stated<br>4.   Reasonable Value<br>5.   Conversion<br>6.   Unfair Competition<br>7.   Declaratory Relief |
| | *[Unlimited]* |

26    Plaintiff Commission Junction, Inc. alleges as follows:

27        1.      At all times relevant herein, plaintiff Commission Junction, Inc. ("CJI") was

28    a corporation organized and existing under the laws of the State of Delaware and wholly

1    owned by ValueClick, Inc., a corporation organized and existing under the laws of the

2    State of California with its principal place of business in the County Los Angeles, State of

3    California.

4        2.    CJI is informed and believes that at all times relevant herein defendant

5    Kessler's Flying Circus was a California general partnership doing business in the State of

6    California and the Counties of Los Angeles and Orange.

7        3.    CJI is informed and believes that at all times relevant herein defendant

8    Thunderwood Holdings, Inc. was a California corporation doing business at times as

9    "Kessler's Flying Circus", in the State of California and the Counties of Los Angeles and

10    Orange. Thunderwood Holdings, Inc. was at all times relevant a general partner of

11    Kessler's Flying Circus.

12        4.    CJI is informed and believes that at all times relevant herein defendant Todd

13    Dunning is an individual doing business in the State of California and the Counties of

14    Los Angeles and Orange. Todd Dunning was at all times relevant a general partner of

15    Kessler's Flying Circus.

16        5.    CJI is informed and believes that at all times relevant herein defendant Brian

17    Dunning is an individual doing business in the State of California and the Counties of

18    Los Angeles and Orange. Defendants Kessler's Flying Circus, Thunderwood Holdings,

19    Inc., Todd Dunning, and Brian Dunning will be referred to hereinafter collectively as

20    "KESSLER".

21        6.    At all times herein mentioned CJI's headquarters and principal place of

22    business was in Westlake Village, California. The indebtedness described herein was

23    incurred and payable within the County of Los Angeles, State of California and in the

24    above judicial district.

25        7.    Said obligation is commercial in nature and not based on a retail installment,

26    sales contract, or a conditional sales contract and is not to subject the provisions of

27    California Civil Code §1812.10 and/or §2984.4.

28    / / /

8.    CJI is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said defendants by such fictitious names. CJI will amend this Complaint to allege the true names and capacities of said defendants when they are ascertained. CJI is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner to pay the obligation described herein and that CJI's losses as alleged herein were proximately caused by said defendants' conduct.

9.    CJI is informed and believes and thereupon alleges that there exists an identity of interest between Thunderwood Holdings, Inc. (on the one hand) and Todd Dunning, Brian Dunning, and DOES 1-5 (on the other hand); that Todd Dunning, Brian Dunning, and DOES 1-5 completely and entirely dominate the affairs of Thunderwood Holdings, Inc., that Thunderwood Holdings, Inc. was and is undercapitalized and acts as a mere shell and alter ego for Todd Dunning, Brian Dunning, and DOES 1-5, and that to recognize the existence of Thunderwood Holdings, Inc. as separate from Todd Dunning, Brian Dunning, and DOES 1-5 would be a fiction and would result in a fraud and an injustice.

10.    CJI is informed and believes and thereupon alleges that each of the defendants herein are principals, agents, and employees of the other(s), acting at all time herein mentioned within the course and scope of their agency and employment and with the consent and permission of the other co-defendants.

## FIRST CAUSE OF ACTION

(Breach of Contract against KESSLER and DOES 1-20)

11.    CJI incorporates by this reference above paragraphs 1 through 10, inclusive, as if fully set forth herein.

12.    On or about April 14, 2005, CJI and defendants KESSLER, DOES 1-20, and each of them, entered into a written Publisher Service Agreement ("Agreement") whereby CJI agreed to provide goods and services to and for KESSLER. A true and correct copy of

1  the parties' Agreement is attached hereto as Exhibit "A" and incorporated herein by this

2  reference.  While Exhibit "A" is the Agreement defendants KESSLER, DOES 1-20, and

3  each of them, entered into the with CJI, it does not show the parties' signatures inasmuch

4  as defendants KESSLER, DOES 1-20, and each of them, chose to enter into the Agreement

5  via the Internet and the defendants have a copy of the Agreement printed that day.

6       13.    The Agreement includes the following provisions:

7       [KESSLER] "may not place Links to an Advertiser's Web Site or Web Site

8       content in third party newsgroups, message boards, blogs, unsolicited email

9       and other types of spam, link farms, counters, chatrooms, or guestbooks."

10      Agreement at Section 1(d)(i);

11      [KESSLER] "shall not cause any Transactions to be made that are not in

12      good faith, including, but not limited to, using any device, program, robot,

13      Iframes, or hidden frames."  Agreement at Section 1(d)(ii);

14      "None of Your [KESSLER's] promotional activities may infringe an

15      Advertiser's proprietary rights   CJ's [CJI's] proprietary rights, or a third

16      party's proprietary rights.  Agreement at Section 1(d)(iii);

17      "You [KESSLER] represent and warrant that all promotional means used by

18      You [KESSLER] will not contain objectionable content (including but not

19      limited to content that is misleading, libelous, defamatory, obscene, violent,

20      bigoted, hate-oriented, illegal, and/or promoting illegal goods, services or

21      activities), and that You [KESSLER] will not mislead others.  You

22      [KESSLER] agree to:  (i) use ethical and legal business practices, (ii) comply

23      with the Advertisers' Program terms and this Agreement, (iii) maintain a

24      privacy policy on Your Web site and for any non-Web site based promotional

25      method made available to Visitors, and (iv) designate Your [KESSLER]

26      Publisher Account as "special" if You [KESSLER] promote an Advertiser(s)

27      by any means other than displaying a Link to the Advertiser on Your

28      [KESSLER] Web site.  CJ [CJI] must approve all of Your [KESSLER]

1    promotional activities and may deem Your [KESSLER] promotional
2    activities inappropriate and a material breach of this Agreement in CJ's
3    [CJI's] sole discretion." Agreement at Section 2(b); and
4    "You [KESSLER] represent and warrant that: (i) You [KESSLER] have all
5    appropriate authority to operate, and to any and all content on, Your
6    [KESSLER] Web site(s); (ii) You [KESSLER] have all appropriate authority
7    in any promotional method you may choose to use." Agreement at
8    Section 7(c)(ii).

9        14.    CJI has performed all conditions, covenants, and promises required on its
10   part to be performed in accordance with the terms and conditions of said Agreement.

11       15.    CJI is informed and believes, and on that basis alleges, that beginning in
12   April of 2007 and continuing thereafter, defendants KESSLER, DOES 1-20, and each of
13   them, breached the Agreement by, *inter alia*, the following: KESSLER was providing
14   third parties with the ability to place widgets on Websites that KESSLER did not
15   own/operate without permission from the website owners to do so; KESSLER's
16   WhoLinked provided a widget used by bloggers and webmasters to display a list of
17   high-ranking sites linking to their site; KESSLER's MySpaceMaps provided widgets users
18   placed on social networking profiles, including MySpace; and KESSLER did not comply
19   with the blog sites' terms and, importantly, the following MySpace terms, which prohibit
20   commercial activity without consent:

21   "Non-commercial Use by Members. The MySpace Services are for the
22   personal use of Members only and may not be used in connection with any
23   commercial endeavors except those that are specifically endorsed or
24   approved by MySpace.com. Illegal and/or unauthorized use of the MySpace
25   Services, including collecting usernames and/or email addresses of Members
26   by electronic or other means for the purpose of sending unsolicited email or
27   unauthorized framing of or linking to the MySpace Website is prohibited.
28   Commercial advertisements, affiliate links, and other forms of solicitation

may be removed from Member profiles without notice and may result in termination of Membership privileges. Appropriate legal action will be taken for any illegal or unauthorized use of the MySpace Services."

"Content/Activity Prohibited. The following is a partial list of the kind of Content that is illegal or prohibited to post on or through the MySpace Services. MySpace.com reserves the right to investigate and take appropriate legal action against anyone who, in MySpace.com's sole discretion, violates this provision, including without limitation, removing the offending communication from the MySpace Services and terminating the Membership of such violators. Prohibited Content includes, but is not limited to Content that, in the sole discretion of MySpace.com: ... involves commercial activities and/or sales without our prior written consent such as contests, sweepstakes, barter, advertising, or pyramid schemes."

16. CJI is informed and believes, and on that basis alleges, that beginning in April of 2007 and continuing thereafter, defendants KESSLER, DOES 1-20, and each of them, further breached the Agreement by, *inter alia*, inflating traffic, forcing cookies, infringing on other's proprietary rights, providing links and widgets to wrongfully promote and/or force traffic to ebay.com, and promoting objectionable content as that is defined in the Agreement. In addition, such actions by KESSLER, DOES 1-20, and each of them, were fraudulent, unfair, deceptive, and misleading advertising and business practices which are also breaches of the Agreement.

17. Among other damaging results, these actions by defendants KESSLER, DOES 1-20, and each of them, resulted in alleged violations of CJI's agreements with eBay, Inc. which further resulted in the amount of $565,517.84 not being paid by eBay, Inc. to CJI despite CJI paying that amount to defendants KESSLER, DOES 1-20, and each of them.

18. Pursuant to Section 3 of the Agreement, CJI has a right to a return from defendants KESSLER, DOES 1-20, and each of them of the wrongful payment made to

SECOND AMENDED COMPLAINT FOR DAMAGES

1    defendants KESSLER, DOES 1-20, and each of them.

2         19.    Since June of 2007, CJI has requested that defendants KESSLER,

3    DOES 1-20, and each of them, perform their obligation, under the Agreement, by returning

4    the inadvertent payment of $565,517.84 made to defendants KESSLER, DOES 1-20, and

5    each of them, which payment was not due to defendants based on their conduct as set forth

6    herein above.  True and correct copies of certain, but not all, requests for return of the

7    $565,517.84 are attached hereto collectively as Exhibit "B" and incorporated herein by this

8    reference.

9         20.    Defendants KESSLER, DOES 1-20, and each of them, further breached the

10    Agreement by failing and refusing to pay the sum owed as set forth herein above.

11         21.    In addition, defendants KESSLER, DOES 1-20, and each of them, breached

12    the implied covenant of good faith and fair dealing by, *inter alia*, the conduct set forth

13    herein above, failing and refusing to pay the sum owed, and failing to respond to repeated

14    requests for payment.

15         22.    No part of that sum has been paid, and is now due, owing and unpaid from

16    defendants, and each of them, to CJI, the sum of $565,517.84 as of June 15, 2007, and

17    interest thereon.

18         23.    As a further result of the breach by defendants KESSLER, DOES 1-20, and

19    each of them, CJI has retained counsel and has incurred, and will incur, attorneys' fees and

20    expenses in an amount according to proof, which it is entitled to recover pursuant to the

21    Agreement.

22

23                    SECOND CAUSE OF ACTION

24           (For Open Book Account Against All Defendants)

25         24.    CJI incorporates by reference the allegations of paragraphs 1 through 23

26    above as though fully set forth herein.

27         25.    CJI is informed and believes, and thereon alleges, that within the last year,

28    defendants KESSLER, DOES 1-20, and each of them, became indebted to CJI on an open

SECOND AMENDED COMPLAINT FOR DAMAGES

1   book account for a balance due in the sum of $565,517.84 as of June 15, 2007 for goods

2   and services furnished and delivered to defendants, and each of them, at their request.

3       26.    No part of this sum has been paid, although demand therefor has been made,

4   and the sum of $565,517.84 is now due and owing from said defendants, and each of them,

5   to CJI.

6

7                   THIRD CAUSE OF ACTION

8             (For Account Stated Against All Defendants)

9       27.    CJI incorporates by reference the allegations of paragraphs 1 through 26

10   above as though fully set forth herein.

11       28.    CJI is informed and believes, and on that basis alleges, that beginning in June

12   of 2007 and continuing thereafter, there was an account stated between CJI and defendants,

13   and each of them, in which the sum of $565,517.84 was agreed on as the balance due CJI.

14       29.    No part of such sum has been paid, although demand therefor has been made,

15   and the sum of $565,517.84 is now due and owing from said defendants, and each of them,

16   to CJI.

17

18                 FOURTH CAUSE OF ACTION

19           (For Reasonable Value Against All Defendants)

20       30.    CJI incorporates by reference the allegations of paragraphs 1 through 29

21   above as though fully set forth herein.

22       31.    CJI is informed and believes, and on that basis alleges, that beginning in

23   June 2007 and continuing thereafter defendants, and each of them, became indebted to CJI

24   in the reasonable sum of $565,517.84 for goods and services furnished to defendants, and

25   each of them, at their request, and that defendants promised to pay the reasonable value for

26   goods and services furnished.

27       32.    No part of such sum has been paid, although demand therefor has been made,

28   and the sum of $565,517.84 is now due and owing from said defendants, and each of them,

to CJI.

## FIFTH CAUSE OF ACTION

### (Conversion against All Defendants)

33. CJI incorporates by this reference above paragraphs 1 through 32, inclusive, as if fully set forth herein.

34. At all times relevant, CJI had a right of ownership of its $565,517.84. However, based on the wrongful conduct by and activities of defendants KESSLER, DOES 1-50, and each of them, as more fully described in Paragraphs 12-18 herein above, that sum was wrongfully delivered to defendants KESSLER, DOES 1-50, and each of them.

35. In June of 2007, CJI sent a payment of $565,517.84 to defendants KESSLER, DOES 1-50, and each of them. As set forth herein above, defendants KESSLER, DOES 1-50, and each of them, were not owed the described sum of $565,517.84 or at all.

36. On numerous occasions, CJI has requested the return of the $565,517.84 from defendants KESSLER, DOES 1-50, and each of them, however, said defendants have refused to return CJI's property and have converted it as their own. The actions of defendants KESSLER, DOES 1-50, and each of them, wrongfully and intentionally interfered with CJI's right of possession of the $565,517.84.

37. Because defendants KESSLER, DOES 1-50, and each of them, have wrongfully exercised possession of CJI's property, there is now due, owing and unpaid from defendants, and each of them, to CJI, the sum of $565,517.84 as of June 15, 2007, and interest thereon.

## SIXTH CAUSE OF ACTION

### (Unfair Competition against All Defendants)

38. CJI incorporates by this reference above paragraphs 1 through 37, inclusive, as if fully set forth herein.

9

39.   As more fully described in Paragraphs 12-18 herein above, defendants KESSLER, DOES 1-20, and each of them, engaged in unfair, deceptive, and misleading advertising and business practices.  Such conduct by defendants KESSLER, DOES 1-20, and each of them, violates California Business and Professions Code §17200 *et al.*

40.   Indeed, the actions of defendants KESSLER, DOES 1-20, and each of them, were unfair, deceptive, and misleading advertising and business practices such that the United States Federal Bureau of Investigation and/or United States Attorney initiated a Grand Jury investigation into said practices and subpoenaed CJI's business records regarding defendants KESSLER, DOES 1-20, and each of them.

41.   Since July of 2007, CJI has requested that defendants KESSLER, DOES 1-20, and each of them, halt its wrongful actions and return CJI's inadvertent payment of $565,517.84 made to defendants KESSLER, DOES 1-20, and each of them, which payment was not due to defendants based on their conduct as set forth herein above.

42.   Defendants KESSLER, DOES 1-20, and each of them, failed to halt their wrongful conduct as herein above alleged and have failed and refused to pay the outstanding sum of $565,517.84.

43.   No part of that sum has been paid, and is now due, owing and unpaid from defendants, and each of them, to CJI, the sum of $565,517.84 as of June 15, 2007, and interest thereon.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief against All Defendants)

44.   CJI incorporates by this reference above paragraphs 1 through 43, inclusive, as if fully set forth herein.

45.   An actual controversy has arisen and now exists between CJI and defendants KESSLER and DOES 1-50, inclusive.  CJI contends that defendants KESSLER and DOES 1-50, inclusive, engaged in unfair, deceptive, and misleading advertising and business practices and are obligated to pay CJI the sum of $565,517.84.  CJI is informed

1     and believes and thereon alleges that defendants KESSLER and DOES 1-50, inclusive,

2     contend otherwise.

3          46.     It would be fair, just, and appropriate for this Court to determine the rights

4     and obligations of the parties as to this matter, and declaratory relief is necessary and

5     appropriate at this time so that CJI may ascertain its rights and duties and have ascertained

6     defendants' obligations.

7          47.     CJI therefore seeks a declaratory judgment providing that defendants

8     KESSLER and DOES 1-50, inclusive, are obligated to provide CJI with the sum of

9     $565,517.84 as a result of the inadvertent payment and the defendants' conduct as

10     described herein above.

11

12         WHEREFORE, CJI prays for judgment in its favor and against defendants

13     KESSLER and DOES 1-50, and each of them, as follows on the causes of action:

14                      <u>ON THE FIRST CAUSE OF ACTION</u>

15          1.     For general and specific damages according to proof, including attorneys'

16     fees, costs, expenses, and interest thereon;

17                   <u>ON THE SECOND CAUSE OF ACTION</u>

18          2.     For general and specific damages according to proof, including attorneys'

19     fees, costs, expenses, and interest thereon;

20                   <u>ON THE THIRD CAUSE OF ACTION</u>

21          3.     For general and specific damages according to proof, including attorneys'

22     fees, costs, expenses, and interest thereon;

23                  <u>ON THE FOURTH CAUSE OF ACTION</u>

24          4.     For general and specific damages according to proof, including attorneys'

25     fees, costs, expenses, and interest thereon;

26                   <u>ON THE FIFTH CAUSE OF ACTION</u>

27          5.     For general and specific damages according to proof, including attorneys'

28     fees, costs, expenses, and interest thereon;

<u>ON THE SIXTH CAUSE OF ACTION</u>

6. For general and specific damages according to proof, including attorneys' fees, costs, expenses, and interest thereon;

<u>ON THE SEVENTH CAUSE OF ACTION</u>

7. For a judicial declaration that defendants KESSLER and DOES 1-50, inclusive, are obligated to provide CJI with the sum of $565,517.84 as a result of the inadvertent payment and the defendants' conduct as described herein above.

<u>ON ALL CAUSES OF ACTION</u>

8. For costs of suit incurred herein; and

9. For such other and further relief, legal and/or equitable, as the Court may deem just and proper.

Dated: May 15, 2008   ERNSTER LAW OFFICES, P.C.

By: _Phil J. Montoya_

    Phil J. Montoya, Jr.
    Attorneys for Plaintiff
    Commission Junction, Inc.

---

12

<small>SECOND AMENDED COMPLAINT FOR DAMAGES</small>

# EXHIBIT "A"

## Commission Junction Publisher Service Agreement
### Introduction

This Publisher Service Agreement ("Agreement") is made by and agreed to between Commission Junction, Inc., a Delaware corporation, located at 530 East Montecito Street, Santa Barbara, CA 93103, USA ("CJ"), and you ("You"). As an application service provider, CJ facilitates "Performance Marketing Programs" by providing services ("Network Service") via the Internet. A "Performance Marketing Program" ("Program") is where a person, entity, affiliate or its agent, operating "Web site(s)" (internet domain, or a portion of a domain) and/or other promotional methods to drive traffic to another's Web site or Web site content ("Publisher") may earn financial compensation ("Payouts") for "Transactions" (actions by Visitors as defined by the Advertiser) referred by such Publisher via an action made by a "Visitor" (any person or entity that is not the Publisher or the Publisher's agent) through an Internet connection ("Link") to a Web site or Web site content operated by another person or entity ("Advertiser") from an Advertiser authorized promotional method used by such Publisher. The Advertiser compensates the Publisher, in accordance with this Agreement and the Program Payout specifications.

### 1. Participation in Programs.
(a) **Acceptance by Advertiser.** During this Agreement You may apply to Advertiser Programs for the opportunity to earn Payouts by promoting Advertisers in accordance with the Advertiser's Program terms and complying with this Agreement. Upon approval by the Advertiser for acceptance into its Program, You may display (and remove) Links to Advertiser's Web site or Web site content in accordance with the Advertiser's Program terms and this Agreement. An Advertiser's acceptance of You extends only to the entity, or individual, that enters into this Agreement with CJ.
(b) **Program Terms.** The details of an Advertiser's Program shall be available through the Network Service. Transactions qualifying for a Payout are defined by the Advertiser. Advertisers may change any Payout rate upon no less than 7 days written notice through the Network Service with effect from the 8th day (or such later date as specified by Advertiser).
(c) **Additional Terms.** Publishers and Advertisers may enter into direct contractual relationships through the apply to join process in the form of a click-through agreement hosted by CJ ("Click-through Agreement") or in the form of an offer made to You by Advertiser via the members' area on the Network Service ("Offer"). It is Your obligation to review and accept or decline a Click-through Agreement or Offer when such is presented to You. If accepted by You, compliance with the Click-through Agreement or Offer is solely Your responsibility. The terms and conditions of the Click-through Agreement or Offer may supersede or conflict with this Agreement and shall apply only with respect to Your relationship with that particular Advertiser.
(d) **Prohibited Uses of Links.**
> (i) **Locations.** You may not place Links to an Advertiser's Web site or Web site content in third party newsgroups, message boards, blogs, unsolicited email and other types of spam, link farms, counters, chatrooms, or guestbooks. Publishers using IRC channels, instant messages or similar Internet resources must designate their program as special requiring manual review and acceptance by the Advertiser.
> (ii) **Non-Bona Fide Transactions.** You must promote Advertisers such that You do not mislead the Visitor, and such that the Links deliver bona fide Transactions by the Visitor to Advertiser from the Link. You shall not cause any Transactions to be made that are not in good faith, including, but not limited to, using any device, program, robot, iframes, or hidden frames. You may or may not be compensated for Transactions where You or Your agent are the Visitor. Multiple Leads from the same individual, entity or IP address may be considered non-bona fide Transactions. You shall not earn Payouts for non-bona fide Transactions.
> (iii) **Infringement.** None of Your promotional activities may infringe an Advertiser's proprietary rights (including but not limited to trademark rights), CJ's proprietary rights, or a third party's proprietary rights.
(e) **Updating Links.** If Links to Advertiser are not dynamically updated through the Network Service, upon notification You are obligated to update an Advertiser's Links in order to earn Payouts.

### 2. Publisher Obligations to CJ.
(a) **Accurate, Up-to-Date Information.** You agree to provide CJ and Advertiser with accurate information about You and Your promotional methods, and to maintain up-to-date "Account" information (such as contact information, Web sites used, etc.). In Your Account, You must accurately, clearly and completely describe all promotional methods by selecting the appropriate descriptions and providing additional information when necessary. Some promotional methods will be designated by the system as "special". Special programs are linked to promotional methods and practices considered unique and require manual approval and acceptance by the Advertiser. CJ reserves the right to define any program as special.
(b) **Use of Links.** You represent and warrant that all promotional means used by You will not contain objectionable content (including but not limited to content that is misleading, libelous, defamatory, obscene, violent, bigoted, hate-oriented, illegal, and/or promoting illegal goods, services or activities), and that You will not mislead others. You agree to: (i) use ethical and legal business practices, (ii) comply with the Advertisers' Program terms and this Agreement, (iii) maintain a privacy policy on Your Web site and for any non-Web site based promotional method made available to Visitors, and (iv) designate Your Publisher Account as "special" if You promote an Advertiser(s) by any means other than displaying a Link to the Advertiser on Your Web site. CJ must approve all of Your promotional activities and may deem Your promotional activities inappropriate and a material breach of this Agreement in CJ's sole discretion. Our network quality department reviews publisher conduct and any suspected fraudulent, abusive or

otherwise illegal content or activity by You through Your promotional methods, or that is perpetrated through use of the Network Service, is grounds for immediate termination of this Agreement or deactivation of Your Account.

(c) **Promotional Methods**. You represent and warrant that You will not engage in and/or facilitate spamming, indiscriminate advertising or unsolicited commercial email or otherwise fail to comply with the CAN SPAM Act of 2003 (Public Law 108-187 or any successor legislation), and/or any other laws and/or regulations that govern email marketing and/or communications. You represent and warrant that You will not engage in pop-up or pop-under advertising using any means involving third party properties and/or services (software). Pop up/unders are acceptable on a first party basis only when triggered by Your site content /site visit or by downloadable software applications for which You are the owner/operator. Pop up/unders delivered through downloadable software cannot engage in means that force clicks or perform redirects, or pop over a pay-per-click listing or natural search results. Pop up/unders must honor the CJ Publisher Code of Conduct requirements (as such requirements may be modified from time to time), including but not limited to: (i) installation requirements, (ii) enduser agreement requirements, (iii) afsrc=1 requirements, (iv) requirements prohibiting usurpation of a Transaction that might otherwise result in a Payout to another Publisher (e.g. by purposefully detecting and forcing a subsequent click-through on a link of the same Advertiser) and (v) non-interference with competing advertiser/ publisher referrals.

(d) **Personally Identifiable Information of Visitors**. You represent and warrant that You will not enable the Tracking Code to collect personally identifiable information of Visitors that would allow CJ to personally identify Visitors.

(e) **Privacy**. You must conspicuously post Your privacy policy on Your Web site and otherwise make it available to all Visitors. Your privacy policy must comply with all laws and regulations regarding the privacy of Visitor information, be commercially reasonable, and fully and accurately disclose Your collection and use of Visitor information. You must fully and accurately disclose Your use of third party technology, including CJ's tracking technology, use of cookies and options for discontinuing use of such cookies.

(f) **Applicable Codes and Code Maintenance**. In order for CJ to record the tracking of Visitors' Transactions resulting from clicks on Links to Advertisers promoted by You, You must include and maintain a CJ "Tracking Code" within the Advertiser's Links. All Advertiser Links and all advertisements ("Ad Content") must be in a Network Service compatible format.

(g) **Usage and Security of Account**. You shall be responsible for all usage and activity on Your account and for loss, theft or unauthorized disclosure of Your password (other than through CJ's negligent or willful conduct or omission). You shall provide CJ with prompt written notification of any known or suspected unauthorized use of Your Account or breach of the security of Your Account.

## 3. CJ's Services.

(a) **Tracking Transactions and Payouts**. CJ shall determine (where possible) actual Payouts that should be credited to Your Account. CJ may, in CJ's sole discretion, apply an estimated amount of Payouts, if: (i) You are referring Visitors to Advertiser as verified by clicks through Links to Advertiser with CJ Tracking Code, (ii) where there is an error in Advertiser's transmission of Tracking Code data to CJ, and (iii) where CJ is able to utilize a historical analysis of Your promotion of Advertiser to determine an equitable amount of estimated Payouts.

(b) **Charge-backs**. An Advertiser may apply, or CJ may apply, a debit to Your Account in an amount equal to a Payout previously credited to Your Account in circumstances of : (i) product returns; (ii) duplicate entry or other clear error; (iii) non-bona fide Transactions; (iv) non-receipt of payment from, or refund of payment to, the Visitor by the Advertiser; or (v) Publisher failure to comply with Advertiser's Program terms or other agreement with Advertiser ("Charge-back"). Charge-backs may be applied to Your Account at any time, including previous payment cycles.

(c) **Access to Tracking and Reporting Tools**. CJ shall provide You with access to tracking and reporting tools, and to support services. From time to time CJ may offer optional services for a fee. Fees for such optional services are at CJ's then-current published rates or as may be quoted by CJ, and are payable in advance or may be off-set against Your positive Account balance (at CJ's discretion). Tracking detail regarding Visitor Transactions is not available on a real-time basis for all Advertisers and there may be reporting delays regarding Transactions for some Advertisers. CJ may make available, for fees that CJ shall publish from time-to-time, enhanced reporting capabilities and other services that are not included in the standard Network Service.

(d) **Support**. Support for your program is available on-line through the "Contact Us" area in the CJ Account Manager, which allows You to categorize and describe Your issue. Online help also allows You to check the status of all issues through the "Check Question Status" feature. Phone support may also be available during operating hours, except holidays.

(e) **Facilitating Payment of Payouts**. Subject to other provisions in this Agreement, CJ shall credit Your Account with a Payout for each qualifying Transaction in accordance with the Advertiser's Payout rate and Program terms for the relevant Transaction. On the 20th day of each calendar month, CJ will issue to You any positive balance in Your Account for Transactions reported for the previous month, provided Your Account balance exceeds the required "Minimum Account Balance." CJ shall have no obligation to make payment of any Payouts for which CJ has not received payment from the relevant Advertiser of all monies due to CJ (including for all Payouts owed by such Advertiser to all of such Advertiser's Publishers). If CJ elects, in its own discretion, not to make payment to You for amounts not received from an Advertiser, those amounts shall not be included in the Minimum Balance Amount. Your recourse for any earned Payouts not paid to You shall be to make a claim against the relevant Advertiser(s), and CJ disclaims any and all liability for such payment. You may elect to receive payment in any of the currencies that CJ supports (as may be amended by CJ). The conversion rate shall be determined in accordance with CJ's operating standards using the rates prevailing upon the date that payment is made to You, or upon the basis of historical

conversion rates if rates are unavailable. The number or amount of Transactions, credits for Payouts, and debits for Charge-backs, as calculated by CJ, shall be final and binding on You.

(f) **Dormant Accounts.** If Publisher's Account has not been credited with a valid, compensable Transaction that has not been Charged-back during any rolling, six consecutive calendar month period ("Dormant Account"), a dormant account fee at CJ's then-current rate shall be applied to Publisher's Account each calendar month that Publisher's Account remains an open yet Dormant Account or until Your Account balance reaches a zero balance, at which time the Account shall become deactivated. Transactions will not be counted if the Transaction subsequently becomes a Charge-back.

(g) **Negative Accounts.** You may have a negative balance if Your Account is debited amounts equivalent to previous Payouts for Charge-backs and You do not have an adequate Account balance to cover the Charge-back amounts. When You have a negative balance, You must immediately remit payment to CJ in an amount sufficient to bring Your Account to a zero balance, or Your Account is subject to 1.5% interest per month, compounded monthly.

## 4. Proprietary Rights.

(a) **Linking to Advertisers.** For each Advertiser's Program that You have been accepted to, the Advertiser is granting to You the right to display and Link to the Advertiser's Web site or Web site content in accordance with the Advertiser's Program terms for the limited purposes of Promoting the Advertiser's Program, subject to the terms and conditions of this Agreement. Your use of the Link signifies Your agreement to refrain from copying or modifying any icons, buttons, banners, graphics files or content contained in the Link, including but not limited to refraining from removing or altering any copyright or trademark notices. As between CJ and Publisher, CJ owns all rights in and to all information regarding the Visitors that You refer to Advertisers through CJ.

(b) **CJ's Use of Your Marks.** You authorize CJ to utilize Your trademarks, service marks, tradenames, and/or copyrighted material that You provide to CJ through Your Account to promote Your participation in the Network Services.

(c) **Your Use of CJ's Proprietary Rights.** You agree that Your use of any CJ Web site (such as www.cj.com) and Your use of any CJ trademarks, service marks, tradenames, and/or URLs is subject to the license and terms of use that are available from such Web site ("Terms of Use"). You explicitly agree not to adopt or use in any manner any trademarks, service marks, tradenames, and/or URLs that are the same or confusingly similar to, or are combined with, those of CJ.

(d) **Retention of Rights.** All proprietary rights of Advertisers, You, and CJ, and all goodwill arising as a result of such rights, inure to the benefit of such owner.

(e) **No Challenge to CJ's/Advertiser's Proprietary Rights.** You acknowledge that You obtain no proprietary rights in CJ's trademarks, service marks, tradenames, URLs, copyrighted material, patents, and patent applications, and agree not to challenge CJ's proprietary rights. You acknowledge that You obtain no proprietary rights in Your Advertisers' proprietary rights, and agree not to challenge such Advertiser's proprietary rights.

## 5. Confidentiality.

(a) **Obligations.** You or CJ may provide the other with information that is confidential and proprietary to that party or a third party, as is designated by the disclosing party or that is reasonably understood to be proprietary and/or confidential ("Confidential Information"). The receiving party agrees to make commercially reasonable efforts, but in no case no less effort than it uses to protect its own Confidential Information, to maintain the confidentiality of and to protect any proprietary interests of the disclosing party. Confidential Information shall not include (even if designated by a party) information: (i) that is or becomes part of the public domain through no act or omission of the receiving party; (ii) that is lawfully received by the receiving party from a third party without restriction on use or disclosure and without breach of this Agreement or any other agreement without knowledge by the receiving party of any breach of fiduciary duty, or (iii) that the receiving party had in its possession prior to the date of this Agreement. Upon termination of this Agreement, You must destroy or return to CJ any Confidential Information provided by CJ to You under this Agreement.

(b) **Provision of Info to Advertisers/Third Parties.** You agree that CJ may, but is not obligated to, provide Your email address(es) and basic Publisher Account detail (including but not limited to Your address, phone and fax number, Web site name, the date the website or subscription email first entered into operation, and visitor demographics) to Advertisers. CJ may provide any and all Visitor, Transaction and/or Tracking Code data to the Advertiser to which You referred such Visitor, and to any third party in CJ's sole discretion, including but not limited to all regulatory, legislative and judicial bodies, and pursuant to allegations and claims of proprietary rights infringement. CJ reserves the right to be able to utilize Tracking Code data provided to it, which may include: information about Your performance statistics, to analyze Network Service trends, monitor Network Service efficiencies, maintain the integrity of the tracking code, promote Network Service capabilities and efficiencies, and promote You and Your Web performance to Advertisers.

## 6. Term, Termination, Deactivation and Notices.

(a) **Term.** This Agreement shall commence upon Your indication that You have accepted this Agreement by providing the required information and 'clicking through' the acceptance button on the CJ Web site and shall continue until terminated in accordance with the terms of this Agreement. This Agreement may be terminated by either party upon 15 days notice. This Agreement may be terminated immediately upon notice for Your breach of this Agreement. Your Account may be deactivated during investigation of breach of this Agreement. If this Agreement is

terminated based upon Your breach, You shall not be eligible to enter into a new click-through Publisher Service Agreement with CJ, and any attempt to do so shall be null and void.

(b) **Termination by Advertiser.** An Advertiser may terminate You, one of Your Web sites, or Your ability to use a promotional method, from the Advertiser's Program for any or no reason, upon 7 days written notice with effect from the 8th day. Additionally, Advertiser may terminate You from the Advertiser's Program for breach of a third party's proprietary rights, and/or diluting, tarnishing or blurring an Advertiser's trademarks, tradenames, and/or service marks, or for Your material breach of the Advertiser's Program terms or of this Agreement.

(c) **Termination or Deactivation by CJ.** CJ may terminate You, one of Your Web sites, or Your use of a promotional method, from an Advertiser's Program, at any time in CJ's sole discretion. Breach of any Section of this Agreement is cause for immediate termination from an Advertiser's Program and/or termination of this Agreement, and may result in Chargeback of one or more Payouts. CJ may temporarily deactivate or terminate Your Account if: (i) You or Your agent are responsible for the improper functioning of Ad Content, or if You otherwise interfere with and/or fail to maintain the Tracking Code; (ii) Your Account has not been logged into and/or there have been no Transactions credited to Your Account for any 30 day period; (iii) You maintain a negative balance in Your Account; (iv) CJ determines You are diluting, tarnishing or blurring CJ's proprietary rights; (v) You begin proceedings to challenge CJ's proprietary rights; or (vi) a third party (including a CJ Advertiser) disputes Your right to use any Link, domain name, trademark, service mark, trade dress, or right to offer any service or good offered on Your Web site, or through any of Your promotional means. Upon termination of this Agreement, or in case of deactivation of Your Account, You shall no longer accrue Payouts in Your Account, including but not limited to subsequent sales and/or Leads for click-throughs that occurred prior to termination.

(d) **Termination of Programs and Offers.** Programs and Offers may be discontinued at any time.

(e) **Notices.** Except as provided elsewhere herein, both parties must send all notices relating to this Agreement to: (i) for CJ, via registered mail, return receipt requested or via an internationally recognized express mail carrier to Commission Junction, Inc., Attn: Legal Dept., 530 East Montecito Street, Santa Barbara, CA 93103 USA (effective upon actual receipt); and, (ii) for You, at the email or physical address listed on Your Account (effective upon sending as long as CJ does not receive an error message regarding delivery of the email) or five (5) days after mailing).

(f) **Post-termination.** Upon termination of this Agreement, any outstanding payments shall be paid by CJ to You within 90 days of the termination date, and any outstanding debit balance shall be paid by You to CJ within 30 days of termination of this Agreement. All payments are subject to recovery for Charge-backs. Upon termination of this Agreement, any permissions granted under this Agreement will terminate, and You must immediately remove all Links to Advertiser(s). Provisions of this Agreement that by their nature and context are intended to survive the termination of this Agreement shall survive the termination of this Agreement to the extent that and as long as is necessary to preserve a party's rights under this Agreement that accrued prior to termination.

7. **Representations, Warranties, Disclaimers and Limitations.**

(a) **Business Operations.** Each party will make reasonable commercial efforts to keep its Web site operational during normal business hours. However, the parties agree that it is normal to have a certain amount of system downtime and agree not to hold each other or Your Advertisers liable for any of the consequences of such interruptions. CJ may modify the Network Service, or discontinue providing the Network Service, or any portion thereof, at any time.

(b) **Authority.** Each party represents and warrants to the other party as to itself that the person executing this Agreement is authorized to do so on such party's behalf. IF YOU ARE AN INDIVIDUAL, YOU REPRESENT AND WARRANT THAT YOU WERE AT LEAST 18 YEARS OF AGE ON THE EFFECTIVE DATE OF THIS AGREEMENT.

(c) **Non-Infringement Warranties.** You represent and warrant that: (i) You have all appropriate authority to operate, and to any and all content on, Your Web site(s); (ii) You have all appropriate authority in any promotional method you may choose to use; (iii) Your Web site(s) and Your promotional methods do not and will not infringe a third party's, a CJ Advertiser's, or CJ's, proprietary rights; and (iv) You shall remain solely responsible for any and all Web sites owned and/or operated by You and all of Your promotional methods. CJ may or may not review all content on Your Web site or used by You in Your promotional methods.

(d) **Compliance with Laws.** You are responsible for compliance with the requirements of all relevant legislation (including subordinate legislation and the rules of statutorily recognized regulatory authorities) in force or applicable in the United States or in any other applicable territory, and warrant that no promotion method used by You or the content of Your Web site(s) will render CJ liable to any proceedings whatsoever.

(e) **Limitation of Liabilities.** ANY OBLIGATION OR LIABILITY OF CJ UNDER THIS AGREEMENT SHALL BE LIMITED TO THE TOTAL OF YOUR PAYOUTS PAID TO YOU BY CJ UNDER THIS AGREEMENT DURING THE YEAR PRECEDING THE CLAIM. NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST THE OTHER PARTY TO THIS AGREEMENT MORE THAN ONE YEAR AFTER THE TERMINATION OF THIS AGREEMENT. YOU AGREE THAT CJ SHALL NOT BE LIABLE TO YOU, OR ANY THIRD PARTY (INCLUDING BUT NOT LIMITED TO A CLAIM BY ANOTHER PUBLISHER OR AN ADVERTISER OF THE NETWORK SERVICE), FOR ANY CONSEQUENTIAL, EXEMPLARY, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF GOODWILL, LOST PROFITS, BUSINESS INTERRUPTION, LOSS OF PROGRAMS OR OTHER DATA, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR CLAIM.

(f) **Disclaimer of Warranties.** TO THE FULLEST EXTENT PERMISSIBLE PURSUANT TO APPLICABLE LAW, CJ DISCLAIMS ALL WARRANTIES IMPLIED, INCLUDING, BUT NOT LIMITED TO, (A) MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS, (B) THAT THERE ARE

NO VIRUSES OR OTHER HARMFUL COMPONENTS, (C) THAT CJ'S SECURITY METHODS WILL BE SUFFICIENT, (D) REGARDING CORRECTNESS, ACCURACY, OR RELIABILITY, OR (D) AGAINST INTERFERENCE WITH ENJOYMENT OF THE PUBLISHER'S INFORMATION OR WEB SITE. ALL 'INFORMATION' AND 'COMPUTER PROGRAMS' PROVIDED TO YOU IN THE COURSE OF THIS AGREEMENT ARE PROVIDED WITH ALL FAULTS, AND THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY, AND EFFORT IS WITH YOU. CJ IS, UNDER NO CIRCUMSTANCES, RESPONSIBLE FOR THE PRACTICES, ACTS OR OMISSIONS OF ANY ADVERTISER OR PUBLISHER, OR SUCH ADVERTISER OR PUBLISHER'S WEB SITE(S), AND/OR THE CONTENT OF AN ADVERTISER'S WEB SITE OR THAT AN ADVERTISER MAKES AVAILABLE THROUGH THE NETWORK SERVICE.

(g) Remedies. No remedy or election shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

(h) Benefit of the Bargain. THE PROVISIONS OF THIS SECTION 7 ARE AN ESSENTIAL ELEMENT OF THE BENEFIT OF THE BARGAIN REFLECTED IN THIS AGREEMENT.

8. Publisher's Indemnification Obligations. Publisher shall defend, indemnify and hold CJ and Advertisers harmless against all claims, suits, demands, damages, liabilities, losses, penalties, interest, settlements and judgments, costs and expenses (including attorneys' fees) incurred, claimed or sustained by third parties, including but not limited to Advertisers, directly or indirectly as a result of (a) Publisher's breach of or non-compliance with this Agreement, (b) Publisher's violation of any law, or an alleged violation of law by CJ, that is a direct or indirect result of Publisher's use of the Network Service, (c) Publisher's use of the Network Service, (d) Publisher's participation in any Program, (c) any content, goods or services offered, sold or otherwise made available by Publisher to any person, (f) Publisher's acts or omissions in using, displaying or distributing any internet links obtained from the Network Service or elsewhere, including but not limited to Publisher's use of internet links via email distribution, (g) any claim that CJ is obligated to pay tax obligations in connection with payment made to Publisher pursuant to this Agreement and/or any Advertiser's Program, and (h) any violation or alleged violation by Publisher of any rights of another, including breach of a person's or entity's intellectual property rights (each (a)-(h) individually is referred to hereinafter as a "Claim"). Should any Claim give rise to a duty of indemnification under this Section 8, CJ shall promptly notify Publisher, and CJ shall be entitled, at its own expense, and upon reasonable notice to Publisher, to participate in the defense of such Claim. Participation in the defense shall not waive or reduce any of Publisher's obligations to indemnify or hold CJ harmless. Publisher shall not settle any Claim without CJs prior written consent. Publisher also shall indemnify for any reasonable attorneys' fees or other costs incurred by an indemnified party in investigating or enforcing this Section 8. In the context of this Section 8 only, the term "CJ" shall include officers, directors, employees, corporate affiliates, subsidiaries, agents, and subcontractors.

9. Miscellaneous.

(a) Headings and References. Headings of Sections are for the convenience of reference only. Words indicated in quotes and capitalized signify an abbreviation or defined term for indicated words or terms, including those definitions contained in the opening paragraph

(b) Third Party Disputes. In the event of a third party claim against either: (a) CJ's intellectual property; or (b) against CJ's right to offer any service or good on CJ's Web site(s) or if, in CJ's opinion, such a claim is likely, CJ shall have the right, at its sole option and in its sole discretion, to (i) secure the right at CJ's expense to continue using the intellectual property or good or service; or (ii) at CJ's expense replace or modify the same to make it non-infringing or without misappropriation.

(c) Relationships of Parties/Third Party Rights. The relationships of the parties to this Agreement shall be solely that of independent contractors, and nothing contained in this Agreement shall be construed otherwise. Nothing in this Agreement or in the business or dealings between the parties shall be construed to make them joint venturers or partners with each other. Neither party shall do anything to suggest to third parties that the relationship between the parties is anything other than that of independent contractor. You agree that Your consent is not necessary to modify any Advertiser Service Agreement.

(d) Choice of Law/Attorneys' Fees. This Agreement is governed by the laws of the State of California (USA), except for its conflict of law provisions. The exclusive forum for any actions related to this Agreement shall be in the state courts, and, to the extent that federal courts have exclusive jurisdiction, in Los Angeles, California. The parties consent to such venue and jurisdiction and waive any right to a trial by jury. The application of the United Nations Convention on the International Sale of Goods is expressly excluded. A party that primarily prevails in an action brought under this Agreement is entitled to recover from the other party its reasonable attorneys fees and costs. CJ controls and operates its Web site from its offices in the USA and access or use where illegal is prohibited.

(e) Force Majeure. Neither party shall be liable by reason of any failure or delay in the performance of its obligations hereunder for any cause beyond the reasonable control of such party, including but not limited to electrical outages, failure of Internet service providers, default due to Internet disruption (including without limitation denial of service attacks), riots, insurrection, acts of terrorism, war (or similar), fires, flood, earthquakes, explosions, and other acts of God.

(f) Severability/Waiver. If any provision of this Agreement is held by any court of competent jurisdiction to be illegal, null or void or against public policy, the remaining provisions of this Agreement shall remain in full force and effect. The parties shall in good faith attempt to modify any invalidated provision to carry out the stated intentions in this

Agreement. The waiver of any breach of any provision under this Agreement by any party shall not be deemed to be a waiver of any preceding or subsequent breach, nor shall any waiver constitute a continuing waiver.

(g) **Assignment and Acknowledgement.** Neither party may assign this Agreement without the prior express written permission of the other party. Notwithstanding the foregoing, Your consent shall not be required for assignment or transfer made by CJ (1) due to operation of law, or (2) to an entity that acquires substantially all of CJ's stock, assets or business, or (3) to a related entity (e.g. parent or subsidiary of parent). Your use of the Network Service is irrefutable acknowledgement by You that You have read, understood and agreed to each and every term and provision of this Agreement. CJ may establish from time to time rules and regulations regarding use of the Network Service as published on the Network Service and incorporated herein.

(h) **Marketing.** Publisher agrees that CJ may identify it as a CJ Publisher in client lists and may use Publisher's name and/or logo solely for such purpose in its marketing materials. Any other uses of Publisher's name and/or logo not otherwise described or contemplated herein shall require Publisher's prior written consent.

(i) **Entire Agreement, Assignment and Amendment.** This Agreement, including the introduction, contains the entire understanding and agreement of the parties and there have been no promises, representations, agreements, warranties or undertakings by either of the parties, either oral or written, except as stated in this Agreement. This Agreement may only be altered, amended or modified by an instrument that is assented to by each party to this Agreement by verifiable means, including without limitation by written instrument signed by the parties or through a "click through" acknowledgement of assent. No interlineations to this Agreement shall be binding unless initialed by both parties. Notwithstanding the foregoing, CJ shall have the right to change, modify or amend ("Change") this Agreement, in whole or in part, by posting a revised Agreement at least 14 days prior to the effective date of such Change. Your continued use of the Network Service after the effective date of such Change shall be deemed Your acceptance of the revised Agreement.

COMMISSION JUNCTION, INC.
530 East Montecito Street
Santa Barbara, CA 93103 USA
a Delaware Corporation, EIN#41-41-1922033

By:_____

Name:_____

Title:_____

Date:_____

"You":_____

Address:_____

_____

By:_____

Name:_____

Title:_____

Date:_____

Federal ID # (or Company Reg. No.):_____

**EXHIBIT "B"**

## Alyson Emmer

| | |
|---|---|
| **From:** | Peter Bexelius |
| **Sent:** | Wednesday, June 27, 2007 6:41 PM |
| **To:** | todd@dunningmarketing.com |
| **Subject:** | Kessler's Flying Circus - wiring instructions |
| **Attachments:** | Kesslers ltr_Final.doc |

Hi Todd:

Further to our conversation, this is the letter I referred to. I appreciate your understanding in this matter. As we discussed, please wire us the funds ($565,517.84) less your wiring fee, tomorrow morning at your convenience. If you could kindly call me at (805-450-6126) and email to confirm once done, I'd greatly appreciate it.

Below are the payment instructions for wire payment:

Wire Payment Information
| | |
|---|---|
| Beneficiary: | Commission Junction |
| Bank: | Wells Fargo Bank |
| Address: | 420 Montgomery Street |
| | San Francisco, |
| | CA 94104 |
| Account No: | 4121196406 |
| Routing No: | 121 000 248 |
| Swift Code: | BIC WFBIUS6S |

Thanks again for your cooperation and understanding!

Cheers,

Peter Bexelius
Account Manager - Strategic Accounts

Commission Junction, a ValueClick Company
530 East Montecito Street
Santa Barbara, CA 93103
Direct: 805 730 8106
Fax: 805 730 8458
Email: pbexelius@cj.com

*Any disclosure, copying, distribution, posting or use of the contents of this information is prohibited and may be unlawful. This e-mail may contain proprietary or confidential information and is for the sole use of the intended recipient(s). Thank you.*

June 27, 2007

Mr. Brian Dunning
Mr. Todd Dunning
Kessler's Flying Circus
15 High Blf.
Laguna Niguel, CA 92677

Re: Kessler's Flying Circus—CID 1558264

On June 20, 2007, following initial approval by your firm's advertiser, eBay Inc., Commission Junction issued a US Direct Deposit payment of $565,517.84 to your checking account number as logged in our Commission Junction Marketplace ("CJM") system. After this payment was processed by us, we were requested by eBay to suspend payouts to various publishers, including your firm, pending a review of your potentially questionable activity in CJM for the month of May.

Accordingly, we have attempted to recall the direct deposit transaction through the banking system, but have been unsuccessful in completing the recall transaction due to insufficient funds in your bank account described above.

We request your immediate cooperation by facilitating our recall of $565,517.84 from your bank account to avoid the potential initiation of alternative actions to recall such funds.

Remittance instructions:

By mail to:

Commission Junction
#774140
4140 Solutions Center
Chicago, IL 60677-4001

Or by wire to:

Routing number: 121000248
Account number: 4121196406

Please contact Peter Bexelius at (805) 730-8106 if you require additional information.

Sincerely,

Commission Junction, Inc.

1                                 **PROOF OF SERVICE**

2   STATE OF CALIFORNIA        )
                                  )   ss.

3   COUNTY OF LOS ANGELES   )

4         I am employed in the County of Los Angeles, State of California. I am over the age of 18

5   years and not a party to the within action. My business address is 70 South Lake Avenue, Suite 750, Pasadena, California 91101.

6         On May 16, 2008, I served the foregoing document described as **SECOND AMENDED**

7   **SUMMONS AND COMPLAINT FOR DAMAGES** by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

8   Stewart H. Foreman, Esq.                        Scott Patrick Barlow, Esq.
  Freeland Cooper & Foreman LLP             General Counsel

9   150 Spear Street, Suite 1800                 30699 Russell Ranch Road, Suite 250
  San Francisco, California 94105           Westlake Village, California 91362

10   Telephone: (415) 541-0200                  Telephone: (818) 575-4500
  Facsimile: (415) 495-4332                  Facsimile: (818) 575-4501

11   *Attorney for Defendants, TODD DUNNING*     *Co-counsel for Plaintiff COMMISSION*
  *and KESSLER'S FLYING CIRCUS*           *JUNCTION INC.*

12

13   Ronald Rus, Esq.
  Leo J. Presiado, Esq.

14   Rus, Miliban & Smith
  2600 Michelson Drive

15   Irvine, California 92612
  Telephone: (949) 752-7100

16   Facsimile: (949) 252-1514
  *Attorney for Defendant, BRIAN DUNNING*

17   *and THUNDERWOOD HOLDINGS, INC.*

18

19   (X) **BY MAIL**        I caused such envelope(s) to be deposited in the mail at Pasadena,
                        California. The envelope was mailed with postage thereon fully prepaid.

20                   I am "readily familiar" with the firm's practice of collection and processing
                  correspondence for mailing. It is deposited with the U.S. Postal Service on that

21                   same day in the ordinary course of business. I am aware that on motion of party
                  served, service is presumed invalid if postal cancellation date or postage meter date

22                   is more than one (1) day after date of deposit for mailing in affidavit. I am a
                  resident or employed in the county where the mailing occurred. The envelope or

23                   package was placed in the mail at Pasadena, California, 91101.

24       This document was produced on paper purchased as recycled.

25   (X)      STATE I declare under penalty of perjury under the laws of the State of California that the
         above is true and correct.

26       Executed on May 16, 2008, at Pasadena, California.

27                                        Marta I. Rincon
                                       —————————————
                                      Marta I. Rincon

28

SECOND AMENDED COMPLAINT FOR DAMAGES

**RECEIVED**

MAY 1 9 2008

ROS, MILLIBAND & SMITH

**EXHIBIT "2"**

**Commission Junction Publisher Service Agreement**
**Introduction**

This Publisher Service Agreement ("Agreement") is made by and agreed to between Commission Junction, Inc., a Delaware corporation, located at 530 East Montecito Street, Santa Barbara, CA 93103, USA ("CJ"), and you ("You"). As an application service provider, CJ facilitates "Performance Marketing Programs" by providing services ("Network Service") via the Internet. A "Performance Marketing Program" ("Program") is where a person, entity, affiliate or its agent, operating "Web site(s)" (Internet domain, or a portion of a domain) and/or other promotional methods to drive traffic to another's Web site or Web site content ("Publisher") may earn financial compensation ("Payouts") for "Transactions" (actions by Visitors as defined by the Advertiser) referred by such Publisher via an action made by a "Visitor" (any person or entity that is not the Publisher or the Publisher's agent) through an Internet connection ("Link") to a Web site or Web site content operated by another person or entity ("Advertiser") from an Advertiser authorized promotional method used by such Publisher. The Advertiser compensates the Publisher, in accordance with this Agreement and the Program Payout specifications.

**1. Participation in Programs.**
(a) **Acceptance by Advertiser.** During this Agreement You may apply to Advertiser Programs for the opportunity to earn Payouts by promoting Advertisers in accordance with the Advertiser's Program terms and complying with this Agreement. Upon approval by the Advertiser for acceptance into its Program, You may display (and remove) Links to Advertiser's Web site or Web site content in accordance with the Advertiser's Program terms and this Agreement. An Advertiser's acceptance of You extends only to the entity, or individual, that enters into this Agreement with CJ.
(b) **Program Terms.** The details of an Advertiser's Program shall be available through the Network Service. Transactions qualifying for a Payout are defined by the Advertiser. Advertisers may change any Payout rate upon no less than 7 days written notice through the Network Service with effect from the 8th day (or such later date as specified by Advertiser).
(c) **Additional Terms.** Publishers and Advertisers may enter into direct contractual relationships through the apply to join process in the form of a click-through agreement hosted by CJ ("Click-through Agreement") or in the form of an offer made to You by Advertiser via the members' area on the Network Service ("Offer"). It is Your obligation to review and accept or decline a Click-through Agreement or Offer when such is presented to You. If accepted by You, compliance with the Click-through Agreement or Offer is solely Your responsibility. The terms and conditions of the Click-through Agreement or Offer may supersede or conflict with this Agreement and shall apply only with respect to Your relationship with that particular Advertiser.
(d) **Prohibited Uses of Links.**
  (i) **Locations.** You may not place Links to an Advertiser's Web site or Web site content in third party newsgroups, message boards, blogs, unsolicited email and other types of spam, link farms, counters, chatrooms, or guestbooks. Publishers using IRC channels, instant messages or similar Internet resources must designate their program as special requiring manual review and acceptance by the Advertiser.
  (ii) **Non-Bona Fide Transactions.** You must promote Advertisers such that You do not mislead the Visitor, and such that the Links deliver bona fide Transactions by the Visitor to Advertiser from the Link. You shall not cause any Transactions to be made that are not in good faith, including, but not limited to, using any device, program, robot, iframes, or hidden frames. You may or may not be compensated for Transactions where You or Your agent are the Visitor. Multiple Leads from the same individual, entity or IP address may be considered non-bona fide Transactions. You shall not earn Payouts for non-bona fide Transactions.
  (iii) **Infringement.** None of Your promotional activities may infringe an Advertiser's proprietary rights (including but not limited to trademark rights), CJ's proprietary rights, or a third party's proprietary rights.
(e) **Updating Links.** If Links to Advertiser are not dynamically updated through the Network Service, upon notification You are obligated to update an Advertiser's Links in order to earn Payouts.

**2. Publisher Obligations to CJ.**
(a) **Accurate, Up-to-Date Information.** You agree to provide CJ and Advertiser with accurate information about You and Your promotional methods, and to maintain up-to-date "Account" information (such as contact information, Web sites used, etc.). In Your Account, You must accurately, clearly and completely describe all promotional methods by selecting the appropriate descriptions and providing additional information when necessary. Some promotional methods will be designated by the system as "special". Special programs are linked to promotional methods and practices considered unique and require manual approval and acceptance by the Advertiser. CJ reserves the right to define any program as special.
(b) **Use of Links.** You represent and warrant that all promotional means used by You will not contain objectionable content (including but not limited to content that is misleading, libelous, defamatory, obscene, violent, bigoted, hate-oriented, illegal, and/or promoting illegal goods, services or activities), and that You will not mislead others. You agree to: (i) use ethical and legal business practices, (ii) comply with the Advertisers' Program terms and this Agreement, (iii) maintain a privacy policy on Your Web site and for any non-Web site based promotional method made available to Visitors, and (iv) designate Your Publisher Account as "special" if You promote an Advertiser(s) by any means other than displaying a Link to the Advertiser on Your Web site. CJ must approve all of Your promotional activities and may deem Your promotional activities inappropriate and a material breach of this Agreement in CJ's sole discretion. Our network quality department reviews publisher conduct and any suspected fraudulent, abusive or

otherwise illegal content or activity by You through Your promotional methods, or that is perpetrated through use of the Network Service, is grounds for immediate termination of this Agreement or deactivation of Your Account.

(c) **Promotional Methods.** You represent and warrant that You will not engage in and/or facilitate spamming, indiscriminate advertising or unsolicited commercial email or otherwise fail to comply with the CAN SPAM Act of 2003 (Public Law 108-187 or any successor legislation), and/or any other laws and/or regulations that govern email marketing and/or communications. You represent and warrant that You will not engage in pop-up or pop-under advertising using any means involving third party properties and/or services (software). Pop up/unders are acceptable on a first party basis only when triggered by Your site content /site visit or by downloadable software applications for which You are the owner/operator. Pop up/unders delivered through downloadable software cannot engage in means that force clicks or perform redirects, or pop over a pay-per-click listing or natural search results. Pop up/unders must honor the CJ Publisher Code of Conduct requirements (as such requirements may be modified from time to time), including but not limited to: (i) installation requirements, (ii) enduser agreement requirements, (iii) afsrc=1 requirements, (iv) requirements prohibiting usurpation of a Transaction that might otherwise result in a Payout to another Publisher (e.g. by purposefully detecting and forcing a subsequent click-through on a link of the same Advertiser) and (v) non-interference with competing advertiser/ publisher referrals.

(d) **Personally Identifiable Information of Visitors.** You represent and warrant that You will not enable the Tracking Code to collect personally identifiable information of Visitors that would allow CJ to personally identify Visitors.

(e) **Privacy.** You must conspicuously post Your privacy policy on Your Web site and otherwise make it available to all Visitors. Your privacy policy must comply with all laws and regulations regarding the privacy of Visitor information, be commercially reasonable, and fully and accurately disclose Your collection and use of Visitor information. You must fully and accurately disclose Your use of third party technology, including CJ's tracking technology, use of cookies and options for discontinuing use of such cookies.

(f) **Applicable Codes and Code Maintenance.** In order for CJ to record the tracking of Visitors' Transactions resulting from clicks on Links to Advertisers promoted by You, You must include and maintain a CJ "Tracking Code" within the Advertiser's Links. All Advertiser Links and all advertisements ("Ad Content") must be in a Network Service compatible format.

(g) **Usage and Security of Account.** You shall be responsible for all usage and activity on Your account and for loss, theft or unauthorized disclosure of Your password (other than through CJ's negligent or willful conduct or omission). You shall provide CJ with prompt written notification of any known or suspected unauthorized use of Your Account or breach of the security of Your Account.

**3. CJ's Services.**

(a) **Tracking Transactions and Payouts.** CJ shall determine (where possible) actual Payouts that should be credited to Your Account. CJ may, in CJ's sole discretion, apply an estimated amount of Payouts, if: (i) You are referring Visitors to Advertiser as verified by clicks through Links to Advertiser with CJ Tracking Code, (ii) where there is an error in Advertiser's transmission of Tracking Code data to CJ, and (iii) where CJ is able to utilize a historical analysis of Your promotion of Advertiser to determine an equitable amount of estimated Payouts.

(b) **Charge-backs.** An Advertiser may apply, or CJ may apply, a debit to Your Account in an amount equal to a Payout previously credited to Your Account in circumstances of : (i) product returns; (ii) duplicate entry or other clear error; (iii) non-bona fide Transactions; (iv) non-receipt of payment from, or refund of payment to, the Visitor by the Advertiser; or (v) Publisher failure to comply with Advertiser's Program terms or other agreement with Advertiser ("Charge-back"). Charge-backs may be applied to Your Account at any time, including previous payment cycles.

(c) **Access to Tracking and Reporting Tools.** CJ shall provide You with access to tracking and reporting tools, and to support services. From time to time CJ may offer optional services for a fee. Fees for such optional services are at CJ's then-current published rates or as may be quoted by CJ, and are payable in advance or may be off-set against Your positive Account balance (at CJ's discretion). Tracking detail regarding Visitor Transactions is not available on a real-time basis for all Advertisers and there may be reporting delays regarding Transactions for some Advertisers. CJ may make available, for fees that CJ shall publish from time-to-time, enhanced reporting capabilities and other services that are not included in the standard Network Service.

(d) **Support.** Support for your program is available on-line through the "Contact Us" area in the CJ Account Manager, which allows You to categorize and describe Your issue. Online help also allows You to check the status of all issues through the "Check Question Status" feature. Phone support may also be available during operating hours, except holidays.

(e) **Facilitating Payment of Payouts.** Subject to other provisions in this Agreement, CJ shall credit Your Account with a Payout for each qualifying Transaction in accordance with the Advertiser's Payout rate and Program terms for the relevant Transaction. On the 20th day of each calendar month, CJ will issue to You any positive balance in Your Account for Transactions reported for the previous month, provided Your Account balance exceeds the required "Minimum Account Balance." CJ shall have no obligation to make payment of any Payouts for which CJ has not received payment from the relevant Advertiser of all monies due to CJ (including for all Payouts owed by such Advertiser to all of such Advertiser's Publishers). If CJ elects, in its own discretion, not to make payment to You for amounts not received from an Advertiser, those amounts shall not be included in the Minimum Balance Amount. Your recourse for any earned Payouts not paid to You shall be to make a claim against the relevant Advertiser(s), and CJ disclaims any and all liability for such payment. You may elect to receive payment in any of the currencies that CJ supports (as may be amended by CJ). The conversion rate shall be determined in accordance with CJ's operating standards using the rates prevailing upon the date that payment is made to You, or upon the basis of historical

conversion rates if rates are unavailable. The number or amount of Transactions, credits for Payouts, and debits for Charge-backs, as calculated by CJ, shall be final and binding on You.

(f) **Dormant Accounts.** If Publisher's Account has not been credited with a valid, compensable Transaction that has not been Charged-back during any rolling, six consecutive calendar month period ("Dormant Account"), a dormant account fee at CJ's then-current rate shall be applied to Publisher's Account each calendar month that Publisher's Account remains an open yet Dormant Account or until Your Account balance reaches a zero balance, at which time the Account shall become deactivated. Transactions will not be counted if the Transaction subsequently becomes a Charge-back.

(g) **Negative Accounts.** You may have a negative balance if Your Account is debited amounts equivalent to previous Payouts for Charge-backs and You do not have an adequate Account balance to cover the Charge-back amounts. When You have a negative balance, You must immediately remit payment to CJ in an amount sufficient to bring Your Account to a zero balance, or Your Account is subject to 1.5% interest per month, compounded monthly.

**4. Proprietary Rights.**
(a) **Linking to Advertisers.** For each Advertiser's Program that You have been accepted to, the Advertiser is granting to You the right to display and Link to the Advertiser's Web site or Web site content in accordance with the Advertiser's Program terms for the limited purposes of Promoting the Advertiser's Program, subject to the terms and conditions of this Agreement. Your use of the Link signifies Your agreement to refrain from copying or modifying any icons, buttons, banners, graphics files or content contained in the Link, including but not limited to refraining from removing or altering any copyright or trademark notices. As between CJ and Publisher, CJ owns all rights in and to all information regarding the Visitors that You refer to Advertisers through CJ.

(b) **CJ's Use of Your Marks.** You authorize CJ to utilize Your trademarks, service marks, tradenames, and/or copyrighted material that You provide to CJ through Your Account to promote Your participation in the Network Services.

(c) **Your Use of CJ's Proprietary Rights.** You agree that Your use of any CJ Web site (such as www.cj.com) and Your use of any CJ trademarks, service marks, tradenames, and/or URLs is subject to the license and terms of use that are available from such Web site ("Terms of Use"). You explicitly agree not to adopt or use in any manner any trademarks, service marks, tradenames, and/or URLs that are the same or confusingly similar to, or are combined with, those of CJ.

(d) **Retention of Rights.** All proprietary rights of Advertisers, You, and CJ, and all goodwill arising as a result of such rights, inure to the benefit of such owner.

(e) **No Challenge to CJ's/Advertiser's Proprietary Rights.** You acknowledge that You obtain no proprietary rights in CJ's trademarks, service marks, tradenames, URLs, copyrighted material, patents, and patent applications, and agree not to challenge CJ's proprietary rights. You acknowledge that You obtain no proprietary rights in Your Advertisers' proprietary rights, and agree not to challenge such Advertiser's proprietary rights.

**5. Confidentiality.**
(a) **Obligations.** You or CJ may provide the other with information that is confidential and proprietary to that party or a third party, as is designated by the disclosing party or that is reasonably understood to be proprietary and/or confidential ("Confidential Information"). The receiving party agrees to make commercially reasonable efforts, but in no case no less effort than it uses to protect its own Confidential Information, to maintain the confidentiality of and to protect any proprietary interests of the disclosing party. Confidential Information shall not include (even if designated by a party) information: (i) that is or becomes part of the public domain through no act or omission of the receiving party; (ii) that is lawfully received by the receiving party from a third party without restriction on use or disclosure and without breach of this Agreement or any other agreement without knowledge by the receiving party of any breach of fiduciary duty, or (iii) that the receiving party had in its possession prior to the date of this Agreement. Upon termination of this Agreement, You must destroy or return to CJ any Confidential Information provided by CJ to You under this Agreement.

(b) **Provision of Info to Advertisers/Third Parties.** You agree that CJ may, but is not obligated to, provide Your email address(es) and basic Publisher Account detail (including but not limited to Your address, phone and fax number, Web site name, the date the website or subscription email first entered into operation, and visitor demographics) to Advertisers. CJ may provide any and all Visitor, Transaction and/or Tracking Code data to the Advertiser to which You referred such Visitor, and to any third party in CJ's sole discretion, including but not limited to all regulatory, legislative and judicial bodies, and pursuant to allegations and claims of proprietary rights infringement. CJ reserves the right to be able to utilize Tracking Code data provided to it, which may include: information about Your performance statistics, to analyze Network Service trends, monitor Network Service efficiencies, maintain the integrity of the tracking code, promote Network Service capabilities and efficiencies, and promote You and Your Web performance to Advertisers.

**6. Term, Termination, Deactivation and Notices.**
(a) **Term.** This Agreement shall commence upon Your indication that You have accepted this Agreement by providing the required information and 'clicking through' the acceptance button on the CJ Web site and shall continue until terminated in accordance with the terms of this Agreement. This Agreement may be terminated by either party upon 15 days notice. This Agreement may be terminated immediately upon notice for Your breach of this Agreement. Your Account may be deactivated during investigation of breach of this Agreement. If this Agreement is

terminated based upon Your breach, You shall not be eligible to enter into a new click-through Publisher Service Agreement with CJ, and any attempt to do so shall be null and void.

(b) **Termination by Advertiser.** An Advertiser may terminate You, one of Your Web sites, or Your ability to use a promotional method, from the Advertiser's Program for any or no reason, upon 7 days written notice with effect from the 8th day. Additionally, Advertiser may terminate You from the Advertiser's Program for breach of a third party's proprietary rights, and/or diluting, tarnishing or blurring an Advertiser's trademarks, tradenames, and/or service marks, or for Your material breach of the Advertiser's Program terms or of this Agreement.

(c) **Termination or Deactivation by CJ.** CJ may terminate You, one of Your Web sites, or Your use of a promotional method, from an Advertiser's Program, at any time in CJ's sole discretion. Breach of any Section of this Agreement is cause for immediate termination from an Advertiser's Program and/or termination of this Agreement, and may result in Chargeback of one or more Payouts. CJ may temporarily deactivate or terminate Your Account if: (i) You or Your agent are responsible for the improper functioning of Ad Content, or if You otherwise interfere with and/or fail to maintain the Tracking Code; (ii) Your Account has not been logged into and/or there have been no Transactions credited to Your Account for any 30 day period; (iii) You maintain a negative balance in Your Account; (iv) CJ determines You are diluting, tarnishing or blurring CJ's proprietary rights; (v) You begin proceedings to challenge CJ's proprietary rights; or (vi) a third party (including a CJ Advertiser) disputes Your right to use any Link, domain name, trademark, service mark, trade dress, or right to offer any service or good offered on Your Web site, or through any of Your promotional means. Upon termination of this Agreement, or in case of deactivation of Your Account, You shall no longer accrue Payouts in Your Account, including but not limited to subsequent sales and/or Leads for click-throughs that occurred prior to termination.

(d) **Termination of Programs and Offers.** Programs and Offers may be discontinued at any time.

(e) **Notices.** Except as provided elsewhere herein, both parties must send all notices relating to this Agreement to: (i) for CJ, via registered mail, return receipt requested or via an internationally recognized express mail carrier to Commission Junction, Inc., Attn: Legal Dept., 530 East Montecito Street, Santa Barbara, CA 93103 USA (effective upon actual receipt); and, (ii) for You, at the email or physical address listed on Your Account (effective upon sending as long as CJ does not receive an error message regarding delivery of the email) or five (5) days after mailing).

(f) **Post-termination.** Upon termination of this Agreement, any outstanding payments shall be paid by CJ to You within 90 days of the termination date, and any outstanding debit balance shall be paid by You to CJ within 30 days of termination of this Agreement. All payments are subject to recovery for Charge-backs. Upon termination of this Agreement, any permissions granted under this Agreement will terminate, and You must immediately remove all Links to Advertiser(s). Provisions of this Agreement that by their nature and context are intended to survive the termination of this Agreement shall survive the termination of this Agreement to the extent that and as long as is necessary to preserve a party's rights under this Agreement that accrued prior to termination.

**7. Representations, Warranties, Disclaimers and Limitations.**

(a) **Business Operations.** Each party will make reasonable commercial efforts to keep its Web site operational during normal business hours. However, the parties agree that it is normal to have a certain amount of system downtime and agree not to hold each other or Your Advertisers liable for any of the consequences of such interruptions. CJ may modify the Network Service, or discontinue providing the Network Service, or any portion thereof, at any time.

(b) **Authority.** Each party represents and warrants to the other party as to itself that the person executing this Agreement is authorized to do so on such party's behalf. IF YOU ARE AN INDIVIDUAL, YOU REPRESENT AND WARRANT THAT YOU WERE AT LEAST 18 YEARS OF AGE ON THE EFFECTIVE DATE OF THIS AGREEMENT.

(c) **Non-infringement Warranties.** You represent and warrant that: (i) You have all appropriate authority to operate, and to any and all content on, Your Web site(s); (ii) You have all appropriate authority in any promotional method you may choose to use; (iii) Your Web site(s) and Your promotional methods do not and will not infringe a third party's, a CJ Advertiser's, or CJ's, proprietary rights; and (iv) You shall remain solely responsible for any and all Web sites owned and/or operated by You and all of Your promotional methods. CJ may or may not review all content on Your Web site or used by You in Your promotional methods.

(d) **Compliance with Laws.** You are responsible for compliance with the requirements of all relevant legislation (including subordinate legislation and the rules of statutorily recognized regulatory authorities) in force or applicable in the United States or in any other applicable territory, and warrant that no promotion method used by You or the content of Your Web site(s) will render CJ liable to any proceedings whatsoever.

(e) **Limitation of Liabilities.** ANY OBLIGATION OR LIABILITY OF CJ UNDER THIS AGREEMENT SHALL BE LIMITED TO THE TOTAL OF YOUR PAYOUTS PAID TO YOU BY CJ UNDER THIS AGREEMENT DURING THE YEAR PRECEDING THE CLAIM. NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST THE OTHER PARTY TO THIS AGREEMENT MORE THAN ONE YEAR AFTER THE TERMINATION OF THIS AGREEMENT. YOU AGREE THAT CJ SHALL NOT BE LIABLE TO YOU, OR ANY THIRD PARTY (INCLUDING BUT NOT LIMITED TO A CLAIM BY ANOTHER PUBLISHER OR AN ADVERTISER OF THE NETWORK SERVICE), FOR ANY CONSEQUENTIAL, EXEMPLARY, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF GOODWILL, LOST PROFITS, BUSINESS INTERRUPTION, LOSS OF PROGRAMS OR OTHER DATA, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR CLAIM.

(f) **Disclaimer of Warranties.** TO THE FULLEST EXTENT PERMISSIBLE PURSUANT TO APPLICABLE LAW, CJ DISCLAIMS ALL WARRANTIES IMPLIED, INCLUDING, BUT NOT LIMITED TO, (A) MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS, (B) THAT THERE ARE

NO VIRUSES OR OTHER HARMFUL COMPONENTS, (C) THAT CJ'S SECURITY METHODS WILL BE SUFFICIENT, (D) REGARDING CORRECTNESS, ACCURACY, OR RELIABILITY, OR (D) AGAINST INTERFERENCE WITH ENJOYMENT OF THE PUBLISHER'S INFORMATION OR WEB SITE. ALL 'INFORMATION' AND 'COMPUTER PROGRAMS' PROVIDED TO YOU IN THE COURSE OF THIS AGREEMENT ARE PROVIDED WITH ALL FAULTS, AND THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY, AND EFFORT IS WITH YOU. CJ IS, UNDER NO CIRCUMSTANCES, RESPONSIBLE FOR THE PRACTICES, ACTS OR OMISSIONS OF ANY ADVERTISER OR PUBLISHER, OR SUCH ADVERTISER OR PUBLISHER'S WEB SITE(S), AND/OR THE CONTENT OF AN ADVERTISER'S WEB SITE OR THAT AN ADVERTISER MAKES AVAILABLE THROUGH THE NETWORK SERVICE.

(g) Remedies. No remedy or election shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

(h) Benefit of the Bargain. THE PROVISIONS OF THIS SECTION 7 ARE AN ESSENTIAL ELEMENT OF THE BENEFIT OF THE BARGAIN REFLECTED IN THIS AGREEMENT.

**8. Publisher's Indemnification Obligations.** Publisher shall defend, indemnify and hold CJ and Advertisers harmless against all claims, suits, demands, damages, liabilities, losses, penalties, interest, settlements and judgments, costs and expenses (including attorneys' fees) incurred, claimed or sustained by third parties, including but not limited to Advertisers, directly or indirectly as a result of (a) Publisher's breach of or non-compliance with this Agreement, (b) Publisher's violation of any law, or an alleged violation of law by CJ, that is a direct or indirect result of Publisher's use of the Network Service, (c) Publisher's use of the Network Service, (d) Publisher's participation in any Program, (e) any content, goods or services offered, sold or otherwise made available by Publisher to any person, (f) Publisher's acts or omissions in using, displaying or distributing any Internet links obtained from the Network Service or elsewhere, including but not limited to Publisher's use of internet links via email distribution, (g) any claim that CJ is obligated to pay tax obligations in connection with payment made to Publisher pursuant to this Agreement and/or any Advertiser's Program, and (h) any violation or alleged violation by Publisher of any rights of another, including breach of a person's or entity's intellectual property rights (each (a)-(h) individually is referred to hereinafter as a "Claim"). Should any Claim give rise to a duty of indemnification under this Section 8, CJ shall promptly notify Publisher, and CJ shall be entitled, at its own expense, and upon reasonable notice to Publisher, to participate in the defense of such Claim. Participation in the defense shall not waive or reduce any of Publisher's obligations to indemnify or hold CJ harmless. Publisher shall not settle any Claim without CJs prior written consent. Publisher also shall indemnify for any reasonable attorneys' fees or other costs incurred by an indemnified party in investigating or enforcing this Section 8. In the context of this Section 8 only, the term "CJ" shall include officers, directors, employees, corporate affiliates, subsidiaries, agents, and subcontractors.

**9. Miscellaneous.**

(a) Headings and References. Headings of Sections are for the convenience of reference only. Words indicated in quotes and capitalized signify an abbreviation or defined term for indicated words or terms, including those definitions contained in the opening paragraph

(b) Third Party Disputes. In the event of a third party claim against either: (a) CJ's intellectual property; or (b) against CJ's right to offer any service or good on CJ's Web site(s) or if, in CJ's opinion, such a claim is likely, CJ shall have the right, at its sole option and in its sole discretion, to (i) secure the right at CJ's expense to continue using the intellectual property or good or service; or (ii) at CJ's expense replace or modify the same to make it non-infringing or without misappropriation.

(c) Relationships of Parties/Third Party Rights. The relationships of the parties to this Agreement shall be solely that of independent contractors, and nothing contained in this Agreement shall be construed otherwise. Nothing in this Agreement or in the business or dealings between the parties shall be construed to make them joint venturers or partners with each other. Neither party shall do anything to suggest to third parties that the relationship between the parties is anything other than that of independent contractor. You agree that Your consent is not necessary to modify any Advertiser Service Agreement.

(d) Choice of Law/Attorneys' Fees. This Agreement is governed by the laws of the State of California (USA), except for its conflict of law provisions. The exclusive forum for any actions related to this Agreement shall be in the state courts, and, to the extent that federal courts have exclusive jurisdiction, in Los Angeles, California. The parties consent to such venue and jurisdiction and waive any right to a trial by jury. The application of the United Nations Convention on the International Sale of Goods is expressly excluded. A party that primarily prevails in an action brought under this Agreement is entitled to recover from the other party its reasonable attorneys fees and costs. CJ controls and operates its Web site from its offices in the USA and access or use where illegal is prohibited.

(e) Force Majeure. Neither party shall be liable by reason of any failure or delay in the performance of its obligations hereunder for any cause beyond the reasonable control of such party, including but not limited to electrical outages, failure of Internet service providers, default due to Internet disruption (including without limitation denial of service attacks), riots, insurrection, acts of terrorism, acts of or similar), fires, flood, earthquakes, explosions, and other acts of God.

(f) Severability/Waiver. If any provision of this Agreement is held by any court of competent jurisdiction to be illegal, null or void or against public policy, the remaining provisions of this Agreement shall remain in full force and effect. The parties shall in good faith attempt to modify any invalidated provision to carry out the stated intentions in this

Agreement. The waiver of any breach of any provision under this Agreement by any party shall not be deemed to be a waiver of any preceding or subsequent breach, nor shall any waiver constitute a continuing waiver.

(g) **Assignment and Acknowledgement.** Neither party may assign this Agreement without the prior express written permission of the other party. Notwithstanding the foregoing, Your consent shall not be required for assignment or transfer made by CJ (1) due to operation of law, or (2) to an entity that acquires substantially all of CJ's stock, assets or business, or (3) to a related entity (e.g. parent or subsidiary of parent). Your use of the Network Service is irrefutable acknowledgement by You that You have read, understood and agreed to each and every term and provision of this Agreement. CJ may establish from time to time rules and regulations regarding use of the Network Service as published on the Network Service and incorporated herein.

(h) **Marketing.** Publisher agrees that CJ may identify it as a CJ Publisher in client lists and may use Publisher's name and/or logo solely for such purpose in its marketing materials. Any other uses of Publisher's name and/or logo not otherwise described or contemplated herein shall require Publisher's prior written consent.

(i) **Entire Agreement, Assignment and Amendment.** This Agreement, including the Introduction, contains the entire understanding and agreement of the parties and there have been no promises, representations, agreements, warranties or undertakings by either of the parties, either oral or written, except as stated in this Agreement. This Agreement may only be altered, amended or modified by an instrument that is assented to by each party to this Agreement by verifiable means, including without limitation by written instrument signed by the parties or through a "click through" acknowledgement of assent. No interlineations to this Agreement shall be binding unless initialed by both parties. Notwithstanding the foregoing, CJ shall have the right to change, modify or amend ("Change") this Agreement, in whole or in part, by posting a revised Agreement at least 14 days prior to the effective date of such Change. Your continued use of the Network Service after the effective date of such Change shall be deemed Your acceptance of the revised Agreement.

COMMISSION JUNCTION, INC.
530 East Montecito Street
Santa Barbara, CA 93103 USA
a Delaware Corporation, EIN#41-41-1922033

By:_____

Name:_____

Title:_____

Date:_____

"You":_____

Address:_____

_____

By:_____

Name:_____

Title:_____

Date:_____

Federal ID # (or Company Reg. No.):_____

**EXHIBIT "3"**

# Special Terms & Conditions » eBay Affiliate Global Ts&Cs Oct. 1, 2005

## eBay Terms and Conditions
### eBay Affiliate Program - Supplemental Terms and Conditions

In consideration for Your participation in the Affiliate Program (the "Program") maintained by eBay Inc. ("eBay") through Commission Junction, Inc. ("CJ"), You agree to comply with these Supplemental Terms and Conditions ("Terms and Conditions") in addition to the terms of the Commission Junction Publisher Service Agreement ("PSA"). If any of these Terms and Conditions conflict with those of the PSA, then these Terms and Conditions will control. Capitalized terms not defined herein have the meanings set forth in the PSA.

(1) **eBay Trademarks.** You will not use in your domain name or URL (specifically, any term before the third "/" of your URL) nor purchase or register in any search, referral, or advertising service (such as Google's AdWords program) any of the following terms:

    a. . Any domestic or international eBay company trademarks, and all translations thereof, including "eBay", "PayPal", "Half" or any URL or keyword string that includes eBay company names (for example, "www.yourcompany-ebay.com", "eBay auctions", "eBaymotors", "ebay motors", "eBay jewelry", "PayPalpayments", "paypal payments", "Halfitems", "Half items"); or

    b. Variations of any eBay company trademarks (for example, "e-bay", "ebay.com", "www.ebay.com", "e.bay", "e bay", "www.ebay", "ww.ebay.com", "e-bay.com", "www,ebay.com", "e.bay", "wwwebay.com", "ebya", "eaby", "Pay-Pal", "Pay Pal", "Half.com", "Half com", "Half.ebay.com", "Half ebay com", "ebay half").

    * Please note: this is not an exhaustive list of prohibited words, phrases, or combinations thereof.

(2) **Unacceptable terms.** You shall not purchase or register search engine keywords, AdWords, search terms or other identifying terms that eBay considers in its sole discretion to fall into any of the following categories:

    - Promote sexually explicit materials
    - Promote violence
    - Promote firearms or weapons
    - Promote illegal activities
    - Promote fake or counterfeit items
    - Promote gambling or betting
    - Promote discrimination based on race, sex, religion, nationality, disability, sexual orientation, or age
    - Infringe upon others' intellectual property rights


CONFIDENTIAL
ATTORNEY'S EYES ONLY

0000642

(3) **Tracking Tags.** As part of the Program, CJ or eBay may provide you with tools, products, and creative assets (collectively, "Assets") that include information that helps track Transactions generated by You and attribute them to Your Account. You will use each of these Assets only in their intended manner as instructed by CJ, and will not corrupt, modify, or disable them. You will not deliver any eBay-related cookies or other tracking tags to the computers of users that are merely viewing Your advertisements or while Your applications are merely active or open.

(4) **Compensation.** For each transaction, You will be compensated in accordance with the then-current Payout schedule for Transactions on the eBay.com site ("Commission-Earning Activity"). To qualify as a payable transaction, a user must take an affirmative action, clicking on your properly-coded link in a browser or browser environment.
   a. Items listed on Froogle (or any of its successor sites) are excluded from Commission-Earning Activity.
   b. eBay reserves the right to delay Your compensation if there is a suspicion of bad faith associated with any transaction driven by You.
   c. eBay reserves the right to delay Your compensation if You are suspected of causing users non-compliance with eBay's User Agreement (e.g. causing unpaid items)

(5) **No Affiliate Links.** You may not include affiliate links on any ebay.com page or eBay-owned page, such as an eBay listing or eBay Store. Nor may You use affiliate links to promote your own eBay listings or eBay Store, those of your Sub-Publisher or those of anyone else with whom you are affiliated.

(6) **No Sniping.** You many not automatically place bids for users.

(7) **Terms Governing Downloadable Software.** You will be paid for Commission-Earning Activity derived from downloadable software (DLS) only if the DLS complies with all of these Terms and Conditions and the PSA.

   a. **Legal Compliance.** The operation of the DLS complies with all applicable laws in all relevant jurisdictions and does not deceive consumers about its nature, purpose, or operation.
   b. **Informed Consent.** The DLS is not installed or executed on the computer of any user until that user has given explicit consent to its installation or execution. "Explicit consent" means:
      i. The user has received a clear, brief, and conspicuous notice, in plain language and outside of any user agreement or terms , that the DLS will collect information about web usage (and, if applicable, personally identifiable information), and will use that information to display advertising on the user's computer (including, if possible, a description of the frequency of such advertising);
      ii. The user has been provided with, or has been provided an opportunity to access, a more detailed description of the type(s) of information collected

CONFIDENTIAL

ATTORNEY'S EYES ONLY

and the purpose(s) for which it will be used;

   iii.   If the DLS is bundled with other software, the user has been provided with specific identification of the advertising-serving program(s) ("Adware") in the bundle; and

   iv.   After receiving the notice specified in (i) and after being provided, or provided an opportunity to access, the information specified in (ii) and (iii), the user affirmatively chooses to have the DLS installed or executed on his or her computer.

c.  **Easy Removal.** A user must be able to completely uninstall the DLS through a means that the user can readily identify and perform without undue effort or specialized knowledge (preferred alternatives include providing easy access to an uninstall process from the content or framing of the DLS or a readily recognizable icon or listing the DLS in the add/remove feature in the Windows operating system). Uninstall processes must not be deceptive, complicated or confusing (such as listing DLS under multiple, confusing or deceptive names, requiring users to re-boot unnecessarily, using confusing language in pop-up challenges, or requiring more clicks than necessary to complete the un-install process). Each DLS-affiliated feature must contain the name of the DLS in the uninstall user interface.

d.  **Full Disclosure.** All ads generated on the user's screen by the DLS identify the DLS as the source of the ad, using the same name as provided most prominently at the time the DLS was downloaded.

e.  **No Persistent Ads.** Users must be able to close (without ending their browser sessions) any DLS-generated pop-ups, pop-unders, or other advertisements that cover otherwise viewable content.

f.  **Value to User.** Either the DLS or an application bundled with the DLS must have meaningful value to the user that outweighs any burden imposed. For example, DLS that is combined with a comparison-shopping engine would meet this requirement.

g.  **No Sniping.** The DLS cannot automatically place bids for users.

h.  **Limited Number of Ads.** The DLS will not serve an unreasonable number of pop-up or pop-under advertisements per day or per web browsing session.

i.  **Not Aimed at Children.** The DLS is not specifically or primarily marketed to children under the age of 18 or downloadable from websites or services primarily oriented toward children.

j.  **Prohibited Operations.** Neither the DLS, nor any other software bundled with or distributed with the DLS, performs any of the following functions unless explicitly instructed to do so by the user

   i.   sending unsolicited information or material to another computer;

   ii.   diverting the user to another site not requested by the user;

   iii.   initiating or terminating a user's connection to the Internet;

   iv.   modifying the user's settings with respect to browser home page, Internet connections (including default access provider), bookmarks, or security levels;

   v.   keystroke logging;

   vi.   automatic re-installing or re-activating itself or another application after



being uninstalled or removed by the user; or

vii. removing or disabling security, pop-up-blocking, anti-virus, anti-Adware, or anti-spyware programs on the user's computer. For these purposes, spyware is defined as software that surreptitiously gathers a user's personally identifiable information.

k. **Other Terms.** You will provide CJ with an accurate and thorough description of the DLS on which any of Your ads appear. You will also notify CJ in writing or by email such that CJ receives your notice at least 10 days before there is any material change to the operation of the DLS. Except for any perpetual eBay search box or any toolbar that has a perpetual link to eBay, the DLS will not display an ad (including any pop-ups, pop-unders or tool bars) that contains eBay affiliate links while an eBay page is open on a user's computer.

**(8) Terms Governing Incentive Sites.** You will not directly or indirectly offer any consideration or incentive for any Commission-Earning Activity or for clicking on an affiliate program-coded link unless expressly authorized to do so in writing by CJ. Each such written authorization will authorize only one specific incentive. Any subsequent change to an authorized incentive must be re-submitted in writing for authorization by CJ.

**(9) Your Responsibility for Your Agents.** You will not make any commitments or representations on behalf of eBay with regard to any relationship you enter into with Your Sub-Publishers, Distribution Partners, or any other third parties (collectively, "Agents") in connection with your promotion of an eBay site. You will ensure that Your Agents agree to terms and conditions that are at least as restrictive as the PSA and these Terms and Conditions, subject to applicable law, and shall include a provision in such terms and conditions that eBay is a third party beneficiary. Any violation by Your Agents of the terms and conditions of this Agreement shall constitute a violation by You, and CJ and eBay shall have full recourse against You with respect to such a violation, including without limitation, suspension or termination from the Program.

a. **Agents.** You must identify each Sub-Publisher with a unique tracking ID (PID). eBay reserves the right to terminate any affiliate engaging in "Sub-Publisher" or "distribution partner" agent relationships at any time, at eBay's discretion, based on a breach of these terms and condition by Your Agent

**(10) Disclaimer of Warranties.** EBAY AND CJ DISCLAIM ALL WARRANTIES AND CONDITIONS, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. EBAY AND CJ, EACH INDIVIDUALLY, EXPRESSLY DISCLAIMS ALL LIABILITY RELATING TO THESE TERMS AND CONDITIONS OR THE PROGRAM.

**(11) Email Promotion.** You agree not to send any emails in Your promotion of the eBay site unless authorized and approved to do so by CJ. Authorization and approval of email

marketing includes additional terms and conditions to which you must agree before such promotion begins.

(12) **Global Compliance.** Any infractions of these terms and conditions will be monitored and enforced globally. Violations in one country program will be counted equal with violations in all other country programs with which You or your Agents are affiliated.

(13) **Publisher's Indemnification Obligations.** You will defend, indemnify, and hold each of eBay and CJ harmless against all claims, liabilities, and expenses claimed or incurred by third parties directly or indirectly as a result of any breach of these terms and conditions, and/or distribution or use of applications or content by You, Your Agents, or anyone else that you are affiliated with.

(14) **Remedy for Breach.** If You breach any of these terms, in addition to any other available remedies, eBay may remove You from the Program immediately, withhold or recover any compensation for transactions not in compliance with these terms, and seek removal of any search terms registered or purchased in violation of the terms.

(15) **Amendment.** eBay may amend these Terms and Conditions by notifying You through CJ, email, or mail sent to Your address of record. You may review any revised Terms and Conditions for up to seven days after eBay sends its notice. After seven days, the revised terms will automatically take effect and become fully enforceable. If You do not agree with the revised Terms and Conditions, You will remove Yourself from the Program through Your Account and remove and stop promoting any eBay Links.

(16) **Acceptance.** By clicking on the "ACCEPT" link below, You are agreeing to be bound the terms in these Terms and Conditions. If You do not understand or agree to all of the terms and conditions of these Terms and Conditions, click the "CLOSE" button.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

0000646

**EXHIBIT "4"**

| | |
|---|---|
| **From:** | Phil Montoya [Montoya@ernsterlaw.com] |
| **Sent:** | Wednesday, October 22, 2008 3:44 PM |
| **To:** | Stewart Foreman; Leo J. Presiado |
| **Cc:** | Marine Kaladjian |
| **Subject:** | CJI v. Kessler's |

Stewart and Leo,

This is to inform you that my client CJI does not object to your use and/or filing of the documents listed in your respective letters of today. If you plan to use the documents outside of the pending United States District Court (eBay case) or the Orange County Superior Court (CJI case) matters, please let me know. Thank you.

This will also confirm that no ex parte proceeding will take place on Friday, October 24, 2008 unless I am informed, in writing, of your intention to go forward notwithstanding this notice regarding the identified documents.


Phil J. Montoya, Jr., Esq.
Ernster Law Offices, P.C.
Montoya@ernsterlaw.com
Telephone: (626) 844-8800
Facsimile: (626) 844-8944

**EXHIBIT "5"**

# California Business Portal

## Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of OCT 17, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| THUNDERWOOD HOLDINGS, INC. | | |
| **Number:** C2478248 | **Date Filed:** 12/9/2002 | **Status:** active |
| **Jurisdiction:** California | | |
| Address | | |
| 15 HIGH BLUFF | | |
| LAGUNA NIGUEL, CA 92677 | | |
| Agent for Service of Process | | |
| BRIAN ANDREW DUNNING | | |
| 15 HIGH BLUFF | | |
| LAGUNA NIGUEL, CA 92677 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

**EXHIBIT "6"**

# California Business Portal

**DISCLAIMER:** The information displayed here is current as of OCT 17, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| DUNNING ENTERPRISE, INC. | | |
| **Number:** C2938853 | **Date Filed:** 12/27/2006 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 1 STOCKBRIDGE | | |
| ALISO VIEJO, CA 92656 | | |
| **Agent for Service of Process** | | |
| TODD DUNNING | | |
| 1 STOCKBRIDGE | | |
| ALISO VIEJO, CA 92656 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

**EXHIBIT "7"**

# California Business Portal

## Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of OCT 17, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| DIGITAL POINT SOLUTIONS, INC. | | |
| **Number:** C2998539 | **Date Filed:** 5/14/2007 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 8465 REGENTS RD #448 | | |
| SAN DIEGO, CA 92122 | | |
| **Agent for Service of Process** | | |
| SHAWN D HOGAN | | |
| 8465 REGENTS RD #448 | | |
| SAN DIEGO, CA 92122 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

**EXHIBIT "8"**

# California Business Portal

**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of OCT 17, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| COMMISSION JUNCTION, INC. | | |
| **Number:** C2814428 | **Date Filed:** 12/14/2005 | **Status:** active |
| **Jurisdiction:** DELAWARE | | |
| **Address** | | |
| 30699 RUSSELL RANCH ROAD STE 250 | | |
| WESTLAKE VILLAGE, CA 91362 | | |
| **Agent for Service of Process** | | |
| NATIONAL REGIST ERED AGENTS, IN C. | | |
| 2875 MICHELLE DR STE 100 | | |
| IRVINE, CA 92606 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# EXHIBIT "9"

**Tom**
**Clerk-Recorder**
**County of Orange**

# FICTITIOUS BUSINESS NAME SEARCH

| SEARCH CATEGORY: By BUSINESS NAME CRITERIA: Like KESSLER'S |||||||||
|---|---|---|---|---|---|---|---|---|
| Business Name | Number of Businesses Registered | Registration Number | File Date | Expiration Date | Last or Company Name | First Name | Document Type | Pub |
| KESSLER'S FLYING CIRCUS | 1 | 20056025410 | 04/15/2005 | 04/15/2010 | DUNNING | BRIAN | FBN | NO |
| KESSLER'S FLYING CIRCUS | 1 | 20056025410 | 04/15/2005 | 04/15/2010 | DUNNING | TODD | FBN | NO |

New Search

## Page 1 of 1  # of Records: 2

DISCLAIMER: The Clerk-Recorder's Office makes no warranty or guarantee concerning the accuracy or reliability of the content at this site or at other sites to which we link. Assessing accuracy or reliability of the information is the responsibility of the user. The Clerk-Recorder's Office shall not be liable for errors contained herein or for any damages in connection with the use of the information contained herein. THIS INFORMATION IS FOR REFERENCE ONLY.

 FBN Forms /  Abandonment Forms / Withdrawal Forms / 

Clerk-Recorder Home Page / Welcome / Orange County Home Page / FBN Filing Instructions

Thank you for using the Fictitious Business Name Search
Your feedback is Important to us.

**PROOF OF SERVICE**
*eBay, Inc. v. Digital Point Solutions, Inc., et al.*
*Northern District of California, San Jose Division*
*Case No. C 08-4052*

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF ORANGE     )

     I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 2211 Michelson Drive, Seventh Floor, Irvine, California 92612.

     On **October 27, 2008**, I served the foregoing documents described as **COMPENDIUM OF EXHIBITS IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANTS THUNDERWOOD HOLDINGS, INC., BRIAN DUNNING AND BRIANDUNNING.COM** on the interested parties in this action by placing a copy thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

  ✓  As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  ___  (By E-Mail) As follows: I caused the above-referenced document(s) to be transmitted to the above-named persons.

  ___  (By Facsimile) As follows: I caused the above-referenced document(s) to be transmitted to the above-named persons by facsimile.

  ___  (By Hand Delivery) As follows: I caused the above-referenced document(s) to be hand delivered to the above-named persons.

  ___  (By Overnight Delivery) As follows: By overnight delivery via Overnite Express and/or Federal Express to the office of the addressee noted on the attached service list.

Executed on **October 27, 2008**, at Irvine, California.

  ___  (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  ✓  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

RHONDA RADFORD

1

345638v1 rra 10/27/08 6 (2785-0002)

PROOF OF SERVICE - CASE NO. C 08-4052

1

2                                    **SERVICE LIST**

3    David R. Eberhart
     Sharon M. Bunzel
4    Colleen M. Kennedy
     O'Melveny & Myers
5    Two Embarcadero, 20th Floor
     San Francisco, CA 94111
6    Tel: (949) 984-8700
     Fax: (949) 984-8701
7    *Attorneys for Plaintiff eBay, Inc.*\

8
     Stewart H. Foreman
9    Freeland, Cooper & Foreman, LLP
     150 Spear Street, Suite 1800
10   San Francisco, CA 94105
     Tel: (949) 541-0200
11   Fax: (949) 495-4332
     *Attorneys for Defendants Todd Dunning and Dunning Enterprises, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         2